# 22-1745

IN THE

# United States Court Of Appeals

## FOR THE SECOND CIRCUIT

Tyrone Holmes,

*Plaintiff-Appellant,*

*-against-*

Apple Inc., Amazon.com, LLC, CheckPoint Fluidic Systems International, Ltd.,

*Defendant-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF NEW YORK
JUDGE RONNIE ABRAMS

---

**DEFERRED APPENDIX FOR PLAINTIFF APPELLANT, PROSE HOLMES**

---

Tyrone Holmes
1465 Hammersley Ave.
Bronx, NY 10469

*Plaintiff-Appellant, Prose*

# APPENDIX

## TABLE OF CONTENTS

**Relevant Docket Entries**      **A-1**    **1-56**

**Letter to Rubye J. Krajick**      **A-2**    **58-60**

**Plaintiff's Recusal Motion to Vacate**      **A-3**    **61-62**

**Plantiffs Declaration in support of motion to Vacate Judgment.**    **A-4**    **62-102**

**Apple letter dated April 18, 2022**      **A-5**    **102-106**

**Judge Abrams' Order granting Application**      **A-6**   **107-109**

**Individual Rules & Practices in Civil Cases Ronnie Abrams for all Litigants.**   **A-7**    **6**

       **Unless otherwise ordered by Judge Abrams, these Individual Practices apply to all civil matters except for civil pro se cases.**

**Individual Rules & Practices in Civil Cases Ronnie Abrams pro se Litigant……A-8 111**

**Judge Abrams' Opinion and Decision**      **A-9.**   **112-117**

**Transcript**      **A-10.**   **118-157**

**Declaration of Jensen**      **A-11**   **157-159**

**Plantiff Reply Declaration**      **A-12.**   **160-168**

**Notice of Appeal**      **A-13**   **168-169**

**Order Granting Leave for Appeal**      **A-14**    **169-169**

**Letter from Graifmen**      **A-15**   **170-171**

**Letter to Judge Swain / Endorsement**       **A-16 172-173**

**Amended Complaint**       **A-17 174-196**

**Ramos Order and Opinion**       **A-18 197-224**

---

**Docket Entries 17-cv-4557-ER**       **A-1**       **A-8**

**Complaint, dated June 16, 2017, with exhibits** . . . . . . . . . . . . . . . . . . . . . . . . . . . **A-18**    **A-9**

**Defendant CheckPoint Fluidic Systems International, Ltd.'s Notice of**
     **Motion to Dismiss, dated October 9, 2017** . . . . . . . . . . . . . . . . . . . . . . . . . **A-115**    **A-10**

**Affidavit of Ruston Mahoney, for Defendant CheckPoint Fluidic**
**Systems International, Ltd., in Support of Motion to Dismiss,**
**sworn to October 4, 2017** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **A-125**
     **Exhibit A to Mahoney Affidavit—**
     **Amazon Receipt of CheckPoint Purchase** . . . . . . . . . . . . . . . . . . . . . . . . **A-130**
     **Exhibit B to Mahoney Affidavit—**
**Photo of Property of CheckPoint and Computer** . . . . . . . . . . . . . . . . . . . **A-131**
       **Exhibit C to Mahoney Affidavit—**
       **FedEx Tracking Notification** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **A-134**

       **Exhibit D to Mahoney Affidavit—**
       **FedEx Letter, dated September 22, 2017, with Records** . . . . . . . . . . . **A-136**

       **Exhibit E to Mahoney Affidavit—**
       **Kaseya Screenshot** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **A-141**

       **Exhibit F to Mahoney Affidavit—**
       **Email from Kenneth Meyer to Rusty Mahoney, David Twiford**
       **and others, dated August 2, 2016, with attachments** . . . . . . . . . . . . . . . **A-142**

       **Exhibit G to Mahoney Affidavit—**

**Email from Rusty Mahoney to Rodrigo Caballero and Bobbi Jo Bridges, dated October 17, 2016** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-149

**Exhibit H to Mahoney Affidavit—**
**Photo of Serial Number and Property Sticker** . . . . . . . . . . . . A-150

**Transcript of Proceedings, dated September 14, 2017** . . . . . . . . . . . . . . . . . A-151

**Proposed Amended Complaint, dated October 6, 2017** . . . . . . . . . . . . . A-92        A-10

# A-1

U.S. District Court
Southern District of New York (Foley Square) CIVIL DOCKET FOR CASE #:
1:17-cv-04557-ER

SDNY CM/ECF NextGen Version 1.6 11/10/22, 1:35 PM

Holmes v. Apple Inc. et al Assigned to: Judge Ronnie Abrams Demand: $75,000
Cause: 28:1332 Diversity Action

**Plaintiff Tyrone Holmes**

Date Filed: 06/16/2017
Date Terminated: 07/24/2018 Jury Demand: Both
Nature of Suit: 360 P.I.: Other Jurisdiction: Federal Question

represented by **Tyrone Holmes**
1465 Hammersley Ave

Bronx, NY 10469 646/701-4069
Email: Tymax@mac.com PRO SE

**Alex Antzoulatos**

Law Office of Alex Antzoulatos 28-18 Steinway Street, Suite 201 Astoria, NY
11103 (718)-777-2891

Fax: (718)-777-2893 Email: alexofnyc@aol.com *TERMINATED: 07/17/2018*

**Robert Gilbert Leino**

ROBERT G. LEINO 15 Park Row
17F
New York, NY 10038 (212) 964-1574

Fax: (212) 385-2515
Email: rgleino@leinolaw.com *TERMINATED: 04/03/2020*

represented by **David R Eberhart**
O'Melveny & Myers, LLP (SanFran)

**U.S. District Court**
**Southern District of New York (Foley Square) CIVIL DOCKET FOR CASE**
**#: 1:17-cv-04557-RA**

CLOSED,APPEAL,ECF,PRO-SE

——————
V.

**Defendant Apple Inc.**

───────

https://ecf.nysd.uscourts.gov/cgi-bin/DktRpt.pl?500571980443563-L_1_0-1 Page 1 of 23

SDNY CM/ECF NextGen Version 1.6 11/10/22, 1:35 PM

**Defendant Amazon.com, LLC**

Two Embarcadero Center
San Francisco, CA 94111 (415) 984-8808
Fax: (415) 984-8701
Email: deberhart@omm.com *LEAD ATTORNEY ATTORNEY TO BE NOTICED*

**Edward Nathaniel Moss**

O'Melveny & Myers, LLP(NYC) 7 Times Square
New York, NY 10036 (212)-326-2000

Fax: (212)-326-2061
Email: EMoss@cahill.com *LEAD ATTORNEY ATTORNEY TO BE NOTICED*

**Hannah Yael Shay Chanoine**

O'Melveny & Myers LLP 7 Times Square
New York, NY 10036 212-326-2128

Email: hchanoine@omm.com

*LEAD ATTORNEY ATTORNEY TO BE NOTICED*

**Jesse Jon Koehler**

O'Melveny & Myers, LLP (SanFran) Two Embarcadero Center
San Francisco, CA 94111 (415)-984-8700

Fax: (415)-984-8701 Email: jkoehler@omm.com *TERMINATED: 11/06/2018*

represented by **Michael John Goettig**

Davis Wright Tremaine LLP (NYC)

1251 Avenue of the Americas New York, NY 10020 212-489-8230
Fax: 212-489-8340

Email: michaelgoettig@dwt.com

*LEAD ATTORNEY ATTORNEY TO BE NOTICED*

**Defendant**

**Checkpoint Fluidic Systems International, Ltd.**

represented by **Brian Dale Graifman**
Borah, Goldstein, Altschuler ,Nahins, &

Goidel, P.C.
377 Broadway, 6th Floor
New York, NY 10013
212-431-1300 x322
Email: bgraifman@borahgoldstein.com *LEAD ATTORNEY ATTORNEY TO BE NOTICED*

**Date Filed # Docket Text**

| | | |
|---|---|---|
| 06/16/2017 | 1 | COMPLAINT against Amazon.com, LLC, Apple Inc., Checkpoint Fluidic Systems, International, LTD.. (Filing Fee $ 400.00, Receipt Number 465401183683)Document filed by Tyrone Holmes.(pc) (pc). (Main Document 1 replaced on 8/4/2017) (man). (Entered: 06/19/2017) |
| 06/16/2017 SUMMONS ISSUED as to Amazon.com, LLC, Apple Inc., Checkpoint Fluidic Systems, International, LTD.. (pc) (Entered: 06/19/2017) | | |
| 06/16/2017 | | Magistrate Judge Kevin Nathaniel Fox is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b) (1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: http://nysd.uscourts.gov/forms.php. (pc) (Entered: 06/19/2017) |
| 06/16/2017 Case Designated ECF. (pc) (Entered: 06/19/2017) | | |
| 08/11/2017 | 3 | PRO SE CONSENT TO RECEIVE ELECTRONIC SERVICE. The following party: Tyrone Holmes consents to receive electronic service via the ECF system. Document filed by Tyrone Holmes.(sc) (Entered: 08/14/2017) |
| 08/11/2017 | 4 | AFFIDAVIT OF SERVICE of Summons and Complaint. Checkpoint Fluidic Systems International, Ltd. served on 7/14/2017, answer due 8/4/2017. Service was accepted by Barbara Jo Bridges. Document filed by Tyrone Holmes. (sc) (Entered: 08/14/2017) |

| 08/11/2017 | 5 | AFFIDAVIT OF SERVICE of Summons and Complaint. Amazon.com, LLC served on 7/19/2017, answer due 8/9/2017. Service was accepted by Milonie Patel, Law Enforcement Specialist. Document filed by Tyrone Holmes. (sc) (Entered: 08/14/2017) |
| --- | --- | --- |
| 08/11/2017 | 6 | DECLARATION OF SERVICE of Summons and Complaint. Apple Inc. served on 7/17/2017, answer due 8/7/2017. Service was accepted by Laura Eidemiller. Document filed by Tyrone Holmes. (sc) (Entered: 08/14/2017) |
| 08/18/2017 | 7 | REQUEST TO ENTER DEFAULT against Apple Inc., Amazon.com, LLC, Checkpoint Fluidic Systems International, Ltd. Document filed by Tyrone Holmes. (man) (Entered: 08/18/2017) |
| 08/18/2017 | 8 | DECLARATION of Tyrone Holmes in Support re: 7 Request to Enter Default. |

A5

| Document filed by Tyrone Holmes. (man) (Entered: 08/18/2017) | | |
| --- | --- | --- |
| 08/18/2017 | 9 | **Vacated as per Judge's Order dated 9/14/2017, Doc. # 46** CLERK'S CERTIFICATE OF DEFAULT as to Apple, Inc. (km) Modified on 9/14/2017 (jwh). (Entered: 08/18/2017) |
| 08/18/2017 | 10 | **Vacated as per Judge's Order dated 9/14/2017, Doc. # 46** CLERK'S CERTIFICATE OF DEFAULT as to Amazon.com, Inc. (km) Modified on 9/14/2017 (jwh). (Entered: 08/18/2017) |

| 08/18/2017 | 11 | **Vacated as per Judge's Order dated 9/14/2017, Doc. # 46** CLERK'S CERTIFICATE OF DEFAULT as to Checkpoint Fluidic Systems, Int'l. (km) Modified on 9/14/2017 (jwh). (Entered: 08/18/2017) |
| --- | --- | --- |
| 08/18/2017 | 12 | NOTICE OF MOTION FOR A DEFAULT JUDGMENT; re: for Default Judgment as to Apple Inc., Amazon.Com, LLC, and Checkpoint Fluidic Systems International, Ltd.. Document filed by Tyrone Holmes.(sc) (Entered: 08/21/2017) |
| 08/25/2017 | 13 | NOTICE OF APPEARANCE by Michael John Goettig on behalf of Amazon.com, LLC. (Goettig, Michael) (Entered: 08/25/2017) |
| 08/25/2017 | 14 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Amazon.com, Inc. for Amazon.com, LLC. Document filed by Amazon.com, LLC. (Goettig, Michael) (Entered: 08/25/2017) |
| 08/30/2017 | 15 | MOTION to Vacate 10 Certificate of Clerk . Document filed by Amazon.com, LLC. (Goettig, Michael) (Entered: 08/30/2017) |
| 08/30/2017 | 16 | MEMORANDUM OF LAW in Opposition re: 12 MOTION for Default Judgment as to., 15 MOTION to Vacate 10 Certificate of Clerk . *and in support of Motion to Vacate Default*. Document filed by Amazon.com, LLC. (Goettig, Michael) (Entered: 08/30/2017) |

| 08/30/2017 | 17 | DECLARATION of MICHAEL J. GOETTIG in Opposition to Motion for Default and in Support of Motion to Vacate Default with Exhibits A and B in Opposition re: 12 MOTION for Default Judgment as to., 15 MOTION to Vacate 10 Certificate of Clerk .. Document filed by Amazon.com, LLC. (Goettig, Michael) (Entered: 08/30/2017) |
| --- | --- | --- |
| 08/31/2017 | 18 | LETTER MOTION for Conference addressed to Judge Edgardo Ramos from Brian D. Graifman, Esq. dated 08/31/2017. Document filed by Checkpoint Fluidic Systems International, Ltd..(Graifman, Brian) (Entered: 08/31/2017) |
| 08/31/2017 | 19 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Checkpoint Fluidic Systems International, Ltd..(Graifman, Brian) (Entered: 08/31/2017) |
| 09/01/2017 | 20 | MEMORANDUM OF LAW in Opposition re: 12 MOTION for Default Judgment as to. . Document filed by Apple Inc.. (Chanoine, Hannah) (Entered: 09/01/2017) |
| 09/01/2017 | 21 | DECLARATION of KATHERINE KASO-HOWARD in Opposition re: 12 MOTION for Default Judgment as to.. Document filed by Apple Inc.. (Chanoine, Hannah) (Entered: 09/01/2017) |
|  |  |  |

| 09/01/2017 | 22 | ANSWER to 1 Complaint with JURY DEMAND. Document filed by Apple Inc.. (Chanoine, Hannah) (Entered: 09/01/2017) |
| --- | --- | --- |

| | | |
|---|---|---|
| 09/01/2017 | 23 | LETTER MOTION for Conference *(Pre-Motion Conference Regarding Apple Inc.'s intended Motion To Set Aside Default Pursuant to Federal Rule of Civil Procedure 55(c) )* addressed to Judge Edgardo Ramos from Hannah Y. Chanoine dated September 1, 2017. Document filed by Apple Inc..(Chanoine, Hannah) (Entered: 09/01/2017) |
| 09/01/2017 | 24 | MOTION for DAVID R. EBERHART to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number 0208-14085708. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Apple Inc.. (Attachments: # 1 Declaration of David R. Eberhart In Support, # 2 Certificate of Good Standing - California, # 3 Text of Proposed Order)(Eberhart, David) (Entered: 09/01/2017) |
| 09/01/2017 | 25 | MOTION for JESSE J. KOEHLER to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number 0208-14085710. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Apple Inc.. (Attachments: # 1 Declaration of Jesse J. Koehler In Support, # 2 Certificate of Good Standing - California, # 3 Text of Proposed Order)(Koehler, Jesse) (Entered: 09/01/2017) |
| 09/01/2017 | 26 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Apple Inc..(Chanoine, Hannah) (Entered: 09/01/2017) |

| | | |
|---|---|---|
| 09/01/2017 | 27 | CERTIFICATE OF SERVICE of Defendant Apple Inc.'s Memorandum in Opposition to Plaintiff's Motion for Default Judgment; Declaration of Katherine Kaso-Howard in Support of Defendant Apple Inc.'s Opposition to Plaintiff's Motion for Default Judgment; Defendant Apple Inc.'s Answer; Pre-Motion Conference Letter; Motion of David R. Eberhart for Admission Pro Hac Vice; Motion of Jesse J. Koehler for Admission Pro Hac Vice; and Defendant Apple Inc.'s Rule 7.1 Corporate Disclosure Statement served on Tyrone Homes on September 1, 2017. Service was made by Mail. Document filed by Apple Inc.. (Chanoine, Hannah) (Entered: 09/01/2017) |
| 09/05/2017 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 24 MOTION for DAVID R. EBERHART to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number 0208-14085708. Motion and supporting papers to be reviewed by Clerk's Office staff., 25 MOTION for JESSE J. KOEHLER to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number 0208-14085710. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 09/05/2017) |

| | | |
|---|---|---|
| 09/05/2017 | 28 | LETTER addressed to Judge Edgardo Ramos from Tyrone Holmes, dated 9/5/17 re: Plaintiff requests that this Court grant a default judgment on all three defendants and set a precedent for willfully ignoring future complaints from innocently injured consumers, and notices from the federal courts, involving someone's freedom and privacy stemming from a legal purchase. Document filed by Tyrone Holmes.(sc) (Entered: 09/06/2017) |
| 09/06/2017 | 29 | MEMO ENDORSEMENT re: 15 MOTION to Vacate granting 18 Letter Motion for Conference 10 Certificate of Clerk; granting 23 Letter Motion for Conference. |

https://ecf.nysd.uscourts.gov/cgi-bin/DktRpt.pl?500571980443563-L_1_0-1 Page 5 of 23

SDNY CM/ECF NextGen Version 1.6 11/10/22, 1:35 PM

| | | |
|---|---|---|
| | | ENDORSEMENT: A show cause hearing will be held on September 14, 2017, at 10:00 am. At that time, the Court will also hear Defendants regarding their anticipated motions to dismiss. The Clerk of the Court is respectfully directed to terminate the motions, docs. 18 and 23. (Show Cause Hearing set for 9/14/2017 at 10:00 AM before Judge Edgardo Ramos.) (Signed by Judge Edgardo Ramos on 9/6/2017) (jwh) (Entered: 09/06/2017) |
| 09/07/2017 30 NOTICE OF APPEARANCE by Edward Nathaniel Moss on behalf of Apple Inc.. (Moss, Edward) (Entered: 09/07/2017) |
| 09/08/2017 31 AFFIDAVIT of Tyrone Holmes IN REPLY re: 20 Memorandum of Law in Opposition to Motion. Document filed by Tyrone Holmes. (sc) (Entered: 09/11/2017) |

| 09/11/2017 | 32 | MEMORANDUM OF LAW IN REPLY TO DEFENDANT, APPLE, INC., AND IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT; re: 12 MOTION for Default Judgment as to Apple, Inc. etc. Document filed by Tyrone Holmes. (sc) (Entered: 09/11/2017) |
| --- | --- | --- |
| 09/11/2017 | 33 | MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S, AMAZON, MOTION TO SET ASIDE DEFAULT; re: 15 MOTION to Vacate 10 Certificate of Clerk . Document filed by Tyrone Holmes. (sc) (Main Document 33 replaced on 9/11/2017) (sc). (Entered: 09/11/2017) |
| 09/11/2017 | 34 | AFFIDAVIT of Tyrone Holmes IN OPPOSITION; re: 15 MOTION to Vacate 10 Certificate of Clerk . Document filed by Tyrone Holmes. (sc) (Entered: 09/11/2017) |
| 09/11/2017 | 35 | DECLARATION of Brian D. Graifman in Opposition re: 12 MOTION for Default Judgment as to.. Document filed by Checkpoint Fluidic Systems International, Ltd.. (Attachments: # 1 Exhibit Global Gold Minimg, 612 F App'x 11 (2d Cir 2015) (summary order), # 2 Exhibit Mount Whitney decision (Judge Ramos unpublished), # 3 Exhibit Ikeda decision (Judge Ramos unpublished))(Graifman, Brian) (Entered: 09/11/2017) |

| | | |
|---|---|---|
| 09/11/2017 | 36 | AFFIDAVIT of Andrew C. Elliot (responding also to OSC Doc 29) in Opposition re: 12 MOTION for Default Judgment as to.. Document filed by Checkpoint Fluidic Systems International, Ltd.. (Attachments: # 1 Exhibit Certificate Louisiana texas entity registered agents, # 2 Exhibit NY DOS no listing for CheckPoint)(Graifman, Brian) (Entered: 09/11/2017) |
| 09/11/2017 | 37 | AFFIDAVIT of Andrew C. Elliot as to default/service (opp OSC Doc 29 too) in Opposition re: 12 MOTION for Default Judgment as to.. Document filed by Checkpoint Fluidic Systems International, Ltd.. (Attachments: # 1 Exhibit A) Certification Louisiana registered agents)(Graifman, Brian) (Entered: 09/11/2017) |
| 09/11/2017 | 38 | AFFIDAVIT of Andrew C. Elliot re Timeline (responding to OSC Doc 29 too) in Opposition re: 12 MOTION for Default Judgment as to.. Document filed by Checkpoint Fluidic Systems International, Ltd.. (Attachments: # 1 Exhibit A - Louisiana Cert for CheckPoint, # 2 Exhibit B - Amazon receipt CheckPoint's computer purchase, # 3 Exhibit C - Letter of Holmes atty w Apple Store receipt supposedly for subject computer, # 4 Exhibit D - Photo of Property of CheckPoint & |

| | | |
|---|---|---|
| | | computer, # 5 Exhibit E - FedEx tracking, # 6 Exhibit F - Complaint excerpts re Holmes purchase, # 7 Exhibit G - Theft Report (redacted), # 8 Exhibit H - Complaint excerpt & Holmes atty letter re Holmes surrender of computer, # 9 Exhibit I - Property of CheckPoint sticker intact upon return) (Graifman, Brian) (Entered: 09/11/2017) |
| 09/11/2017 | 39 | MEMORANDUM OF LAW in Opposition re: 12 MOTION for Default Judgment as to. *OSC Doc. 29 too*. Document filed by Checkpoint Fluidic Systems International, Ltd.. (Graifman, Brian) (Entered: 09/11/2017) |
| 09/12/2017 | 40 | LETTER addressed to Judge Edgardo Ramos from Brian D. Graifman dated 09/12/2017 re: Courtesy Copies cover letter. Document filed by Checkpoint Fluidic Systems International, Ltd..(Graifman, Brian) (Entered: 09/12/2017) |
| 09/13/2017 | 41 | ANSWER to 1 Complaint. Document filed by Amazon.com, LLC.(Goettig, Michael) (Entered: 09/13/2017) |
| 09/13/2017 | 42 | ORDER granting 24 Motion for David R. Eberhart to Appear Pro Hac Vice. (HEREBY ORDERED by Judge Edgardo Ramos)(Text Only Order) (Ramos, Edgardo) (Entered: 09/13/2017) |
| 09/13/2017 | 43 | ORDER granting 25 Motion for Jesse J. Koehler to Appear Pro Hac Vice. (HEREBY ORDERED by Judge Edgardo Ramos)(Text Only Order) (Ramos, Edgardo) (Entered: 09/13/2017) |

| | | |
|---|---|---|
| 09/14/2017 | | Minute Entry for proceedings held before Judge Edgardo Ramos: Show Cause Hearing held on 9/14/2017. Pro Se Plaintiff present. Defendants' counsel present. For the reasons stated on the record, Defendants' motions to vacate entry of default is granted. Defendant Checkpoint is granted leave to file a motion to dismiss with the following briefing schedule: moving papers due October 10, 2017; opposition due November 10, 2017; reply due November 27, 2017. Parties are directed to submit a proposed joint discovery plan. (Motions due by 10/10/2017. Responses due by 11/10/2017. Replies due by 11/27/2017.) (Court Reporter Mike McDaniel) (jar) (Entered: 09/14/2017) |
| 09/14/2017 | 44 | MEMORANDUM OF LAW IN REPLY TO DEFENDANT, CHECKPOINT, AND IN SUPPORT OF PLAINTIFF'S MOTION FOR A DEFAULT JUDGMENT; re: 12 MOTION for Default Judgment as to Apple Inc., Amazon.com LLC, and Checkpoint Fluidic Systems International Ltd. Document filed by Tyrone Holmes. (sc) (Entered: 09/14/2017) |
| 09/14/2017 | 45 | AFFIDAVIT IN REPLY. Document filed by Tyrone Holmes. (sc) (Entered: 09/14/2017) |

| | | |
|---|---|---|
| 09/14/2017 | 46 | ORDER denying 12 Motion for Default Judgment; granting 15 Motion to Vacate: On August 18, 2017, the Clerk of the Court entered certificates of default against Apple, Inc., Amazon.com LLC, and Checkpoint Fluidic Systems International, Ltd. (collectively, "Defendants"). Docs. 9-11. On September 14, 2017, the Court held an order to show cause hearing regarding Plaintiff's motion for a default judgment. For the reasons stated on the record, Plaintiff's motion for a default judgment, Doc. 12, is DENIED, and Defendant Amazon.com's motion to vacate the certificate of the Clerk, Doc. 15, is GRANTED. The Clerk of the Court is respectfully directed to vacate the |

| | |
|---|---|
| | certificates of default as to all Defendants, Docs. 9-11, terminate the motions, Docs. 12 & 15, and mail a copy of this Order to Plaintiff. (Signed by Judge Edgardo Ramos on 9/14/2017) (jwh) (Entered: 09/14/2017) |
| 09/14/2017 | Transmission to Docket Assistant Clerk. Transmitted re: 46 Order on Motion for Default Judgment, Order on Motion to Vacate, to the Docket Assistant Clerk for case processing. (jwh) (Entered: 09/15/2017) |
| 09/15/2017 | Mailed a copy of 46 Order on Motion for Default Judgment, Order on Motion to Vacate, to Tyrone Holmes 1465 Hammersley Ave Bronx, NY 10469. (jgo) (Entered: 09/15/2017) |

| | | |
|---|---|---|
| 10/06/2017 | 47 | LETTER addressed to Judge Edgardo Ramos from Tyrone Holmes, dated 10/6/17 re: MOTION TO AMEND. Document filed by Tyrone Holmes. (Attachments: # 1 Proposed Amended Complaint) (sc) (Entered: 10/09/2017) |
| 10/09/2017 | 48 | MOTION to Dismiss for Lack of Jurisdiction . Document filed by Checkpoint Fluidic Systems International, Ltd.. Responses due by 11/10/2017(Graifman, Brian) (Entered: 10/09/2017) |
| 10/09/2017 | 49 | AFFIDAVIT of Andrew C. Elliot (re No Contacts) in Support re: 48 MOTION to Dismiss for Lack of Jurisdiction .. Document filed by Checkpoint Fluidic Systems International, Ltd.. (Attachments: # 1 Exhibit A) Certificate Louisiana texas entity, # 2 Exhibit B) NY DOS no listing for CheckPoint) (Graifman, Brian) (Entered: 10/09/2017) |
| 10/09/2017 | 50 | AFFIDAVIT of Bobbi Jo Bridges (re Timeline) in Support re: 48 MOTION to Dismiss for Lack of Jurisdiction .. Document filed by Checkpoint Fluidic Systems International, Ltd.. (Graifman, Brian) (Entered: 10/09/2017) |

| | | |
|---|---|---|
| 10/09/2017 | 51 | AFFIDAVIT of Ruston Mahoney (re Laptop/FedEx/Kaseya) in Support re: 48 MOTION to Dismiss for Lack of Jurisdiction .. Document filed by Checkpoint Fluidic Systems International, Ltd.. (Attachments: # 1 Exhibit A) Amazon Receipt CheckPoint purchase, # 2 Exhibit B) Photo of Property of CheckPoint & computer, # 3 Exhibit C) FedEx tracking notification, # 4 Exhibit D) FedEx letter w records, # 5 Exhibit E) Kaseya screenshot, # 6 Exhibit F) Email w Theft Report (redacted), # 7 Exhibit G) Email responding to detective re computer returned w property sticker intact, # 8 Exhibit H) Photo property sticker after return) (Graifman, Brian) (Entered: 10/09/2017) |
| 10/09/2017 | 52 | MEMORANDUM OF LAW in Support re: 48 MOTION to Dismiss for Lack of Jurisdiction . . Document filed by Checkpoint Fluidic Systems International, Ltd.. (Graifman, Brian) (Entered: 10/09/2017) |
| 10/10/2017 | 53 | LETTER addressed to Judge Edgardo Ramos from Brian D. Graifman, Esq. dated 10/10/2017 re: Enclosing courtesy copy & CD of CheckPoint motion to dismiss Docs. 48-52. Document filed by Checkpoint Fluidic Systems International, Ltd.. (Graifman, Brian) (Entered: 10/10/2017) |
| 10/18/2017 | 54 | TRANSCRIPT of Proceedings re: CONFERENCE held on 9/14/2017 before Judge |

| | | |
|---|---|---|
| | | Edgardo Ramos. Court Reporter/Transcriber: Michael McDaniel, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/8/2017. Redacted Transcript Deadline set for 11/20/2017. Release of Transcript Restriction set for 1/16/2018.(McGuirk, Kelly) (Entered: 10/18/2017) |
| 10/18/2017 | 55 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 9/14/17 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days... (McGuirk, Kelly) (Entered: 10/18/2017) |
| 11/13/2017 | 56 | AFFIDAVIT of Tyrone Holmes IN OPPOSITION TO MOTION TO DISMISS & IN SUPPORT OF CROSS-MOTION FOR DISCOVERY; re: 48 MOTION to Dismiss for Lack of Jurisdiction . Document filed by Tyrone Holmes. (sc) (Entered: 11/14/2017) |

| | | |
|---|---|---|
| 11/13/2017 | 57 | MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S, CHECKPOINT, MOTION TO DISMISS AND IN SUPPORT OF PLAINTIFF'S MOTION FOR DISCOVERY; re: 48 MOTION to Dismiss for Lack of Jurisdiction . Document filed by Tyrone Holmes. (sc) (Entered: 11/14/2017) |
| 11/14/2017 | 58 | LETTER from Tyrone Holmes, dated 11/14/17 re: OPPOSITION & CROSS- MOTION(exhibits). Document filed by Tyrone Holmes.(sc) (Entered: 11/14/2017) |
| 11/21/2017 | 59 | LETTER addressed to Judge Edgardo Ramos from Brian D. Graifman, Esq. dated 11/21/2017 re: de minimis NY sale. Document filed by Checkpoint Fluidic Systems International, Ltd..(Graifman, Brian) (Entered: 11/21/2017) |
| 11/22/2017 | 60 | MEMO ENDORSEMENT on re: 59 Letter filed by Checkpoint Fluidic Systems International, Ltd. ENDORSEMENT: Plaintiff may file a sur-reply by no later than December 11, 2017. The Clerk of Court is respectfully directed to mail a copy of this order to Plaintiff. (Surreplies due by 12/11/2017.) (Signed by Judge Edgardo Ramos on 11/22/2017) (jwh) (Entered: 11/22/2017) |
| 11/22/2017 | | Transmission to Docket Assistant Clerk. Transmitted re: 60 Memo Endorsement,, Set Deadlines to the Docket Assistant Clerk for case processing. (jwh) (Entered: 11/22/2017) |
| 11/22/2017 | | Mailed a copy of 60 Memo Endorsement, Set Deadlines, to Tyrone Holmes 1465 Hammersley Ave Bronx, NY 10469. (jgo) (Entered: 11/22/2017) |

| | | |
|---|---|---|
| 11/27/2017 | 61 | LETTER MOTION for Leave to File Excess Pages *up to 15 in reply brief due today* addressed to Judge Edgardo Ramos from Brian D. Graifman dated 11/27/2017. Document filed by Checkpoint Fluidic Systems International, Ltd..(Graifman, Brian) (Entered: 11/27/2017) |
| 11/27/2017 | 62 | ORDER granting 61 Letter Motion for Leave to File Excess Pages: The application is granted. (Signed by Judge Edgardo Ramos on 11/27/2017) (jwh) (Entered: |

| | | |
|---|---|---|
| | | 11/27/2017) |
| 11/27/2017 | 63 | REPLY AFFIRMATION of Brian D. Graifman in Support re: 48 MOTION to Dismiss for Lack of Jurisdiction .. Document filed by Checkpoint Fluidic Systems International, Ltd.. (Attachments: # 1 Exhibit A) Complaint, # 2 Exhibit B) Marine Hub NYSCEF Doc list & docs, # 3 Exhibit C) Marine Hub select scroll docs showing Texas, # 4 Exhibit D) Marine Hub MOL, # 5 Exhibit E) Hanly unreported case, # 6 Exhibit F) Ivoclar unreported case, # 7 Exhibit G) Langenbert unreported case, # 8 Exhibit H) Nuss unreported case, # 9 Exhibit I) Storms unreported case, # 10 Exhibit J) Wafios unreported case)(Graifman, Brian) (Entered: 11/27/2017) |

| | | |
|---|---|---|
| 11/27/2017 | 64 | REPLY AFFIDAVIT of Bobbi Jo Bridges in Support re: 48 MOTION to Dismiss for Lack of Jurisdiction .. Document filed by Checkpoint Fluidic Systems International, Ltd.. (Attachments: # 1 Exhibit A) Spreadsheet NY sales (redacted), # 2 Exhibit B) Invoice ***xair (redacted), # 3 Exhibit C) Screenshots customer inquiry ***balt (redacted), # 4 Exhibit D) Int'l invoices ***balt (redacted), # 5 Exhibit E) Customer audit report ***hor (redacted), # 6 Exhibit F) Invoices ***hor (redacted)) (Graifman, Brian) (Entered: 11/27/2017) |
| 11/27/2017 | 65 | REPLY MEMORANDUM OF LAW in Support re: 48 MOTION to Dismiss for Lack of Jurisdiction . . Document filed by Checkpoint Fluidic Systems International, Ltd.. (Graifman, Brian) (Entered: 11/27/2017) |
| 11/28/2017 | 66 | LETTER addressed to Judge Edgardo Ramos from Brian D. Graifman dated 11/28/2017 re: cover letter courtesy copies reply set & CD. Document filed by Checkpoint Fluidic Systems International, Ltd.. (Graifman, Brian) (Entered: 11/28/2017) |
| 12/11/2017 | 67 | NOTICE OF CROSS-MOTION. Document filed by Tyrone Holmes.(man) (Entered: 12/12/2017) |
| 12/11/2017 | 68 | PLAINTIFF'S SUR REPLY MEMORANDUM TO DEFENDANT'S MOTION TO DISMISS re: 48 MOTION to Dismiss for Lack of Jurisdiction. Document filed by Tyrone Holmes. (man) (Entered: 12/12/2017) |

| | | |
|---|---|---|
| 12/19/2017 | 69 | LETTER addressed to Judge Edgardo Ramos from Tyrone Holmes dated 12/19/2017 re: I would like to submit to the courts an audio CD that will put to rest any of the Defendants attempt to evade responsibility, jurisdiction and/or involvement. Document filed by Tyrone Holmes.(vn) (Entered: 12/20/2017) |
| 12/21/2017 | 70 | MEMO ENDORSEMENT on re: 69 LETTER addressed to Judge Edgardo Ramos from Tyrone Holmes dated 12/19/2017 re: I would like to submit to the courts an audio CD that will put to rest any of the Defendants attempt to evade responsibility, jurisdiction and/or involvement. Document filed by Tyrone Holmes. ENDORSEMENT: The application is granted. (Signed by Judge Edgardo Ramos on 12/21/2017) (rjm) (Entered: 12/21/2017) |
| 12/21/2017 | 71 | LETTER addressed to Judge Edgardo Ramos from Michael Goettig dated December 21, 2017 re: Plaintiff pro se Tyrone Holmes December 19, 2017 letter seeking leave to file an audio CD with the Court. Document filed by Amazon.com, LLC. (Attachments: |

| | | |
|---|---|---|
| | | # 1 Exhibit "A" December 20, 2017 e-mail)(Goettig, Michael) (Entered: 12/21/2017) |

| 12/21/2017 | 72 | MEMO ENDORSEMENT on re: 71 Letter, filed by Amazon.com, LLC. ENDORSEMENT: Mr. Holms is directed to provide a copy of the audio CD to all defendants. (Signed by Judge Edgardo Ramos on 12/21/2017) (cf) (Entered: 12/21/2017) |
| --- | --- | --- |
| 12/22/2017 | 73 | LETTER addressed to Judge Edgardo Ramos from Tyrone Holmes re: Please find a copy of the audio recording(s) involving everyone. Document filed by Tyrone Holmes. (man) (Entered: 12/26/2017) |
| 12/26/2017 | 74 | LETTER addressed to Judge Edgardo Ramos from Brian D. Graifman dated 12/26/2017 re: Holmes submissions (ECF Doc. 73). Document filed by Checkpoint Fluidic Systems International, Ltd..(Graifman, Brian) (Entered: 12/26/2017) |
| 12/28/2017 | 75 | LETTER addressed to Judge Edgardo Ramos from Tyrone Holmes dated 12/28/2017 re: Your Honor, the defendant Amazon has lied to the courts. Document filed by Tyrone Holmes.(vn) (Entered: 12/28/2017) |
| 01/02/2018 | 76 | LETTER MOTION for Conference addressed to Judge Edgardo Ramos from Michael Goettig dated 1/2/2018. Document filed by Amazon.com, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Goettig, Michael) (Entered: 01/02/2018) |

| | | |
|---|---|---|
| 01/03/2018 | 78 | ORDER granting 76 Letter Motion for Conference; granting 77 Letter Motion for Conference. Amazon's request for a pre-motion conference is GRANTED. A pre- motion conference will be held on January 12, 2018, at 2:30 p.m. Plaintiff may submit a response not longer than three pages by January 9, 2018. Pre-Motion Conference set for 1/12/2018 at 02:30 PM before Judge Edgardo Ramos. (Signed by Judge Edgardo Ramos on 1/3/2018) (mro) (Entered: 01/05/2018) |
| 01/03/2018 | 79 | LETTER addressed to Judge Edgardo Ramos from Tyrone Holmes dated 1/3/2018 re: I am opposed to the potential motion to dismiss of defendant, Amazon. Document filed by Tyrone Holmes.(vn) (Entered: 01/05/2018) |
| 01/04/2018 | 77 | LETTER MOTION for Conference *(Pre-Motion Conference Letter regarding Apple Inc.'s Intended Motion for Judgment)* addressed to Judge Edgardo Ramos from Hannah Y. Chanoine dated January 4, 2018. Document filed by Apple Inc..(Chanoine, Hannah) (Entered: 01/04/2018) |

| | | |
|---|---|---|
| 01/05/2018 | 80 | MEMO ENDORSEMENT on re: 77 LETTER MOTION for Conference *(Pre-Motion Conference Letter regarding Apple Inc.'s Intended Motion for Judgment)* addressed to Judge Edgardo Ramos from Hannah Y. Chanoine dated January 4, 2018. filed by Apple Inc. ENDORSEMENT: Apple's request is GRANTED. The Court will discuss this issue at the pre-motion conference currently scheduled for January 12, 2018 at 2:30 p.m. Plaintiff may file a response not longer than three pages by January 9, 2018. SO ORDERED. (Signed by Judge Edgardo Ramos on 1/5/2018) (rj) (Entered: 01/05/2018) |
| 01/05/2018 | 81 | LETTER addressed to Judge Edgardo Ramos from Tyrone Holmes re: Regarding Apple's letter dated January 4, 2018 (Doc 77). Document filed by Tyrone Holmes. (man) (Entered: 01/05/2018) |

| | | |
|---|---|---|
| 01/09/2018 | 82 | LETTER addressed to Judge Edgardo Ramos from Tyrone Holmes dated 1/9/2018 re: Plaintiff has submitted to the courts solid evidence as it relates to all the defendants involvement, and addressed their latest letters. Document filed by Tyrone Holmes. (man) (Entered: 01/09/2018) |

| | | |
|---|---|---|
| 01/12/2018 | 83 | ORDER FOR DEPOSIT IN INTEREST BEARING ACCOUNT. IT IS HEREBY ORDERED THAT: 1. Amazon's request is GRANTED. Amazon is granted leave to deposit with the Clerk funds in the amount of Two Thousand Three Hundred Fifty One Dollars and Twelve Cents ($2,351.12) (the "Funds"). 2. The Clerk shall invest the Funds in an interest-bearing account. 3. The Clerk shall deduct from the income on the investment a fee equal to ten percent (10%) of the income earned, not to exceed the fee authorized by the Judicial Conference of the United States and set by the Director of the Administrative Office. 4. Amazon shall serve a copy of this Order on the Clerk and the Financial Deputy of this Court pursuant to Local Rule 67.1. (Signed by Judge Edgardo Ramos on 1/12/2018). Copy sent interoffice via e-mail to Finance Department. (rjm) (Entered: 01/16/2018) |
| 01/12/2018 | | Minute Entry for proceedings held before Judge Edgardo Ramos: Pre-Motion Conference held on 1/12/2018. Plaintiff's counsel present. Defendant's counsel present. Defendants Amazon and Apple are granted leave to file motions to dismiss with the following briefing schedule: moving papers due 2/12/2018; oppositions due March 12, 2018; and reply due March 26, 2018. (Motions due by 2/12/2018. Responses due by 3/12/2018. Replies due by 3/26/2018.) (jar) (Entered: 01/29/2018) |

| | | |
|---|---|---|
| 01/16/2018 | 84 | CIVIL CASE DISCOVERY PLAN AND SCHEDULING ORDER: All parties do not consent to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). This case is to be tried to a jury. The Magistrate Judge assigned to this case is the Hon. Kevin Nathaniel Fox. Case Management Conference set for 7/20/2018 at 11:00 AM before Judge Edgardo Ramos. (Signed by Judge Edgardo Ramos on 1/16/2018) (mro) (Entered: 01/17/2018) |
| 01/18/2018 | | CASHIERS OFFICE CRIS DEPOSIT dated 1/12/18, from Judge Edgardo Ramos, $2351.12 deposited on 01/16/18, Receipt Number 465401199765 and placed into CRIS on 01/18/2018. (jom) (Entered: 01/18/2018) |
| 01/26/2018 | | ***STRICKEN DOCUMENT. Deleted document number 85 from the case record. The document was stricken from this case pursuant to 90 Order Striking Document from Record. (jwh) Modified on 4/6/2018 (jwh). (Entered: 02/08/2018) |

| 01/30/2018 | 86 | TRANSCRIPT of Proceedings re: conference held on 1/12/2018 before Judge Edgardo Ramos. Court Reporter/Transcriber: Vincent Bologna, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/20/2018. Redacted Transcript Deadline set for 3/2/2018. Release of Transcript Restriction set for 4/30/2018.(McGuirk, Kelly) Modified on 2/2/2018 (tn). (Entered: 01/30/2018) |
|---|---|---|
| 01/30/2018 | 87 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a conference proceeding held on 1/12/18 has been filed by the court reporter/ transcriber in the above-captioned matter. The parties have seven (7) |

| | | calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days... (McGuirk, Kelly) (Entered: 01/30/2018) |
|---|---|---|

| | | |
|---|---|---|
| 02/07/2018 | 88 | STIPULATED PROTECTIVE ORDER...regarding procedures to be followed that shall govern the handling of confidential material... (Signed by Judge Edgardo Ramos on 2/7/2018) (mro) (Entered: 02/07/2018) |
| 02/07/2018 | | ***STRICKEN DOCUMENT. Deleted document number 89 from the case record. The document was stricken from this case pursuant to 90 Order Striking Document from Record. (jwh) Modified on 4/6/2018 (jwh). (Entered: 02/08/2018) |
| 02/08/2018 | 90 | ORDER: The Clerk of Court is hereby respectfully directed to strike Docs. 85 and 89 from the ECF docket. It is SO ORDERED. (Signed by Judge Edgardo Ramos on 2/8/2018) (jwh) (Entered: 02/08/2018) |
| 02/12/2018 | 91 | MOTION to Dismiss . Document filed by Amazon.com, LLC.(Goettig, Michael) (Entered: 02/12/2018) |
| 02/12/2018 | 92 | MEMORANDUM OF LAW in Support re: 91 MOTION to Dismiss . . Document filed by Amazon.com, LLC. (Goettig, Michael) (Entered: 02/12/2018) |
| 02/12/2018 | 93 | DECLARATION of Michael Goettig in Support re: 91 MOTION to Dismiss .. Document filed by Amazon.com, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q)(Goettig, Michael) (Entered: 02/12/2018) |

| 02/12/2018 | 94 | DECLARATION of Jesse Jensen in Support re: 91 MOTION to Dismiss .. Document filed by Amazon.com, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Goettig, Michael) (Entered: 02/12/2018) |
|---|---|---|
| 02/12/2018 | 95 | AFFIDAVIT of Andrew C. Elliot in Support re: 91 MOTION to Dismiss .. Document filed by Amazon.com, LLC. (Attachments: # 1 Exhibit B, # 2 Exhibit C)(Goettig, Michael) (Entered: 02/12/2018) |
| 02/12/2018 | 96 | AFFIDAVIT of Ruston Mahony in Support re: 91 MOTION to Dismiss .. Document filed by Amazon.com, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit E, # 5 Exhibit F, # 6 Exhibit G, # 7 Exhibit H)(Goettig, Michael) (Entered: 02/12/2018) |
| 02/12/2018 | 97 | MOTION for Judgment on the Pleadings *Or, In The Alternative,*., MOTION for Summary Judgment . Document filed by Apple Inc..(Chanoine, Hannah) (Entered: 02/12/2018) |
| 02/12/2018 | 98 | MEMORANDUM OF LAW in Support re: 97 MOTION for Judgment on the Pleadings *Or, In The Alternative,*. MOTION for Summary Judgment . . Document filed by Apple Inc.. (Chanoine, Hannah) (Entered: 02/12/2018) |

| | | |
|---|---|---|
| 02/12/2018 | 99 | RULE 56.1 STATEMENT. Document filed by Apple Inc.. (Chanoine, Hannah) (Entered: 02/12/2018) |
| 02/12/2018 | 100 | RULE 56.1 STATEMENT. Document filed by Amazon.com, LLC. (Goettig, Michael) (Entered: 02/12/2018) |
| 02/12/2018 | 101 | NOTICE of To Pro Se Litigant Who Opposes A Rule 12 Motion Supported By Matters Outside The Pleadings re: 97 MOTION for Judgment on the Pleadings *Or, In The Alternative,*. MOTION for Summary Judgment .. Document filed by Apple Inc.. (Chanoine, Hannah) (Entered: 02/12/2018) |
| 02/12/2018 102 SEALED DOCUMENT placed in vault.(rz) (Entered: 02/13/2018) | | |
| 02/13/2018 | 103 | NOTICE OF CHANGE OF ADDRESS by Brian Dale Graifman on behalf of Checkpoint Fluidic Systems International, Ltd.. New Address: Borah, Goldstein, Altschuler, Nahins & Goidel, P.C., 377 Broadway, 6th Floor, New York, NY, USA 10013-3993, 212-431-1300 x322. (Graifman, Brian) (Entered: 02/13/2018) |
| 02/22/2018 | 104 | LETTER addressed to Judge Edgardo Ramos from Tyrone Holmes re: I am still seeking counsel while I am working on the oppositions little by little and pray to have it done by March 12th. Document filed by Tyrone Holmes.(man) (Entered: 02/22/2018) |
| 03/12/2018 105 MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS FOR JUDGMENT. Document filed by Tyrone Holmes. (man) (Entered: 03/13/2018) | | |

| | | |
|---|---|---|
| 03/20/2018 | 106 | LETTER addressed to Judge Edgardo Ramos from Tyrone Holmes dated 3/20/2018 re: I am asking for a 30-day continuance to make all this happen. Document filed by Tyrone Holmes.(man) (Entered: 03/20/2018) |
| 03/23/2018 | 107 | MEMO ENDORSEMENT on re: 106 Letter filed by Tyrone Holmes. ENDORSEMENT: The Court construes Plaintiff's letter as a request to amend his March 12, 2018 opposition within thirty days. Defendants are instructed to file responses, of no more than three pages, by March 27, 2018. It is SO ORDERED. (Signed by Judge Edgardo Ramos on 3/23/2018) (jwh) (Entered: 03/23/2018) |
| 03/23/2018 | 108 | JOINT LETTER addressed to Judge Edgardo Ramos from Hannah Y. Chanoine dated March 23, 2018 re: Response to Dkt 107 and Unopposed Request to Extend Time to File Reply. Document filed by Apple Inc..(Chanoine, Hannah) (Entered: 03/23/2018) |
| 03/26/2018 | 109 | MEMO ENDORSEMENT on re: 108 Letter filed by Apple Inc. ENDORSEMENT: Plaintiff's motion to amend is Granted. Plaintiff will have until April 26, 2018 to amend his opposition. Replies from Amazon and Apple shall be due no later than May 10, 2018. It is So Ordered ( Amended Pleadings due by 4/26/2018., Replies due by 5/10/2018.) (Signed by Judge Edgardo Ramos on 3/26/2018) (js) (Entered: 03/26/2018) |

| 04/26/2018 | 110 | LETTER addressed to Judge Edgardo Ramos from Tyrone Holmes dated 4/26/2018 re: My Attorney Alex Antzoulatos should be cleared in good standings in order to file/Appear in the case within the next 42-72 hours. Please grant me another extension |

https://ecf.nysd.uscourts.gov/cgi-bin/DktRpt.pl?500571980443563-L_1_0-1 Page 14 of 23

SDNY CM/ECF NextGen Version 1.6 11/10/22, 1:35 PM

| | | so I can get him on board. Document filed by Tyrone Holmes. (vn) (Entered: 04/27/2018) |
| 05/07/2018 | 111 | LETTER addressed to Judge Edgardo Ramos from Hannah Y. Chanoine dated May 7, 2018 re: Apple Inc.'s submission of reply brief by May 10, 2018. Document filed by Apple Inc..(Chanoine, Hannah) (Entered: 05/07/2018) |
| 05/08/2018 | 112 | MEMO ENDORSEMENT on re: 111 Letter filed by Apple Inc. ENDORSEMENT: Plaintiff's extension to submit an amended submission has expired. The Court therefore grants Defendants' request to file reply briefs on May 10, 2018. (Signed by Judge Edgardo Ramos on 5/8/2018) (jwh) (Entered: 05/08/2018) |
| 05/10/2018 | 113 | REPLY MEMORANDUM OF LAW in Support re: 97 MOTION for Judgment on the Pleadings *Or, In The Alternative,*. MOTION for Summary Judgment . . Document filed by Apple Inc.. (Chanoine, Hannah) (Entered: 05/10/2018) |
| 05/10/2018 | 114 | REPLY MEMORANDUM OF LAW in Support re: 91 MOTION to Dismiss . . Document filed by Amazon.com, LLC. (Goettig, Michael) (Entered: 05/10/2018) |

| 05/10/2018 | 115 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** FIRST LETTER MOTION to Substitute Attorney. Old Attorney: PRO SE LITIGANT, New Attorney: ALEX ANTZOULATOS ESQ *PRO HAC VICE MOTION* addressed to Judge Edgardo Ramos from ALEX ANTZOULATOS ESQ dated 05/10/2018. Document filed by Tyrone Holmes. (Attachments: # 1 Exhibit good standing letter) (Antzoulatos, Alex) Modified on 5/10/2018 (ldi). (Entered: 05/10/2018) |
|---|---|---|
| 05/10/2018 | | **\*\*\*NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR. Notice to Attorney Alex Antzoulatos to RE-FILE Document 115 FIRST LETTER MOTION to Substitute Attorney. Old Attorney: PRO SE LITIGANT, New Attorney: ALEX ANTZOULATOS ESQ *PRO HAC VICE MOTION* addressed to Judge Edgardo Ramos from ALEX ANTZOULATOS ESQ dated 05/10/2018. Use the event type Appear Pro Hac Vice found under the event list Motions. (ldi)** (Entered: 05/10/2018) |
| 05/29/2018 | 116 | LETTER addressed to Judge Edgardo Ramos from Tyrone Holmes dated 5/29/2018 re: I am writing to advise the court that it has not worked out at all with my new attorney and he has dropped out after accomplishing nothing. I am still pro se. Document filed by Tyrone Holmes.(vn) (Entered: 05/30/2018) |

| 06/06/2018 | 117 | LETTER MOTION to Adjourn Conference addressed to Judge Edgardo Ramos from Hannah Y. Chanoine dated June 6, 2018. Document filed by Apple Inc..(Chanoine, Hannah) (Entered: 06/06/2018) |
| --- | --- | --- |
| 06/08/2018 | 118 | ORDER granting 117 Letter Motion to Adjourn Conference. The July 20 case management conference is adjourned pending the Court's decision on the pending motions. (HEREBY ORDERED by Judge Edgardo Ramos)(Text Only Order) (Ramos, Edgardo) (Entered: 06/08/2018) |
| 07/16/2018 | 119 | LETTER addressed to Judge Edgardo Ramos from Hannah Y. Chanoine dated July 16, 2018 re: Request to Correct the Docket. Document filed by Apple Inc..(Chanoine, Hannah) (Entered: 07/16/2018) |

| 07/17/2018 | 120 | ENDORSED LETTER addressed to Judge Edgardo Ramos from Tyrone Holmes dated 5/29/2018 re: to advise the court that his new attorney has dropped out from the action and that he is again proceeding pro se. ENDORSEMENT: Mr. Antzoulatos is withdrawn as counsel for Plaintiff. The Clerk of the Court is respectfully directed to update the docket to reflect that Mr. Holmes is proceeding as a pro se litigant. (Attorney Alex Antzoulatos terminated.) (Signed by Judge Edgardo Ramos on 7/17/2018) (jar) (Entered: 07/17/2018) |
| --- | --- | --- |

| | | |
|---|---|---|
| 07/23/2018 | 121 | OPINION AND ORDER re: 91 MOTION to Dismiss filed by Amazon.com, LLC, 97 MOTION for Judgment on the Pleadings *Or, In The Alternative,* MOTION for Summary Judgment filed by Apple Inc., 67 MOTION NOTICE OF CROSS-MOTION filed by Tyrone Holmes, 48 MOTION to Dismiss for Lack of Jurisdiction filed by Checkpoint Fluidic Systems International, Ltd. For the reasons stated above, it is ORDERED that: 1. Holmes' motion to amend the Complaint (Doc. 47) is DENIED; 2. CheckPoint's motion to dismiss for lack of personal jurisdiction (Doc. 48) is GRANTED; 3. Holmes' motion for jurisdictional discovery (Doc. 67) is DENIED; 4. Amazon's motion (Doc. 91) is granted in the following respects: (1) judgment will be entered against Amazon in the amount of $2,351 on Claim 1; (2) summary judgment is granted in Amazon's favor on Claims 2, 3, 4, and 5; and (3) judgment on the pleadings is granted in Amazon's favor on Claims 6, 7, and 8. 5. Apple's motion for entry of judgment on the pleadings (Doc. 97) is GRANTED. The Clerk of Court is respectfully directed to terminate the motions and close the case. (Signed by Judge Edgardo Ramos on 7/23/2018) (mro) (Entered: 07/23/2018) |

07/23/2018 Transmission to Judgments and Orders Clerk. Transmitted re: 121 Memorandum & Opinion, to the Judgments and Orders Clerk. (mro) (Entered: 07/23/2018)

| | | |
|---|---|---|
| 07/24/2018 | 122 | CLERK'S JUDGMENT re: 121 Memorandum & Opinion. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Opinion and Order dated July 23, 2018, the Court orders that:1.Holmes' motion to amend the Complaint is denied;2.CheckPoint's motion to dismiss for lack of personal jurisdiction is granted;3.Holmes' motion for jurisdictional discovery is denied;4.Amazon's motion is granted in the following respects: (1) judgment is entered against Amazon in the amount of $2,351 on Claim 1; (2) summary judgment is granted in Amazon's favor on Claims 2, 3, 4, and 5; and (3) judgment on the pleadings is granted in Amazon's favor on Claims 6, 7 and 8;5. Apple's motion for entry of judgment on the pleadings is granted: accordingly, judgment on the pleadings is granted in Apple's favor, and the case is closed. (Signed by Clerk of Court Ruby Krajick on 07/24/2018) (Attachments: # 1 Notice of Right to Appeal)(dt) (Entered: 07/24/2018) |
| 07/24/2018 Terminate Transcript Deadlines (dt) (Entered: 07/24/2018) | | |
| 08/21/2018 123 NOTICE OF APPEARANCE by Robert Gilbert Leino on behalf of Tyrone Holmes. (Leino, Robert) (Entered: 08/21/2018) | | |
| 08/22/2018 | 124 | NOTICE OF APPEAL from 121 Memorandum & Opinion,,,,,. Document filed by Tyrone Holmes. Filing fee $ 505.00, receipt number 0208-15479474. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Leino, Robert) (Entered: 08/22/2018) |

| | | |
|---|---|---|
| 08/22/2018 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 124 Notice of Appeal. (tp) (Entered: 08/22/2018) |
| 08/22/2018 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 124 Notice of Appeal filed by Tyrone Holmes were transmitted to the U.S. Court of Appeals. (tp) (Entered: 08/22/2018) |
| 11/01/2018 | 125 | NOTICE of Withdrawal of Appearance of Jesse J. Koehler. Document filed by Apple Inc.. (Koehler, Jesse) (Entered: 11/01/2018) |
| 11/06/2018 | 126 | MEMO ENDORSEMENT on re: 125 Notice (Other) filed by Apple Inc. ENDORSEMENT: SO ORDERED. (Attorney Jesse Jon Koehler terminated.) (Signed by Judge Edgardo Ramos on 11/5/2018) (jwh) (Entered: 11/06/2018) |
| 12/09/2019 | 127 | TRUE COPY ORDER of USCA as to 124 Notice of Appeal filed by Tyrone Holmes. USCA Case Number 18-2492-cv. UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED in full and REMANDED for further proceedings in accordance with this order.. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Certified: 12/09/2019. (nd) (Entered: 12/09/2019) |
| 12/09/2019 | | Transmission of USCA Order to the District Judge re: 127 USCA Order. (nd) (Entered: 12/09/2019) |

| | | |
|---|---|---|
| 12/30/2019 | 128 | LETTER MOTION to Consolidate Cases 19cv1628 addressed to Judge Edgardo Ramos from Michael Goettig dated 12/30/2019. Document filed by Amazon.com, LLC.(Goettig, Michael) (Entered: 12/30/2019) |
| 01/06/2020 | 135 | MANDATE of USCA (Certified Copy) as to 124 Notice of Appeal filed by Tyrone Holmes. USCA Case Number 18-2492-cv. UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED in full and REMANDED for further proceedings in accordance with this order.. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Issued As Mandate: 01/06/2020..(nd) (Entered: 02/04/2020) |
| 01/09/2020 | 129 | LETTER MOTION for Conference addressed to Judge Edgardo Ramos from Michael Goettig dated 1/9/2020. Document filed by Amazon.com, LLC.(Goettig, Michael) (Entered: 01/09/2020) |
| 01/13/2020 | 130 | ORDER granting 129 Letter Motion for Conference. The pre-motion conference is waived. Amazon is granted leave to file a motion for an award of fees with the following briefing schedule: moving papers due February 3, 2020; Plaintiff's response due February 24, 2020; and reply due March 3, 2020. (HEREBY ORDERED by Judge Edgardo Ramos)(Text Only Order) (jar) (Entered: 01/13/2020) |

| 01/22/2020 | 136 | Costs Taxed as to 135 USCA Mandate, USCA Case Number 18-2492-cv. in the amount of $211.40. on 01/22/2020 in favor of Checkpoint Fluidic Systems International, Ltd. and in the amount of $200.60 in favor of Amazon.com, LLC against Tyrone Holmes, Plaintiff - Appellant,..(nd) (Entered: 02/04/2020) |
| 02/03/2020 | 131 | MOTION for Attorney Fees . Document filed by Amazon.com, LLC..(Goettig, |

| | | Michael) (Entered: 02/03/2020) |
| 02/03/2020 | 132 | MEMORANDUM OF LAW in Support re: 131 MOTION for Attorney Fees . . Document filed by Amazon.com, LLC..(Goettig, Michael) (Entered: 02/03/2020) |
| 02/03/2020 | 133 | DECLARATION of Michael Goettig in Support re: 131 MOTION for Attorney Fees .. Document filed by Amazon.com, LLC. (Attachments: # 1 Exhibit A (Offer of Judgment), # 2 Exhibit B (Rejection of the Offer), # 3 Exhibit C (Receipt from the Clerk - Deposit of Funds), # 4 Exhibit D (Holmes' Brief on Appeal), # 5 Exhibit E (Summary Order and Judgment)). (Goettig, Michael) (Entered: 02/03/2020) |

| 02/04/2020 | 134 | **FILING ERROR - DEFICIENT DOCUMENT -** BILL OF COSTS NOTICE OF TAXATION to recover costs against Tyrone Holmes. Document filed by Checkpoint Fluidic Systems International, Ltd.. The Clerk may tax costs 14 days after this filing. Objections to Bill of Costs due by 2/18/2020.(Graifman, Brian) Modified on 2/4/2020 (dt). (Entered: 02/04/2020) |
|---|---|---|
| 02/04/2020 | | Transmission of USCA Mandate to the District Judge re: 135 USCA Mandate..(nd) (Entered: 02/04/2020) |
| 02/04/2020 | | **\*\*\*NOTICE TO ATTORNEY DO NOT RE-FILE DOCUMENT - DEFICIENT DOCUMENT ERROR. Notice to Attorney Brian Graifman, DO NOT RE-FILE Document 134 Bill of Costs Notice of Taxation. ERROR(S): the $211.40 was already taxed and entered on the docket #136. (dt)** (Entered: 02/04/2020) |
| 02/17/2020 | 137 | NOTICE of Substitution of Attorney. Old Attorney: Robert G. Leino, New Attorney: Tyrone Holmes, Pro Se, Address: Tyrone Holmes, Pro Se, 1465 Hammersly Ave., Bronx, NY, USA 10469, 6467014069. Document filed by Tyrone Holmes..(Leino, Robert) (Entered: 02/17/2020) |
| 02/20/2020 | 138 | DECLARATION of Tyrone Holmes in Opposition re: 131 MOTION for Attorney Fees .. Document filed by Tyrone Holmes..(Leino, Robert) (Entered: 02/20/2020) |
| 03/02/2020 | 139 | REPLY MEMORANDUM OF LAW in Support re: 131 MOTION for Attorney Fees . . Document filed by Amazon.com, LLC..(Goettig, Michael) (Entered: 03/02/2020) |

| | | |
|---|---|---|
| 03/06/2020 | 140 | PROPOSED ABSTRACT OF JUDGMENT. Filing fee $ 11.00, receipt number ANYSDC-19033887. Abstract of Judgment to be Mailed by the Court. Document filed by Checkpoint Fluidic Systems International, Ltd.. Document Number of Related Judgment: 136 ..(Graifman, Brian) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** Modified on 3/6/2020 (km). (Entered: 03/06/2020) |
| 03/06/2020 | | ABSTRACT OF JUDGMENT ISSUED on March 6, 2020, in favor of Checkpoint Fluidic Systems International, Ltd., and against Tyrone Holmes in the amount of $211.40. Abstract of Judgment mailed by the Court. (km) (Entered: 03/06/2020) |
| 04/03/2020 | 141 | CONSENT FOR ATTORNEY TO WITHDRAW APPEARANCE: IT IS HEREBY CONSENTED THAT, Tyrone Holmes, plaintiff, be substituted for attorney of record, Robert G. Leino, in the above-entitled proceeding in place and stead of the undersigned attorney as of the date hereof. Plaintiff consents to his attorney |

| | | |
|---|---|---|
| | | withdrawing his appearance and plaintiff wants to represent himself. The undersigned attorney and client consent to the execution of this consent in separate parts and by email or fax, as originals. Attorney Robert Gilbert Leino terminated. (Signed by Judge Edgardo Ramos on 4/3/2020) (mro) (Entered: 04/03/2020) |
| 04/14/2020 | 142 | ORDER granting 131 Motion for Attorney Fees. For the foregoing reasons, Amazon's motion is GRANTED. Amazon is directed to submit a bill of costs within ten days. The Clerk of Court is respectfully directed to terminate the motion, Doc. 131. (Signed by Judge Edgardo Ramos on 4/14/2020) (mro) (Entered: 04/14/2020) |
| 04/24/2020 | 143 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** BILL OF COSTS NOTICE OF TAXATION to recover costs against Tyrone Holmes. Document filed by Amazon.com, LLC. The Clerk may tax costs 14 days after this filing. Objections to Bill of Costs due by 5/8/2020.(Goettig, Michael) Modified on 4/24/2020 (dt). (Entered: 04/24/2020) |

| | | |
|---|---|---|
| 04/24/2020 | | **\*\*\*NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR. Notice to Attorney Michael Goettig to RE-FILE Document 143 Bill of Costs Notice of Taxation. You might want to file a Letter and attach the Bill of Costs form to the Letter, This event is used for a Bill of Costs with a Notice of Taxation for the Clerk, and it gives the opposition 14 days to file objections, to the bill of costs. I don't know if the Judge meant for you to use this form or not, but it cannot be filed under this event. (dt)** (Entered: 04/24/2020) |
| 05/11/2020 | 144 | MOTION for Relief from Judgment or Rule 60 Motion for Relief from Judgment Objections to Bill of Costs: Document filed by Tyrone Holmes..(js) (Additional attachment(s) added on 5/12/2020: # 1 Exhibit) (js). Modified on 5/12/2020 (js). (Entered: 05/12/2020) |
| 05/15/2020 | 145 | ORDER denying 144 Motion to Reopen Case. For the foregoing reasons, Holmes's motion for relief from judgement is DENIED. ee Clerk of Court is respectfully directed to terminate the motion, Doc. 144. (Signed by Judge Edgardo Ramos on 5/15/2020) (mro) (Entered: 05/15/2020) |

| | | |
|---|---|---|
| 01/21/2022 | 146 | ENDORSED LETTER addressed to Tyrone Holmes, David R Eberhart, Michael John Goettig, Brian Dale Graifman from Ruby J. Krajick, Clerk of Court dated 1/21/2022 re: I have been contacted by Judge Edgardo Ramos, U.S.D.J., who presided over the above-named case. Judge Ramos informed me that it has been brought to his attention that well after the case was filed but while he still presided over the case, he owned stock in Apple Inc. His ownership of stock neither affected nor impacted his decisions in this case. However, his stock ownership may have required recusal under the Code of Conduct for United States Judges, and thus, he directed that I notify the parties of the potential conflict. Advisory Opinion 71, from the Judicial Conference Codes of Conduct Committee, provides the following guidance regarding disqualification: [A] judge should disclose to the parties the facts bearing on disqualification as soon as those facts are learned, even though that may occur after entry of the decision. The parties may then determine what relief they may seek, and a court (without the disqualified judge) will decide the legal consequence, if any, arising from the participation of the disqualified judge in the entered decision. Although Advisory |

| | | Opinion 71 contemplated disqualification after a Court of Appeals oral argument, the Committee explained [s]imilar considerations would apply when a judgment was entered in a district court by a judge and it is later learned that the judge was disqualified. If you wish to respond to the disclosure of a potential conflict in this matter, please file your response in the above-named case. Any response will be considered by another judge of the court without the participation of Judge Ramos. (Signed by Clerk of Court Ruby Krajick on 1/21/2022) (mml) (Entered: 01/21/2022) |
|---|---|---|
| 01/21/2022 Transmission to Docket Assistant Clerk. Transmitted re: 146 Endorsed Letter to the Docket Assistant Clerk for case processing. (mml) (Entered: 01/21/2022) | | |
| 01/24/2022 | 147 | LETTER addressed to Judge Edgardo Ramos from Brian Graifman to Ruby J. Krajick, Clerk of Court dated 1/24/2022 re: 1/21/22 Letter of Ruby J. Krajick, Clerk of Court, ECF #146. Document filed by Checkpoint Fluidic Systems International, Ltd.. (Attachments: # 1 Exhibit Second Circuit 12/9/19 Decision affirming de novo). (Graifman, Brian) (Entered: 01/24/2022) |
| 02/04/2022 | 148 | COMPLAINT against Amazon.com, LLC, Apple Inc., Checkpoint Fluidic Systems International, Ltd.. Document filed by Tyrone Holmes. (Attachments: # 1 DECLARATION, # 2 EXHIBITS).(Holmes, Tyrone) (Entered: 02/04/2022) |

| 02/14/2022 | 149 | LETTER addressed to Judge Edgardo Ramos from Tyrone Holmes dated 2-14-2022 re: Request for Recusal. Document filed by Tyrone Holmes. (Attachments: # 1 Letter from Clerk, # 2 Filed Motion, # 3 Filed Declaration).(Holmes, Tyrone) (Entered: 02/14/2022) |
|---|---|---|
| 02/14/2022 | 150 | MOTION for Recusal . Document filed by Tyrone Holmes. (Attachments: # 1 LETTER FROM CLERK, # 2 MOTION TO VACATE, # 3 DECLARATION, # 4 ORDER & OPINON). (Holmes, Tyrone) (Entered: 02/14/2022) |

02/15/2022 NOTICE OF CASE REASSIGNMENT to Judge Analisa Torres. Judge Edgardo Ramos is no longer assigned to the case. (aea) (Entered: 02/15/2022)

02/15/2022 NOTICE OF CASE REASSIGNMENT to Judge Valerie E. Caproni. Judge Analisa Torres is no longer assigned to the case. (aea) (Entered: 02/15/2022)

| 02/16/2022 | 151 | LETTER addressed to Judge Valerie E. Caproni from Hannah Y. Chanoine dated February 16, 2022 re: Telephonic Conference Request and Extension of Time to Respond. Document filed by Apple Inc...(Chanoine, Hannah) (Entered: 02/16/2022) |
|---|---|---|
| 02/16/2022 | 152 | LETTER MOTION for Leave to File Opposition to motion #148 that plaintiff misfiled as complaint addressed to Judge Valerie E. Caproni from Brian D. Graifman dated 2/16/22. Document filed by Checkpoint Fluidic Systems International, Ltd.. (Attachments: # 1 Exhibit Opposition to Holmes motion #148 to vacate, # 2 Exhibit Motion list from ECF not showing #148 as motion). (Graifman, Brian) (Entered: 02/16/2022) |

| 02/16/2022 | 153 | LETTER addressed to Judge Valerie E. Caproni from Tyrone Holmes dated February 16, 2022 re: Opposition to Apple's request for extension of time.. Document filed by Tyrone Holmes. (Attachments: # 1 Exhibit).(Holmes, Tyrone) (Entered: 02/16/2022) |
|---|---|---|
| | | |

https://ecf.nysd.uscourts.gov/cgi-bin/DktRpt.pl?500571980443563-L_1_0-1 Page 20 of 23

SDNY CM/ECF NextGen Version 1.6 11/10/22, 1:35 PM

| 02/16/2022 | | NOTICE OF CASE REASSIGNMENT to Judge Ronnie Abrams. Judge Valerie E. Caproni is no longer assigned to the case. (aea) (Entered: 02/16/2022) |
|---|---|---|
| 02/17/2022 | 154 | LETTER MOTION for Conference re: 151 Letter addressed to Judge Ronnie Abrams from Michael Goettig dated 2/17/2022. Document filed by Amazon.com, LLC.. (Goettig, Michael) (Entered: 02/17/2022) |
| 02/18/2022 | 155 | LETTER addressed to Judge Ronnie Abrams from Tyrone Holmes dated February 18, 2022 re: Opposition to Amazon's request for extension of time.. Document filed by Tyrone Holmes..(Holmes, Tyrone) (Entered: 02/18/2022) |

| | | |
|---|---|---|
| 02/18/2022 | 156 | ORDER terminating 152 Letter Motion for Leave to File Document; terminating 154 Letter Motion for Conference re: 152 LETTER MOTION for Leave to File Opposition to motion #148 that plaintiff misfiled as complaint addressed to Judge Valerie E. Caproni from Brian D. Graifman dated 2/16/22., 154 LETTER MOTION for Conference re: 151 Letter addressed to Judge Ronnie Abrams from Michael Goettig dated 2/17/2022. On February 14, 2022, pro se plaintiff Tyrone Holmes filed a motion to vacate the judgment in this case entered by Judge Ramos and affirmed by the Second Circuit. The Court is in receipt of Defendant Checkpoint Fluidic Systems International, Ltd.'s opposition of February 16, 2022. Consistent with Rule 4(A) of this Court's Special Rules and Practices in Civil Pro Se Cases, Defendants Apple Inc. and Amazon.com, LLC shall file any oppositions to Plaintiff's motion by March 4, 2022. Plaintiff shall file any reply by March 18, 2022. A conference is unnecessary at this time. The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 152 and 154. (Signed by Judge Ronnie Abrams on 2/18/2022) (ate) (Entered: 02/18/2022) |
| 02/20/2022 | 157 | REPLY to Response to Motion re: 150 MOTION for Recusal . . Document filed by Tyrone Holmes..(Holmes, Tyrone) (Entered: 02/20/2022) |
| 03/04/2022 | 158 | MEMORANDUM OF LAW in Opposition re: 150 MOTION for Recusal . *Opposition to Motion to Vacate Judgment*. Document filed by Amazon.com, LLC..(Goettig, Michael) (Entered: 03/04/2022) |

| Date | Doc # | Description |
|---|---|---|
| 03/04/2022 | 159 | MEMORANDUM OF LAW in Opposition re: 150 MOTION for Recusal . . Document filed by Apple Inc...(Chanoine, Hannah) (Entered: 03/04/2022) |
| 03/04/2022 | 160 | DECLARATION of Hannah Y. Chanoine in Opposition re: 150 MOTION for Recusal .. Document filed by Apple Inc..(Attachments: # 1 Exhibit A - Hon. Edgardo Ramos Financial Disclosure Report for Calendar Year 2019).(Chanoine, Hannah) (Entered: 03/04/2022) |
| 03/07/2022 | 161 | REPLY to Response to Motion re: 150 MOTION for Recusal . . Document filed by Tyrone Holmes..(Holmes, Tyrone) (Entered: 03/07/2022) |
| 03/07/2022 | 162 | REPLY to Response to Motion re: 150 MOTION for Recusal . . Document filed by Tyrone Holmes..(Holmes, Tyrone) (Entered: 03/07/2022) |
| 06/27/2022 | 163 | MEMORANDUM OPINION AND ORDER re: 150 MOTION for Recusal . filed by Tyrone Holmes. Plaintiff's motion to vacate is denied. The Clerk of Court is respectfully directed to terminate the motion at docket 150 and mail a copy of this |

| Date | Doc # | Description |
|---|---|---|
| | | Order to Plaintiff. SO ORDERED. (Signed by Judge Ronnie Abrams on 6/27/22) (yv) (Entered: 06/28/2022) |
| 07/26/2022 | 164 | MOTION for Leave to Appeal in forma pauperis *NOTICE OF APPEAL*. Document filed by Tyrone Holmes..(Holmes, Tyrone) (Entered: 07/26/2022) |

| | | |
|---|---|---|
| 07/26/2022 | 168 | NOTICE OF APPEAL from 163 Memorandum Opinion & Order. Document filed by Tyrone Holmes. Form D-P is due within 14 days to the Court of Appeals, Second Circuit..(nd) (Entered: 08/11/2022) |
| 07/26/2022 | | Appeal Fee Not Required for 168 Notice of Appeal. Motion for leave to proceed in forma pauperis granted on 8/10/2022..(nd) (Entered: 08/11/2022) |
| 07/29/2022 | 165 | ORDER: On July 26, 2022, pro se Plaintiff Tyrone Holmes filed a document that was coded on ECF as a motion for leave to appeal in forma pauperis and a "notice of appeal." The document itself, however, is titled only "notice of appeal" and does not mention an intent to seek in forma pauperis status. The Court construes this filing as a notice of appeal. If Plaintiff wishes to proceed in forma pauperis on appeal, he must complete and file the attached application with this Court. The Clerk of Court is respectfully directed to mail a copy of this Order to Plaintiff. (Signed by Judge Ronnie Abrams on 7/29/2022) (ate) (Entered: 07/29/2022) |
| 08/05/2022 | 166 | MOTION for Leave to Appeal in forma pauperis . Document filed by Tyrone Holmes.. (Holmes, Tyrone) (Entered: 08/05/2022) |

| | | |
|---|---|---|
| 08/10/2022 | 167 | ORDER granting 164 Motion for Leave to Appeal in forma pauperis; granting 166 Motion for Leave to Appeal in forma pauperis. Plaintiff's application to proceed in forma pauperis for purposes of appeal is granted. The Clerk of Court is respectfully directed to mail a copy of this Order to Plaintiff. (Signed by Judge Ronnie Abrams on 8/10/2022) (ate) (Entered: 08/10/2022) |
| 08/11/2022 Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 168 Notice of Appeal.. (nd) (Entered: 08/11/2022) | | |
| 08/11/2022 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 168 Notice of Appeal filed by Tyrone Holmes were transmitted to the U.S. Court of Appeals..(nd) (Entered: 08/11/2022) |
| 08/12/2022 | 169 | LETTER REPLY to Response to Motion addressed to Judge Ronnie Abrams from Brian Graifman dated 8/12/22 re: 166 MOTION for Leave to Appeal in forma pauperis . . Document filed by Checkpoint Fluidic Systems International, Ltd.. (Attachments: # 1 Exhibit Reynolds v US (unpublished)). (Graifman, Brian) (Entered: 08/12/2022) |
| 08/12/2022 | 170 | LETTER addressed to Judge Laura Taylor Swain from Tyrone Holmes dated 8-12- 2022 re: Local Civil Rule 1.5 (b) (5). Document filed by Tyrone Holmes. (Attachments: # 1 Exhibit Transcript 9-14-2017, # 2 Exhibit Transcript 1-12-2018, # 3 Exhibit Transcript 11-14-2019).(Holmes, Tyrone) (Entered: 08/12/2022) |

| 08/15/2022 | 171 | LETTER RESPONSE to Motion addressed to Judge Ronnie Abrams from Brian Graifman dated 8/15/22 re: 166 MOTION for Leave to Appeal in forma pauperis . . |

https://ecf.nysd.uscourts.gov/cgi-bin/DktRpt.pl?500571980443563-L_1_0-1 Page 22 of 23

SDNY CM/ECF NextGen Version 1.6 11/10/22, 1:35 PM

Document filed by Checkpoint Fluidic Systems International, Ltd...(Graifman, Brian) (Entered: 08/15/2022)

08/15/2022

172

MEMO ENDORSEMENT on re: 169 Reply to Response to Motion, filed by Checkpoint Fluidic Systems International, Ltd. ENDORSEMENT: The Court granted Plaintiff's application to proceed in forma pauperis for purposes of appeal on August 10, 2022. Accordingly, Checkpoint's application is denied. SO ORDERED. (Signed by Judge Ronnie Abrams on 8/15/2022) (vfr) (Entered: 08/15/2022)

08/16/2022

173

MEMO ENDORSEMENT on re: 170 Letter, filed by Tyrone Holmes. ENDORSEMENT: This complaint has been forwarded to the Grievance Committee for the Southern District of New York, for their review. (Signed by Judge Laura Taylor Swain on 8/16/2022) (vfr) (Entered: 08/16/2022)

**A-2**



RUBY J. KRAJICK

CLERK OF COURT

UNITED STATES DISTRICT COURT

**SOUTHERN DISTRICT OF NEW YORK OFFICE OF THE CLERK**
**500 PEARL STREET**
**NEW YORK, NEW YORK 10007**

January 21, 2022

Michael John Goettig
Davis Wright Tremaine LLP (NYC) 1251 Avenue of the Americas
New York, NY 10020

Brian Dale Graifman
Borah, Goldstein, Altschuler ,Nahins, & Goidel, P.C.
377 Broadway, 6th Floor
New York, NY 10013

Re: 1:17-cv-04557-ER, Holmes v. Apple Inc. et al

CCaassee11:1:177-c-cvv-0-04455577-E-ERR DDooccuummeennt t114496-1
FFileiledd0012/2/14/2/22 PPaaggee11oof f22

**BY ECF AND OVERNIGHT MAIL**

_____

Tyrone Holmes
1465 Hammersley Ave Bronx, NY 10469

David R Eberhart O'Melveny & Myers, LLP Two Embarcadero Center San
Francisco, CA 94111

_____

Dear Mr. Holmes and Counsel,

I have been contacted by Judge Edgardo Ramos, U.S.D.J., who presided over the
above-named case.

Judge Ramos informed me that it has been brought to his attention that well after
the case was filed but while he still presided over the case, he owned stock in
Apple Inc. His ownership of stock neither affected nor impacted his decisions in
this case. However, his stock ownership may have required recusal under the Code
of Conduct for United States Judges, and thus, he directed that I notify the parties
of the potential conflict.

Advisory Opinion 71, from the Judicial Conference Codes of Conduct Committee,
provides the following guidance regarding disqualification:

[A] judge should disclose to the parties the facts bearing on disqualification as
soon as those facts are learned, even though that may occur after entry of the
decision. The parties may then

Notice of Counsel of Record January 21, 2022
Page 2

determine what relief they may seek, and a court (without the disqualified judge) will decide the legal consequence, if any, arising from the participation of the disqualified judge in the entered decision.

Although Advisory Opinion 71 contemplated disqualification after a Court of Appeals oral argument, the Committee explained "[s]imilar considerations would apply when a judgment was entered in a district court by a judge and it is later learned that the judge was disqualified."

If you wish to respond to the disclosure of a potential conflict in this matter, please file your response in the above-named case. Any response will be considered by another judge of the court without the participation of Judge Ramos.

Sincerely,

Ruby J. Krajick Clerk of Court

cc: Hon. Edgardo Ramos, U.S.D. J.

**A-3**

# UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

_____

**TYRONE HOLMES,**

**Civil Action No. 1:17-cv-04557-ER**

**v.**

**APPLE INC., AMAZON.COM, LLC, and CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD.,**

**Plaintiff,**

**Defendants. _____**

## MOTION TO VACATE JUDGMENT

Plaintiff moves pursuant to the Letter from the Clerk of the Court dated January 21, 2021, and under (1) 28 U.S.C. §455(a) based upon an alleged appearance of partiality, (2)Advisory Opinion 71, from the Judicial Conference Codes of Conduct Committee,(3) Rule 60(a)(4), Rule (21) and (5) Rule 15 of the Federal Rules of Civil Procedure to vacate the Judgments and Orders by Judge Edgardo Ramos dated July 23, 2018, and entered in this action on July 23, 2018,

1. Denying the Holmes' Motion to Amend the Complaint

2. Granting CheckPoint's motion to dismiss for lack of personal

jurisdiction.

DocuSign Envelope ID: 55266857-24AC-453B-AE43-FC928D234866

CCaassee11:1:177-c-cvv-0-04455577-R-EAR DDooccuummeennt t114498-2 FFileiledd0022/0/144/2/22 PPaaggee22oof f22

Denying Holmes' motion for jurisdictional discovery.
Granting Amazon's motion (Doc. 91) in the following respects
(1) judgment will be entered against Amazon in the amount of $2,351on Claim 1;
(2) summary judgment in Amazon's favor on Claims 2, 3, 4, and 5; and
(3) judgment on the pleadings in Amazon's favor on Claims 6, 7, and 8.

3. 4.

5.

based on undisclosed financial interest in defendants, Apple and Amazon, and
proposed defendant, FedEx in the proposed Amended Complaint, for reasons set
forth more specifically in the accompanying Affidavit of Holmes.

Dated:
Signature: s/_____Tyrone Holmes 1465 Hammersley Ave
Bronx, NY 10469
(T) 646-701-4069 Signature

# A-4

**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK**

_____

**TYRONE HOLMES,**

**Civil Action No. 1:17-cv-04557**

v.

**APPLE INC., AMAZON.COM, LLC, and**

**CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD.,**

**Plaintiff,**

**Defendants.** _____

**PLAINTIFF'S DECLARATION IN SUPPORT OF MOTION TO VACATE JUDGMENT**

**FACTUAL BACKGROUND**

**On May 10, 2016, Apple sold Amazon a MacBook Pro laptop, bearing the serial number**

C02RQ1T3G8WN. Rule 56.1 Statement of Apple ("Apple 56.1") (Doc. 99) ¶ 1. Amazon, in turn, sold that laptop to CheckPoint on June 2, 2016. Rule 56.1 Statement of Amazon ("Amazon 56.1") (Doc. 100) ¶ 4. That laptop was packaged for delivery in Breinigsville, Pennsylvania. Id. ¶¶ 2–3. CheckPoint received the computer by June 7, 2016, and an employee there installed a third-party tracking software, Kaseya, onto the laptop. Id. ¶¶ 3– 4. That employee also affixed a "property of CheckPoint Pumps" sticker to the laptop. **Id.**

Page 1 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

CheckPoint placed the laptop into original Apple packaging and Amazon shipping box for shipment to Dubai. (Doc. 51) "subsequently attempted to ship the laptop to Dubai through FedEx" in not in (Doc, 51); however, the laptop did not arrive. Id. ¶¶ 5–6. A CheckPoint employee filed a report with FedEx to notify it of the loss on June 15, 2016. Id. ¶ 6. On June 22, 2016, Holmes purchased an Apple MacBook Pro laptop and an AppleCare Protection Plan ("AppleCare") through Amazon. See Compl. ¶ 21. The laptop was listed on Amazon's website as "brand new" and

Holmes understood that the product would be free from defects and that it would not contain spyware or malware. Id. ¶¶ 21, 23–24.

On June 2016, Amazon delivered to UPS a MacBook Pro laptop bearing the serial number C02RQ1T3G8WN for delivery to Holmes. The computer delivered to UPS did not have any sticker on it indicating a prior sale.

This case involves the selling by Amazon a MacBook Pro laptop bearing the serial number C02RQ1T3G8WN, twice, once to CheckPoint and then to Holmes and the fraudulent effort to coverup the double sale.

**FACTUAL BACKGROUND**

On May 10, 2016, Apple sold. Rule 56.1 Statement of Apple ("Apple 56.1") (Doc. 99) ¶ 1. Amazon, in turn, sold that laptop to CheckPoint on June 2, 2016. Rule 56.1 Statement of Amazon ("Amazon 56.1") (Doc. 100) ¶ 4. That laptop was packaged for delivery in Breinigsville, Pennsylvania. Id. ¶¶ 2–3. CheckPoint received the computer by June 7, 2016, and an employee there installed a third-party tracking software, Kaseya, onto the laptop. Page 2 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Id. ¶¶ 3–4. That employee also affixed a "property of CheckPoint Pumps" sticker to the laptop. Id. CheckPoint subsequently attempted to ship the laptop to Dubai through FedEx; however, the laptop did not arrive. Id. ¶¶ 5–6. A CheckPoint employee filed a report with FedEx to notify it of the loss on June 15, 2016. Id. ¶ 6. On June 22, 2016, Holmes purchased an Apple MacBook Pro laptop and an AppleCare Protection Plan ("AppleCare") through Amazon. See Compl. ¶ 21. The laptop was listed on Amazon's website as "brand new" and Holmes understood that the product would be free from defects and that it would not contain spyware or malware. Id. ¶¶ 21, 23–24.

On June 22, 2016, Amazon delivered to UPS a MacBook Pro laptop bearing the serial number C02RQ1T3G8WN for delivery to Holmes. The computer delivered to UPS did not have any sticker on it indicating a prior sale.

The laptop delivered to Holmes by UPS was among a batch of new MacBook Pro computers Amazon sourced from Apple, which was packaged for delivery in Lewisberry, Pennsylvania. Amazon 56.1 ¶¶ 8–9. Holmes received the laptop he ordered from Amazon on June 23, 2016. Id. ¶ 10. According to Holmes, that laptop also had the serial number C02RQ1T3G8WN. Compl. ¶ 21. When Holmes received the laptop, it was shrink-wrapped and did not contain any stickers on it. See Doc. 54 Holmes' Complaint, which the Court accepted as true for purposes of the motions for judgment on the pleadings. See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012). At some point, Holmes gave his wife, Stephanie Scott ("Scott") an Apple laptop.2 Scott registered AppleCare in her name on June 25, 2016 for the laptop bearing the serial number C02RQ1T3G8WN. Apple 56.1 ¶ 12. According to CheckPoint, it was able to locate that laptop on July 23, 2016 using the

## Page 3 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1498-31 Filed 02/014/22 Page 4 of 46

Kaseya tracking software it had installed and determined that the computer was online and being used by Scott. Id. ¶ 15; see also Declaration of Ruston Mahoney in Support of CheckPoint's Motion to Dismiss for Lack of Jurisdiction ("Mahoney Decl.") (Doc. 51) Ex. E. CheckPoint subsequently relayed this information to FedEx, and. FedEx Ship Center 300 Middle Access Rd Kenner, LA FedEx filed a police report, on August 2, 2016, reporting the computer as having been stolen in Louisiana at 300 Middle Access Rd, Kenner, 12. LA 70062. Id. ¶¶ 16–17. Months later, on September 9, 2016, Holmes received a call from New York City Police Department Detective Rodrigo Caballero. Compl. ¶ 36. Caballero told Holmes that he possessed a MacBook laptop that contained government software belonging to the Department of Defense. Id. He further told Holmes that he and other officers were outside Holmes' residence and wanted to retrieve the computer. Id. Holmes informed Caballero that he was in the midst of conducting a funeral service, and could not assist the officers. Id. ¶ 37. The next day, Caballero again called Holmes in an attempt to retrieve the computer. Id. ¶ 38. At that time, Holmes told Caballero

that he had given the computer to Scott, whose location he was unaware of. Id. The calls from Caballero, however, did not stop, and on September 12, 2016, Holmes retained counsel to represent him in the police investigation. Id. ¶¶ 39–40. That day, Holmes' counsel spoke with Caballero and learned that the computer in Scott's possession bearing the serial number C02RQ1T3G8WN actually belonged to CheckPoint, a contractor for 2 According to Holmes, he and Scott are estranged. See Doc. 54 at 5:12. Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 3 of 29 4 the Department of Defense. Id. ¶ 41. According to Caballero, the computer had been purchased by CheckPoint, had been "outfitted" with "sensitive surveillance software," and was intended to be shipped to Dubai. Id. ¶ 42. Caballero further stated that if the computer

_____  _____

Page 4 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

was not returned, he had the authority to arrest Holmes. Id. ¶ 43. Holmes' counsel asked Caballero for verification of these allegations, and that same day, counsel received a letter from a vice president at CheckPoint explaining that CheckPoint had been tracking its laptop since the laptop left CheckPoint's facilities, that CheckPoint "legally collected ample information to prove that [Holmes] is in possession of property belonging to CheckPoint," that it simply sought the return of its property, and that it otherwise had "no knowledge or interest in" learning how Holmes came to possess CheckPoint's laptop. See Compl. Ex. B. The next day, on September 13, 2016, Caballero sent Holmes' counsel an email confirming that the serial number of the CheckPoint computer was C02RQ1T3G8WN, which, according to Holmes and Apple as well, matched the serial number of the laptop he purchased through Amazon. See Compl. ¶ 47, Apple 56.1. Between then and September 21, 2016, Holmes attempted to contact Scott to facilitate the return of the computer. Id. ¶ 49. On September 21, 2016, Holmes' counsel informed Caballero that Holmes had done all he could to assist the NYPD and asked Caballero to stop contacting Holmes. Id. ¶ 50. In response, Caballero stated **that he**

was planning to proceed with an arrest of Holmes for criminal possession of stolen property in the fourth degree. Id. ¶ 51. Holmes then hired a private investigator who was able to locate Scott. Id. ¶ 54. He then arranged for Scott's sister to visit her on October 1, 2016 so that she could persuade Scott to return the computer. Id. ¶ 56. On October 2, 2016, Holmes learned that the computer was in a public storage unit in Chelsea, New York, but that Scott did not wish to cooperate in returning the computer to CheckPoint. Id. ¶ 58. The next day, Holmes' counsel met with Caballero and Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 4 of 29 5 another NYPD officer to go to Scott's residence. Id. ¶¶ 60–61. After meeting with Caballero, Scott agreed to

## Page 5 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-31 Filed 02/104/22 Page 6 of 46

accompany the group to her storage unit. Id. ¶ 62. Scott turned over the laptop on October 4, 2016 at 7:30 p.m. See Compl. Ex. E. In a self-serving letter written after receiving the computer, Mahoney informs NYPD Detective, Caballero, and CheckPoint alleges, that "property of CheckPoint Pumps" sticker was still on the underside of the laptop. Amazon 56.1 ¶ 26.

**Holmes contacted Apple and Amazon and received a brush off from them.**

On June 16, 2017, Holmes filed the instant Complaint, raising eight causes of action: (1) breach of contract against Apple and Amazon; (2) breach of express warranty against Apple and Amazon; (3) breach of implied warranty of merchantability against Apple and Amazon; (4) negligence against Apple, Amazon, and CheckPoint; (5) strict liability against Apple and Amazon; (6) fraudulent concealment against Apple and Amazon; (7) fraud in the inducement and misrepresentation against Apple and Amazon; and (8) false advertising and unfair business practices under § 349 of the New York General Business Law against Apple and Amazon.

On September 28, 2021, The Wall Street Journal published an article claiming that 131 Federal Judges Broke the Law by hearing cases in which they had a financial interest and identifying Judge Edgardo Ramos as being among such federal judges. On October 4, 2021, Holmes filed a Request For Financial Disclosure Report of Judge Ramos for the years 2016, 2017, 2018, 2019, 2020. Holmes received the Financial Disclosure Report of Judge Ramos for 2018 on January 18, 2022 indicating that Judge Ramos owned stock in Apple and FedEx de. By letter dated January 21, 2021 the Clerk of the Court at the direction of Judge Ramos, advised Holmes that Judge Ramos owned Apple stock while presiding

## Page 6 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1498-31 Filed 02/014/22 Page 7 of 46

over Re: 1:17-cv-04557-ER, Holmes v. Apple Inc. et al. Pursuant to that letter Holmes on February 4, 2022 filed this instant Motion to Vacate the Judgment and Order filed by Judge Edgardo Ramos on June 16, 2018 based on the appearance in impartiality, if not actual bias in rendering the decision, Order, and Judgment in Re: 1:17-cv-04557-ER, Holmes v. Apple Inc. et al and denying Holmes' Motion to Amend the Complaint to add FedEx as a defendant.

## I Judge Ramos Financial Interest in Apple

## LEGAL STANDARD

### 28 U.S.C. 455(a)

Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

The words of the Senate Judiciary Committee, in recommending what became § 455(a) under the 1974 amendments to §455, provide guidance for judges who must decide whether to disqualify themselves under §455(a): In assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to

avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a reasonable basis. Nothing in [§ 455(a)] should be read to

## Page 7 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-31 Filed 02/014/22 Page 8 of 46

warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice. See S.Rep. No. 93-419, 93d Cong., 1st Sess. 5 (1973) (quoted in 13A Wright, Miller & Cooper, Federal Practice and Procedure: Juris 2d § 3549, at 623-24).

15(a)(1)(B) ("A party may amend its pleading once as a matter of course within: . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a

responsive pleading or 21 days after service of a motion under Rule 12(b), . . .Mar 24, 2017

**A Reason Judge Ramos Should Have Recused Himself**

I. THE DECISIONs of Judge Ramos DRASTICALLY DECREASES THE PUBLIC'S CONFIDENCE IN AN UNBIASED **JUDICIARY AS** IT ENABLES BIASED JUDGES TO MAKE ARBITRARY ADVERSE RULINGS. Litigants must have confidence that their claims will be heard by an unbiased

judicial officer. When a judicial officer has a financial interest in the outcome of a case, it creates a bias on his part in favor or against one party, and not based on the merits of the case. Thus, recusal is sometimes necessary.

28 U.S.C. §455(a) requires a judge to disqualify himself if a reasonable person

Page 8 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-31 Filed 02/014/22 Page 9 of 46

would have factual grounds to doubt the impartiality of the court. Blizard V. Frechette, 601 F.2d 1217, 1220 (1st Cir. 1979). The determination for the district judge to make is whether "his impartiality might reasonably be questioned." 28 U.S.C. §455(a). Section 455(b) lists specific circumstances in which recusal is required, including when a judge has "personal bias or prejudice concerning a party." In fact, "By enacting section 455(a), Congress sought to eradicate not only actual, but also the appearance of impropriety in the federal judiciary." Moran v. Clarke, 296 F.3d 638, 648 (8th Cir.2002). An "objective standard of reasonableness" applies in deciding a motion to disqualify. Pope v. Federal Express Corp., 974 F.2d 982, 985

(8th Cir. 1992). "This objective standard is not a test of whether the judge, or a party, might believe that a bias existed, but whether the 'average person on the street' would question the impartiality of the judge, under the circumstances." Id.
"The goal of section 455(a) is to avoid even the appearance of partiality. If it

would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible. The judge's forgetfulness, however, is not the sort of objectively ascertainable fact that can avoid the appearance of partiality." Hall v. Small Business Administration, 695 F. 2d 175, 179 (5th Cir. 1983). Under section 455(a), therefore, recusal is required even when a judge lacks actual knowledge of the facts indicating his interest or bias in the case if a reasonable person, knowing all the

Page 9 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-13 Filed 02/014/22 Page 10 of 46

circumstances, would expect that the judge would have actual knowledge." 796 F. 2d, at 802.

The words of the Senate Judiciary Committee, in recommending what became § 455(a) under the 1974 amendments to §455, provide guidance for judges who must decide whether to disqualify themselves under §455(a): [TIn assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a reasonable basis. Nothing in [§ 455(a)] should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants 10

ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice. See S.Rep. No. 93-419, 93d Cong., 1st Sess. 5 (1973) (quoted in 13A Wright, Miller & Cooper, Federal Practice and Procedure: Juris 2d § 3549, at 623-24).

A reasonable person on the street who knows all relevant facts would indeed question District Court Judge Ramos' impartiality. Courts have consistently recast the issue as "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." Judge Ramos was the presiding judge. A review of the record shows that at every turn, Plaintiff was denied the opportunity to fully prosecute their claims and/or put forth factual showings in support

Page 10 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-13 Filed 02/014/22 Page 11 of 46

of their defenses. Most notably, Judge Ramos allowed the Defendants, all of whom were in default in responding to Plaintiff's, requiring all of them to make Motions to Vacate their defaults. Judge Ramos by Order dated August 15, 2017 granted all of the defendants motion to vacate their defaults, although at a Show Cause Hearing described in the Docket as follows:

Minute Entry for proceedings held before Judge Edgardo Ramos: Show Cause Hearing held on 9/14/2017. Pro Se Plaintiff present. Defendants' counsel present. For the reasons stated on the record, Defendants' motions to vacate entry of default is granted. Defendant Checkpoint is granted leave to file a motion to dismiss with the following briefing schedule: moving papers due October 10, 2017; opposition due November 10, 2017; reply due November 27, 2017. Parties are directed to submit a proposed joint discovery plan. (Motions due by 10/10/2017. Responses due by 11/10/2017. Replies due by 11/27/2017.) (Court Reporter Mike McDaniel) (jar) (Entered**: 09/14/2017)**

CheckPoint was granted additional time to file a motion to dismiss although their time to plead had expired. Parties are directed to submit a proposed joint discovery plan. Holme's subsequent motion for discovery was denied. On October 6, 2017, Holmes moved to amend the Complaint. See Doc. 47. Judge Ramos held the motion for more than 250 days before denying it in his decision at the end of the trail. Holding the motion for 8 months without deciding it, would lead a reasonable person on the street who knows all relevant facts,

## Page 11 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

would indeed question District Court Judge Ramos' impartiality.

## II. HOLMES' MOTION TO AMEND

## LEGAL STANDARD

Rule 15. Amended and Supplemental PleadingsAmendments Before Trial.

Amending as a Matter of Course.

A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

(3) Time to Respond. Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

## Page 12 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

## Case 1:17-cv-04557-ERRA Document 1489-31 Filed 02/104/22 Page 13 of 46

Procedural Setting

On October 6, 2017, Holmes moved to amend the Complaint. See Doc. 47. Judge Ramos held the motion for more than 250 days before denying it in his decision at the end of the trail. Holding the motion for 8 months without deciding it is evidence of bias against Holmes that prejudice the case against him. Holmes moved to amend his Complaint 3 days before the responsive pleading was filed by CheckPoint on October 9, 2017, and 24 days

before a responsive pleading was required by CheckPoint. Argument 1

By extending the time in which CheckPoint was required to plead the Court extend the time in which Holmes could amend his complaint as a matter of course.

A party may amend its pleading once as a matter of course within:
(B) if the pleading is one to which a responsive pleading is required, 21 days

after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

The complaint was amended as of the date of his filing, That Amended Complaint became the operative pleading in this case. His denial of a motion where no motion was required is

Page 13 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-31 Filed 02/104/22 Page 14 of 46

treated as a nullity.

Treated as a motion, as Judge Ramos did, the motion should have been granted if a liberal reading of the complaint provides any basis that a valid claim might be stated.

Fed. R. Civ. P. 21 provides that misjoinder of parties is not ground for dismissal of an action, and that parties may be dropped or added by court order on motion of any party or of the court's own initiative at any stage in the action and on such terms as are just.

"Absent prejudice, or a strong showing of any of the remaining [factors], there exists a presumption under Rule 15(a) in favor of granting leave to amend." C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist., 654 F.3d 975, 985 (9th Cir. 2011) (citation omitted). The Court finds amendment is permissible. The Court finds there is no indication that Plaintiffs' move to amend is made in bad faith nor that a properly worded amendment would be futile. Additionally, Plaintiffs have not previously moved for leave to amend.1 Finally, at this early stage in the proceedings, the Court finds neither undue delay nor that Defendants would be prejudiced by the requested amendment. Plaintiffs' motion is granted. ACCORDINGLY, IT IS HEREBY ORDERED: 1. **Plaintiffs' Motion for Leave to File Amended Complaint (ECF No. 27) is granted.**

**Argument 2**

Page 14 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1498-31 Filed 02/014/22 Page 15 of 46

(2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

A pro se complaint should be read liberally, and the Court should grant leave to amend if a "liberal reading" provides "any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)). But where the issues with a complaint are "substantive" and cannot be cured by more artful or specific allegations, repleading would be "futile" and a request for further amendment "should be denied." Id. Plaintiff's case is clearly distinguishable from the case of Cuoco v. Moritsugu, cited by the court. In that case there was a statute if limitation problem detailed by the court as follows: "The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") Amendment would be futile here because Plaintiff's claims arise from events, which he was aware of, that occurred more than three years before he commenced this Section 1983 action. Thus, his claims are time barred, see Cloverleaf Realty v. Town of Wawayanda, 572 F.3d 93, 94 (2d Cir. 2009)(The statute of limitations for a § 1983 claim arising in New York is three years), and amendment would be futile because repleading would not cure the timeliness deficiency."

Page 15 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-13 Filed 02/014/22 Page 16 of 46

A court may deny leave to amend a complaint for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009). The foregoing case cited by Judge Ramos in his decision denying Plaintiff, Tyrone Holmes motion is a decision based on Georgia law.(quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)). What maybe futile under Georgia law may not be so under Federal Rule 15. as applied under New York law.

When FedEx undertook the task of filing a police report as stolen and in La a computer that FedEx had delivered to Amazon in Pennsylvania thereby implicating plaintiff and his associate in the theft, he also under took the duty to not bear false witness against Holmes and Stephanie Scott.

Judge Ramos was required to grant Holmes Motion to Amend the Complaint as a matter of course, since it was filed within the 21 days after CheckPoint filed its responsive pleading. In fact Judge Ramos by Order of September 14, had extended the time in which CheckPoint had been required to plead until October 10, 2017, thereby extending the time for filing plaintiff's Amended Complaint as a matter of course.

A party may amend its pleading once as a matter of course within: ( A) ... (B) if the pleading is one to which a responsive pleading is required, 21 days

after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
Federal Rule of Civil Procedure 15(a) provides that, except in circumstances not present here, "a party may amend its pleading only with the opposing party's written consent or

Page 16 of 46


DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-13 Filed 02/014/22 Page 17 of 46

the court's leave," which "[t]he court should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has directed that this policy

be applied with "extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). In ruling upon a motion for leave to amend, a court must consider whether the moving party acted in bad faith or unduly delayed in seeking amendment, whether the opposing party would be prejudiced, whether an amendment would be futile, and whether the movant previously amended the pleading. United States v. Corinthian Colleges, Case 2:15-cv-00305-TOR Document 36 Filed 06/13/16

## III. CHECKPOINT FRAUD

Filing a False Report, Knowing it to be False

LEGAL STANDARD Rule 60. Relief from a Judgment or Order

(a) Corrections Based on Clerical Mistakes; Oversights and Omissions. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just

Page 17 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-13 Filed 02/014/22 Page 18 of 46

terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Argument

CheckPoint, by engaging FedEx to contact the Kenner Police Department on August 2, 2016, reporting the computer, that FedEx had delivered to an Amazon Distribution Center in Pennsylvania, but could not track its location in Pennsylvania, as having been stolen from a FedEx facility in Louisiana 300 Middle Access Rd, Kenner, LA 70062, knowing that (1) it was not in La, but in Pennsylvania, (2) knowing that it was not stolen but purchased by Plaintiff which they determined by the serial number, authenticated by AppleCare being the same as that computer they purchased and placed spyware and had delivered by FedEx where the chain of custody indicated as CheckPoint required. The purpose of the Fraud was to induce the NYPD to seize the computer, at no expense to CheckPoint from Holmes, who was lawfully in possession of the computer, bearing the serial number C02RQ1T3G8WN, which had been purchased from Amazon and delivered by UPS to Holmes.

Page 18 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-13 Filed 02/014/22 Page 19 of 46

IV AMAZON'S FRAUD

Attorney False Misrepresentation to the Court About a Material Fact Argument

Amazon sold a MacBook Pro laptop bearing the serial number C02RQ1T3G8WN, twice, once to CheckPoint, on June 2, 2016, and again to Holmes on June 22, 2016. Amazon could verify these fact because it was the seller of both and, therefore and in the unique position to verify the serial number on the computers at the earliest point in this case. The attorney for Amazon in response to a direct question from

Judge Wesley of the Court of Appeals, "There are two Computers". This was stated after the the Attorney for Apple in response to the same direct question that there was one computer, further stating that Apple makes only one computer with the same serial number. This was a false and fraudulent representation to the Court which the attorney for Amazon knew to be about the issue that was central to this case.

A manifest or grave injustice, such as the one perpetrated here upon Holmes, is described as something that is obviously unfair, or which is shocking to the conscience that is direct, obvious and observable. In fact, the 7th Circuit Court of Appeals in Kenner vs. C.IR., 387 F3d 689 (1968), adjudicated that a "decision produced by fraud upon the court is not in essence a decision at all and never becomes final. "Fraud Upon the Court" makes void the orders and judgments of that court and vitiates the entire proceedings, thus no appeal would lie within the Eighth Circuit in this case wherein the underlying judgment wherein in essence it was never a decision at all and never became final. (p. 8 SWECKER

Page 19 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1498-13 Filed 02/104/22 Page 20 of 46

Rule 60(a)(3) of the Federal Rules of Civil Procedure

## V. CHECKPOINT'S MOTION TO DISMISS

The Court Had Jurisdiction Over CheckPoint

A. Dismissal Under Rule 12(b)(2) "A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant. " BHC Interim Funding, LP v. Bracewell & Patterson, LLP, No. 02 Civ. 4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999)). To meet this burden where there has been no discovery or evidentiary hearing allowed by the Court in this case, was required to plead facts sufficient for a prima facie showing of jurisdiction.

CheckPoint by engaging FedEx to contact the Kenner Police Department on August 2,

Page 20 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-31 Filed 02/014/22 Page 21 of 46

2016, reporting the computer, that FedEx had delivered to Amazon Distribution Center in Pennsylvania, but could not track its location in Pennsylvania, as having been stolen from their FedEx facility in Louisiana 300 Middle Access Rd, Kenner, LA 70062 to have them contact on their behalf the NYPD, which seized the computer from Plaintiff.

If a person files a false report with the intention of accusing someone else of a crime, or to lead the police to investigate an innocent person, then the falsely accused person may file a civil lawsuit. They would do this to seek substantial damages.

FALSELY REPORTING AN INCIDENT. IN THE THIRD DEGREE. (Initiates or circulates a false report of crime, catastrophe or emergency). Penal Law § 240.50 (1). A person is guilty of r or vulnerable persons' central register.

The court was required to accept all of the plaintiff's allegations as true and resolves all doubts in his favor. Casville Invs., Ltd. v. Kates, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing Porina v. Marward Shipping Co., 521 F.3d 3 Holmes' proposed Amended Complaint brings a ninth cause of action against FedEx for negligence. See Doc. 47- 1. Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 5 of 29 6 122, 126 (2d Cir. 2008)). "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" Art Assure Ltd., LLC v. Artmentum GmbH, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998)). As 12(b)(2) motions are "inherently . . . matter[s] requiring the resolution of factual issues outside of the

pleadings," courts may rely on additional materials when ruling on such motions. John Hancock Prop. & Cas. Ins.

Page 21 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-31 Filed 02/014/22 Page 22 of 46

Co. v. Universale Reinsurance Co., No. 91 Civ. 3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); Darby Trading Inc. v. Shell Int'l Trading and Shipping Co., 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008). In a diversity action, personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits. Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). CheckPoint by engaging in an agreement with Holmes made in New York by letter dated September 12, 2016 a relevant portion which reads "As a further condition of this agreement, I would require this matter be resolved through our mutual contact at the NYPD, Detective Rodrigo Caballero." This determination involves a two-step analysis. Metro. Life Ins. Co. v. RobertsonCeco Corp., 84 F.3d 560, 567 (2d Cir. 1996). In New York, the Court must first determine whether personal jurisdiction is appropriate pursuant to the State's general jurisdiction statute, C.P.L.R. § 301, or its long arm jurisdiction statute, C.P.L.R. § 302. If and only if the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the second step is an evaluation of whether the Court's exercise of personal jurisdiction comports with the Due Process Clause of the United States Constitution. Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163–64 (2d Cir. 2010).

On September 12, 2016, CheckPoint acting through its officer, Bobbi Jo Bridges VP Operation, executed an agreement with Holmes, acting through his attorney, Garfin, that was to have consequences in New York in relation to this action. (Doc. 50)

The agreement was extorted from Holmes by threat of arrest if he did not turn over the computer. { }

On October 4, 2017 Mahoney, an employee of CheckPoint filed a Declaration

detailing the action with regard to packaging the computer with spyware on it for delivery in which he

Page 22 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-31 Filed 02/014/22 Page 23 of 46

explicitly state that the computer was repackage in an Amazon box. { }. Judge Ramos left out the "Amazon box" { } in his recanting of this from { }If it were left out negligently it explains how this computer could have been commingled with computers without spyware. If it were done intentionally it would be evidence of actual bias of Judge Ramos, altering the facts to the benefit of Amazon and CheckPoint.

This personal contract executed by letter to be performed within the state undermines all arguments made by Judge Ramos in his decision offer some evidence that his decision was not impartial. and contrary to a letter filed in this case.

Dismissal Under Rule 12(c) Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court applies the same standard of review to a Rule 12(c) motion as it Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 6 of 29 7 does to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006) (citing Karedes v. Ackerley Grp. Inc., 423 F.3d 107, 113 (2d Cir. 2005)). On a motion to dismiss pursuant to Rule 12(b)(6), the Court is required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014). However, the Court is not required to credit legal conclusions, bare assertions or conclusory allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678–81 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain enough factual matter to state a claim to relief that is plausible on its face. Id. at 678 (citing

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Twombly, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." Id. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Id. at 680 (quoting Twombly, 550 U.S. at 570). C. Summary Judgment Under Rule 12(d), a court may convert a Rule 12(c) motion for entry of judgment to a Rule 56 motion for summary judgment when the parties present evidence outside the pleadings and are "given the reasonable opportunity to present all material that is pertinent to the motion." Certified Multi-media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC, 150 F. Supp. 3d 228, 236 (E.D.N.Y. 2015) aff'd 674 F. App'x 45 (2d Cir. 2017) (quoting Fed. R. Civ. P. 15(d)). Formal notice to the parties is ordinarily not necessary "where a party should Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 7 of 29 8 reasonably have recognized the possibility that the motion might be converted into one for summary judgment and was neither taken by surprise nor deprived of a reasonable opportunity to meet facts outside the pleadings." Galiotti v. Green, 475 F. App'x 403, 404 (2d Cir. 2012), as amended (Aug. 30, 2012) (internal quotation and punctuation marks omitted). Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c). "An issue

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Senno v. Elmsford Union Free Sch. Dist., 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C., 432 F.3d 428, 433 (2d Cir. 2005). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Saenger v. Montefiore Medical Center, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008)). In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non- moving party and must resolve all ambiguities and draw all Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 8 of 29 9 reasonable inferences against the movant.'" Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (quoting Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 126 (2d Cir. 2004)). However, a motion for summary judgment cannot be defeated on the basis of conclusory assertions, speculation, or unsupported alternative explanations of facts. Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008); see also Senno, 812 F. Supp. 2d at 467 (citing Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998)). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586

Page 25 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

(1986)). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." Senno, 812 F. Supp. 2d at 467–68 (citing Anderson, 477 U.S. at 256–57). Nonetheless, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." Danzer v. Norden Systems, Inc., 151 F.3d 50, 54 (2d Cir. 1998) (internal citations omitted).

## VI. CHECKPOINT'S MOTION TO DISMISS

CheckPoint availed itself of the privileges and benefits of the laws of the State of New York, contrary to the statement in their affidavit filed in their behalf by Andrew C. Elliott (Managing Member/Chief Executive Officer) CheckPoint Fluidic Systems International, Ltd. (Doc. 49), 17. In fact CheckPoint abused these privileges by filing the false police report that had consequences in New York.

Page 26 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-31 Filed 02/014/22 Page 27 of 46

Filing a False Police Report, Knowing it to be False

CheckPoint moves to dismiss Holmes' negligence claim against it because CheckPoint has insufficient contacts with New York to render personal jurisdiction proper under New York law. See Memorandum of Law in Support of CheckPoint's Motion to Dismiss ("CheckPoint Mem.") (Doc. 52), at 4–6. Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 9 of 29 10 A. Personal Jurisdiction under C.P.L.R. § 301 C.P.L.R § 301 applies only to corporate defendants who are present in New York "with a fair measure of permanence and continuity." Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 77 N.Y.2d 28, 34 (1990). A company that engages in only "occasional or casual business" or who "merely solicits New York customers" will not be subject to general personal jurisdiction in New York. Brown v. Web.com Grp., Inc., 57 F. Supp. 3d 345, 354 (S.D.N.Y. 2014) (internal

quotations and punctuation marks omitted) (quoting Bossey ex rel Bossey v. Camelback Ski Corp., 21 Misc.3d 1116(A), 2008 WL 4615680, at *2 (N.Y. Sup. Ct. Oct. 20, 2008)). Here, CheckPoint has no physical presence in New York. See Affidavit of Andrew C. Elliot in Support of CheckPoint's Motion to Dismiss ("Elliot Aff.") (Doc. 49), at 2. It has no agents, officers, directors, or employees in New York. Id. It has never been authorized to conduct business in New York. Id. CheckPoint was able to identify only five sales between August 1, 2013 and June 16, 2017 that contained billing and/or shipping addresses in New York. See Declaration of Bobbie Jo Bridges in Support of CheckPoint's Motion to Dismiss ("Bridges Decl.") (Doc. 64) ¶ 4.4 The total amount of these sales, $15,310.91, constitutes "a few hundredths of a percent of CheckPoint's sales in dollar value during the same period."

––––––––

Page 27 of 46


DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-31 Filed 02/014/22 Page 28 of 46

Id. ¶ 10. In opposition, Holmes points to the fact that CheckPoint operates a website that New York customers can see and use and that CheckPoint has been subject to jurisdiction in other cases in New York courts. See Affidavit in Opposition to Motion to Dismiss and Cross-Motion for Discovery ("Holmes Aff.") (Doc. 56). Holmes provides no support for his argument that the operation of a website, without more, can subject a company to general personal jurisdiction in 4 CheckPoint's records show 27,139 sales records during this period. Id. ¶ 5. Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 10 of 29 11 New York; in fact, courts routinely determine that it is insufficient to confer jurisdiction. See ISI Brands, Inc. v. KCC Int'l, Inc., 458 F. Supp. 2d 81, 87–88 (E.D.N.Y. 2006) (collecting cases). Further, although CheckPoint has been a defendant in one New York proceeding brought to the Court's attention, CheckPoint never appeared in that case, which did not require the establishment of personal jurisdiction over CheckPoint because it was a proceeding to domesticate a foreign judgment. See Marine Hub Pte. Ltd. v. CheckPoint Fluidic Sys. Int'l Ltd., No. 601203/2010 (Sup. Ct. 2010); see also Lenchyshyn v. Pelko Elec., Inc., 723 N.Y.S.2d 285, 289 (4th

Dep't 2001) ("[A] party seeking recognition in New York of a foreign money judgment (whether of a sister state or foreign country) need not establish a basis for the exercise of personal jurisdiction over the judgment debtor by the New York courts."). The case at bar is distinguishable from the cases cited by the court. He is not a judgment debtor using that a basis of jurisdiction, but a party to an agreement between Check and Holmes negotiated by letter filed in this action on September 12, 2016 , as set forth below:

September 12, 2016 Mr. Garfin

Counsel for Mr. Tyrone Holmes

Page 28 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1498-31 Filed 02/014/22 Page 29 of 46

Dear Mr. Garfin,
Please be advised that our Information Security department has ascertained information proving that your client is in possession of our equipment. This equipment has been tracked since leaving our facility. We have legally collected ample information to prove that your client is in possession of property belonging to CheckPoint Fluidic Systems International. If this equipment is returned immediately, in its original condition complete with all original parts and pieces, we will not move further to pursue legal action. I have no knowledge or interest in identifying your client or learning further about the details, which put him in possession of our equipment.
As a further condition of this agreement, I would require this matter be resolved through our mutual contact at the NYPD, Detective Rodrigo Caballero. I see no reason for your client, Mr. Holmes, to have any knowledge of our organization or its employees. To conclude our arrangement, please certify that our organization and staff shall remain anonymous to your client.
Regards,
Bobbi Jo Bridges VP Operations

Holmes, therefore, has plead facts that would support a prima facie finding of general personal jurisdiction.

B. Personal Jurisdiction under C.P.L.R. § 302(a) C.P.L.R. § 302(a) allows a court to exercise personal jurisdiction over a non-domiciliary defendant who: (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state;" (2)

Page 29 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1498-31 Filed 02/104/22 Page 30 of 46

"commits a tortious act within the state . . .;" or (3) "commits a tortious act without the state causing injury to person or property within the state . . . [if he] (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]" Mount Whitney Investments, LLP v. Goldman Morgenstern & Partners Consulting, LLC, No. 15 Civ. 4479 (ER), 2017 WL 1102669, at *4 (S.D.N.Y. Mar. 23, 2017) (quoting C.P.L.R. § 302(a)(1–3)). Case 1:17- cv-04557-ER Document 121 Filed 07/23/18 Page 11 of 29 12 Holmes argues that CheckPoint committed a tort outside the state of New York that it knew would have consequences in New York. See Holmes Aff. ¶¶ 24–37. Specifically, he argues that CheckPoint reported its computer as stolen, and that its discussions with FedEx and the NYPD about the computer , Check engagedFedEx to file a police report that was knowingly false, in an that fraudulent effort to to engage the NYPD in the recovery of a computer that had been sold by Amazon to Holmes, knowing that there was no theft in Louisiana which caused Holmes emotional distress during the period in which CheckPoint's computer was in his wife's possession. Id. The "tort" that Holmes alleges CheckPoint committed, therefore, appears to be a tort claim based on the reporting of his theft of its computer. Id.; see Compl. ¶¶ 92– 96 (bringing a cause of action against CheckPoint for which Holmes charitable called negligence. Holmes has put forward support for his

argument that an entity can be held liable for negligence on the basis of reporting a theft and cooperating with authorities, even if the report was inaccurate. Holmes has raised a claim for malicious prosecution, in that played an active role in engaging Checkpoint to file a false complaint stating that the theft

Page 30 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-31 Filed 02/014/22 Page 31 of 46

took plain La knowing that this was not true. This rises much more participation than being one who"who merely furnishes information to law enforcement authorities who would not . . . will not be held liable for malicious prosecution." Lupski v. County of Nassau, 822 N.Y.S.2d 112, 114 (2d Dep't 2006). Instead, a plaintiff must allege that the defendant "played an active role in the prosecution, such as giving advice and encouragement and importuning the authorities to act." Id. (quoting Viza v. Town of Greece, 463 N.Y.S.2d 970, 971 (1983)). Holmes' allegations that CheckPoint communicated with FedEx and the NYPD about the loss of its computer, and "reasonably expect[ed]" consequences to flow within New York- Holmes to be arrested for theft of a computer in New York- are sufficient to confer personal jurisdiction on courts in New York, because they constitute allegations of a tortious act as required by C.P.L.R. § 302(a). The record is clear as to how CheckPoint's computer came to be in Holmes' possession, by tracing the chain of custody of the computer from Apple to Amazon, to Amazon to FedEx, FedEx to CheckPoint, CheckPoint to FedEx, FedEx to Amazon, Amazon to UPS, UPS to Holmes with no disruptions in the chain by a thief. "Went missing presumably stolen" was a tale concocted by CheckPoint with the collusion of FedEx and Amazon who supplied the the "two computer" fraud tale, knowing it to be false because of the AppleCare which Amazon sold to Holmes with the computer, bearing the serial number C02RQ1T3G8WN.

No party in this case has asserted that Holmes was responsible for CheckPoint's initial loss of the computer. Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 12 of 29 13 C.

Page 31 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-31 Filed 02/014/22 Page 32 of 46

Holmes' Discovery Motion Holmes seeks discovery to determine what contacts CheckPoint has with the State of New York. See Holmes Aff. ¶ 70. Specifically, he seeks to serve interrogatories, a request for production of documents, and a notice of deposition of one CheckPoint employee. Id. ¶ 71. Holmes argues that he is entitled to determine whether CheckPoint had banking or investment banking contacts in New York, retained any law, consulting, or public relations firms based in New York, hosted business meetings in New York, or made any business purchases in New York. Id. ¶ 72. Holmes' request must be denied. See In re Angeln GmBH & Co. KG, 510 F. App'x 90, 92–93 (2d Cir. 2013) (finding that courts may decline to permit jurisdictional discovery where a plaintiff has not made out a prima facie case for jurisdiction). Even if those business contacts exist, they would be insufficient for purposes of general personal jurisdiction. See Brown, 57 F. Supp. 3d at 354. They would also be sufficient for the purposes of New York's long-arm statute, since those contacts would be unrelated to CheckPoint's involvement in this case. Id. at 356 (explaining that a defendant must purposefully avail itself of conducting business activities in New York, and that the dispute in the litigation must arise out of one such transaction). See Haber v. United States, 823 F.3d 746, 753 (2d Cir. 2016) (noting that jurisdictional discovery is inappropriate if the plaintiff fails to show how the information to be obtained bears on the jurisdictional issue). The letter agreement between Check and Holmes negotiated by letter filed in this action on September 12, 2016 , as set forth provides such involvement in this case and is a basis for this Court's jurisdiction over CheckPoint.

V. APPLE'S MOTION FOR ENTRY OF JUDGMENT

9. Transfer of Plan.

Page 32 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1498-13 Filed 02/014/22 Page 33 of 46

You may make a one-time permanent transfer of all of your rights under the Plan to another party, provided that: (i) you transfer to the other party the original proof of purchase, the Plan Confirmation, the Plan's printed materials and this service contract; (ii) you notify Apple of the transfer by sending notice of transfer to Apple Inc., ATTN: Agreement Administration, MS: 217-AC, 2511 Laguna Blvd, Elk Grove, CA 95758, U.S., fax number 916-405-4175 or agmts_transfer@apple.com, respectively, and (iii) the other party accepts the terms of this service contract. When notifying Apple of the transfer, you must provide the Plan Agreement Number, the serial numbers of the Covered Equipment, and the name, address, telephone number and email address of the new owner.

Relevant Terms of the AppleCare Agreement

10. General Terms.

(a) Apple may subcontract or assign performance of its obligations to third parties but shall not be relieved of its obligations to you in doing so.

(i) The terms of the Plan, including the original sales receipt of the Plan and the Plan Confirmation, shall prevail over any conflicting, additional, or other terms of any purchase order or other document, and constitute your and Apple's entire

Page 33 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-31 Filed 02/014/22 Page 34 of 46

understanding with respect to the Plan.

Apple moves for judgment on the pleadings for each of Holmes' eight claims. Memorandum of Law in Support of Apple's Motion for Judgment ("Apple Mem.") (Doc. 98), at 2. In the alternative, it moves for summary judgment on those claims based on the testimony of Apple employee Tim O'Neil. Id. A. Breach of Contract and Express Warranty Claims Apple argues that Holmes has not stated a claim for either breach of contract or breach of warranty (claims one and two) because he

has not alleged the existence of a contract between himself and Apple. Apple Mem. at 8. Under New York law, the existence of a contract between the parties is an essential element of both a breach of contract claim and a breach of express warranty claim. See Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank, 392 F.3d 520, 525 (2d Cir. 2004); Promuto v. Waste Mgmt., Inc., 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999). In his Complaint, Holmes alleged that he purchased his laptop through Amazon, but that Amazon and Apple both "contracted" to provide him the laptop and "warranted and represented" that the laptop was "brand-new" and "free from any and all spy software capable of tracking [his] activities." Compl. ¶¶ 33, 74, 81. But these allegations are belied by the receipt Holmes provided, which shows that the seller of the laptop and AppleCare was Amazon, not Apple. Id. Ex. A; accord Xi Wei Lin v. Chinese Staff & Workers' Ass'n, No. 11 Civ. 3944 (RJS), 2012 WL 5457493, at *4 (S.D.N.Y. Nov. 8, 2012) (noting that a court need not accept as true "pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference") (quoting Fisk v. Letterman, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005)).

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 14 of 29

Page 34 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-13 Filed 02/014/22 Page 35 of 46

15

Holmes argues that AppleCare, the laptop protection plan, is the contract between him
and Apple that Apple breached by not informing its distributor that, who was also party to the agreement that Holmes was legitimately in possession of the computer bearing. That Apple had assigned compliance with the AppleCare agreement to Amazon. That there had been an error by Amazon allowing him to receive CheckPoint's laptop. See
Memorandum of Law in Opposition to Defendants' Motions for Judgement ("Opp.") (Doc. 105),
at 9. Apple raises two points in response. First, it argues that it has no record of Holmes registering AppleCare for the CheckPoint laptop; instead, Scott registered

an AppleCare plan, bearing the serial number C02RQ1T3G8WN
(although it is unclear if this was the AppleCare plan purchased by Holmes) for the CheckPoint
laptop on June 25, 2016, bearing the serial number C02RQ1T3G8WN. Apple
Mem. at 11 (citing Declaration of Tim O'Neil in Support of
Apple's Motion for Entry of Judgment ("O'Neil Decl.") (Doc. 102) ¶¶ 9–12).
Thus, they argue,
there was no contract between Apple and Holmes. That Apple had assigned
compliance with the AppleCare agreement to Amazon. Second, Apple argues that
Holmes has not alleged a breach of the AppleCare plan; rather, his allegations are
that the Apple laptop he received from Amazon was defective because it contained
the Kaseya tracking software and that Apple breached by not informing its
distributor , who was also party to the agreement, that Holmes was legitimately in
possession of the computer bearing the serial number

Page 35 of 46


DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-31 Filed 02/014/22 Page 36 of 46

C02RQ1T3G8WN. Apple had an obligation under their agreement to remove that
spyware, Mem. at 10–11; Reply Memorandum of Law in Support of Apple's
Motion for Entry of Judgment ("Apple Reply Mem.") (Doc. 113), at 3–4.
AppleCare is a service contract that provides for Apple support in replacing or
repairing laptops in certain circumstances, and specifically excludes repairs based
on the effects of third-party products. See O'Neil Decl. Ex.D.7

Holmes' claims in the first and second causes of action, however, are based on the
theory that the laptop was defective because CheckPoint subsequently installed
tracking software on it. See Compl. ¶¶ 76, 83. By its terms, therefore, the
AppleCare agreement is not triggered. Accordingly, the Court finds that the
AppleCare agreement is not germane to the dispute between Holmes and Apple;
further, because Holmes has not pointed to a contract with Apple

7 Although Holmes did not attach the AppleCare agreement to his complaint, the
Court may properly consider it on a motion for judgment on the pleadings. See

City of Brockton Ret. Sys. v. Avon Prods., Inc., No. 11 Civ. 4665(PGG), 2014 WL 4832321, at *12 (S.D.N.Y. Sept. 29, 2014) (internal quotation marks and citations omitted)(noting that a court may consider any documents that that the Complaint "relies heavily upon its terms and effect, thereby rendering the document integral to the complaint").

Under New York law, there is an implied warranty of merchantability, but it does not protect consumers where the alleged defect "was not attributable to a manufacturing or retail defect." Fagan v. AmerisourceBergen Corp., 356 F. Supp. 2d 198, 215 (E.D.N.Y. 2004) vacated on other grounds 163 F. App'x 37 (2d Cir. 2006) (quoting Elsroth v. Johnson &

Page 36 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-31 Filed 02/014/22 Page 37 of 46

Johnson, 700 F. Supp. 151, 160 (S.D.N.Y. 1988). Similarly, a manufacturer cannot be held liable for either negligence or strict liability when a "subsequent modification" is made after the product leaves the manufacturer that "alters the product and is the proximate cause of plaintiff's injuries." Id. at 206, 215 (citing Elsroth, 700 F. Supp. at 159); see also Duval v. Delta Int'l Machinery Corp., 13 Civ. 4270 (GHW), 2015 WL 4522911, at *5 (S.D.N.Y. July 27, 2015) (recognizing the availability of the substantial modification defense). Here, Holmes alleges that Apple is liable for his laptop, which he claims is defective because it contained CheckPoint's Kaseya tracking software. Compl. ¶¶ 89, 94, 101–02. Apple breached by not informing its distributor, Amazon, that, who was also party to the agreement that Holmes was legitimately in possession of the computer bearing the serial number C02RQ1T3G8WN. However, Holmes' own allegations makes clear that CheckPoint, not Apple, installed this software. Id. ¶ 76 (alleging that the laptop he received from Amazon "contained sensitive spy software, installed by Defendant[] CheckPoint Fluidic Systems

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 16 of 29 17 International, Ltd.").8

Holmes has therefore stated a claim for relief against Apple, and Apple had an obligation under their AppleCare agreement to remove that spyware, and support the Holmes claims against Amazon or be complicit in the actions of Amazon and CheckPoint's "two computer" fraud tale.

C. Fraudulent Concealment and Fraud in the Inducement
Apple moved for judgment on Holmes' sixth and seventh claims, arguing that he has not identified any specific misrepresentations or actionable omissions by Apple, as required

Page 37 of 46


DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-13 Filed 02/014/22 Page 38 of 46

under Rule 9(b) of the Federal Rules of Civil Procedure. Apple Mem. at 17, 20. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). When asked by the Court of Appeals, Judge Wesley, directly she answered truthfully that there was only one computer. When confronted by the Judge as to how to explain the "two computer" she responded that it was unclear, knowing that that was a misrepresentation by the attorney for Amazon who stated explicitly that "There were two computers." A complaint must therefore: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." ATSI Apple never offered to take the spyware off the computer under the service agreement under AppleCare when Holmes complained to Apple before the action was commenced.

Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007) (quoting Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir. 2000)). Allegations that are not conclusory or "unsupported by factual allegations" can meet this standard. Id. (citing Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986)). For a fraudulent concealment claim, a defendant may only be liable for an omission of a material fact if it had a "duty to disclose" that fact. Schwatka v. Super Millwork, Inc., 965 N.Y.S.2d 547, 551 (2d Dep't 2013). Specifically, under New York law, a defendant may be held liable if it

"has superior knowledge or means of knowledge, such that the transaction without disclosure is rendered inherently unfair." *Martin Hilti Family Tr. v.*

Page 38 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-13 Filed 02/014/22 Page 39 of 46

*Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 484 (S.D.N.Y. 2015) (quoting *Miele v. Am. Tobacco Co.*, 770 N.Y.S.2d 386, 391 (2d Dep't 2003)).

Apple argues that Holmes has only pleaded that Apple "had full knowledge of the defects" in the laptop sold to him by Amazon—presumably the presence of the Kaseya tracking software—and that Apple "failed to notify" him of this, without providing any supporting factual allegations. See Apple Mem. at 18.9 Holmes makes no factual allegations regarding Apple's knowledge of the installation of the software or when Apple became aware of any "defects" on the computer, if ever. Holmes does not attempt to address these deficiencies in his opposition. Because Holmes' only allegations with respect to fraudulent concealment are conclusory, he has not stated a claim, and the Court GRANTS Apple's motion for judgment on the pleadings.

With respect to Holmes' seventh claim, for fraud in the inducement, Apple argues that Holmes has not alleged any statement made by Apple, much less any statement with specificity. See Apple Mem. at 20. Throughout the complaint, Holmes refers solely to "above representations" or "various representations concerning" the laptop without detailing the contents of the representations, who made the representations, when and where they were made, and why they were fraudulent at the time they were made. See Compl. ¶¶ 23, 116. Amazon also argues for judgment on the pleadings for these fraud claims based on Rule 9(b)'s heightened pleading standard. Memorandum of Law in Support of Amazon's Motion for

Although Holmes' pleadings do not state with particularity what the defect Apple allegedly

Page 39 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-13 Filed 02/014/22 Page 40 of 46

concealed was, the Court understands the defect alleged to be the same defect Holmes described in earlier causes of action—the presence of the Kaseya tracking software. See Compl. ¶¶ 76, 83, 89 (describing the laptop received from Amazon as defective because it contained tracking software).

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 18 of 29
19
D. False Advertising and Unfair Business Practices
Holmes' eighth claim alleges that Amazon and Apple engaged in false advertising and unfair business practices prohibited by New York General Business Law § 349. See Compl. ¶

121. Apple argues that Holmes has failed to allege a violation of § 349 because he has not alleged that Apple made misstatements while engaged in "consumer-oriented conduct." Apple Mem. at 21–22. Private contract disputes do not fall within the ambit of § 349; rather, a plaintiff bringing

a § 349 claim must allege conduct that has "a broader impact on consumers at large." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (1995).Thus, the allegedly deceptive conduct "may not be limited to just the parties." Nungesser v. Columbia Univ., 169 F. Supp. 3d 353, 373 (S.D.N.Y. 2016) (quoting Teller v. Bill Hayes, Ltd., 630 N.Y.S.2d 769, 772 (2d Dep't 1995)). Holmes has failed to allege that Apple's conduct "affected anyone except him." It affected his associate and his relations with her as the party who registered the AppleCare Id. He has, for example, alleged any facts to suggest that Apple routinely sells computers to third party distributors, such as Amazon marked as "new" when they are actually used by CheckPoint and sold in Amazon

Page 40 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

boxes and contain third party surveillance software placed by CheckPoint. See Compl; see also Koch v. Greenberg, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014) ("Where the acts complained of potentially affect similarly situated consumers, the consumer-oriented prong will be met.") (internal citations and quotations marks omitted). Indeed, Holmes himself has noted that his allegations suggest a "bizarre fact pattern." Compl. ¶ 14 (Introductory Statement).

## V. AMAZON'S MOTION FOR ENTRY OF JUDGMENT

The Court has already entered judgment in favor of Amazon on Holmes' sixth, seventh, and eighth claims. Amazon also seeks the entry of judgment in its favor on Holmes' second through fifth claims, and seeks entry of judgment against it on Holmes' first claim pursuant to its

Rule 68 offer of judgment. See Amazon Mem. at 1–2.

Specifically, Amazon presented Holmes with an offer of judgment in the amount of $2,351.12, the value of the Apple MacBook Pro and AppleCare Holmes purchased on June. A. Breach of Contract Claim

Holmes alleges that Amazon breached their contract by selling him a laptop that contained "sensitive spy software" rather than a brand new Apple laptop. See Compl. ¶¶

Page 41 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

73–76.

When Holmes entered into the purchase agreement with Amazon, he also agreed to Amazon's conditions of use. 21

he was notified that by purchasing a product on Amazon, he agreed to its conditions of use. See

Opp. at 6 (conceding that he signed the contract but disputing that the remedy limitation in the

contract applies to his tort claims against Amazon).

The agreement provided that "if a product offered by Amazon itself is not as described, [Holmes'] sole remedy is to return it in unused condition" and receive a refund. Such an Agreement is unenforceable in New York.

B. Breach of Warranty Claims
Holmes' second and third claims against Amazon seek relief for breach of express warranty and breach of implied warranty. See Compl. ¶¶ 80–91. 6.
Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 22 of 29

C. Common Law Negligence and Strict Products Liability Claims contract with Holmes,

pleadings with respect to claims four and five.
D. Amazon's Motion for Summary Judgment
As a preliminary matter, the Court finds that it has the discretion under Rule 12(d) to

Page 42 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1498-31 Filed 02/014/22 Page 43 of 46

convert Amazon's motion into a motion for summary judgment, because both Amazon and Holmes have had a "reasonable opportunity" to present relevant material to the Court notwithstanding the fact that Holmes' Motion to Amend Complaint, filed October 6, 2017, was never heard, acted upon, or decided for more than 8 months until the case was over June, 2018, denying him due process of law and an opportunity to be heard on that motion. "The essential inquiry is whether the pro se litigant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings, including the Motion to Amend the Complaint."

& A. Books, Inc., 770 F.2d 288, 295 (2d Cir. 1985). third-party

I. HOLMES' MOTION TO AMEND

On October 6, 2017, Holmes moved to amend the Complaint. See Doc. 47. This was two days after CheckPoint filed with this court

A court may deny leave to amend a complaint for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009). The foregoing case cited by Judge Ramos in his decision denying Plaintiff, Tyrone Holmes motion is a decision based on Georgia law.(quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)). What maybe futile under Georgia law may not be so under Federal Rule 15. as applied under New York

Page 43 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-31 Filed 02/014/22 Page 44 of 46

law.

A pro se complaint should be read liberally, and the Court should grant leave to

amend if a "liberal reading" provides "any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)). But where the issues with a complaint are "substantive" and cannot be cured by more artful or specific allegations, repleading would be "futile" and a request for further amendment"should be denied." Id. Plaintiff's case is clearly distinguishable from the case of Cuoco v. Moritsugu, cited by the court. In that case there was a statute if limitation problem detailed by the court as follows: "The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). Amendment would be futile here because Plaintiff's claims arise from events, which he was aware of, that occurred more than three years before he commenced this Section 1983 action. Thus, his claims are time barred, see Cloverleaf Realty v. Town of Wawayanda, 572 F.3d 93, 94 (2d Cir. 2009)(The statute of limitations for a § 1983 claim arising in New York is three years), and amendment would be futile because repleading would not cure the timeliness deficiency."

Holmes' proposed amended complaint does not add any factual allegations which would alter the Court's determination that judgment on the pleadings in favor of Apple and summary judgment in favor of Amazon is appropriate. For example, Holmes still fails to allege specific misrepresentations made to him about the laptop he purchased from Amazon. See Doc. 47-1 ¶¶ Clearly Judge Ramos does not think that selling a customer a computer , in which a prior customer has installed spyware is actionable against the seller.

Page 44 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1489-31 Filed 02/014/22 Page 45 of 46

That of course, is not the law of the state of New York.
121–22, 127. Holmes also adds a cause of action against FedEx for acting negligently in its Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 28 of 29
Case 1:17-cv-0

FINANCIAL DISCLOSURE REPORT OF JUDGE EDGARDO RAMOS IS ATTACHED

This report indicate that many of the and trust in which Judge Ramos is invested are heavily invested in Amazon.

SUMMARY
There were a causes of actions alleged in the Complaint against all of the defendants

in a liberal reading if the Complaint. The issue of one computer or two computers should have been resolved in favor of the plaintiff for purposes of the defendants, motions to dismiss.

Finally Judge Ramos should have recused himself because of his financial interest in Apple, and FedEx. and the appearance of partiality to Companies in which he held stock which he did not disclose until after the case was completed.

Wherefore Plaintiff moves this court to vacate the Decision, Order , and Judgment, and for such other and further relief as justice may require,

Respectfully submitted,

2/4/2022

**s/_____ Tyrone Holmes**

DocuSigned by:

6F2AA96C87CC4C1...

Page 45 of 46

DocuSign Envelope ID: 664CAB13-77BA-41FC-AFE8-D2702D43642B

Case 1:17-cv-04557-ERRA Document 1498-31 Filed 02/014/22 Page 46 of 46

**A-5**



O'Melveny & Myers LLP Times Square Tower
7 Times Square
New York, NY 10036-6537

April 18, 2022

**VIA ECF**

T: +1 212 326 2000 F: +1 212 326 2061 omm.com

File Number:

**Hannah Y. Chanoine**

D: +1 212 326 2128 hchanoine@omm.com

Case 1:19-cv-01628-RA Document 136

Filed 04/18/22

Page 1 of 3

---

The Honorable Ronnie Abrams
United States District Court for the Southern District of New York Thurgood Marshall U.S. Courthouse
40 Foley Square, Courtroom 1506
New York, NY 10007

**Re: *Tyrone Holmes v. City of New York, et al., Case No. 1:19-cv-01628-RA (S.D.N.Y.)*** Dear Judge Abrams:

We represent Defendant Apple Inc. in the above-captioned matter ("*Holmes II*"). We write to renew our request that the court stay all briefing and resolution of Plaintiff Tyrone Holmes's March 9, 2022 Motion to Vacate Judgment in this case (the "*Holmes II* Motion") (*Holmes II* Doc. 119 (March 9, 2022)). Your Honor has been assigned a related case, *Holmes v. Apple Inc.,* 1:17-cv-04557-RA (S.D.N.Y.) ("*Holmes I*"). *Holmes I* and *Holmes II* arise from a single set of facts and are presently in the same procedural posture. Hon. Edgardo Ramos was previously assigned to both *Holmes I* and *Holmes II*, and he dismissed both cases. (*See Holmes I* Doc. 121; *Holmes II* Doc. 117.) Currently pending before Your Honor is Plaintiff's February 4, 2022 Motion to Vacate Judge Ramos's judgment in *Holmes I* ("*Holmes I* Motion") (*Homes I* Doc. 148 (February 4, 2022)), which is fully briefed and is materially identical to the *Holmes II* Motion (*Holmes II* Doc. 119 (March 9, 2022)). On March 10, 2022, Apple therefore requested that *Holmes II* be transferred to Your Honor and further requested that the court stay resolution of the *Holmes II* Motion pending Judge Abrams' resolution of the *Holmes I* Motion. (*Holmes II* Doc. 120.) The Court has not resolved Apple's request that briefing and resolution of the *Holmes II* Motion be stayed pending Your Honor's resolution of the *Holmes I* Motion. Given the

substantial overlap between *Holmes I* and *Holmes II* and the highly unusual procedural posture of this case, we respectfully renew our request that the court stay all briefing and resolution of the *Holmes II* Motion.

***Motion filed in* Holmes I *and assigned to Your Honor.*** On January 21, 2022, the Clerk of Court issued a letter in *Holmes I* disclosing Judge Ramos's ownership interest in Apple Stock (*Holmes I* Doc. 146). On February 4, 2022, Plaintiff filed the *Holmes I* Motion seeking to vacate Judge Ramos's July 24, 2018 judgment in *Holmes I* in response to the Clerk of Court's January 21, 2022 letter. (*Homes I* Doc. 148.) *Holmes I* was then reassigned to Your Honor on February 16, 2022, in accordance with the Clerk of Court's January 21, 2022 letter for Your Honor to consider Plaintiff's *Holmes I* Motion without the participation of Judge Ramos. Apple responded

Austin • Century City • Dallas • Los Angeles • Newport Beach • New York • San Francisco • Silicon Valley • Washington, DC Beijing • Brussels • Hong Kong • London • Seoul • Shanghai • Singapore • Tokyo

**'Melveny**

to the *Holmes I* Motion on March 4, 2022. (*Holmes I* Doc. 159.) Plaintiff's *Holmes I* Motion is currently under review by Your Honor.

***Nearly identical motion filed in* Holmes II.** On January 31, 2022, the Clerk of Court issued in the above-captioned matter a letter materially identical to the January 21 letter in *Holmes I.* (*Holmes II* Doc. 118). Plaintiff has now filed the *Holmes II* Motion seeking to vacate Judge Ramos's February 26, 2020 order dismissing all of Plaintiff's claims *Holmes II* with prejudice. (*Holmes II* Doc. 119.) This motion is nearly identical to the *Holmes I* Motion.

**Holmes II *was reassigned to Your Honor.*** On March 10, 2022, Apple requested that *Holmes II* be transferred to Your Honor and further requested that the court stay resolution of the *Holmes II* Motion pending Judge Abrams' resolution of the *Holmes I* Motion. (*Holmes II* Doc. 120.) *Holmes II* was reassigned to Hon. Vernon S. Broderick on March 11, 2022. Because Apple was required to respond on the merits to the *Holmes II*

Motion by March 23, 2022 under Southern District of New York Local Rule 6.1(b) while Apple's request that *Holmes II* be transferred to Your Honor and stayed was still pending, on March 22, 2022, Apple requested that the court extend Apple's time to respond to the *Holmes II* Motion to fourteen days following the court's resolution of Apple's March 10, 2022 letter requesting that the above-captioned matter be transferred to Your Honor (*Holmes II* Doc. 120). Apple's request for an extension of time was granted on March 23, 2022. (*Holmes II* Doc. 127.) On April 11, 2022, *Holmes II* was reassigned to Your Honor. The Court has not resolved Apple's request that briefing and resolution of the *Holmes II* Motion be stayed pending Your Honor's resolution of the *Holmes I* Motion.

***Good Cause exists to stay resolution of the* Holmes II *Motion.*** Because Your Honor is already considering Plaintiff's fully briefed and materially identical *Holmes I* Motion, good cause exists to stay briefing and resolution of the *Holmes II* Motion pending resolution of the *Holmes I* Motion. Both the underlying facts of *Holmes I* and *Holmes II* and Plaintiff's motions to vacate Judge Ramos's judgments and orders in both matters concern the same or substantially similar parties, property, transactions, or events, and there is substantial factual overlap between the two matters and the two motions. Staying briefing and resolution of the *Holmes II* Motion serves the interest of judicial economy and will avoid subjecting the parties to conflicting orders and substantial duplication of effort and expense, delay, or undue burden on the Court, parties or witnesses, because Your Honor is already evaluating Plaintiff's materially identical *Holmes I* Motion.

For these reasons, we respectfully renew our request that briefing and resolution of the *Holmes II* Motion be stayed pending Your Honor's resolution Plaintiff's materially identical *Holmes I* Motion.

2

Case 1:19-cv-01628-RA Document 136 Filed 04/18/22 Page 3 of 3

'Melveny

Respectfully Submitted,

Hannah Y. Chanoine
of O'MELVENY & MYERS LLP

cc: Plaintiff Tyrone Holmes and all counsel

3

# A-6



O'Melveny & Myers LLP Times Square Tower
7 Times Square
New York, NY 10036-6537

April 18, 2022

**VIA ECF**

T: +1 212 326 2000 F: +1 212 326 2061 omm.com

File Number:

**Hannah Y. Chanoine**

D: +1 212 326 2128 hchanoine@omm.com

Case 1:19-cv-01628-RA Document 137

Filed 04/19/22

Page 1 of 3

The Honorable Ronnie Abrams
United States District Court for the Southern District of New York

Thurgood Marshall U.S. Courthouse
40 Foley Square, Courtroom 1506
New York, NY 10007

**Re:** ***Tyrone Holmes v. City of New York, et al., Case No. 1:19-cv-01628-RA (S.D.N.Y.)*** Dear Judge Abrams:

We represent Defendant Apple Inc. in the above-captioned matter ("*Holmes II*"). We write to renew our request that the court stay all briefing and resolution of Plaintiff Tyrone Holmes's March 9, 2022 Motion to Vacate Judgment in this case (the "*Holmes II* Motion") (*Holmes II* Doc. 119 (March 9, 2022)). Your Honor has been assigned a related case, *Holmes v. Apple Inc.,* 1:17-cv-04557-RA (S.D.N.Y.) ("*Holmes I*"). *Holmes I* and *Holmes II* arise from a single set of facts and are presently in the same procedural posture. Hon. Edgardo Ramos was previously assigned to both *Holmes I* and *Holmes II*, and he dismissed both cases. (*See Holmes I* Doc. 121; *Holmes II* Doc. 117.) Currently pending before Your Honor is Plaintiff's February 4, 2022 Motion to Vacate Judge Ramos's judgment in *Holmes I* ("*Holmes I* Motion") (*Homes I* Doc. 148 (February 4, 2022)), which is fully briefed and is materially identical to the *Holmes II* Motion (*Holmes II* Doc. 119 (March 9, 2022)). On March 10, 2022, Apple therefore requested that *Holmes II* be transferred to Your Honor and further requested that the court stay resolution of the *Holmes II* Motion pending Judge Abrams' resolution of the *Holmes I* Motion. (*Holmes II* Doc. 120.) The Court has not resolved Apple's request that briefing and resolution of the *Holmes II* Motion be stayed pending Your Honor's resolution of the *Holmes I* Motion. Given the substantial overlap between *Holmes I* and *Holmes II* and the highly unusual procedural posture of this case, we respectfully renew our request that the court stay all briefing and resolution of the *Holmes II* Motion.

***Motion filed in* Holmes I *and assigned to Your Honor.*** On January 21, 2022, the Clerk of Court issued a letter in *Holmes I* disclosing Judge Ramos's ownership interest in Apple Stock (*Holmes I* Doc. 146). On February 4, 2022, Plaintiff filed the *Holmes I* Motion seeking to vacate Judge Ramos's July 24, 2018 judgment in *Holmes I* in response to the Clerk of Court's January 21, 2022 letter. (*Homes I* Doc. 148.) *Holmes I* was then reassigned to Your Honor on February 16, 2022, in accordance with the Clerk of Court's January 21, 2022 letter for Your

Honor to consider Plaintiff's *Holmes I* Motion without the participation of Judge Ramos. Apple responded

Austin • Century City • Dallas • Los Angeles • Newport Beach • New York • San Francisco • Silicon Valley • Washington, DC Beijing • Brussels • Hong Kong • London • Seoul • Shanghai • Singapore • Tokyo

Case 1:19-cv-01628-RA Document 137 Filed 04/19/22 Page 2 of 3

'Melveny

to the *Holmes I* Motion on March 4, 2022. (*Holmes I* Doc. 159.) Plaintiff's *Holmes I* Motion is currently under review by Your Honor.

***Nearly identical motion filed in* Holmes II*.*** On January 31, 2022, the Clerk of Court issued in the above-captioned matter a letter materially identical to the January 21 letter in *Holmes I*. (*Holmes II* Doc. 118.) Plaintiff has now filed the *Holmes II* Motion seeking to vacate Judge Ramos's February 26, 2020 order dismissing all of Plaintiff's claims *Holmes II* with prejudice. (*Holmes II* Doc. 119.) This motion is nearly identical to the *Holmes I* Motion.

**Holmes II *was reassigned to Your Honor.*** On March 10, 2022, Apple requested that *Holmes II* be transferred to Your Honor and further requested that the court stay resolution of the *Holmes II* Motion pending Judge Abrams' resolution of the *Holmes I* Motion. (*Holmes II* Doc. 120.) *Holmes II* was reassigned to Hon. Vernon S. Broderick on March 11, 2022. Because Apple was required to respond on the merits to the *Holmes II* Motion by March 23, 2022 under Southern District of New York Local Rule 6.1(b) while Apple's request that *Holmes II* be transferred to Your Honor and stayed was still pending, on March 22, 2022, Apple requested that the court extend Apple's time to respond to the *Holmes II* Motion to fourteen days following the court's resolution of Apple's March 10, 2022 letter requesting that the above-captioned matter be transferred to Your Honor (*Holmes II* Doc. 120). Apple's request for an extension of time was granted on March 23, 2022. (*Holmes II* Doc. 127.) On April 11, 2022, *Holmes II* was reassigned to Your Honor. The Court has not resolved Apple's request that briefing and resolution of the *Holmes II* Motion be stayed pending Your Honor's resolution of the *Holmes I* Motion.

**_Good Cause exists to stay resolution of the_ Holmes II _Motion._**
Because Your Honor is already considering Plaintiff's fully briefed and materially identical _Holmes I_ Motion, good cause exists to stay briefing and resolution of the _Holmes II_ Motion pending resolution of the _Holmes I_ Motion. Both the underlying facts of _Holmes I_ and _Holmes II_ and Plaintiff's motions to vacate Judge Ramos's judgments and orders in both matters concern the same or substantially similar parties, property, transactions, or events, and there is substantial factual overlap between the two matters and the two motions. Staying briefing and resolution of the _Holmes II_ Motion serves the interest of judicial economy and will avoid subjecting the parties to conflicting orders and substantial duplication of effort and expense, delay, or undue burden on the Court, parties or witnesses, because Your Honor is already evaluating Plaintiff's materially identical _Holmes I_ Motion.

For these reasons, we respectfully renew our request that briefing and resolution of the _Holmes II_ Motion be stayed pending Your Honor's resolution Plaintiff's materially identical _Holmes I_ Motion.

2

Case 1:19-cv-01628-RA Document 137 Filed 04/19/22 Page 3 of 3

'Melveny _____

cc: Plaintiff Tyrone Holmes and all counsel

Application granted. The parties' briefing deadlines with respect to Plaintiff's March 9, 2022 motion are stayed until further notice. All other deadlines in this case are stayed until further notice. The Clerk of Court is respectfully directed to mail a copy of this endorsement to Plaintiff.

SO ORDERED.

_____ Hon. Ronnie Abrams April 19, 2022

Respectfully Submitted,

Hannah Y. Chanoine
of O'MELVENY & MYERS LLP



3

**A-7**

**Unless otherwise ordered by Judge Abrams, these Individual Practices apply to all civil matters except for civil pro se cases**.

1. Communications with Chambers A. Letters. Except as otherwise provided below, communications with the Court shall be by letter, filed electronically on ECF. Parties should not submit courtesy copies of letters filed on ECF. Letters containing sensitive or confidential information that cannot be filed on ECF in accordance with the procedures set forth in Paragraph 5 below may be emailed to the Court (Abrams_NYSDChambers@nysd.uscourts.gov) as a text-searchable .pdf attachment with a copy simultaneously delivered to all counsel. Any such email shall state clearly in the subject line: (1) the caption of the case, including the lead party names and docket number, and (2) a brief description of the contents of the letter. Parties shall not include

substantive communications in the body of the email; such communications shall be included only in the body of the attached letter. Unless otherwise ordered by the Court, letters may not exceed five (5) pages in length. Letters solely between parties or their counsel or otherwise not addressed to the Court may not be filed on ECF or otherwise sent to the Court (except as exhibits to an otherwise properly filed document)

# A-8

## Individual Practices apply to Pro Se Litigants

1.Communications with Chambers A. Letters. Except as otherwise provided below, communications with the Court shall be by letter, filed electronically on ECF. Parties should not submit courtesy copies of letters filed on ECF. Letters containing sensitive or confidential information that cannot be filed on ECF in accordance with the procedures set forth in Paragraph 5 below may be emailed to the Court (Abrams_NYSDChambers@nysd.uscourts.gov) as a text-searchable .pdf attachment with a copy simultaneously delivered to all counsel. Any such email shall state clearly in the subject line: (1) the caption of the case, including the lead party names and docket number, and (2) a brief description of the contents of the letter. Parties shall not include substantive communications in the body of the email; such communications shall be included only in the body of the attached letter. Unless otherwise ordered by the Court, letters may not exceed five (5) pages in length. Letters solely between parties or their counsel or otherwise not addressed to the Court may not be filed on ECF or otherwise sent to the Court (except as exhibits to an otherwise properly filed document)

# A-9

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

TYRONE HOLMES,

Plaintiff,

v.

APPLE INC., AMAZON.COM, LLC, and CHECKPOINT FLUIDIC SYSTEMS
INTERNATIONAL, LTD.,

Defendants.

17-CV-4557 (RA)

MEMORANDUM OPINION AND ORDER

**USDC-SDNY**
**DOCUMENT ELECTRONICALLY FILED DOC#:**

**DATE FILED:** 06/27/2022

RONNIE ABRAMS, United States District Judge:

Plaintiff Tyrone Holmes, proceeding *pro se*,[1] filed this action in 2017 against Apple Inc.,

Amazon.com, LLC, and Checkpoint Fluidic Systems International, Ltd. (collectively, "Defendants") alleging various contract and tort claims. Holmes' claims stemmed from his purchase of an Apple laptop from Amazon: he asserted that the laptop was not new as advertised, but instead had previously been owned by Checkpoint, who had installed tracking software on the laptop, and that after Checkpoint had shipped the laptop to Dubai it went missing in transit. Holmes alleged that Amazon then sold the laptop to him, at which point Checkpoint used the tracking software to track it to Holmes and his wife, from whom the New York City Police Department recovered the computer.

On July 23, 2018, District Judge Ramos issued an opinion and order granting Checkpoint's motion to dismiss for lack of jurisdiction; granting Apple's motion for entry of judgment on the pleadings; and granting Amazon summary judgment on all claims except for one, on which judgment was entered against Amazon in the amount of $2,351.00. Judge Ramos also denied

[1] Holmes was represented by Alex Antzoulatos from May 10, 2018 to May 29, 2018 and by Robert Leino from August 21, 2018 to April 3, 2020.

Case 1:17-cv-04557-RA Document 163 Filed 06/27/22 Page 2 of 6

Plaintiff's motion to amend his complaint. Plaintiff appealed, and the Second Circuit affirmed Judge Ramos' ruling in full on *de novo* review. The Circuit's mandate issued on January 6, 2020. Two years after the mandate had issued and the case had closed, Judge Ramos disclosed that it had been brought to his attention that, "well after the case was filed but while he still presided over the case, he owned stock in Apple Inc." *See* January 21, 2022 Clerk of Court Letter. According to Judge Ramos, his ownership of that stock "neither affected nor impacted his decisions" in the case. *See id*. That said, Judge Ramos recognized in the disclosure letter that his stock ownership might have required recusal under the Code of Conduct for United States Judges. *See id*. According to Judge Ramos' 2019 financial disclosure report, his Apple stock was an inherited investment with a total value of $15,000 or less, and he had gained $1,000 or less in

income from that stock during 2019. *See* Chanoine Dec. Ex. A.

In response to this disclosure, Plaintiff has moved to vacate the judgment against him. He

asserts that Judge Ramos' financial stake in Apple rendered him biased (or, at the very least, created the appearance of impartiality) and thus required his disqualification. *See* 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."). Plaintiff also seeks relief from judgment on the ground that Amazon's counsel committed fraud on the court by representing to the Circuit panel during oral argument that there were two computers at issue in this case. For the following reasons, Plaintiff's motion is denied.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 60(b) provides that a court may relieve a party from a final judgment for the following reasons: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time

2

Case 1:17-cv-04557-RA Document 163 Filed 06/27/22 Page 3 of 6

to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Rule 60(b)(6) is a "catch-all provision" that is "properly invoked only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule." *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc*., 970 F.3d 133, 143 (2d Cir. 2020).[2] "Motions under Rule 60(b) are addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances." *Mendell ex rel. Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990). "The burden of proof on a Rule 60(b) motion is on the party seeking relief from the earlier judgment or order," *In re Gildan Activewear, Inc. Sec. Litig*., No. 08-CV-5048 (HB), 2009 WL 4544287, at

*2 (S.D.N.Y. Dec. 4, 2009), who "has an onerous standard to meet," *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001).

Federal Rule of Civil Procedure 60(d)(3) provides that, notwithstanding the limitations of

Rule 60(b), a court has the power to "set aside a judgment for fraud on the court." To state a claim for relief under Rule 60(d)(3), a litigant must allege a "fraud on the court" that "seriously affects the integrity of the normal process of adjudication." *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988). In other words, the rule "embraces only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Hadges v.*

2 Unless otherwise noted, case quotations omit all internal citations, quotation marks, alterations, and footnotes.

3

Case 1:17-cv-04557-RA Document 163 Filed 06/27/22 Page 4 of 6

*Yonkers Racing Corp*., 48 F.3d 1320, 1325 (2d Cir. 1995). A plaintiff must also show that such relief is necessary "to prevent a grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47 (1998).

Because Plaintiff is currently proceeding *pro se*, the Court interprets his filings to "raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

**DISCUSSION**

The Court assumes the parties' familiarity with the underlying facts and procedural history of this case.

Reviewing Plaintiff's claims with the special solicitude due to *pro se* pleadings, the Court finds that Plaintiff has not shown that he is entitled to relief under any prong of Rule 60, because any error that may possibly have resulted from Judge Ramos' failure to recuse himself is rendered harmless by the Circuit's *de novo* affirmance.

*See Faulkner v. National Geographic Enters., Inc.*, 409 F.3d 26, 42 n.10 (2d Cir. 2005) (holding that "[g]iven [that court's] disposition of the Faulkner appellants' claims, [the district court's] denial of the recusal motion was at most harmless error as to them"); *accord Camacho v. Autoridad de Telefonos de Puerto Rico*, 868 F.2d 482, 490 (1st Cir. 1989) ("Since we have independently confirmed the correctness of the lower court's decision, the judge's refusal to recuse himself was, at worst, harmless error."); *see also Paddington Partners v. Bouchard*, 34 F.3d 1132, 1144 (2d Cir. 1994) (describing Rule 60's baseline "requirement of the judgment's not having been affirmed on appeal"). In other words, that Plaintiff's claims "received a full review by an impartial panel," *Williamson v. Indiana Univ.*, 345 F.3d 459, 465 (7th Cir. 2003), ameliorates any concerns about Judge Ramos' financial stake in Apple impacting his July 23, 2018 opinion, or about public confidence in an unbiased judiciary.

4

Plaintiff attempts to cast doubt on the validity of the Second Circuit's affirmance by arguing that Amazon committed fraud on the court during oral argument, tainting the Circuit's decision and justifying relief from its ruling. He specifically takes issue with Amazon's counsel's statement during argument that "[t]here are two computers" at issue in this case. Reply MOL at 7. But Amazon's statement simply reflected its position throughout this litigation that the laptop it delivered to Holmes is a different laptop from the one recovered by the NYPD that contained Checkpoint's tracking software—a position that Judge Ramos agreed with in granting Amazon's summary judgment motion. *See* July 23, 2018 opinion at 26-28 (finding no genuine dispute of fact that "the laptop [Amazon] shipped to Holmes was not CheckPoint's laptop, but was a different computer altogether"). Amazon's maintaining its successful theory of the case on appeal does not constitute fraud on the court—to the contrary, it "is exactly what is expected in the normal adversary process." *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95-96 (2d Cir. 2002) (per curiam) (concluding that a plaintiff doing "no more than complain[ing] that the defendants disputed his version of the law and facts" was "insufficient to state a claim for fraud on the court"). Nor can fraud on the court occur where, as here, "[P]laintiff was afforded an opportunity for fair litigation of the dispute, because fraud on the court occurs only where the fraud seriously affects the integrity of the normal process of adjudication." *Weldon v. United States*, 845 F. Supp. 72, 82

(N.D.N.Y. 1994), *aff'd*, 70 F.3d 1 (2d Cir. 1995) (citing *Gleason*, 860 F.2d at 559).[3]

[3] Plaintiff also contends that Amazon's statement is inconsistent with Apple's representation at oral argument that "as far . . . as Apple is concerned, there was one shipment, of one computer, to Amazon." Reply MOL at 7. This theory suffers from two flaws. First, a defendant's position may be inconsistent with that of its co-defendant without being fraudulent. Second, Apple's and Amazon's statements are not necessarily inconsistent with one another: it could be the case that Apple shipped only one computer to Amazon *and* that the computer with the Checkpoint software is different from the computer Amazon shipped to Holmes.

Finally, Plaintiff characterizes as fraudulent CheckPoint's "reporting a computer as stolen, knowing that was not true, and falsely and fraudulently accusing Plaintiff of the theft." Reply Dec. to Apple's MOL at 7. But this allegation describes events that occurred prior to this litigation, not statements that were made to any court.

---

5

Case 1:17-cv-04557-RA

Document 163 Filed 06/27/22 Page 6 of 6

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion to vacate is denied. The Clerk of Court is respectfully directed to terminate the motion at docket 150 and mail a copy of this Order to Plaintiff.

SO ORDERED.

Dated: June 27, 2022
New York, New York



Hon. Ronnie Abrams United States District Judge

---

6

# A-10

Case 1:17-cv-04557-RA Document 54

H9ETHOLC

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW
YORK ------------------------------x

TYRONE HOLMES,

Plaintiff,

v.
APPLE INC., AMAZON.COM, LLC

Filed 10/18/17

Page 1 of 24 1

1 2 3 4 5 6 7 8 9

and CHECKPOINT INTERNATIONAL,

17 CV 4557 (ER)

New York, N.Y. September 14, 2017 10:00 a.m.

HON. EDGARDO RAMOS,
District Judge

APPEARANCES

10
11    Before:

TYRONE HOLMES, PRO SE

FLUIDIC SYSTEM LTD.,

Defendants. -----------------------------x

O'MELVENY & MYERS
Attorneys for Defendant Apple

BY: EDWARD MOSS HANNAH CHANOINE

DAVIS WRIGHT TREMAINE
Attorneys for Defendant Amazon.com

BY: MICHAEL GOETTIG

BY: BRIAN GRAIFMAN

BORAH GOLDSTEIN ALTSCHULER NAHINS & GOIDEL Attorneys
for Defendant Checkpoint

SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

1 2 3 4 5 6 7 8 9

(In open court, case called)
THE COURT: Good morning to you all.
This is on for an order to show cause with plaintiff,

Mr. Holmes, seeking entry of default judgment against
the defendants for their failure to timely answer the
complaint. However, this is the first time that the
parties are appearing before me. So Mr. Holmes, I'm
going to ask you to tell me in a nutshell what your
case is about.

You can remain seated. Please move microphone closer to
you so we can hear you.

MR. HOLMES: Yes, your Honor. This claim is about the
negligent sale of a Department of Defense computer that
caused me harm in so many ways and from all three
companies. I filed the complaint, none of them
responded. Prior to that I sent the CEOs letters, phone
calls, starting since September 16 of 2016. No one
responded. That's when I filed the action. All of them
responded after I filed the default, the judgment for
default.

THE COURT: And I take it that the complaint does not
indicate the interactions that you just referred to,
that you contacted CEOs, that you made contact with
each of the companies. Tell me a little bit about that.
What did you do?

MR. HOLMES: I initially wrote to Tim and Jeff, the CEOs
of Apple and Amazon, explaining what happened.

THE COURT: Tim and Jeff?

SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

1 2 3 4 5 6 7 8 9

Case 1:17-cv-04557-RA Document 54 Filed 10/18/17 Page 3 of 24   3   H9ETHOLC

MR. HOLMES: Yes, the CEOs of Amazon and Apple.
THE COURT: Tim Cook and Jeff Bezos?
MR. HOLMES: That's correct. I explained to them what

happened, and that I was longtime customers of both
Apple and Amazon, and I wanted to take care of this
without it going any further. They didn't reply. They
just didn't respond.

THE COURT: Okay.

MR. HOLMES: Then my lawyer reached out to them by way
of a letter. They still doesn't reply or respond,
except for Amazon sent their law firm information back
saying that they would look into it, investigate, and
get back to us in due

THE COURT: And did they?

MR. HOLMES: Never. Never. Apple just ignored me
outright, downright completely.

Checkpoint was a little scary because they started out
intimidating me with the NYPD, so I didn't know exactly
how to respond to them, but I knew that I had bought
the computer from Amazon with AppleCare, and I knew
that when the computer arrived to my residence it was
shrink wrapped.

THE COURT: It was?
MR. HOLMES: Shrink wrapped as new.
THE COURT: Now you purchased a new computer from

MR. HOLMES: Amazon.com with AppleCare.

SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

10
11
12      course.

24      Amazon?
25

1 2 3 4 5 6 7 8 9

1

Case 1:17-cv-04557-RA Document 54 Filed 10/18/17 Page 4 of 24 4   H9ETHOLC

THE COURT: Okay.

MR. HOLMES: Which is reserved exclusively for new
Apples. They will not sell AppleCare if it's used. I
bought AppleCare, and it was delivered the next day.

Three months later, I'm sitting in church playing for a
funeral, the detective says come outside, you have
computer that belongs to the Department -- a
subcontractor of the Department of Defense. I said
officer, I'm not home. The next day he called, we had
to find which computer they was talking about because I
have several Apples. I have been with Apple since the
original music program, which is called Logic, which
was Notator then.

THE COURT: Called what?

MR. HOLMES: Notator. It was called Notator, now it's
called Logic Audio.

THE COURT: Logic Audio.

MR. HOLMES: Yes, transformed from the original
conception from program calls Notator, one of the first
musical sequences software on the Mac.

received

THE COURT: So the computer in question here, you
documentation from Amazon --
MR. HOLMES: Yes.
THE COURT: -- concerning that computer?

MR. HOLMES: Yes.
THE COURT: And it contained a serial number for that

SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

Case 1:17-cv-04557-RA Document 54 Filed 10/18/17 Page 5 of 24 5 H9ETHOLC

1 computer, if you know?


2

- 3  all--I


- 4  the next


- 5  from Amazon prior to that incident, I order it,
they send a


- 6  receipt, they deliver the next day, and life goes
on. But this


- 7  was a little different. Three months later, cops
are on me


- 8  saying find it or you are going to jail.

MR. HOLMES: Yeah, they sent a receipt and it has have that information. They sent a receipt, shipped day. As in the thousands of products that I bought

9
10 said you 11 time? 12

- •13  Actually

- •14  production, but that was only once or twice a year that I would

- •15  use it for video production. So I would let my wife use it to

THE COURT: Okay. And what happened that night? You didn't have the computer in your possession at that

MR. HOLMES: No, sir, I gave it to my estranged wife. I bought it for a third computer for my video

16 keep her 17

- •18  for four

- •19  thought it was a joke. I thought they were teasing me. I

- •20  didn't know what was going on.

off mine. That's the reason I bought it.
And they said give it back or you got to be arrested years, criminal possession of stolen property. I

•21  After three or four days with the officer

•22  corresponding with the lawyer, with me, he said
yes. In fact,

•23  this is a computer we wanted by any means
necessary. We don't

•24  care how you got it. And I have this on tape with
the officer

•25  saying we don't care how you got it, all we know
is we want it
SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

6  H9ETHOLC

1 2 3 4 5 6 7 8 9

back. We anything, are going Precinct.

don't care about your receipt, we don't care about but
we want it back, and if we don't get it back you to
turn yourself in tomorrow at 1:00 p.m. at the 47th

I was -- my mind still hasn't healed from the trauma,
because Judge, I'm not into the criminal system or
anything like that, I'm a church boy. And so when I'm
faced to have to check in every day to go to prison for
a computer that I bought off of Amazon, brand new took
the shrink wrap off, that -- I will never be the same,
never.

After 28 days of constant checking in to see if I have to turn myself in, because I had to locate my estranged wife, we had to hire a private investigator, hire lawyers to talk to the police officer every day to stop me from going to checking in for the 47th Precinct at one o'clock.

THE COURT: Okay. Let me turn to the defendants.

Let me start with Mr. Graifman. Tell me what happened from your perspective, if you can.

MR. GRAIFMAN: Sure, your Honor, Brian Graifman again for Checkpoint.

THE COURT: You can also remain seated.
MR. GRAIFMAN: Thank you, your Honor.
Well, Checkpoint had a computer which it purchased new

about a month before any events with Mr. Holmes arising, took the new computer, loaded it with software for its salespeople

SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

Case 1:17-cv-04557-RA Document 54 Filed 10/18/17 Page 7 of 24   7   H9ETHOLC

- • 1   in Dubai. Checkpoint is Louisiana. Checkpoint has no contacts

- • 2   with New York. Checkpoint put its software on the computer,

- • 3   including software that could be monitored by it's IT

- • 4   department, put a sticker on the bottom of it that says

- • 5   property of Checkpoint pumps.

•6  I suspect Mr. Holmes never saw the computer because he

•7  said that he gave the other computer to his wife, and I know,

•8  because I spoke to the detective who he said he wasn't there

•9  when it was recovered from a storage unit. I don't know why he

•10  thinks it's the same computer that he bought, which is

•11  something that your Honor may wish to raise and he may want to

•12  withdraw this lawsuit.

•13  But anyway, Checkpoint took its computer and gave it

•14  to Fed Ex. Fed Ex -- in the theft report that we put in our

•15  papers, the police investigation -- sorry, let me say something

•16  else. Checkpoint -- the computer never got to its destination,

•17  so Checkpoint contacted Fed Ex. The Fed Ex investigator

•18  contacts the Louisiana police department in Kenner, Louisiana.

• 19   The police department -- sorry, then it goes
further.

• 20   Checkpoint notices the computer being used, and
they're able to

• 21   locate it's used in New York and they're able to
access that

• 22   whoever is using it is turns out to be Mr.
Holmes' estranged

• 23   wife, and there's information on it.

• 24   THE COURT: So did you make a determination that
it

• 25   was Mr. Holmes' estrange wife that was using it?
SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

1
2
3
4
5    package?
6
MR. GRAIFMAN: No, there was no determination. I wasn't
involved myself. They reported that between Fed Ex and
the Kenner Police Department in Louisiana.

THE COURT: So what did Fed Ex say happened to that

MR. GRAIFMAN: It made it to the airport. According

•7   to the theft report, which I read, it made it to
the airport.

•8   That's as far as -- my understanding is that then
it

•9   disappeared somewhere in transit.

10 11 12 13

•14  in July,

•15  was activity on the computer, so they reengaged
with Fed Ex,

•16  reengaged with the local police, and contacted
the New York

•17  City Police. They just wanted their computer
back. It had

•18  sales -- their proprietary information on it.

THE COURT: And when, approximately?
MR. GRAIFMAN: On June 7, I believe.
THE COURT: So prior to Mr. Holmes' purchase.
MR. GRAIFMAN: Yes. It was noticed a month later that I
believe, if I could pull out my timeline. And there

•19  And eventually it was recovered from Mr. Holmes'

•20  estranged wife. I don't know why he thinks it's the same

•21  computer that he bought. Apple makes millions of computers, I

•22  understand. He didn't see the computer after he gave it to

•23  her, as far as I know, but maybe he could tell us something

•24  otherwise, but it had a Checkpoint sticker on it, anyone would

•25  have noticed it. So when it was recovered, they got their

SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

1 2 3 4 5 6 7 8 9

25

9  H9ETHOLC

computer back and they were hunky-dory until this lawsuit came. THE COURT: What can you tell me about the software that allowed your client to locate the computer in New York?

How close can you get me to the computer if you know
that it's being used somewhere in New York?

MR. GRAIFMAN: I don't know the answer to that, but I

what

he

know that IT in even law firms they're able to monitor
computers are doing and they have access to computers.
THE COURT: How did they identify Mr. Holmes? MR.
GRAIFMAN: Because there were pictures -- mentioned he
orders thousands of products from Amazon,

that's a lot of products. There were pictures of labels
of many

products and other personal information that was --
THE COURT: So you were able to go into the computer

and access the computer itself.
MR. GRAIFMAN: They could see pictures of things,

that's how.
THE COURT: Pictures of what?

MR. GRAIFMAN: Of labels of boxes and other information
identified in the theft report, I believe, somewhere in
here, or maybe it's on my timeline that I filed. There
were other personal documents that were on it.

THE COURT: Okay. And those documents were Mr. Holmes'
documents or his estranged wife's?

MR. GRAIFMAN: His estranged wife, but there may have

SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

10
H9ETHOLC

•1  been some that had his information on them. I haven't seen the

•2  actual documents and pictures. I was only retained like a week

•3  ago I think or something. So that's what I understand from

•4  the--

•5  THE COURT: So tell me why you're in default.

•6  MR. GRAIFMAN: Well, they received something, and

•7  they're a pump service company, so I know at one point there

•8  was a little confusion about --

•9  First, there are two registered agents in Louisiana

•10  for service, Mr. Elliot, Andrew Elliot who gives an affidavit

•11  here, and one other gentlemen who actually runs out of the

- 12  Texas office but sometimes it's Louisiana, and it wasn't

- 13  brought to his attention. It went to the front desk and it

- 14  went to someone else. It was originally described as I'm from

- 15  service, that's what they do, they service pumps. So I think

- 16  there

- 17  never

18 away. 19

was a little misunderstand from the start there, but it came to his attention or he would have gone on it right

THE COURT: I'm sorry?

20
21
22
23
24
25
MR. GRAIFMAN: Mr. Elliot, it never went to his attention until the default application came, then they immediately reached out for New York counsel, which

they eventually found me, and I wrote to your Honor right away.

THE COURT: But there's no dispute that it was served on your client's headquarters in Louisiana.

SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

Case 1:17-cv-04557-RA Document 54 Filed 10/18/17 Page 11 of 24  11

H9ETHOLC

- •1  MR. GRAIFMAN: There was service but not to a

- •2  registered agent that is accessible to see who the registered

- •3  agents are for service of process in Louisiana.

- •4  THE COURT: Is that improper service, your company

- •5  served at its headquarters?

- •6  MR. GRAIFMAN: I can't say that because I haven't

- •7  looked at it, actually. Assuming for the moment it is,

- •8  Checkpoint's lack of jurisdiction -- has no contact with New

• 9   York, and in my memorandum of law that I filed, document number

• 10   39, a default judgment of a party over which the Court does not

• 11   have personal jurisdiction due to lack of contacts with New

• 12   York is required to vacate a default. That's the argument in

• 13   the papers. The Court also has discretion under other grounds

• 14   like meritorious defenses, but the delay was 27 days. Their

• 15   answer would have been due 27 days before I wrote to the Court

• 16   for the premotion conference letter to make the motion to

• 17   dismiss.

• 18   THE COURT: But again, I want to make sure that I have

•19  the facts right concerning service. So it was
personally

•20  served by a process server at your client's
headquarters and

•21  service was received at that time?

•22  MR. GRAIFMAN: Papers were received but

•23  understood by whoever received it the gravity of

•24  originally described as service, and that's what

•25  service, that's what they do.
SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

it wasn't
it.  It was
they do,

1 2 3 4 5 6 7 8 9

25
Case 1:17-cv-04557-RA Document 54 Filed 10/18/17 Page 12 of 24 12
H9ETHOLC

THE COURT: It wasn't a pump that was being delivered,
it was papers.

MR. GRAIFMAN: Correct.
THE COURT: Mr. Goettig, is it?

MR. GOETTIG: That's correct.
THE COURT: Let me start with this, what happened from

your perspective?
MR. GOETTIG: Your Honor, there are many facts here

which are not in the dispute, but ultimately this is a
case of mistaken identity.

Mr. Holmes is under the impression that the computer
that was Checkpoint's computer was the computer that
was delivered to him by Amazon, and that's not so. You
heard
Mr. Holmes mention just a moment ago that the computer
that was delivered to him was shrink wrapped, it was a
new computer. Amazon has tracking. It has a UPS
tracking code indicating that a new computer was
delivered to Mr. Holmes.

The computer at issue here was not new, it was not
delivered by Amazon. Amazon, by the way, used UPS to
deliver the computer to Mr. Holmes. The computer at
issue was dropped into a Fed Ex box, so there's not
even a chance that there could have been a mix up at
the sorting facility. There were two different carriers
involved here. So this is a case of mistaken identity.

THE COURT: Now Mr. Holmes indicates that he reached

SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

Case 1:17-cv-04557-RA Document 54 Filed 10/18/17 Page 13 of 24 13
H9ETHOLC

 7    right?
•8  MR. GOETTIG: That's correct.

•9   THE COURT: And what happened?

•10  MR. GOETTIG: Mr. Holmes filed this lawsuit.

•11  THE COURT: Did your colleague get back to him?

•12  MR. GOETTIG: Not to my knowledge.

•13  THE COURT: And that was over some six or seven

•14  months, correct, that elapsed between the time that he said

•15  that he would look into it and get back to Mr. Holmes or

•16  Mr. Holmes' lawyer?

•17  MR. GOETTIG: I think that's correct, your Honor.

•18  Also I should note Mr. Holmes also placed a number --

•19  placed calls to Amazon's customer service line and described

•20  the events at issue here, and Amazon's customer service

•21  representative told him basically what I'm telling your Honor,

- 22  this is not the computer that -- we can't do anything for you.

- 23  THE COURT: Now tell me why you're in default.

- 24  MR. GOETTIG: As the papers indicate, the papers were

- 25  served on a security -- a third-party security person at

SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

out to you all and that there was some communications, including communications from your law firm, is that correct?

MR. GOETTIG: There were communications from a colleague on the West Coast.

THE COURT: And as I recall, he indicated that he would look into the matter and get back Mr. Holmes, is that

Case 1:17-cv-04557-RA Document 54 Filed 10/18/17 Page 14 of 24 14

H9ETHOLC

- 1  Amazon's headquarters in Washington. Due to an administrative

- 2  oversight --

- 3  THE COURT: I'm sorry, it was served on who?

- 4  MR. GOETTIG: A security personnel not employed by

- 5  Amazon, a security guard standing at the front, and that person

•6  was served with the papers.

•7  THE COURT: In Washington State.

•8  MR. GOETTIG: That's correct.

•9  THE COURT: And he accepted service?

•10  MR. GOETTIG: She accepted service.

•11  THE COURT: She accepted service?

•12  MR. GOETTIG: She took the documents, that's right.

•13  THE COURT: Okay. Then what?

•14  MR. GOETTIG: And due to an administrative lag --

•15  Mr. Holmes was very proactive in seeking entry of default and

•16  moving this Court for entry of default judgment, but that

•17  administrative lag I would respectfully submit was very brief

•18  and prejudices no one in this case.

•19  THE COURT: Okay. And Apple, tell me what happened

•20  from your perspective.

•21  MR. MOSS: Good morning, your Honor. From our

•22  perspective we think the story is quite a bit
shorter.

•23  We sold a new computer to Amazon on May

•24  shipped it on May 19, and delivery was confirmed

•25  And that is pretty much our side of the story as
SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

10, 2016. We on May 25th. far as the

Case 1:17-cv-04557-RA Document 54 Filed 10/18/17 Page 15 of 24 15
H9ETHOLC

•1  computer itself goes.

•2  Now fast forward to December, we do -- Mr. Holmes
is

•3  quite right, he does have an attorney, they do
contact us. And

•4  the attorney responsible for the case is Ms. Kaso-
Howard. She

•5  has flown here from California to be here. Apple
is taking

•6  this matter very seriously, your Honor.

7   And she engaged in communications with his lawyer.

8   There were two phone calls. It was discussed that there was a

9   case here. We said we did not think that there was a case.

10  And he said well, I'm going to talk to my client and call you

11  back. That never happened.

12  The next thing we know, your Honor, is that we are

13  getting served personally, not through a registered agent, but

14  we're not contesting service, in July of 2017. We routed

15  through our normal procedures. We had a legal specialist take

16  the complaint in. Then it goes to another individual, an

17  administrative assistant who is responsible for logging

18  documents.

•19  It's identified in our internal records as a subpoena.

•20  Ms. Kaso-Howard does see it. She sees the entry and she thinks

•21  to herself there is no case here, there's no active lawsuit,

•22  because I was talking to his lawyer and I thought I convinced

•23  him not to file a lawsuit against us, but if he did, he was

•24  going to call me back, so I didn't think there was anything

•25  here. It was misidentified as a subpoena.
SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

Case 1:17-cv-04557-RA Document 54 Filed 10/18/17 Page 16 of 24 16
H9ETHOLC

•1  Ms. Kaso-Howard deals with hundreds of cases a year,

•2  probably thousands of filings, and often times there are pro se

•3  filings that are mislabeled. And frankly, she thought that

•4  this was a filing filed by a pro se plaintiff who no longer had

•5  a lawyer, the lawyer said he wasn't going to file
a complaint

•6  without calling, that was a mislabeled document.
So we did not

•7  know that it was a complaint until we saw the
motion for

•8  default,

9

•10  we would

•11  evaluate

•12  there are strong ones here, and I think that that
probably

•13  would have been agreed to or granted. We didn't
do that. We

•14  answered, and we answered five days before we
would have filed

•15  the motion to dismiss had there been a reasonable
agreed

•16  extension.

•17  THE COURT: So you're saying you were more
diligent

•18  than you were required to be?

•19  MR. MOSS: Your Honor, I'm not certainly saying we

•20  were more diligent, I'm saying the case, by virtue of this

and we responded very promptly.
In fact, your Honor, for a case filed over the summer, frankly have requested probably a 30-day extension to our basis for our motion to dismiss, which I think

•21  mistake,

•22  us, than

23

•24  serial number of the computer, that was sent to Mr. Holmes?

•25  MR. MOSS: Well, I know the serial number of the

is probably proceeding at a faster pace than --asto it would have had the mistake not been made.
THE COURT: Do you know the identification number,

SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

Case 1:17-cv-04557-RA Document 54 Filed 10/18/17 Page 17 of 24 17
H9ETHOLC

•1  computer that we sent, and I understand from correspondence I

•2  have seen that that matches the serial number of the computer

3 that was 4

•5  you know

•6  sent a particular computer to Amazon on a
particular day and

•7  confirmed receipt by Amazon prior to Amazon
shipping said

at issue.
THE COURT: So from your perspective, based on what and
the paperwork that has been presented to you, you

•8  computer to Mr. Holmes?

•9  MR. MOSS: Well, I don't know what Amazon did -- I

•10  don't what the date of shipping was, I just know
that the date

•11  that they -- we have delivery confirmation notice
on May 25th

•12  from us to Amazon.

•13  THE COURT: So you confirmed delivery on May 25?

•14  MR. MOSS: Yes, your Honor.

•15  THE COURT: And now let me ask you again, and

•16  perhaps -- I don't know whether it's you or Mr.
Goettig who

•17  would be the appropriate person to ask, or maybe
both.

•18  So you sell a computer to Amazon, and then Amazon

•19  sells the computer to someone, are you out of
that transaction

•20  at that point?

•21  MR. MOSS: My understanding is that we are out of
the

•22  transaction, but there's a separate product that
is sold, which

•23  is the AppleCare product, and we're not out of
that. I think

•24  they -- the AppleCare is sold by Amazon as well,
but that

•25  creates a relationship, obviously, between us and
the computer
SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

Case 1:17-cv-04557-RA Document 54 Filed 10/18/17 Page 18 of 24  18
H9ETHOLC

•1  holder to service the computer. I don't think it
has anything

•2  to do with anything that happened, but yes, we do
have that at

3 that. 4

5 6 7 8 9

25
THE COURT: So let me ask you about that, and I will
show in a spectacular fashion my ignorance of these
things. AppleCare, is that software that is put onto
the computer?

MR. MOSS: No, my understanding -- and your Honor I'm
not as well versed as perhaps I should be, but I think
that is essentially a warranty.

THE COURT: Like an insurance policy?
MR. MOSS: Yeah.
THE COURT: So AppleCare is still in effect for the

computer that you sold to Amazon, or does it attach to
a particular product?

MR. MOSS: No, so I think AppleCare is a separate
product that Amazon or that we, but in this case,
Amazon sold separately to Mr. Holmes. So he purchased
the computer from Amazon and he also purchased
AppleCare from Amazon, but AppleCare is our warranty
program.

THE COURT: Okay. So what does that mean? He says he has
several Apple products. He bought AppleCare in
connection with the purchase or at the same time as the
purchase of that computer, he alleges, can he bring any
Apple product that he previously purchased and say: I
have AppleCare, fix this?

MR. MOSS: No, I believe, it's on a per product basis.

SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

1 2 3 4 5 6 7 8 9

Case 1:17-cv-04557-RA Document 54 Filed 10/18/17 Page 19 of 24  19
H9ETHOLC

MR. GRAIFMAN: Your Honor, may I clarify something? THE
COURT: Sure.
MR. GRAIFMAN: Checkpoint also purchased its computer

from Amazon, so when the Apple attorney said we sold
that computer to Amazon, we purchased from Amazon on
June 2nd,
Mr. Holmes claims he purchased his computer on June
22nd,
I didn't want the impression to be left that the
computer Apple sold to Amazon was the same one that
went to Mr. Holmes, we bought ours from Amazon first.

THE COURT: I understand that. But I guess
Mr. Holmes' theory is that the computer that you bought
from Amazon made its way back into the stream of
commerce and was the self-same computer that Amazon
therefore sent him as a purported new Mac product.

Am I right about that, Mr. Holmes?
MR. HOLMES: Yes, your Honor, you're right. THE COURT:
So there we have it.
Okay. With respect to -- well, I will deem the

papers, if they're not designated as such, as motions
on behalf of all of the three defendants to set aside
the entry of default. And I will set aside the entry of
default under Rule 55(c). While vacating entry of
default in the discretion of a district court, there is
a preference for resolving disputes on the merits.
Defaults generally are disfavored and are reserved for
rare occasions. Accordingly, all that must be resolved
in

SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

2016.
2016.
that
H9ETHOLC

- 1  favor of the party seeking relief from the default
  in order to

•2   ensure that, to the extent possible, the disputes are resolved

•3   on the merits.

•4   When determining whether there is good cause to vacate

•5   entry of default under Federal Rule of Civil Procedure 55(c),

•6   the district court considers three factors: One, the

•7   willfulness of the default; two, the existence of a meritorious

•8   defense to the default it claims; and three, prejudice to the

•9   non-defaulting party should relief be granted. I'm citing

•10   *Pecarsky v. Galaxyworld.com Limited*, 249 F.3d 167.

•11   In this case, amazingly as it may seem, two of the

•12   largest companies in the world and one company which is not so

•13   large -- and I apologize, Mr. Graifman, but I never heard of

•14  your client -- all managed to default on a very
straightforward

15 case.

•16  However, it is the Court's view, based on the
papers

•17  that have been submitted and the representations
of counsel

•18  here this morning, that that default was not
willful. And

•19  based on our discussion, it does appear that the
parties do

•20  have meritorious defenses. And in the case of the
Louisiana

•21  company, CheckPoint, I think it's called, may
have a valid

•22  jurisdictional argument to make as well. As the
parties have

•23  indicated, this case has just recently been
filed, and I can

•24  discern no prejudice that would befall Mr. Holmes
by vacating

•25  the default, and therefore it is vacated.
SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

1 2 3 4 5 6 7 8 9

25
Case 1:17-cv-04557-RA Document 54 Filed 10/18/17 Page 21 of 24 21
H9ETHOLC

Now who has answered?
MR. GOETTIG: Amazon.
MR. MOSS: Apple also.
THE COURT: Amazon answered?
MR. GOETTIG: Yes, we filed an answer yesterday. THE
COURT: And Mr. Graifman, you want to make a

motion to dismiss for lack of jurisdiction? MR.
GRAIFMAN: Yes, your Honor.

THE COURT: Okay, that application is granted. When can
you get your papers?

MR. GRAIFMAN: Well, I probably could -- maybe -- the
problem is I have -- is it possible to do it in three
weeks?

THE COURT: That's fine.
MR. GRAIFMAN: I'm away the week of --
THE COURT: Three weeks is fine.
MR. GRAIFMAN: I'm away the week of September 25th.

I'm out in California at a legal conference part of
that week. If I could -- I guess turning my phone back
on to look at my calendar, if you bear with me, it is
an Apple phone, that's a coincidence.

What's the first -- the first Monday in October? DEPUTY
CLERK: October 2nd.
MR. GRAIFMAN: My calendar is up now. Is it

possible -- I may be able to do it earlier, but is it
possible to extend it to October 9?

SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

Case 1:17-cv-04557-RA Document 54 Filed 10/18/17 Page 22 of 24 22
H9ETHOLC

•1  THE COURT: October 9 is a holiday, but sure,

•2  October 10.

3
4
5    respond?
6
7
8
9
MR. GRAIFMAN: Apologize. Great. October 10. THE COURT:
Mr. Holmes, do you want 30 days to

MR. HOLMES: Yes.
THE COURT: 30 days to respond.
Two weeks to reply?
MR. GRAIFMAN: Two weeks, great. Your Honor, if I motion
ready earlier, I may --
THE COURT: Feel free.
DEPUTY CLERK: The motion is due October 10,

10 have the 11
12

•13  Mr. Holmes' response is due November 10, and the
reply is due

•14  November 27 because the Court is closed on the
24th for

•15  holiday.

•16  THE COURT: Okay. Now I take it that the parties
have

•17  not spoken with Mr. Holmes concerning the
discovery schedule.

•18  MR. GOETTIG: That's correct, your Honor.

•19  MR. MOSS: That's correct, your Honor.

•20  THE COURT: So why don't you do that, since you're all

•21  here, take the time after we adjourn and discuss with him a

•22  discovery schedule. And there's a form that I have on the

•23  website that you can use for that purpose, and assuming there

•24  is substantial agreement, submit that to chambers and I will

•25  take a look at it and so order it if it looks reasonable.
     SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

1 2 3 4 5 6 7 8 9

Case 1:17-cv-04557-RA Document 54 Filed 10/18/17 Page 23 of 24 23
H9ETHOLC

MR. MOSS: Your Honor, if I may, we are evaluating
whether or not we'll be making or requesting a
premotion conference to make a motion for judgment on
the pleadings, and I just request that that be built
into the schedule.

THE COURT: That's fine.
MR. MOSS: Thank you.
MR. GRAIFMAN: And I assume, because we're making that

jurisdictional motion, that we're excused from
discovery? THE COURT: Correct.

Mr. Holmes, anything else that we need to do from your perspective?

MR. HOLMES: Your Honor, I did file today before I came to these proceedings a memorandum of law and reply to defendant Checkpoint in further support of the default judgment, and I also filed an affidavit in reply to Checkpoint.

Also I wanted to say Bobbi Jo, she's the vice president of CheckPoint, she's the same one who wrote the letter saying get it back or I will get you locked up. That's the one what received service. That's the one that received process of the complaint.

And as far as Amazon, Amazon's representative has told me from day one that they got the computer at time of the purchase from Apple. They went to Apple's warehouse and got it at that exact time and not before. Amazon is saying the opposite of Apple, so I don't know who to believe.

SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

Case 1:17-cv-04557-RA Document 54 Filed 10/18/17 Page 24 of 24  2 4
H9ETHOLC

- •1  THE COURT: Well, we're not at that point, Mr. Holmes.


- •2  Imeanallthiswillget--itwillallshakeoutaswego


- •3  through this process. What appears to be happening now is that


- •4  Apple is going to make a motion also or intends to make a


- •5  motion to dismiss your action. And again, we'll take it one

•6   step at a time.

•7   But with respect to -- and I appreciate your

•8   frustration in terms of the servicing process, no one is

•9   alleging that the process was improper. And as I indicated, I

•10  appreciate your frustration in that three sophisticated

•11  organizations like this all in one case would default on a

•12  fairly straightforward matter. Okay?

•13  MR. HOLMES: Yes, sir.

•14  THE COURT: Anything else?

•15  MR. HOLMES: No, sir.

•16  THE COURT: From the back?

•17  MR. MOSS: No, your Honor, thank you.

•18  THE COURT: We're adjourned.

SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

# A-11

# DECLARATION OF JENSEN

Case 1:17-cv-04557-RA Document 94 Filed 02/12/18 Page 1 of 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

TYRONE HOLMES,

                      Plaintiff,

-       against-

-  APPLE £NC., AMAZON.COM, LLC, and
CfIECK.PO.Il'1T FLUIDIC SYSTEMS
.INTERNATIONAL, LTD.,

Defendants.

I, ,JESSE JENSEN, STATE AS FOLLOWS:

Case No. 17 Civ. 4557 (ER) (KNF)
DECLARATION OF
JESSE JENSEN

1. I am a Litigation Paralegal in the Litigation and Regulatory group at Amazon.com, LLC ("Amazon"). My responsibilities include investigating, responding to, and managing lawsuits and other legal matters involving Amazon and its affiliates. Based on my review of Amazon's business records, I am familiar with the agreement and customer histories discussed in this declaration. I make this declaration based on the best of my personal knowledge, my review of Amazon's records kept in the ordinary course of business, and documents and information obtained by other Amazon personnel in the course of their duties. I am competent to testify to the matters stated here.

2. Tyrone Holmes ("Plaintiff" or "Mr. Holmes1') created an Amazon customer account on January 26, 2010. When doing so, he accepted the Conditions of Use

(the "COUs") on Amazon's account registration page, a true and correct copy of which is shown in Exhibit A.

He could not have created his account without doing so.

3. Amazon's COUs have contained a limitation of liability and waiver of express and implied warranties since before January 2010. Attached as Exhibit B is a true and conect 4850-6777-7115v. I 0051461·00131 l Case 1:17-cv-04557-RA Document 94 Filed 02/12/18 Page 2 of 3 copy of the current COUs in effect as of June 21, 2016. Attached as Exhibit C is a true and correct copy of the CO Us in effect as of January 26, 2010, the date on which Mr. Holmes created his account. The limitation of liability and waiver of express and implied warranties in the COUs then, and in all subsequent versions of the COUs, have contained substantially similar language.

4. On June 22, 2016, Mr. Holmes bought a 15-Inch Macbook Pro (the "New Laptop") by placing the product in Amazon's online Shopping Cart and proceeding through Amazon's standard checkout page. Attached as Exhibit D is an order confinnation for the New Laptop indicating that the "Order Method" for Mr. I-Iolmes's purchase of the New Laptop was via "Shopping Cart."

5. When making purchases using the standard Amazon checkout page, customers have the opportunity to review and confirm their orders and, to complete their orders, must accept the Amazon CO Us. Attached as Exhjbit E is a true and correct copy of an example of the checkout page. It shows that, in order to complete a purchase, customers must click on a "Place your order" button accompanied by text explaining that "By placing your order, you agree to Amazon.corn's privacy notice and conditions of use." Id. The blue text denotes hyperlinks to the full contract terms. A customer cannot p.lace an order through Amazon's standard checkout page without affirmatively clicking on this button. A customer who does not wish to accept the CO Us or the limitation of liability and waiver of warranties contained in them may cancel his or her purchase transaction.

6. By placing his order, Plaintiff again accepted the COUs on Amazon's checkout page. See Exhibit E. Mr. Holmes could not have purchased that item through Amazon's standard checkout page without having done so.

-2

4850-6777-7 l 15v.I0051461-001311

Case 1:17-cv-04557-RA Document 94 Filed 02/12/18 Page 3 of 3

7. The New Laptop was among a batch of new Macbook Pro computers that Amazon sourced directly from the manufacturer, Apple.

8. The New Laptop was packaged for delivery to Mr. Holmes from Amazon's fulfillment center in Lewisbeny, Pennsylvania.

9, The New Laptop was delivered via UPS to Plaintiff at 9:35 AM on June 23, 2016. Mr. Holmes provided his signature as acknowledgment of delivery of the New laptop at that time. Attached as Exhibit F is a screenshot of the UPS tracking information for the package containing the New Computer.

JO. On June 2, 20'16, Amazon received Order #105-5281827-669144 for a new 15-inch Macbook Pro (the "Checkpoint Laptop"). The Checkpoint Laptop was also among a batch of new Macbook Pro computers that Amazon sourced directly from the manufacturer, Apple.

11. The Checkpoint Laptop was packaged for delivery from Amazon's fulfillment center in Breinigsville, Pennsylvania.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Seattle, Washington
February 9, 1018

By:_s/Jesse  Jensen
_____

Jesse Jensen
 Legal Assistant, Litigation
amazon.com, LLC

# A-12

Case 1:17-cv-04557-RA Document 161 Filed 03/07/22 Page 1 of 10

**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK** ——————————————————————X
**TYRONE HOLME**S,

**Case No. 1:17-cv-04557-AT**

Plaintiff,

*-against-*

**APPLE INC., AMAZON.COM, LLC, and**
**CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD**.,

Defendants.

——————————————————·——————————X

**PLAINTIFF REPLY DECLARATION TO AMAZON'S MEMORANDUM OF LAW FILED IN OPPOSITION TO HOLMES' MOTION TO VACATE JUDGMENT**

**Preliminary Statement**
**28 U.S.C. §455(a) and Advisory Opinion 71, from the Judicial Conference Codes of**

**Conduct Committee would be** meaningless if they did not allow the decisions of the judge who failed to inform the parties of his financial interest to be revisited. In cases where fraud and knowing misrepresentations of material issues of fact exist. The fraud committed the Attorney for Amazon before Judge Wesley of the Court of Appeals has not been reviewed. When the attorney for AMAZON, Michael Goettig, in response to a direct question concerning whether there was one or two computers at issue responded at one point stating explicitly "There were

Page 1 of 10

Case 1:17-cv-04557-RA Document 161 Filed 03/07/22 Page 2 of 10

two computers"., knowing that there was only one computer, bearing the serial number C02RQ1T3G8WN, at issue here. This fraudulent reply was to cover the simple fact that Amazon had sold a same computer twice, once to Checkpoint on June 7, 2016, and again to Plaintiff on June 22, 2016, after it had been outfitted with spyware by CheckPoint.

That decision was obtained by fraud on the Court by a knowingly false representation made the attorney for Amazon while the attorney for Checkpoint stood mute, also knowing of the false representation and benefiting therefrom; but the attorney for Apple acknowledged that there was only one computer with one serial number.

**Background Facts and Procedure**

Amazon sold **a** 15-inch Macbook Pro Laptop computer, bearing the serial number C02RQ1T3G8WN, twice, first to CheckPoint on June 7, 2016, who installed Spyware on the computer and returned it to Amazon on June 7, 2016, and secondly to Holmes on June 22, 2016. When Holmes turn on the computer on June 23, 2016, the CheckPoint spyware was activated, a Black man and a Black woman was observed using the computer Holmes had purchased. CheckPoint used the Kaseya spyware it had installed to spy on Holmes and his wife for 4 1/2 months. After a month and a half of spying CheckPoint asked FedEx to report the computer as stolen from their facility in Louisiana. FedEx filed a police report on August 2, 2016.

**I AMAZON'S FRAUDULENT REPRESENTATION OF TWO COMPUTERS**

The two computer fabrication in this case had its origin in the Declaration of Jesse Jensen, A-10.

Page 2 of 10

Case 1:17-cv-04557-RA Document 161 Filed 03/07/22 Page 3 of 10

a paralegal, submitted February 9, 2018, by Amazon, attorney Michael Goettig. Describing computers by their order number is not helpful when the issue is one or two computers, nor is "CheckPoint Laptop" and "New Laptop" helpful.

The Jensen Declaration (Doc 118 ) is false in that it fails to state that the identifying feature of the "CheckPoint Laptop"the Macbook Pro computer was the serial number. No serial number is mentioned in his Declaration nor was the return of the Computer to Amazon by FedEx to Amazon on June 7, 2016.The Declaration is intentionally misleading. Amazon, CheckPoint and FedEx acted together to have the NYPD steal the computer to which Holmes had title under the terms of the Conditions of Use agreements required by Amazon to which Amazon, CheckPoint, and Holmes were all parties.

Jensen described as the "CheckPoint Laptop" as the Macbook Pro computer for which "Amazon received Order 105-5281827-669144 for a new 15-inch Macbook Pro" which was packaged for delivery from Amazons fulfillment center in Breinigsville, Pennsylvania. Under the terms of the Conditions of Use (the "COUs"), attached to the Declaration of Jensen as Exhibit B, which CheckPoint accepted, title passed to CheckPoint when delivered to carrier by Amazon

RISK OF LOSS

All items purchased from Amazon are made pursuant to a shipment contract. This means that the risk of loss and title for such items pass to you upon our delivery to the carrier.

.

On May 10, 2016, Apple sold Amazon a MacBook Pro laptop, bearing the serial number C02RQ1T3G8WN. Rule 56.1 Statement of Apple ("Apple 56.1") (Doc. 99) ¶ 1. Amazon, in

Page 3 of 10

Case 1:17-cv-04557-RA Document 161 Filed 03/07/22 Page 4 of 10

turn, sold that laptop to CheckPoint on June 2, 2016. Rule 56.1 Statement of Amazon
("Amazon 56.1") (Doc. 100) ¶ 4. That laptop was packaged for delivery in Breinigsville, Pennsylvania. Id. ¶¶ 2–3 and delivered to FedEx for shipment to Checkpoint. That the laptop was delivered directly from Amazon by FedEx to CheckPoint on or about June 7, 2016. CheckPoint received the computer by June 7, 2016, and an employee there installed a third-party tracking software, Kaseya, onto the laptop. Id. ¶¶ 3–4, placed the laptop into original Apple packaging and Amazon shipping box, delivered package to CheckPoint shipping clerk who contacted FedEx for pick-up services, shipping clerk released the laptop for shipment to FedEx on June 7, 2016, boxed and shipped via FedEx, and delivered to FedEx for shipment. Doc. 51. FedEx returned the boxed Laptop to Amazon. Amazon took title to the MacBook Pro laptop, bearing the serial number C02RQ1T3G8WN pursuant to the
**Amazon Business Accounts Terms and Conditions**

## 3. SHIPPING; RETURNS; REPLACEMENT CHARGES; PAYMENT METHODS; TAXES (**Last Updated:** June 22, 2018)

...

For returns, Amazon does not take title to returned items until the item arrives at our fulfillment center.

after the Laptop was returned to their fulfillment center in Pennsylvania.

On June 22, 2016. the MacBook Pro was purchased from Amazon by Holmes order number 114-4339387-0045844-Apple MacBook Pro MJLQ2LL/A 15-inch laptop, bearing serial number C02RQ1T3G8WN and when Amazon placed the Laptop with UPS for delivery, Holmes took title pursuant to the terms of the COU

RISK OF LOSS
All items purchased from Amazon are made pursuant to a shipment contract. This means that the

Page 4 of 10

Case 1:17-cv-04557-RA Document 161 Filed 03/07/22 Page 5 of 10

risk of loss and title for such items pass to you upon our delivery to the carrier.

and title passed to Holmes upon delivery of the Laptop by Amazon to UPS. On June 23, 2016 Stephanie Scott registered the Laptop, bearing serial number C02RQ1T3G8WN, to activate the AppleCare for which process she had to verify and record the serial number. This Laptop, which arrived shrink-wrapped, was the same Laptop on which CheckPoint had installed Spyware which was activated when she turned on the Laptop. Mahoney, Doc. 51

As soon as the Laptop was activated CheckPoint became aware that the Laptop, bearing serial number C02RQ1T3G8WN, was in the possession of a Black man and his wife.

Instead of contacting Holmes, who owned the title to the computer and offering purchase and to replace the computer, CheckPoint surreptitiously spied on Holmes and his wife for a month and a half June 23, 2016, to August 2, 2016.

CheckPoint falsely reported a theft to Fed-Ex, identifying the FedEx facility in Louisiana as the place of the theft, as seen in the report of theft filed with the Louisiana police, accusing Holmes with the theft to save itself the expense of

recovering a computer with spyware on it. A fraudulent report was filed by CheckPoint and FedEx with the Kenner Police Department, knowing it to be false from their own records of delivery to Amazon in Pennsylvania.

New York is the foreign jurisdiction in which CheckPoint chose through Bobby Bridges to contract for the seizure of the seizure of the Computer at issue in this case. The letter agreement dated September 12, 2016, from Bobby Jo Bridges, filed with the Complaint is one basis for

Page 5 of 10

Case 1:17-cv-04557-RA Document 161 Filed 03/07/22 Page 6 of 10

jurisdiction over CheckPoint.
The spying on the computer for a month and a half, from June 23, 2016 to August 2, 2017

when it falsely, knowingly falsely , and fraudulently reported it stolen in Louisiana, knowing that it had packaged it for delivery back to Amazon to be delivered elsewhere outfitted with spyware. Defendant, CheckPoint in its Opposition to Plaintiff's motion to vacate the judgment never mentions the spyware which it used to spy on the plaintiff for more than three months after it became aware of the in possession of the Plaintiff. To acknowledge such spying in the state of New York would be to acknowledge an independent basis for jurisdiction based on a tortious act committed within the state of New York. For this reason Judge Ramos denied discovery when no discovery was required, since CheckPoint admitted to spying on Plaintiff for months on end. Judge Ramos dismissed the action as against CheckPoint (among others), holding there was no jurisdiction over it in New York (ECF #121 at 10-11); Holmes' allegations did not set forth a tortious act to support any jurisdiction over CheckPoint (*id*. at 12);

CheckPoint extorted the computer from with threats of arrest by Caballero, CheckPoint's designated agent for dealing with the matter. CheckPoints account admit as much:

**September 13, 2016, Caballero sent Holmes' counsel an email confirming that the serial number of the CheckPoint computer was C02RQ1T3G8WN, which, according to Holmes and Apple as well, matched the serial number of the laptop he purchased through Amazon. See Compl. ¶ 47, Apple 56.1. Between then and September 21, 2016, Holmes attempted to contact Scott to facilitate the return of the computer. Id. ¶ 49. On September 21, 2016, Holmes' counsel**

**informed Caballero that Holmes had done all he could to assist the NYPD and asked Caballero to stop contacting Holmes. Id. ¶ 50. In response, Caballero stated that he was planning to proceed with an arrest of Holmes for criminal possession of stolen property in the fourth degree. Id. ¶ 51. Holmes then hired a private investigator who was able to locate Scott. Id. ¶ 54. He**

Page 6 of 10

Case 1:17-cv-04557-RA Document 161 Filed 03/07/22 Page 7 of 10

**then arranged for Scott's sister to visit her on October 1, 2016 so that she could persuade Scott to return the computer. Id. ¶ 56. On October 2, 2016, Holmes learned that the computer was in a public storage unit in Chelsea, New York, but that Scott did not wish to cooperate in returning the computer to CheckPoint. Id. ¶ 58. The next day, Holmes' counsel met with Caballero and Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 4 of 29 5 another NYPD officer to go to Scott's residence. Id. ¶¶ 60–61. After meeting with Caballero, Scott agreed to accompany the group to her storage unit. Id. ¶ 62. Scott turned over the laptop on October 4, 2016 at 7:30 p.m.**

The purchase of AppleCare is not only, a supporting fact, but also, the best evidence of proof of ownership by Holmes at the time of the seizure. Not withstanding the Agreement between CheckPoint, negotiated by Bobby Jo Bridges for CheckPoint and Holmes negotiated by Holmes attorney, in the Letter agreement dated September 12, 2016, CheckPoint falsely claims in the Affidavit of Mahoney, Doc 51, p.4/5

That CheckPoint was not involved in any contact, discussions, meetings, investigations or arrangements with NYPD and Mr. Holmes.

That CheckPoint did not initiate nor make direct initial contact with the New York Police Department ("NYPD"), and
That CheckPoint was not involved in any contact, discussions, meetings, investigations or arrangements with NYPD and Mr. Holmes.

Notwithstanding the Spying on Holmes for 4 months with its spyware in New York, Judge Ramos ruled that (i) no jurisdiction lays over CheckPoint (Decision at 3-4); (ii) no duty or tort has been alleged against CheckPoint (*id*. at 4); and (iii) the

computer that "belonged to CheckPoint" (*id*. at 4) and that is different than the laptop Holmes purchased from Amazon (*id*.

Page 7 of 10

Case 1:17-cv-04557-RA Document 161 Filed 03/07/22 Page 8 of 10

at 7-8). It is relevant that Judge Ramos owned stock in Apple and FedEx and significant financial interests in Amazon through his investments but failed to give notice of his stock in Apple and FedEx until January 22, 2022, three and a half years after the trial was over, belatedly acknowledging his financial interest in two of the parties, which gave rise under **28 U.S.C.** §455 and Opinion 71 to this instant motion and required that this motion be referred to another judge. Judge Ramos broke the law by failing to reveal his ownership of stock in Apple and FedEx at the time he made the jurisdictional decision which is wrong on the law and contrary to the admission by CheckPoint of the existence of a contract made by with the attorney for Holmes in relation to the seizure of his computer

## II THE SECOND CIRCUIT'S DECISION WAS PROCURED THROUGH FRAUD

The Second Circuit's determination that Holmes that his laptop was different than CheckPoint's was based on the misrepresentations of the Attorney for Amazon and contrary to the representations made by his Co-Defendant Apple which has maintained that there was one computer. The fraud committed the Attorney for Amazon before Judge Wesley of the Court of Appeals has not been reviewed. When the attorney for Checkpoint in response to a direct question stated,

"There are two computers".
Numbered and Heading Appeal Hearing Transcript 2/26/20, p,12/18

knowing that there was only one computer, bearing the serial number C02RQ1T3G8WN, at

Page 8 of 10

Case 1:17-cv-04557-RA Document 161 Filed 03/07/22 Page 9 of 10

issue here. CheckPoint seeks to capitalize on the false representations made by attorney for Amazon, contradicting the statement made by the attorney for Apple

Judge Richard C. Wesley:
I get that, but you identified two deliveries out of your facilities, right?

Hannah Y. Chanoine for Apple:
Again, as far as we, as Apple is concerned, there was one shipment, of one computer, to Amazon. And that is the only shipment of any MacBook Pro that we're aware of at issue here. I will tell you-

Numbered and Heading Appeal Hearing Transcrip 2/26/20 11/18

**CONCLUSION**
**For reasons set for in this Reply and Declaration in Support of Plaintiff's Motion to**

**Vacate the Decision and J**udgment of Judge Ramos entered on July 16, 2021

   **1.Denying the Holmes' Motion to Amend the Complaint**


   **2.Granting CheckPoint's motion to dismiss for lack of personal**

**jurisdiction.**

   **3.Denying Holmes' motion for jurisdictional discovery.**


   **4.Granting Amazon's motion (Doc. 91) in the following respects**
    **(1) judgment will be entered against Amazon in the amount of $2,351 on**


Page 9 of 10

Case 1:17-cv-04557-RA Document 161 Filed 03/07/22 Page 10 of 10

**Claim 1;**
**(2) summary judgment in Amazon's favor on Claims 2, 3, 4, and 5; and (3)**
**judgment on the pleadings in Amazon's favor on Claims 6, 7, and 8.**

**5. Granting Apple's motion for entry of judgment on the pleadings ( Doc. 97).
and Directing the Clerk of Court to terminate all motions and close the case,
based on undisclosed financial interest in defendants, Apple and Amazon, and**

**proposed defendant, FedEx in the proposed Amended Complaint,**

**Holmes' Motion to Vacate the Decision and Judgment should be granted.**

**Wherefore, Plaintiff moves this court to vacate the decision, order, and
judgment, and for such other and further relief as justice may require.**

**Respectfully submitted, this 7th day of March, 2022 s/_____**

**Tyrone Holmes Plaintiff, pro se**

Page 10 of 10

# A-13

Case 1:17-cv-04557-RA Document 1648 Filed 07/26/22 Page 1 of 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X TYRONE HOLMES,

No. 17-cv-4557-ER

## NOTICE OF APPEAL

-against-

APPLE INC.,
AMAZON.COM, LLC, and CHECKPOINT FLUIDIC SYSTEMS
INTERNATIONAL, LTD.,

Defendants. -----------------------------------------------------------------------X

Plaintiff,

**NOTICE** is hereby given that the following party, plaintiff, TYRONE HOLMES,
in the above-named case, appeals to the United States Court of Appeals for the
Second Circuit from the Order of Judge Ronnie Abrams entered June 27, 2022

denying plaintiff's Motion to Vacate the judgment of Judge Edgardo Ramos entered on June 27 2021 that: denied plaintiff's motion to amend the complaint to add FedEx as a party; that denied plaintiff's motion for discovery; that granted defendant, Checkpoint's, motion to dismiss for lack of Jurisdiction;that granted defendant, Amazon's, motion for summary judgment; that granted Amazon's, motion for judgment on the pleadings; and that granted defendant's, Apple's, motion for judgment on the pleadings.

Dated: New York, New York July 26, 2021

/s/_____ Tyrone Holmes,

Pro se Plantiff

1465 Hammersley Ave.

Bronx, NY 10469 (646) 701-4069

Case 1:17-cv-04557-RA Document 1648 Filed 07/26/22 Page 2 of 2

tymax@mac.com

# A-14

# ORDER GRANTING LEAVE FOR APPEAL

# A-15

Case 1:17-cv-04557-RA

Document 171 Filed 08/15/22 Page 1 of 1



**VIA ECF**

Judge Ronnie Abrams
United States District Judge United States Courthouse, SDNY 40 Foley Square
New York, NY 10007

August 15, 2022

**Brian D. Graifman** *Partner* Manhattan Office **bgraifman@borahgoldstein.com** O: (212) 431-1300, Ext. 322 Dir: 212-965-2566

_____ _____

Re: *Tyrone Holmes v. Apple Inc., Amazon.com, LLC, and CheckPoint Fluidic Systems International, Ltd.*, Case No. 1:17-cv-04557-ER (S.D.N.Y.)

Dear Judge Abrams:

This supplements my August 12 letter to you (ECF 169) on behalf of CheckPoint[1] seeking you certify, pursuant to FRAP 24(a)(3)(A), that Mr. Holmes's appeal of your June 27, 2022 memorandum opinion and order (ECF 163) is not taken in good faith, as plainly frivolous, and withdraw

his appeal *forma pauperis* status that was granted on August 10, 2022 (ECF 167).

Since my letter was filed, Mr. Holmes made another frivolous filing in this case, this one to Judge Swain (ECF 170), seeking to have the court discipline Amazon's attorney, Michael Goettig, for having maintained the obvious reality that there were two computers – CheckPoint's and Holmes's – which is what the district court determined and the Second Circuit affirmed.

The bad faith actions of Mr. Holmes cannot keep costing the parties and the court, and as the rules provide, his *forma pauperis* status should be withdrawn.

Cc: All appearing parties/counsel via ECF

Respectfully submitted,

*/s Brian D. Graifman*

Brian D. Graifman

---

[1]

CheckPoint Fluidic Systems International, Ltd. n/k/a CheckPoint Group, Inc.

*Main Office* **377 Broadway • New York, New York • 10013 • T: (212) 431-1300 • F: (212) 334-0960 (Delivery of Manhattan Papers Only)**
*Queens Office* 108-18 Queens Boulevard • Forest Hills, New York • 11375 • T: (718) 263-

6611 • F: (718) 263-8272 *Bronx Office* 800 Grand Concourse • Bronx, New York 10451 • T: (718) 585-7000 • F: (718) 585-8969 **www.borahgoldstein.com**

# A-16

DocuSign Envelope ID: C6B1BA5E-38F8-46EF-AE4F-2E783CBF8A52

Caassee11:1:177--ccvv--004455577--RA Dooccuumeenntt117730
Filieledd0088/1/162/2/22 Paaggee11ooff783

The Honorable Laura Taylor Swain
United States District Court for the Southern District of New York 40 Foley Square
New York, NY 10007

MEMO ENDORSED

Dear Judge Swain,

Please consider this letter to be a complaint pursuant to Local Civil Rule 1.5 (b) (5). Discipline of Attorneys against Attorney Michael Goettig, who in the course of representing Amazon, a defendant, in *Holmes v. Apple* (16 -CV- 4557), engaged
in conduct violative of Rules 3.3 (a)(1) and 4.1 the New York State Rules of Professional Conduct as adopted from time to time by the Appellate Divisions of the State of New York, in that he knowingly made a false statement of fact to Court of Appeals Judge, Judge Richard C. Wesley, in response to an inquiry by Judge Wesley regarding a material issue of fact in the above referenced case in oral arguments before the 2nd Circuit Court of on November 14, 2019.

The same misrepresentation of the facts had been made in the Declaration of Jensen (Doc #94) filed by Attorney Goettig in *Holmes v. Apple* (16 -CV- 4557) on February 12, 2018, in which he labeled the Laptop purchased by CheckPoint as the "CheckPoint Laptop" and the Laptop purchased by Holmes as the "New Laptop" without disclosing the serial number which was the same for both computers, a fact that was then known to Attorney Goettig on February 12, 2018.

The facts before Judge Wesley were as follows:

On June 2, 2016, Amazon received an Order #105-528127-669144 for a new 15-inch MacBook Pro "the CheckPoint Laptop" (Doc # 94),

On June 7, 2016, Amazon, from their fulfillment Center in Breinigsville, PA by their carrier FedEx delivered, to CheckPoint a new 15-inch MacBook Pro " bearing the serial number
C02RQ1T3G8WN. CheckPoint installed Spyware on the computer, shrink-wrapped it, placed it in
its original Amazon packaging to make it appear as new, delivered the computer back to the

carrier FedEx, which delivered back to Amazon on June 7, 2016.

Holmes ORDER PLACED: June 22, 2016, Shipped on June 22, 2016
Amazon.com order number: 114-4339387-0045844
Apple Macbook Pro MJLQ2LL/A 15-inch Laptop (2.2 GHz Intel Core i7 Processor, 16GB RAM, 256 GB Hard Drive, Mac OS X)

This complaint has been forwarded to the Grievance Committee for the Southern District of New York, for their review.

Dated: 8/16/2022
/s/ Laura Taylor Swain, Chief U.S.D.J.

# A-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

TYRONE HOLMES,

Plaintiff,

- against -

APPLE INC.,
AMAZON.COM, LLC,
CHECKPOINT FLUIDIC SYSTEMS
INTERNATIONAL, LTD., and
FEDEX CORPORATION

Defendants.
-----------------------------------------------------------------X

*Proposed*

No. 17-cv-4557-ER

**AMENDED
COMPLAINT**

JURY TRIAL DEMANDED

PLEASE TAKE NOTICE, that Plaintiff Pro Se, Tyrone Holmes, respectfully alleges as follows:

### PARTIES AND JURISDICTION

1.      The United States District Court has jurisdiction over this matter based upon diversity of citizenship, pursuant to 28 U.S.C. § 1332, as this matter is a dispute between the plaintiff, a citizen of New York, and defendants:  APPLE INC., a California corporation; AMAZON.COM, LLC, a Delaware limited liability company; and CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD., a Texas partnership. Additionally, the amount in controversy exceeds seventy-five thousand ($75,000.00) dollars, exclusive of interest and costs.

2.      Plaintiff, TYRONE HOLMES, is a natural person who currently resides, and at all times material hereto resided, in the County of Bronx, State of New York.

3.      Defendant is APPLE, INC., doing business at 1 Infinite Loop, Cupertino, CA 95014, and incorporated in the state of California.

4.      That at all times hereinafter mentioned, Defendant, APPLE INC., was and is a foreign corporation duly authorized to conduct business within the State of New York.

5. That at all times hereinafter mentioned, Defendant, APPLE, INC., maintained an office and/or owned real property within the State of New York.

6. That at all times hereinafter mentioned, Defendant, APPLE, INC., solicited, conducted and derived substantial business from within the State of New York.

7. Defendant is AMAZON.COM, LLC, doing business at 410 Terry Ave. North, Seattle, WA 98109-5210, and formed as an LLC in the state of Delaware.

8. That at all times hereinafter mentioned, Defendant, AMAZON.COM, LLC, was and is a foreign limited liability company duly authorized to conduct business within the State of New York.

9. That at all times hereinafter mentioned, Defendant, AMAZON.COM, LLC, maintained an office and/or owned real property within the State of New York.

10. That at all times hereinafter mentioned, Defendant, AMAZON.COM, LLC, solicited, conducted and derived substantial business from within the State of New York.

11. Defendant is CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD., doing business at 21356 Marion Ln., Mandeville, LA 70471, and formed as a partnership in the State of Texas.

12. That at all times hereinafter mentioned, Defendant, CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD., was and is a foreign limited liability partnership duly authorized to conduct business within the State of New York.

13. That at all times hereinafter mentioned, Defendant, CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD., maintained an office and/or owned real property within the State of New York.

14. That at all times hereinafter mentioned, Defendant, CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD., solicited, conducted and derived substantial business from within the State of New York.

15. Defendant is FEDEX CORPORATION doing business at 7900 Legacy Drive,

Plano, Texas 75024 and formed as a corporation in the State of Delaware.

16.     That at all times hereinafter mentioned, Defendant, FEDEX CORPORATION, was and is a foreign corporation duly authorized to conduct business within the State of New York.

17.     That at all times hereinafter mentioned, Defendant, FEDEX CORPORATION, maintained an office and/or owned real property within the State of New York.

18.     That at all times hereinafter mentioned, Defendant, FEDEX CORPORATION, solicited, conducted and derived substantial business from within the State of New York.

## FACTS

### INTRODUCTORY STATEMENT

19.     Plaintiff, Tyrone Holmes, is and was an innocent purchaser of a brand new laptop computer, made and sold by Apple, the largest computer company in the world, to Amazon, one of the largest companies in the word, which then sold it to plaintiff. Plaintiff Holmes had every expectation, at law and as a matter of common sense, that the consumer product he purchased was new and defect-free, but on the contrary, the laptop computer he bought was a pre-owned machine, owned by a Louisiana pump company that was a contractor for the government of the United States of America, Department of Defense. It is believed that the prior owner of the laptop, Checkpoint Fluidic Systems International, and/or Apple installed surveillance, tracking, and management information software, capable of tracking the whereabouts of any user of the laptop and capable, upon belief, of tracking oil drilling, oil well output, oil refining output, oil pipeline transportation, and various other statistics important to the Department of Defense and/ or the oil industry for exploring, drilling, refining, and transporting, especially in connection with oil production and refining activity in the Arab Gulf states. However, the laptop was not meant to be released from the company, and as a direct result of the computer leaving the custody of the

prior owner, a series of bizarre events unfolded: 1. The company used the surveillance software to track down the current user, Tyrone Holmes, in New York City; 2. the company reported delivery problems and plaintiff's operation of the computer to FedEx, the shipper for the laptop; 3. FedEx Corporation reported the matter to the NYPD *as a theft*, even though there was no indicia that a crime had been committed, and at that point, the computer was merely an item of property that was missing; 4. NYPD aggressively and zealously hunted down the plaintiff, threatened him with arrest even though no criminal complaint was filed, no affidavit was signed, and no DOD, FBI or Justice Dept. investigation occurred for this interstate matter involving the federal government. As a result of this bizarre fact pattern and an NYPD's detective's threats and harassment of plaintiff, a church pastor, father of (5) children, with no criminal record, plaintiff's rights have been severely violated and plaintiff has suffered, and is suffering, from the stress of this incident, having been severely traumatized. While plaintiff managed to retrieve the computer from his estranged wife who had been missing, with whereabouts unknown, and turn it over to the police, Tyrone Holmes still has not been reimbursed for the computer and suffers mental stress, anguish, and anxiety on a daily basis. This matter has wrecked my life.

20.     Upon information and belief, Defendant, APPLE, INC., is and at all times material hereto was a manufacturer of electronics, computers, and related products.

21.     Upon information and belief, Defendant, APPLE, INC., does market and at all times material hereto has marketed electronics, computers, and related products throughout the United States and internationally.

22.     Defendant, APPLE, INC., has gained favorable reputation in the field of manufacturing and supplying electronics, computers and related products.

23.     Upon information and belief, Defendant, AMAZON.COM, LLC, is and at all

times material hereto was a retailer of electronics, computers, and related products.

24.     Upon information and belief, Defendant, AMAZON.COM, LLC, does market and at all times material hereto has marketed electronics, computers, and related products throughout the United States and internationally.

25.     Defendant, AMAZON.COM, LLC, has gained favorable reputation in the field of selling and supplying electronics, computers and related products.

26.     On or about June 22, 2016, Plaintiff, TYRONE HOLMES, through Defendant, AMAZON.COM, LLC, purchased a brand new Apple Macbook Pro MJLQ2LL/A 15-inch Laptop with Serial Number C02RQ1T3G8WN manufactured by Defendant, APPLE, INC., and Plaintiff purchased an AppleCare Protection Plan for the aforementioned Apple Macbook Pro.

27.     Plaintiff, TYRONE HOLMES, paid valuable consideration for the aforementioned Apple Macbook Pro and AppleCare Protection Plan. The aforementioned Apple Macbook Pro Computer and AppleCare Protection Plan shall hereinafter be referred to as the "Defective Products".

28.     In soliciting and selling the Defective Products to Plaintiff, TYRONE HOLMES, Defendant, APPLE, INC., made various representations to the Plaintiff concerning the Defective Products including but not limited to the following:

    a.     The products were new.

    b.     The products were free from all defects.

    c.     The products contained no spyware or malware.

    d.     Plaintiffs would not be kept under surveillance as a result of purchasing the products.

29.     In soliciting and selling the Defective Products to Plaintiff, TYRONE HOLMES,

**Case 1:17-cv-04557-RA Document 47-1 Filed 10/06/17 Page 5 of 23**

Defendant, AMAZON.COM, LLC, made various representations to the Plaintiff concerning the
Defective Products including but not limited to the following:

    a.    The products were new.

    b.    The products were free from all defects.

    c.    The products contained no spyware or malware.

    d.    Plaintiffs would not be kept under surveillance as a result of purchasing
the products.

30.    Defendant, APPLE, INC., represented to Plaintiff, TYRONE HOLMES, that
Defendant, APPLE, INC., was a leader and had a favorable reputation in the electronics,
computers and other related product industries. In purchasing the Defective Products, Plaintiff
relied extensively upon the favorable reputation of Defendant, APPLE, INC.

31.    In soliciting the sale of the Defective Product, APPLE, INC., and/or its agents,
and representatives distributed advertising and/or marketing materials, designed to attract the
Plaintiff to purchase the Defective Products. In purchasing the Defective Products, Plaintiff
relied extensively upon said advertising and/or marketing materials.

32.    Defendant, APPLE, INC., represented to plaintiff that it would stand behind its
electronics, computers and related products if they failed to perform or were otherwise defective.

33.    Defendant, AMAZON.COM, LLC, represented to Plaintiff, TYRONE HOLMES,
that Defendant, AMAZON.COM, LLC, was a leader and had a favorable reputation in the
electronics, computers and other related product industries. In purchasing the Defective Products,
Plaintiff relied extensively upon the favorable reputation of Defendant, AMAZON.COM, LLC.

34.    In soliciting the sale of the Defective Product, AMAZON.COM, LLC, and/or its
agents, and representatives distributed advertising and/or marketing materials, designed to attract

the Plaintiff to purchase the Defective Products. In purchasing the Defective Products, Plaintiff

relied extensively upon said advertising and/or marketing materials.

35. Defendant, AMAZON.COM, LLC, represented to plaintiff that it would stand

behind its electronics, computers and related products if they failed to perform or were otherwise

defective.

36. Plaintiff, in reliance on the above representations, purchased, for valuable

consideration, the Defective Products.

37. Plaintiff, in reliance upon the above representations, paid a premium for the

Defective Products in that Plaintiff paid more for the Defective Products than he otherwise

would have paid, but for the aforementioned representations.

38. On or about June 23, 2016, following the purchase of the Defective Products

through Defendant, AMAZON.COM, LLC'S website, the Defective Products were delivered to

the Plaintiff's residence.

39. Upon information and belief, at all times prior to Plaintiff's purchase of the

Defective Products, Defendants knew or should have known that the Defective Products were, in

fact, defective.

40. Upon information and belief, at all times after Plaintiff's purchased the Defective

Products, but before Plaintiff was contacted by the New York City Police Department,

Defendants knew or should have known that the Defective Products were, in fact, defective.

41. At all times material hereto, Defendants failed to notify Plaintiff of the defective

nature of the Defective Products.

42. At all times material hereto, Defendants concealed material information,

including but not limited to the defective nature of the Defective Products, from the Plaintiff.

43.     Defendants failure to notify the Plaintiff and concealment regarding the defective nature of the Defective Products prevented Plaintiff from making informed decisions with respect to the purchase of the Defective Products and prevented and frustrated measures which could and would have been made by Plaintiff to mitigate his damages.

44.     The Defective Products purchased by the plaintiff did not perform as intended and/or represented.

45.     On or about September 8, 2016, Detective Rodrigo Caballero of the New York City Police Department Central Investigations Division, along with several other plain clothes officers, arrived at Plaintiff's residence.

46.     Detective Caballero spoke with Plaintiff's neighbors and inquired about Plaintiff's whereabouts.

47.     On or about September 9, 2016, Detective Rodrigo Caballero telephoned Plaintiff and inform him that he was in possession of a Macbook computer containing sensitive government spy software belonging to the Department of Defense, and that that he along with other officers were in front of Plaintiff's residence for the purpose of retrieving the subject device.

48.     On or about September 9, 2016, Plaintiff explained to Detective Caballero that he was not at home but rather was in the midst of performing at a funeral service and could not assist the officer at that time.

49.     On or about September 10, 2016, Detective Rodrigo Caballero again contacted Plaintiff demanding the return of the aforementioned Macbook Computer. Plaintiff informed Detective Caballero that he was not in possession of the computer because he had given it to his estranged wife, whose whereabouts were unknown to him.

50.    On or about September 10, 2016 through on or about September 12, 2016, Plaintiff continued to receive phone calls from Detective Caballero demanding the return of the computer and threatened Plaintiff with arrest if Plaintiff did not comply with his demands.

51.    On or about September 12, 2016, due to the increasingly threatening nature of the communications from Detective Caballero, Plaintiff retained counsel.

52.    On or about September 12, 2016, Plaintiff's counsel spoke by phone with Detective Caballero, and was informed that the Detective worked for the Central Investigations Division of the New York Police Department, and that the computer purchased by Plaintiff belonged to Defendant, CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD., a U.S. Department of Defense Contractor.

53.    On or about September 12, 2016, Detective Caballero informed Plaintiff's counsel that the Defective Products contained sensitive surveillance software and that the computer as outfitted and designed, was intended to be shipped to Dubai.

54.    On or about September 12, 2016, the Detective concluded his conversation with Plaintiff's counsel by stating to Plaintiff's counsel that if necessary, he had the authority to arrest the Plaintiff, if the device was not returned.

55.    On or about September 12, 2016, in response to Plaintiff's counsel's demand for verification of the Detective's allegations, Plaintiff's counsel received an email from Detective Caballero containing a letter from, Vice President of Operations for Defendant, CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD. The letter informed Plaintiff's counsel that Defendant's security department had tracked the subject device since leaving its facility and has ascertained information proving that Plaintiff was in possession of its equipment.

56.    The correspondence from Defendant, CHECKPOINT FLUIDIC SYSTEMS

INTERNATIONAL, LTD., further stated that it would not pursue legal action only if the subject equipment was returned immediately, in its original condition, complete with all original parts and pieces.

57.     The correspondence indicated that as a further condition, Defendant, CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD., required that the matter only be resolved through Detective Caballero of the NYPD and that Plaintiff's counsel withhold Defendant, CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD., identity from Plaintiff.

58.     From or about, September 12, 2016 through or about, September 21, 2016, Plaintiff's counsel continued to communicate with Detective Caballero regarding the location of the subject device, each time to Plaintiff's dismay, relaying the sum and substance of this communication to Plaintiff.

59.     From or about, September 12, 2016 through or about, September 21, 2016, under the threat of arrest, Plaintiff attempted to communicate with his estranged wife via phone and email to facilitate the return of the computer and thereby avoid arrest.

60.     On or about, September 21, 2016, Plaintiff's counsel instructed Detective Caballero via email that Plaintiff, had who had no criminal history, acquired the computer through legal means and that he had done all he can to assist the NYPD with its return. Plaintiff's counsel concluded by advising the Detective to refrain from contacting the Plaintiff any further.

61.     On or about, September 21, 2016, Plaintiff's attorney was instructed by Detective Caballero via email that Detective Caballero was going to proceed with an arrest of the Plaintiff for the crime of Criminal Possession of Stolen Property in the 4th Degree, and that Plaintiff must surrender to the 047 precinct on September 22, 2016 at 1:00 PM.

62. Criminal Possession of Stolen Property in the 4th Degree in the State of New York is a Class E Felony carrying a penalty of up to four years in State Prison.

63. On September 21, 2016, Plaintiff's counsel spoke and negotiated with Detective Caballero an extension to Plaintiff's time to surrender from September 22, 2016 at 1:00 PM until September 26, 2016, based on Plaintiff's promise to attempt to make further efforts to locate his estranged wife and persuade her to return the device.

64. On or about September 22, 2016, Plaintiff under the threat of arrest, hired a private investigator to locate his estranged wife, who he believed was in possession of the subject device.

65. On or about September 26, 2016, Plaintiff's counsel negotiated another extension of Plaintiff's time by which he was to surrender to authorities, by informing the detective that Plaintiff had hired a private investigator and that the investigator had located his estranged wife.

66. On or about September 27, 2016, Plaintiff's counsel spoke with Detective Caballero and informed him that Plaintiff was attempting to negotiate the return of the subject device by transporting his wife's sister from Atlantic City, NJ to visit with his wife on October 1, 2016 and persuade her to return the computer.

67. By providing this information Plaintiff's Counsel negotiated another extension to Plaintiff's time to surrender until after October 1, 2016.

68. On or about October 2, 2016 Plaintiff's wife's sister informed Plaintiff's counsel that after meeting with plaintiff's wife, Plaintiff's wife's sister confirmed that the subject device was in a storage unit controlled by Plaintiff 's wife, but that she remained despondent and refused to cooperate in the item's return.

69. On or about October 3, 2016, Plaintiff's counsel informed the detective that the

computer was in storage and agreed to accompany the detective to visit Plaintiff's wife and persuade her to cooperate in returning the subject device.

70.    On or about October 3, 2016, Plaintiff's counsel met with Detective Caballero and his Partner at the 047 Precinct, 300 Gold Street, Brooklyn, NY.

71.    On or about October 3, 2016, upon meeting with Detective Caballero and his partner, Plaintiff's Counsel accompanied Detective Caballero and his partner in an unmarked NYPD cruiser to 19 West 130 Street, New York, NY 10037 where Plaintiff's wife was residing.

72.    On or about October 3, 2016, after being threatened with arrest, Plaintiff's wife agreed to accompany Plaintiff's counsel, Detective Caballero and Detective Caballero's partner to Chelsea Mini Storage located at 626 West 28th St. New York, NY, and retrieve the subject device.

73.    At no time during Plaintiff's counsel's communications with Detective Caballero was Plaintiff's counsel ever informed of, or provided with any evidence of any wrongdoing or criminal activity on the part of the Plaintiff.

74.    The threat of arrest by all accounts was based solely on Plaintiffs possession of the device, and Defendant's, CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD.'s, and/or the New York City Police Department's urgent need for its return.

75.    Upon retrieving the subject device, Detective Caballero signed and provided for Plaintiff's attorney a receipt indicating such receipt.

76.    As a direct result of defendants' conduct, the plaintiff, TYRONE HOLMES, was caused to sustain personal injuries, including, but not limited to, anxiety, stress reaction, post-traumatic stress syndrome, paranoia, and shock to the central nervous systems.

77.    As a direct result of defendants' conduct, the plaintiff, TYRONE HOLMES, was

caused or may be caused to have counseling or medical treatment and incur counseling or medical expenses.

78.    As a direct result defendants' conduct, the plaintiff, TYRONE HOLMES, was inconvenienced, disabled, and prevented from performing personal, church, employment, household and other duties.

79.    As a direct result of defendants' conduct, the plaintiff, TYRONE HOLMES, was caused to have nervousness, fatigue, loss of concentration, cynical attitudes, embarrassment, humiliation, and pain and suffering, now and into the future.

80.    As a direct result of defendants' conduct, the plaintiff, TYRONE HOLMES, was caused to be unable to do activities and things after the incident that he could do before, including personal tasks and recreational acts, such as walking out the front door or driving down the street, and was otherwise deprived of the enjoyment of life.

81.    As a direct result of defendants' conduct, the plaintiff, TYRONE HOLMES, was caused to be disabled and absent from employment, and to be unable to perform the duties and functions of his occupation as a minister, producer, and musician.

82.    The injuries and damages of plaintiff, TYRONE HOLMES, are or may be permanent.

83.    As a result of the events which are the subject of this complaint, Plaintiff missed critical employment opportunities and was unable to fulfill many contractual obligations and responsibilities.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS, APPLE, INC., AND AMAZON.COM, LLC, FOR BREACH OF CONTRACT

84.    Plaintiff repeats and realleges each and every allegation as previously set forth

herein.

85.     On or about June 22, 2016, Defendants, APPLE, INC. and AMAZON.COM, LLC, contracted to provide Plaintiff, for valuable consideration, a suitable brand new Apple Macbook Pro MJLQ2LL/A 15-inch Laptop, free from defects, and to deliver said Laptop to the Plaintiff's residence.

86.     Plaintiff performed all contractual obligations on his part to be performed.

87.     Defendants, APPLE, INC. and AMAZON.COM, LLC, manufactured, sold and/or delivered, the aforementioned Apple Macbook Pro MJLQ2LL/A 15-inch Laptop, in a defective manner, such that the supposedly brand new computer contained sensitive spy software, installed by Defendant, CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD., allowing Defendants to track Plaintiff's activities for several months.

88.     Defendants, APPLE, INC. and AMAZON.COM, LLC's, defective performance constitutes a material breach of the Agreements.

89.     Defendants, APPLE, INC. and AMAZON.COM, LLC's, further breached their contract by refusing to act in good faith and deal fairly with the Plaintiff and in otherwise breaching the various duties owed to the Plaintiff by the Defendants.

90.     As a direct and proximate result of Defendants breach, Plaintiff has been caused to suffer damages in excess of seventy-five thousand dollars ($75,000.00).

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS, APPLE, INC., AND AMAZON.COM, LLC, FOR BREACH OF EXPRESS WARRANTY

91.     Plaintiff repeats and realleges each and every allegation as previously set forth herein.

92.     Defendants, APPLE INC and AMAZON.COM, LLC, warranted and represented

the Plaintiff, that among other things, the Defective Products were brand-new, that said Defective Products were free from any and all spy software capable of tracking Plaintiff's activities, and that Defendants, APPLE, INC. and AMAZON.COM, LLC, had good and marketable title to the Defective Products.

93.     Plaintiff relied upon the aforesaid express warranty and representations by Defendants, APPLE, INC. and AMAZON.COM, LLC, and would not have purchased the Defective Products but for the express warranty and representations.

94.     Contrary to Defendants, APPLE, INC. and AMAZON.COM, LLC, express warranty and representations, the Defective Products were defective, in that, among other things, the aforementioned Apple Macbook Pro MJLQ2LL/A 15-inch Laptop was not brand-new, the aforementioned Apple Macbook Pro MJLQ2LL/A 15-inch Laptop contained spy software capable of tracking Plaintiff's activities, and the Defendants, APPLE, INC. and AMAZON.COM, LLC, did not have marketable title to the Defective Products.

95.     Within a reasonable time after Plaintiff learned of the aforementioned breaches by Defendants, APPLE, INC. and AMAZON.COM, LLC, plaintiff notified Defendants of the breaches of the express warranty.

96.     Despite notice and demand duly made, Defendants failed and/or refused to repair or replace the Defective Products.

97.     Due to Defendants, APPLE, INC. and AMAZON.COM, LLC's, breach of the express warranty, Plaintiff has been damaged in an amount in excess of seventy-five thousand dollars ($75,000.00).

<strong><u>AS AND FOR A THIRD CAUSE OF ACTION AGAINST<br>
DEFENDANTS, APPLE, INC., AND AMAZON.COM, LLC,<br>
FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY</u></strong>

98.  Plaintiff repeats and realleges each and every allegation as previously set forth herein.

99.  At all times material hereto, Defendants, APPLE, INC. and AMAZON.COM, LLC, were merchants with respect to the manufacture and/or sale of electronics, computers, and related products they manufactured and sold to Plaintiff.  Defendants, APPLE, INC. and AMAZON.COM, LLC, impliedly warranted that the Defective Products sold to the Plaintiff were merchantable, i.e., fit for the ordinary purposes for which such electronics, computers, and related products are generally used.

100.  The Defective Products were defective in that they improperly contained spy software capable of tracking all of Plaintiff's activities, and have caused Plaintiff to suffer damages. Defendants, APPLE, INC. and AMAZON.COM, LLC's, sale of the Defective Products to Plaintiff constitutes a breach of the implied warranty of merchantability.

101.  Despite notice and demand duly made, Defendants, APPLE, INC. and AMAZON.COM, LLC, failed to comply with its obligations under the implied warranty of merchantability in that it has failed and/or refused to replace the Defective Products, or to otherwise pay amounts required to remedy the condition caused by the Defective Products. Such failures and/or refusals constitute a further breach by Defendants, APPLE, INC. and AMAZON.COM, LLC.

102.  Due to Defendants, APPLE INC and AMAZON.COM, LLC, breach of the implied warranty of merchantability, Plaintiff has been damaged in excess of seventy-five thousand dollars ($75,000.00).

**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS, APPLE, INC., AMAZON.COM, LLC AND CHECKPOINT FLUIDIC SYSTEMS INT'L.**

**FOR NEGLIGENCE**

103.    Plaintiff repeats and realleges each and every allegation as previously set forth herein.

104.    At all times material hereto, Defendants had a duty to provide Plaintiff with a brand-new Macbook Pro MJLQ2LL/A 15-inch Laptop, which did not contain spy software capable of tracking Plaintiff's activities, to not track Plaintiff's activities over the course of several months, to provide Plaintiff with a computer to which Defendants had good and marketable title, and to not have plaintiff harassed by the New York City Police Department as result of the purchase of the aforementioned Macbook Pro MJLQ2LL/A 15-inch Laptop.

105.    Defendants, APPLE, INC., AMAZON.COM, LLC and CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD., wrongfully provided the plaintiff with a computer that was not reasonably safe and/or which permitted plaintiff's activities to be tracked over several months, and permitted plaintiff to be harassed by the New York City Police Department over the course of several months.

106.    Defendants, APPLE, INC., AMAZON.COM, LLC and CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD., were negligent in designing, manufacturing, advertising, selling, controlling, formulating, distributing, and in failing to warn the plaintiff of the quality and characteristic of the Defective Products which made them unsafe and/or unsuitable for use.

107.    As a direct and proximate result of APPLE, INC., AMAZON.COM, LLC AND CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD.'s, negligence, the plaintiff sustained, continues to sustain, and will sustain substantial direct and/or consequential damages in excess of seventy-five thousand dollars ($75,000.00).

**AS AND FOR A FIFTH CAUSE OF ACTION AGAINST**

**DEFENDANTS, APPLE, INC., AND AMAZON.COM, LLC,**
**FOR STRICT LIABILITY**

108.    Plaintiff repeats and realleges each and every allegation as previously set forth herein.

109.    Upon information and belief, Defendant, APPLE, INC., is a merchant in the business of manufacturing and selling electronics, computers, and related products.

110.    Upon information and belief, Defendant, AMAZON.COM, LLC, is a merchant in the business of selling electronics, computers, and related products.

111.    The Defective Products sold to Plaintiff were expected to and did reach plaintiff without substantial change in the condition in which they were sold.

112.    The Defective Products sold by AMAZON.COM, LLC and APPLE, INC., to plaintiff, were in a defective condition unreasonably dangerous to the plaintiff.

113.    The defects in the Defective Products sold to plaintiff caused plaintiff's movements to be tracked over the course of several months, and caused plaintiff to be threatened with arrest over the course of several months.

114.    As a direct and proximate result of the defective condition of the Defective Products, plaintiff sustained, continues to sustain, and will sustain substantial direct and/or consequential damages in excess of seventy-five thousand dollars ($75,000.00).

**AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANTS,**
**APPLE, INC. AND AMAZON.COM, LLC,**
**FOR FRAUDULENT CONCEALMENT**

115.    Plaintiff repeats and realleges each and every allegation as previously set forth herein.

116.    At all relevant times, Defendant, APPLE, INC., had full knowledge of the defects

in the Defective Products sold to plaintiff.

117.    At all relevant times, Defendant, AMAZON.COM, LLC, had full knowledge of the defects in the Defective Products sold to plaintiff.

118.    At all relevant times, plaintiff did not know and did not have reason to know of the defects in the Defective Products sold to plaintiff by Defendants, APPLE, INC. and AMAZON.COM, LLC.

119.    At all relevant times, Defendants, APPLE, INC. and AMAZON.COM, LLC, failed to notify plaintiff of the defects in the Defective Products it sold to Plaintiff.

120.    Defendants, APPLE, INC. and AMAZON.COM, LLC, had the duty to supply plaintiff with fair, objective information regarding the Defective Products sold to plaintiff by Defendants, APPLE, INC. and AMAZON.COM, LLC.

121.    Upon information and belief, Defendants, APPLE, INC. and AMAZON.COM, LLC, had undertaken active measures to conceal the defective nature of the Defective Products from plaintiff.

122.    Upon information and belief, Defendants, APPLE, INC. and AMAZON.COM, LLC, had taken active measures to conceal the plaintiff's claims against Defendants, APPLE, INC. and AMAZON.COM, LLC, including, but not necessarily limited to, having the New York City Police Department confiscate the Defective Products from plaintiff.

123.    Defendants, APPLE, INC. and AMAZON.COM, LLC, concealment as aforesaid prevented and frustrated measures which could and would have been made by plaintiff to mitigate damages.

124.    As a result of these actions by Defendants, APPLE, INC. and AMAZON.COM, LLC, plaintiff has acted to his detriment in that, among other things, he did not commence suit

against Defendants prior to this time.

125.    As a direct and proximate result of the defective condition of the Defective

Products, plaintiff sustained, continues to sustain, and will sustain substantial direct and/or

consequential damages in excess of seventy-five thousand dollars ($75,000.00).

**AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST
DEFENDANTS, APPLE, INC. AND AMAZON.COM, LLC,
FOR FRAUD IN THE INDUCEMENT AND MISRPRESENTATION**

126.    Plaintiff repeats and realleges each and every allegation as previously set forth

herein.

127.    Defendants, APPLE, INC. and AMAZON.COM, LLC, knew, or in the exercise of

due care should have known, that the above representations of past and/or existing facts made to

plaintiff were false, untrue and/or misleading and/or made such representations as affirmations of

which it had knowledge. Said representations, in fact, were false.

128.    Defendants, APPLE, INC. and AMAZON.COM, LLC, knew or in the exercise of

due care should have known, that plaintiff would rely upon such misrepresentations in

purchasing the Defective Products. Alternatively, Defendants, APPLE, INC. and

AMAZON.COM, LLC, made such representations under such circumstances that plaintiff would

be justified in acting in reliance thereon.

129.    Defendants, APPLE, INC. and AMAZON.COM, LLC, failure to notify and

concealment from plaintiff of the defective nature of the Defective Products prior to plaintiff's

purchase of the Defective Products prevented the plaintiff from making informed business

decisions. If the plaintiff was aware that the Defective Products were defective, he would not

have purchased said Defective Products.

130.    Plaintiff justifiably relied to plaintiff's detriment upon the above fraudulent and/or

negligent misrepresentations and as a direct and proximate result thereof has sustained and continue to sustain direct and/or consequential damages in excess of seventy-five thousand dollars ($75,000.00).

**AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST DEFENDANTS, APPLE, INC., AND AMAZON.COM, LLC, FOR FALSE ADVERTISING AND UNFAIR BUSINESS PRACTICE**

131.   Plaintiff repeats and realleges each and every allegation as previously set forth herein.

132.   Defendants, APPLE, INC. and AMAZON.COM, LLC, violated NY General Business Law §§ 349 et seq., by, among other things, disseminating advertisements which contained materially untrue, deceptive and/or misleading misrepresentations, and by engaging in practices which were designed and/or had the capacity to deceive the plaintiff, regarding the characteristics of Defendants electronics, computers, and related products.

133.   As a direct and proximate result of Defendants', APPLE, INC.'s and AMAZON.COM, LLC's, violation of NY General Business Law §§ 349, et seq., plaintiffs have sustained and continue to sustain direct and/or consequential damages in excess of seventy-five thousand dollars ($75,000.00).

134.   That by reason of the foregoing, the Plaintiff has suffered damages and requests an award of money damages in a sum in excess of seventy-five thousand dollars ($75,000.00).

**AS AND FOR A NINTH CAUSE OF ACTION AGAINST DEFENDANT, FEDEX CORPORATION, FOR NEGLIGENCE**

135.   Plaintiff repeats and realleges each and every allegation as previously set forth herein.

136.   At all times material hereto, Defendant, FEDEX CORPORATION, had a duty to

operate its shipping and delivery business in a careful, reasonable and prudent manner. Said duty was owed to recipients of packages delivered by Defendant, such as Plaintiff, as well as to its customers.

137.    Defendant, FEDEX CORPORATION, so wrongfully, recklessly, carelessly, and negligently investigated the missing laptop computer of Defendant, CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD., and reported the missing computer as a crime to the NYPD, as to cause plaintiff to be harassed by the New York City Police Department over the course of several months and threatened with arrest for grand theft. Accordingly, Defendant seriously breached any and all duties it had, including the duty to be careful.

138.    Defendant, FEDEX CORPORATION, was negligent, reckless and careless in: investigating missing property; tracking the shipping and delivery of the laptop; gathering information; obtaining facts; verifying alleged facts; listening to its customer; communicating to third-parties; reporting incidents to the police department; reporting the missing laptop as a theft by plaintiff; causing a falsification to government authorities; failing to act carefully and prudently at all material dates, times, and places; and as will be revealed in discovery. Also, *res ipsa loquitor* is affirmatively pleaded. Furthermore, negligence *per se* is affirmatively pleaded based upon Defendant's violation of state and federal statutes and criminal codes as to falsification to authorities.

139.    As a direct and proximate result of FEDEX CORPORATION's, negligence, the plaintiff sustained, continues to sustain, and will sustain substantial direct and/or consequential damages, including personal injuries, mental and emotional distress, pain and suffering, humiliation and embarrassment, loss of the enjoyment of life, and out-of-pocket losses for treatment, in excess of seventy-five thousand dollars ($75,000.00).

140.    Therefore, the conduct, acts, and omissions of Defendant, FEDEX

CORPORATION, at all material times, were negligent, and accordingly said Defendant is liable

for the damages it has caused.

*WHEREFORE*, Plaintiff demands that judgment be entered in his favor and against the

Defendants, and that damages in a sum in excess of seventy-five thousand dollars ($75,000.00 be

awarded, together with interest, costs and disbursements of this action, and any other relief this

Court deems just and proper.

Dated:    Bronx, New York
           October 6, 2017

By: _____
    TYRONE HOLMES
    Plaintiff, Pro Se
    1465 Hammersley Avenue
    Bronx, NY 10469

# A-18

Case 1:17-cv-04557-ER Document 121

Filed 07/23/18 Page 1 of 29

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

TYRONE HOLMES,

- against -

Plaintiff,

APPLE INC., AMAZON.COM, LLC, and CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD.,

Defendants.

**OPINION AND ORDER**

17 Civ. 4557 (ER)

Ramos, D.J.:

Tyrone Holmes ("Holmes" or "Plaintiff"), proceeding *pro se*, brings this lawsuit asserting

eight causes of action against Defendants Apple Inc. ("Apple"), Amazon.com, LLC ("Amazon"), and CheckPoint Fluidic Systems International, Ltd. ("CheckPoint"). *See* Compl. (Doc 1). CheckPoint moves to dismiss the claims against it for lack of personal jurisdiction. *See* Doc. 48. Apple moves for judgment on the pleadings, or in the alternative, summary judgment in its favor on all claims. *See* Doc. 97. Amazon asks the Court to enter judgment against it on Holmes' first cause of action and to dismiss his remaining seven claims. *See* Doc. 91. In the alternative, it also seeks summary judgment on all claims. *Id*. Holmes has also moved to amend his Complaint and join FedEx Ground Package System, Inc. ("FedEx") as a Defendant. *See* Doc. 47. For the following reasons, each of Defendants' motions is GRANTED and Holmes' motion is DENIED.

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 2 of 29

# I. FACTUAL BACKGROUND[1]

This case involves a convoluted tale of the sale, purchase, loss, and alleged re-sale of an Apple laptop computer. On May 10, 2016, Apple sold Amazon a MacBook Pro laptop bearing the serial number C02RQ1T3G8WN. Rule 56.1 Statement of Apple ("Apple 56.1") (Doc. 99) ¶ 1. Amazon, in turn, sold that laptop to CheckPoint on June 2, 2016. Rule 56.1 Statement of Amazon ("Amazon 56.1") (Doc. 100) ¶ 4. That laptop was packaged for delivery in Breinigsville, Pennsylvania. *Id*. ¶¶ 2–3. CheckPoint received the computer by June 7, 2016, and an employee there installed a third-party tracking software, Kaseya, onto the laptop. *Id*. ¶¶ 3–4. That employee also affixed a "property of CheckPoint Pumps" sticker to the laptop. *Id*. CheckPoint subsequently attempted to ship the laptop to Dubai through FedEx; however, the laptop did not arrive. *Id*. ¶¶ 5–6. A CheckPoint employee filed a report with FedEx to notify it of the loss on June 15, 2016. *Id*. ¶ 6.

On June 22, 2016, Holmes purchased an Apple MacBook Pro laptop and an AppleCare Protection Plan ("AppleCare") through Amazon. *See* Compl. ¶ 21. The laptop was listed on Amazon's website as "brand new" and Holmes understood that the product would be free from defects and that it would not contain spyware or malware. *Id*. ¶¶ 21, 23–24. The laptop sent to Holmes was among a batch of new MacBook Pro computers Amazon sourced from Apple, which was packaged for delivery in Lewisberry, Pennsylvania. Amazon 56.1 ¶¶ 8–9. Holmes received the laptop he ordered from Amazon on June 23, 2016. *Id*. ¶ 10. According to

Holmes, that laptop also had the serial number C02RQ1T3G8WN. Compl. ¶ 21.
When Holmes received the laptop, it was shrink-wrapped and did not contain any
stickers on it. *See* Doc. 54 (Transcript

[1] Here, Apple and Amazon have moved for judgment on the pleadings and, in the
alternative, summary judgment. The Court will include facts from the Rule 56.1
Statements of Apple ("Apple 56.1") (Doc. 99) and Amazon ("Amazon 56.1") (Doc.
100), as well as Holmes' Complaint, which the Court accepts as true for purposes
of the motions for judgment on the pleadings. *See Koch v. Christie's Int'l PLC*, 699
F.3d 141, 145 (2d Cir. 2012).

---

2

of September 14, 2017 conference) at 3:19–22; Doc. 86 (Transcript of January 12,
2018 conference) at 5:13–18.

At some point, Holmes gave his wife, Stephanie Scott ("Scott") an Apple laptop.[2]
Scott registered AppleCare in her name on June 25, 2016 for the laptop bearing the
serial number C02RQ1T3G8WN. Apple 56.1 ¶ 12. According to CheckPoint, it
was able to locate that laptop on July 23, 2016 using the Kaseya tracking software
it had installed and determined that the computer was online and being used by
Scott. *Id*. ¶ 15; *see also* Declaration of Ruston Mahoney in Support of
CheckPoint's Motion to Dismiss for Lack of Jurisdiction ("Mahoney Decl.") (Doc.
51) Ex. E. CheckPoint subsequently relayed this information to FedEx, and FedEx
filed a police report. *Id*. ¶¶ 16–17.

Months later, on September 9, 2016, Holmes received a call from New York City
Police Department Detective Rodrigo Caballero. Compl. ¶ 36. Caballero told
Holmes that he possessed a MacBook laptop that contained government software
belonging to the Department of Defense. *Id*. He further told Holmes that he and
other officers were outside Holmes' residence and wanted to retrieve the computer.
*Id*. Holmes informed Caballero that he was in the midst of conducting a funeral
service, and could not assist the officers. *Id*. ¶ 37.

The next day, Caballero again called Holmes in an attempt to retrieve the
computer. *Id*. ¶ 38. At that time, Holmes told Caballero that he had given the

computer to Scott, whose location he was unaware of. *Id*. The calls from Caballero, however, did not stop, and on September 12, 2016, Holmes retained counsel to represent him in the police investigation. *Id*. ¶¶ 39–40. That day, Holmes' counsel spoke with Caballero and learned that the computer in Scott's possession bearing the serial number C02RQ1T3G8WN actually belonged to CheckPoint, a contractor for

2 According to Holmes, he and Scott are estranged. *See* Doc. 54 at 5:12. 3

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 4 of 29

the Department of Defense. *Id*. ¶ 41. According to Caballero, the computer had been purchased by CheckPoint, had been "outfitted" with "sensitive surveillance software," and was intended to be shipped to Dubai. *Id*. ¶ 42. Caballero further stated that if the computer was not returned, he had the authority to arrest Holmes. *Id*. ¶ 43. Holmes' counsel asked Caballero for verification of these allegations, and that same day, counsel received a letter from a vice president at CheckPoint explaining that CheckPoint had been tracking its laptop since the laptop left CheckPoint's facilities, that CheckPoint "legally collected ample information to prove that [Holmes] is in possession of property belonging to CheckPoint," that it simply sought the return of its property, and that it otherwise had "no knowledge or interest in" learning how Holmes came to possess CheckPoint's laptop. *See* Compl. Ex. B.

The next day, on September 13, 2016, Caballero sent Holmes' counsel an email confirming that the serial number of the CheckPoint computer was C02RQ1T3G8WN, which, according to Holmes, matched the serial number of the laptop he purchased through Amazon. *See* Compl. ¶ 47. Between then and September 21, 2016, Holmes attempted to contact Scott to facilitate the return of the computer. *Id*. ¶ 49. On September 21, 2016, Holmes' counsel informed Caballero that Holmes had done all he could to assist the NYPD and asked Caballero to stop contacting Holmes. *Id*. ¶ 50. In response, Caballero stated that he was planning to proceed with an arrest of Holmes for criminal possession of stolen property in the fourth degree. *Id*. ¶ 51. Holmes then hired a private investigator who was able to locate Scott. *Id*. ¶ 54. He then arranged for Scott's sister to visit her on October 1, 2016 so that she could persuade Scott to return the computer. *Id*. ¶ 56. On October 2, 2016, Holmes learned that the computer was in a public storage unit in Chelsea, New York, but that Scott did not wish to cooperate in

returning the computer to CheckPoint. *Id.* ¶ 58. The next day, Holmes' counsel met with Caballero and

4

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 5 of 29

another NYPD officer to go to Scott's residence. *Id.* ¶¶ 60–61. After meeting with Caballero, Scott agreed to accompany the group to her storage unit. *Id.* ¶ 62. Scott turned over the laptop on October 4, 2016 at 7:30 p.m. *See* Compl. Ex. E. The "property of CheckPoint Pumps" sticker was still on the underside of the laptop. Amazon 56.1 ¶ 26.

On June 16, 2017, Holmes filed the instant Complaint, raising eight causes of action: (1) breach of contract against Apple and Amazon; (2) breach of express warranty against Apple and Amazon; (3) breach of implied warranty of merchantability against Apple and Amazon; (4) negligence against Apple, Amazon, and CheckPoint; (5) strict liability against Apple and Amazon; (6) fraudulent concealment against Apple and Amazon; (7) fraud in the inducement and misrepresentation against Apple and Amazon; and (8) false advertising and unfair business practices under § 349 of the New York General Business Law against Apple and Amazon.[3]

## II. LEGAL STANDARD

### A. Dismissal Under Rule 12(b)(2)

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02 Civ. 4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). To meet this burden where there has been no discovery or evidentiary hearing, the plaintiff must plead facts sufficient for a prima facie showing of jurisdiction. *Id.* The Court construes all of the plaintiff's allegations as true and resolves all doubts in his favor. *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d

3 Holmes' proposed Amended Complaint brings a ninth cause of action against FedEx for negligence. *See* Doc. 47- 1.

_____

5

122, 126 (2d Cir. 2008)). "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)). As 12(b)(2) motions are "inherently . . . matter[s] requiring the resolution of factual issues outside of the pleadings," courts may rely on additional materials when ruling on such motions. *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, No. 91 Civ. 3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); *Darby Trading Inc. v. Shell Int'l Trading and Shipping Co.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008).

In a diversity action, personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). This determination involves a two-step analysis. *Metro. Life Ins. Co. v. Robertson- Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). In New York, the Court must first determine whether personal jurisdiction is appropriate pursuant to the State's general jurisdiction statute, C.P.L.R. § 301, or its long arm jurisdiction statute, C.P.L.R. § 302. If and only if the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the second step is an evaluation of whether the Court's exercise of personal jurisdiction comports with the Due Process Clause of the United States Constitution. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010).

## B. Dismissal Under Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court applies the same standard of review to a Rule 12(c) motion as it

6

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 7 of 29

does to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) (citing *Karedes v. Ackerley Grp. Inc.*, 423 F.3d 107, 113 (2d Cir. 2005)). On a motion to dismiss pursuant to Rule 12(b)(6), the Court is required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). However, the Court is not required to credit legal conclusions, bare assertions or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–81 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain enough factual matter to state a claim to relief that is plausible on its face. *Id.* at 678 (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570).

## C. Summary Judgment

Under Rule 12(d), a court may convert a Rule 12(c) motion for entry of judgment to a Rule 56 motion for summary judgment when the parties present evidence outside the pleadings and are "given the reasonable opportunity to present all material that is pertinent to the motion." *Certified Multi-media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, 150 F. Supp. 3d 228, 236 (E.D.N.Y. 2015) *aff'd* 674 F. App'x 45 (2d Cir. 2017) (quoting Fed. R. Civ. P. 15(d)). Formal notice to the parties is ordinarily not necessary "where a party should

7

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 8 of 29

reasonably have recognized the possibility that the motion might be converted into one for summary judgment and was neither taken by surprise nor deprived of a reasonable opportunity to meet facts outside the pleadings." *Galiotti v. Green*, 475 F. App'x 403, 404 (2d Cir. 2012), *as amended* (Aug. 30, 2012) (internal quotation and punctuation marks omitted).

Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Medical Center*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all

8

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 9 of 29

reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, a motion for summary judgment cannot be defeated on the basis of conclusory assertions, speculation, or unsupported alternative explanations

of facts. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008); *see also Senno*, 812 F. Supp. 2d at 467 (citing *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson*, 477 U.S. at 256–57).

Nonetheless, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (internal citations omitted).

## III. CHECKPOINT'S MOTION TO DISMISS

CheckPoint moves to dismiss Holmes' negligence claim against it because CheckPoint has insufficient contacts with New York to render personal jurisdiction proper under New York law. *See* Memorandum of Law in Support of CheckPoint's Motion to Dismiss ("CheckPoint Mem.") (Doc. 52), at 4–6.

9

## A. Personal Jurisdiction under C.P.L.R. § 301

C.P.L.R § 301 applies only to corporate defendants who are present in New York "with a fair measure of permanence and continuity." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 34 (1990). A company that engages in only "occasional or casual business" or who "merely solicits New York customers" will not be subject to general personal jurisdiction in New York. *Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 354 (S.D.N.Y. 2014) (internal quotations and punctuation marks omitted) (quoting *Bossey ex rel Bossey v. Camelback Ski Corp.*, 21 Misc.3d 1116(A), 2008 WL 4615680, at *2 (N.Y. Sup. Ct. Oct. 20, 2008)).

Here, CheckPoint has no physical presence in New York. *See* Affidavit of Andrew C. Elliot in Support of CheckPoint's Motion to Dismiss ("Elliot Aff.") (Doc. 49), at 2. It has no agents, officers, directors, or employees in New York. *Id*. It has never been authorized to conduct business in New York. *Id*. CheckPoint was able to identify only five sales between August 1, 2013 and June 16, 2017 that contained billing and/or shipping addresses in New York. *See* Declaration of Bobbie Jo Bridges in Support of CheckPoint's Motion to Dismiss ("Bridges Decl.") (Doc. 64) ¶ 4.[4] The total amount of these sales, $15,310.91, constitutes "a few hundredths of a percent of CheckPoint's sales in dollar value during the same period." *Id*. ¶ 10.

In opposition, Holmes points to the fact that CheckPoint operates a website that New York customers can see and use and that CheckPoint has been subject to jurisdiction in other cases in New York courts. *See* Affidavit in Opposition to Motion to Dismiss and Cross-Motion for Discovery ("Holmes Aff.") (Doc. 56). Holmes provides no support for his argument that the operation of a website, without more, can subject a company to general personal jurisdiction in

[4] CheckPoint's records show 27,139 sales records during this period. *Id*. ¶ 5. 10

---

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 11 of 29

New York; in fact, courts routinely determine that it is insufficient to confer jurisdiction. *See ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 87–88 (E.D.N.Y. 2006) (collecting cases). Further, although CheckPoint has been a defendant in one New York proceeding brought to the Court's attention, CheckPoint never appeared in that case, which did not require the establishment of personal jurisdiction over CheckPoint because it was a proceeding to domesticate a foreign judgment. *See Marine Hub Pte. Ltd. v. CheckPoint Fluidic Sys. Int'l Ltd.*, No. 601203/2010 (Sup. Ct. 2010); *see also Lenchyshyn v. Pelko Elec., Inc.*, 723 N.Y.S.2d 285, 289 (4th Dep't 2001) ("[A] party seeking recognition in New York of a foreign money judgment (whether of a sister state or foreign country) need not establish a basis for the exercise of personal jurisdiction over the judgment debtor by the New York courts."). Holmes, therefore, has not plead facts—even in his opposition—that would support a *prima facie* finding of general personal jurisdiction.

## B. Personal Jurisdiction under C.P.L.R. § 302(a)

C.P.L.R. § 302(a) allows a court to exercise personal jurisdiction over a non-domiciliary defendant who: (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state;" (2) "commits a tortious act within the state . . .;" or (3) "commits a tortious act without the state causing injury to person or property within the state . . . [if he] (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]" *Mount Whitney Investments, LLP v. Goldman Morgenstern & Partners Consulting, LLC*, No. 15 Civ. 4479 (ER), 2017 WL 1102669, at *4 (S.D.N.Y. Mar. 23, 2017) (quoting C.P.L.R. § 302(a)(1–3)).

11

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 12 of 29

Holmes argues that CheckPoint committed a tort outside the state of New York that it knew would have consequences in New York. *See* Holmes Aff. ¶¶ 24–37. Specifically, he argues that CheckPoint reported its computer as stolen, and that its discussions with FedEx and the NYPD about the computer led both "to assume incorrectly that there was a theft," which caused Holmes emotional distress during the period in which CheckPoint's computer was in his wife's possession. *Id*. The "tort" that Holmes alleges CheckPoint committed, therefore, appears to be a negligence claim based on the reporting of its missing computer. *Id*.; *see* Compl. ¶¶ 92– 96 (bringing a cause of action against CheckPoint for negligence). But Holmes has put forward no support for his argument that an entity can be held liable for negligence on the basis of reporting a theft and cooperating with authorities, even if the report was inaccurate.[5] To the extent that Holmes has attempted to raise a claim for malicious prosecution, a civilian "who merely furnishes information to law enforcement authorities . . . will not be held liable for malicious prosecution." *Lupski v. County of Nassau*, 822 N.Y.S.2d 112, 114 (2d Dep't 2006). Instead, a plaintiff must allege that the defendant "played an active role in the prosecution, such as giving advice and encouragement and importuning the authorities to act." *Id*. (quoting *Viza v. Town of Greece*, 463 N.Y.S.2d 970, 971 (1983)). Holmes' allegations that CheckPoint communicated with FedEx and the NYPD about the loss of its computer, and "reasonably expect[ed]" consequences to flow within New York, are insufficient to confer personal jurisdiction on courts in New York,

because they do not constitute allegations of a tortious act as required by C.P.L.R. § 302(a).

5 The record is unclear as to how CheckPoint's computer came to be in Holmes' possession, whether it was stolen, and if so, who stole the computer. No party in this case has asserted that Homes was responsible for CheckPoint's initial loss of the computer.

_____

12

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 13 of 29

## C. Holmes' Discovery Motion

Holmes seeks discovery to determine what contacts CheckPoint has with the State of New York. *See* Holmes Aff. ¶ 70. Specifically, he seeks to serve interrogatories, a request for production of documents, and a notice of deposition of one CheckPoint employee. *Id.* ¶ 71. Holmes argues that he is entitled to determine whether CheckPoint had banking or investment banking contacts in New York, retained any law, consulting, or public relations firms based in New York, hosted business meetings in New York, or made any business purchases in New York. *Id.* ¶ 72.

Holmes' request must be denied. *See In re Angeln GmBH & Co. KG*, 510 F. App'x 90, 92–93 (2d Cir. 2013) (finding that courts may decline to permit jurisdictional discovery where a plaintiff has not made out a prima facie case for jurisdiction). Even if those business contacts exist, they would be insufficient for purposes of general personal jurisdiction. *See Brown*, 57 F. Supp. 3d at 354. They would also be insufficient for the purposes of New York's long-arm statute, since those contacts would be unrelated to CheckPoint's involvement in this case. *Id.* at 356 (explaining that a defendant must purposefully avail itself of conducting business activities in New York, and that the dispute in the litigation must arise out of one such transaction). *See Haber v. United States*, 823 F.3d 746, 753 (2d Cir. 2016) (noting that jurisdictional discovery is inappropriate if the plaintiff fails to show how the information to be obtained bears on the jurisdictional issue). The Court therefore GRANTS CheckPoint's motion to dismiss.[6]

6 Because the Court finds that there is no personal jurisdiction under the C.P.L.R., it does not reach the constitutional question of whether the imposition of jurisdiction in this case would comport with traditional notions of fair play and substantial justice.

_____

13

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 14 of 29

## IV. APPLE'S MOTION FOR ENTRY OF JUDGMENT

Apple moves for judgment on the pleadings for each of Holmes' eight claims. Memorandum of Law in Support of Apple's Motion for Judgment ("Apple Mem.") (Doc. 98), at 2. In the alternative, it moves for summary judgment on those claims based on the testimony of Apple employee Tim O'Neil. *Id*.

### A. Breach of Contract and Express Warranty Claims

Apple argues that Holmes has not stated a claim for either breach of contract or breach of warranty (claims one and two) because he has not alleged the existence of a contract between himself and Apple. Apple Mem. at 8.

Under New York law, the existence of a contract between the parties is an essential element of both a breach of contract claim and a breach of express warranty claim. *See Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004); *Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999). In his Complaint, Holmes alleged that he purchased his laptop through Amazon, but that Amazon and Apple both "contracted" to provide him the laptop and "warranted and represented" that the laptop was "brand-new" and "free from any and all spy software capable of tracking [his] activities." Compl. ¶¶ 33, 74, 81. But these allegations are belied by the receipt Holmes provided, which shows that the seller of the laptop and AppleCare was Amazon, not Apple. *Id*. Ex. A; *accord Xi Wei Lin v. Chinese Staff & Workers' Ass'n*, No. 11 Civ. 3944 (RJS), 2012 WL 5457493, at *4 (S.D.N.Y. Nov. 8, 2012) (noting that a court need not accept as true "pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference") (quoting *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005)).

14

Holmes argues that AppleCare, the laptop protection plan, is the contract between him and Apple that Apple breached by allowing him to receive CheckPoint's laptop. *See* Memorandum of Law in Opposition to Defendants' Motions for Judgement ("Opp.") (Doc. 105), at 9. Apple raises two points in response. First, it argues that it has no record of Holmes registering AppleCare for the CheckPoint laptop; instead, Scott registered an AppleCare plan (although it is unclear if this was the AppleCare plan purchased by Holmes) for the CheckPoint laptop on June 25, 2016. Apple Mem. at 11 (citing Declaration of Tim O'Neil in Support of Apple's Motion for Entry of Judgment ("O'Neil Decl.") (Doc. 102) ¶¶ 9–12). Thus, they argue, there was no contract between Apple and Holmes. Second, Apple argues that Holmes has not alleged a breach of the AppleCare plan; rather, his allegations are that the Apple laptop he received from Amazon was defective because it contained the Kaseya tracking software. Apple Mem. at 10–11; Reply Memorandum of Law in Support of Apple's Motion for Entry of Judgment ("Apple Reply Mem.") (Doc. 113), at 3–4. AppleCare is a service contract that provides for Apple support in replacing or repairing laptops in certain circumstances, and specifically excludes repairs based on the effects of third-party products. *See* O'Neil Decl. Ex. D.[7] Holmes' claims in the first and second causes of action, however, are based on the theory that the laptop was defective because CheckPoint subsequently installed tracking software on it. *See* Compl. ¶¶ 76, 83. By its terms, therefore, the AppleCare agreement is not triggered. Accordingly, the Court finds that the AppleCare agreement is not germane to the dispute between Holmes and Apple; further, because Holmes has not pointed to a contract with Apple

---

[7] Although Holmes did not attach the AppleCare agreement to his complaint, the Court may properly consider it on a motion for judgment on the pleadings. *See City of Brockton Ret. Sys. v. Avon Prods., Inc.*, No. 11 Civ. 4665 (PGG), 2014 WL 4832321, at *12 (S.D.N.Y. Sept. 29, 2014) (internal quotation marks and citations omitted) (noting that a court may consider any documents that that the Complaint "relies heavily upon its terms and effect, thereby rendering the document integral to the complaint").

that governs the sale of a new laptop, his claims for breach of contract and breach of express warranty against Apple must fail. The Court GRANTS Apple's motion for entry of judgment on these two claims.

## B. Breach of Implied Warranty, Negligence, and Strict Liability

Apple argues that it should also be granted judgement on the pleadings for Holmes' breach of implied warranty, negligence, and strict liability claims because the injuries Holmes alleges could not have been caused by Apple. Apple Mem. at 12.

Under New York law, there is an implied warranty of merchantability, but it does not protect consumers where the alleged defect "was not attributable to a manufacturing or retail defect." *Fagan v. AmerisourceBergen Corp*., 356 F. Supp. 2d 198, 215 (E.D.N.Y. 2004) *vacated on other grounds* 163 F. App'x 37 (2d Cir. 2006) (quoting *Elsroth v. Johnson & Johnson*, 700 F. Supp. 151, 160 (S.D.N.Y. 1988). Similarly, a manufacturer cannot be held liable for either negligence or strict liability when a "subsequent modification" is made after the product leaves the manufacturer that "alters the product and is the proximate cause of plaintiff's injuries." *Id*. at 206, 215 (citing *Elsroth*, 700 F. Supp. at 159); *see also Duval v. Delta Int'l Machinery Corp*., 13 Civ. 4270 (GHW), 2015 WL 4522911, at *5 (S.D.N.Y. July 27, 2015) (recognizing the availability of the substantial modification defense). Here, Holmes alleges that Apple is liable for his laptop, which he claims is defective because it contained CheckPoint's Kaseya tracking software. Compl. ¶¶ 89, 94, 101–02. However, Holmes' own allegations makes clear that CheckPoint, not Apple, installed this software. *Id*. ¶ 76 (alleging that the laptop he received from Amazon "contained sensitive spy software, installed by Defendant[] CheckPoint Fluidic Systems

16

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 17 of 29

International, Ltd.").[8] Holmes has therefore failed to state a claim for relief against Apple, and the Court GRANTS Apple's motion for judgment on the pleadings with respect to Holmes' third, fourth, and fifth claims.

## C. Fraudulent Concealment and Fraud in the Inducement

Apple moves for judgment on Holmes' sixth and seventh claims, arguing that he has not identified any specific misrepresentations or actionable omissions by

Apple, as required under Rule 9(b) of the Federal Rules of Civil Procedure. Apple Mem. at 17, 20.

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A complaint must therefore: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (quoting *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)). Allegations that are merely conclusory or "unsupported by factual allegations" cannot meet this standard. *Id.* (citing *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986)). For a fraudulent concealment claim, a defendant may only be liable for an omission of a material fact if it had a "duty to disclose" that fact. *Schwatka v. Super Millwork, Inc.*, 965 N.Y.S.2d 547, 551 (2d Dep't 2013). Specifically, under New York law, a defendant may be held liable if it "has superior knowledge or means of knowledge, such that the transaction without disclosure is rendered inherently unfair." *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 484 (S.D.N.Y. 2015) (quoting *Miele v. Am. Tobacco Co.*, 770 N.Y.S.2d 386, 391 (2d Dep't 2003)).

[8] For this reason, the Court agrees with Apple that Holmes' reference to the innocent bystander rule is inapposite, as that rule only applies to the manufacturer of a defective product, not the manufacturer of a product that is subsequently modified and becomes defective. *See* Apple Reply Mem. at 5–6.

---

17

Case 1:17-cv-04557-ER  Document 121  Filed 07/23/18  Page 18 of 29

Apple argues that Holmes has only pleaded that Apple "had full knowledge of the defects" in the laptop sold to him by Amazon—presumably the presence of the Kaseya tracking software—and that Apple "failed to notify" him of this, without providing any supporting factual allegations. *See* Apple Mem. at 18.[9] Holmes makes no factual allegations regarding Apple's knowledge of the installation of the software or when Apple became aware of any "defects" on the computer, if ever. Holmes does not attempt to address these deficiencies in his opposition. Because Holmes' only allegations with respect to fraudulent concealment are conclusory, he

has not stated a claim, and the Court GRANTS Apple's motion for judgment on the pleadings.

With respect to Holmes' seventh claim, for fraud in the inducement, Apple argues that Holmes has not alleged *any* statement made by Apple, much less any statement with specificity. *See* Apple Mem. at 20. Throughout the complaint, Holmes refers solely to "above representations" or "various representations concerning" the laptop without detailing the contents of the representations, who made the representations, when and where they were made, and why they were fraudulent at the time they were made. *See* Compl. ¶¶ 23, 116. This falls far short of the standard imposed by Rule 9(b), and therefore the Court GRANTS Apple's motion for judgment on Holmes' seventh claim.

Amazon also argues for judgment on the pleadings for these fraud claims based on Rule 9(b)'s heightened pleading standard. Memorandum of Law in Support of Amazon's Motion for Judgment ("Amazon Mem.") (Doc. 92), at 21. For the reasons stated above, Amazon's motion is also GRANTED.

[9] Although Holmes' pleadings do not state with particularity what the defect Apple allegedly concealed was, the Court understands the defect alleged to be the same defect Holmes described in earlier causes of action—the presence of the Kaseya tracking software. *See* Compl. ¶¶ 76, 83, 89 (describing the laptop received from Amazon as defective because it contained tracking software).

---

18

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 19 of 29

**D. False Advertising and Unfair Business Practices**

Holmes' eighth claim alleges that Amazon and Apple engaged in false advertising and unfair business practices prohibited by New York General Business Law § 349. *See* Compl. ¶ 121. Apple argues that Holmes has failed to allege a violation of § 349 because he has not alleged that Apple made misstatements while engaged in "consumer-oriented conduct." Apple Mem. at 21–22.

Private contract disputes do not fall within the ambit of § 349; rather, a plaintiff bringing a § 349 claim must allege conduct that has "a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine*

*Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). Thus, the allegedly deceptive conduct "may not be limited to just the parties." *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 373 (S.D.N.Y. 2016) (quoting *Teller v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 772 (2d Dep't 1995)). Holmes has failed to allege that Apple's conduct "affected anyone except him." *Id*. He has not, for example, alleged any facts to suggest that Apple routinely sells computers to third parties marked as "new" when they are actually used and contain third party surveillance software. *See* Compl; *see also Koch v. Greenberg*, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014) ("Where the acts complained of potentially affect similarly situated consumers, the consumer-oriented prong will be met.") (internal citations and quotations marks omitted). Indeed, Holmes himself has noted that his allegations suggest a "bizarre fact pattern." Compl. ¶ 14 (Introductory Statement). Based on the factual allegations in the Complaint, the Court finds that Holmes has not alleged consumer-oriented conduct within the meaning of § 349; therefore, the Court GRANTS Apple's motion for judgment on the pleadings.

Amazon has joined in Apple's arguments regarding dismissal of the eighth claim. *See* Amazon Mem. at 22. Judgment on that claim will also be entered in favor of Amazon.

19

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 20 of 29

## V. AMAZON'S MOTION FOR ENTRY OF JUDGMENT

The Court has already entered judgment in favor of Amazon on Holmes' sixth, seventh, and eighth claims. Amazon also seeks the entry of judgment in its favor on Holmes' second through fifth claims, and seeks entry of judgment against it on Holmes' first claim pursuant to its Rule 68 offer of judgment. *See* Amazon Mem. at 1–2.

Specifically, Amazon presented Holmes with an offer of judgment in the amount of $2,351.12, the value of the Apple MacBook Pro and AppleCare Holmes purchased on June 22, 2014. *See* Declaration of Michael Goetting in Support of Amazon's Motion for Entry of Judgment and Dismissal ("Goetting Decl.") (Doc. 93) Ex. A. On January 12, 2018, Holmes rejected that offer. *Id*. Ex. B. Amazon has since deposited those funds ($2,351.12) with the Clerk of Court. *See* Doc. 83; Goetting Decl. Ex. C. Contending that the offer of judgment against it and the award of $2,351.12 provides Holmes with complete relief on his breach of contract claim,

Amazon asks the Court to enter judgment consistent with its offer pursuant to Rule 68 of the Federal Rules of Civil Procedure. *See* Amazon Mem. at 10–16.

## A. Breach of Contract Claim

Holmes alleges that Amazon breached their contract by selling him a laptop that contained "sensitive spy software" rather than a brand new Apple laptop. *See* Compl. ¶¶ 73–76. When Holmes entered into the purchase agreement with Amazon, he also agreed to Amazon's conditions of use. *See* Declaration of Jesse Jensen in Support of Amazon's Motion for Entry of Judgment ("Jensen Decl.") (Doc. 94) ¶¶ 5–6.[10] In his opposition, Holmes does not dispute that

[10] The Court may consider the conditions of use in determining the range of Holmes' possible recovery on his breach of contract claim because that document is "integral" to the Complaint. *See City of Brockton Ret. Sys. v. Avon Prods., Inc.*, No. 11 Civ. 4665 (PGG), 2014 WL 4832321, at *12 (S.D.N.Y. Sept. 29, 2014) (internal quotation marks and citations omitted) (noting that a court may consider any documents that that the Complaint "relies heavily upon its terms and effect, thereby rendering the document integral to the complaint").

_____

20

he was notified that by purchasing a product on Amazon, he agreed to its conditions of use. *See* Opp. at 6 (conceding that he signed the contract but disputing that the remedy limitation in the contract applies to his tort claims against Amazon).

The agreement provided that "if a product offered by Amazon itself is not as described, [Holmes'] sole remedy is to return it in unused condition" and receive a refund. Jensen Decl. Ex. B at 2. The agreement also provided that "the laws of the state of Washington . . . will govern these conditions of use and any dispute of any sort that might arise between [Holmes] and Amazon." *Id.* at 4.

Under Washington law, agreements like Amazon's are enforceable. *See Elkin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1175 n.5 (W.D. Wash. 2014). Washington law, adopting provisions of the Uniform Commercial Code, allows for a contract to limit a buyer's remedy "to return of the goods and repayment of the

price." *See* Wash. Rev. Code § 62A.2-719(1)(a); *O.B. Williams Co. v. S.A. Benheim West, Inc.*, No. Co8-1155 (JLR), 2010 WL 11526889, at *11–12 (W.D. Wash. July 13, 2010) (applying this provision). For his part, Holmes does not contend that the contract is unconscionable or that it does not limit remedies in this way; he argues, instead, that the contract's limitation on remedies should not bar recovery on his remaining seven claims against Amazon. *See* Opp. at 6 ("Regarding defendant's total reliance on the 'exclusive remedy' argument, the plain meaning of that phrase is the return and reimburse remedy is the exclusive remedy *for a breach of contract claim*.").

Holmes paid $2,351.12 for his MacBook Pro laptop and AppleCare. *See* Compl. Ex. A. Without conceding liability, Amazon has presented Holmes with an offer of judgment in that amount. *See* Goetting Decl. Ex. A. In the Second Circuit, an unaccepted offer of judgment pursuant to Rule 68 combined with the entry of judgment against a defendant, moots a plaintiff's

21

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 22 of 29

claim. *See Leyse v. Lifetime Entm't Servs.*, 679 F. App'x 44, 48 (2d Cir. 2017) ("[A]n unaccepted Fed. R. Civ. P. 68 offer for complete relief[,] . . . if rejected, may nonetheless permit a court to enter a judgment in the plaintiff's favor."); *Bais Yaakov of Spring Valley v. Educ. Testing Serv.*, 251 F. Supp. 3d 724, 739 (S.D.N.Y. 2017) ("[A] claim for individual relief may be mooted by tender and entry of judgment."). Both parties agree that Amazon's deposit of $2,351.12, coupled with an offer of judgment against it, provides Holmes with the relief he is entitled to on the breach of contract claim only. The Court therefore finds that Amazon has fulfilled the conditions required to moot Holmes' first claim, GRANTS Amazon's Rule 68 motion, and enters judgment in favor of Holmes in the amount if $2,351.12.

## B. Breach of Warranty Claims

Holmes' second and third claims against Amazon seek relief for breach of express warranty and breach of implied warranty. *See* Compl. ¶¶ 80–91. Amazon argues that these claims must fail because the conditions of use disclaim express and implied warranties. *See* Amazon Mem. at 17–19.

The conditions of use provide that Amazon "does not warrant that product descriptions or other content of any Amazon Service is accurate, complete, reliable, current, or error-free." Jensen Decl. Ex. B at 2. Amazon further "disclaim[ed] all warranties, express or implied, including, but not limited to, implied warranties of merchantability and fitness for a particular purpose." *Id*. It also stated that all products were "provided by Amazon on an 'as is' and 'as available' basis." *Id*. Amazon argues that these disclaimers prevent Holmes from bringing claims for breach of implied or express warranties. Amazon Mem. at 18–19. Holmes argues that the disclaimers should not be enforced because they are against public policy. Opp. at 6.

22

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 23 of 29

To demonstrate that the disclaimers are valid under Washington law,[11] Amazon cites to a 1964 Washington Supreme Court case, *McInnis & Co. v. Western Tractor Equipment Co*., 388 P.2d 562 (Wash. 1964), which holds that a seller may expressly disclaim both express and implied warranties in a contract. *See* Amazon Mem. at 19. But Amazon neglects to mention subsequent Washington Supreme Court cases that altered this landscape, including *Berg v. Stromme*:

Thirty years ago this court set the standard for applying warranty disclaimers in transactions involving a noncommercial entity. According to the decision in *Berg*, warranty disclaimers in a contract must be both (1) explicitly negotiated and (2) set forth with particularity. The presumption leans against the warranty disclaimer, and the burden lies on the party seeking to include the disclaimer to prove its legality.

*Puget Sound Fin., L.L.C. v. Unisearch, Inc*., 47 P.3d 940, 945 (Wash. 2002) (internal citations omitted); *see also Cozumel Leasing, LLC v. Int'l Jets Inc*., No. 16 Civ. 5089 (RJB), 2018 WL 1737778, at *15 (W.D. Wash. Apr. 11, 2018) (applying *Berg* analysis for a warranty disclaimer in a transaction involving an LLC). Washington law "generally disfavors warranty disclaimers," and they are therefore "ineffectual unless the parties explicitly negotiate them and set them forth with particularity." *Mattingly v. Palmer Ridge Homes LLC*, 238 P.3d 505, 514 (Wash. Ct. App. 2010) (finding the explicit negotiation prong met where the parties negotiated changes to other parts of the agreement containing the disclaimer). Although Amazon has addressed the specificity of the disclaimers, *see* Amazon Mem. at 18, it has not put forward any argument regarding how the disclaimers

were "explicitly negotiated." Therefore, Amazon has not shown that it is entitled to judgment on the pleadings at this stage and the Court DENIES its motion for judgment on Holmes' second and third claims.

11 Because breach of express and implied warranty are contract-based claims, Washington law, which governs the contract, applies. *See Benefield v. Pfizer Inc*., 103 F. Supp. 3d 449, 457 (S.D.N.Y. 2015).

_____

23

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 24 of 29

### C. Common Law Negligence and Strict Products Liability Claims

Amazon argues that the fourth and fifth causes of action, for common law negligence and strict products liability, should be dismissed because they are preempted by the Washington Product Liability Act ("WPLA"), Wash. Rev. Code § 7.72.010 *et seq*. Amazon Mem. at 19.[12]

"The WPLA is the exclusive remedy for product liability claims . . . [and] supplants all common law claims or actions based on harm caused by a product." *Blangeres v. United Sttaes Seamless, Inc*., 725 F. App'x 511, 514 (9th Cir. 2018) (quoting *Macias v. Saberhagen Holdings, Inc*., 282 P.3d 1069, 1073 (Wash. 2012)); *see also City of Seattle v. Monsanto Co*., 237 F. Supp. 3d 1096, 1102 (W.D. Wash. 2017) ("The WPLA 'creates a single cause of action for product- related harms that supplants previously existing common law remedies.'") (quoting *Wash. Water Power Co. v. Graybar Elec. Co*., 774 P.2d 1199, 1207 (Wash. 1989)).

Amazon points to *Bingham v. Blair LLC* in support of its argument that because Holmes' claims for negligence and strict liability are preempted by the WPLA, they should be dismissed. Amazon Mem. at 20. But in *Bingham*, the Western District of Washington denied the motion to dismiss and instead permitted the plaintiffs to amend their claims and "fashion one cause of action pursuant to the WPLA." *Bingham v. Blair LLC*, No. 10 Civ. 5005 (RBL), 2010 WL

12 Amazon asserts that the Washington Product Liability Act is relevant because under its contract with Holmes, "the parties agreed that the laws of the state of Washington would apply to 'any dispute of any sort that might arise between

[Plaintiff] and Amazon.'" *Id.* (quoting Jensen Decl. Ex. B). Courts sitting in New York are bound to "decide the scope of [choice of law] clauses under New York law, not under the law selected by the clause." *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 333 (2d Cir. 2005). In general, the Second Circuit has observed "a reluctance on the part of New York courts to construe contractual choice-of-law clauses broadly to encompass extra-contractual causes of action." *Id.* at 334. However, it has maintained that while a choice-of-law provision in a contract should be read narrowly, "presumably a contractual choice-of-law clause could be drafted broadly to reach such tort claims." *Id.* at 335. At least one appellate court in New York has applied a contractual choice-of-law clause to a tort claim, finding that the agreement was sufficiently broad because it covered "'all issues' concerning 'enforcement of the rights and duties of the parties.'" *Cap. Z Fin. Servs. Fund II, L.P. v. Health Net, Inc.*, 840 N.Y.S.2d 16, 23 (1st Dep't 2007); *but see McBeth v. Porges*, 171 F. Supp. 3d 216, 224 n.3 (S.D.N.Y. 2016) (criticizing *Capital Z*'s reliance on a Second Circuit case applying Texas law to determine the scope of a choice of law provision). The Court finds that the language in Amazon's choice of law provision is sufficiently broad to require application of all disputes between Amazon and Holmes, including those sounding in tort law.

---

24

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 25 of 29

1608881, at *2 (W.D. Wash. Apr. 19, 2010). The Court sees no reason why the same courtesy would not be extended to Holmes, and therefore DENIES Amazon's motion for judgment on the pleadings with respect to claims four and five.

**D. Amazon's Motion for Summary Judgment**

For the four claims that have survived Amazon's Rule 12(c) and Rule 68 motions, the Court next considers whether summary judgment is appropriate. In its papers, Amazon argued that all claims were amenable to summary judgment because there is no issue of material fact, asserting that the CheckPoint laptop in Holmes' possession was not the same laptop that Holmes purchased, and received, through Amazon. Amazon Mem. at 22.

As a preliminary matter, the Court finds that it has the discretion under Rule 12(d) to convert Amazon's motion into a motion for summary judgment, because both

Amazon and Holmes have had a "reasonable opportunity" to present relevant material to the Court. "The essential inquiry is whether the [non-moving party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *In re G. & A. Books, Inc*., 770 F.2d 288, 295 (2d Cir. 1985). Holmes was first put on notice of Amazon's intent to move for summary judgment when Amazon filed its motion on February 12, 2018.[13] Amazon's Notice of Motion specified that as an alternative to judgment on the pleadings, it would seek summary judgment. *See* Doc. 91. Attached to that document was the notice to a pro se litigant who opposes a Rule 12 motion supported by matters outside the pleadings, as required by the Southern District's local rules. *See* S.D.N.Y. Local R. 12.1. That notice informs

[13] Even earlier than that, Holmes was put on notice that summary judgment might be implicated in this stage of briefing, as *Apple* informed the Court in its letter requesting a pre-motion conference and at the conference itself, at which Holmes was present, that it would move in the alternative for summary judgment. *See* Doc. 77, Doc. 86 at 8:22–25.

_____

25

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 26 of 29

plaintiffs, among other things, that:

> If you do not respond to the motion on time with affidavits or documentary evidence contradicting the facts asserted by the defendant, the court may accept defendant's factual assertions as true. Judgment may then be entered in defendant's favor without a trial.

*Id*.[14] Further, Amazon's memorandum of law contained citation to numerous facts outside the pleadings that Amazon included in a 56.1 Statement, providing further notice that conversion to summary judgment was a distinct possibility. *See Sahu v. Union Carbide Corp*., 548 F.3d 59, 67 (2d Cir. 2008) ("Even where only the party moving to dismiss has submitted extrinsic material such as depositions or affidavits, the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted.") (quoting *G. & A. Books*, 770 F.2d at 295). Finally, Holmes' own statements indicate that he was aware of what was required

of him in opposing a Rule 12 motion that may be converted to a Rule 56 motion. For example, on March 20, 2018, after Holmes filed his opposition, he wrote to the Court explaining that he located witnesses to provide affidavits that would enhance his opposition. *See* Doc. 106.[15] Because the Court finds that Holmes had adequate notice that Amazon's motion may be converted to a motion for summary judgment, it considers Amazon's motion on the merits.

Amazon contends that the laptop it shipped to Holmes was not CheckPoint's laptop, but was a different computer altogether—one that was brand-new and did not contain any third-party tracking software. Amazon points to the evidence that the CheckPoint laptop was sourced directly from Apple and was packaged for delivery in Breinigsville, Pennsylvania. *See* Amazon

[14] Holmes, however, did not file a 56.1 statement, nor did he file any sworn affidavits, in opposing Amazon's motion.

[15] The Court construed this as a request for an extension of time to amend his opposition, which it granted. *See* Doc. 107. Holmes, however, ultimately declined to amend his opposition and did not provide the Court with any extrinsic evidence. *See* Docs. 108, 116.

---

26

56.1 ¶ 2–3. When CheckPoint received the laptop, an employee attached a sticker with the label "Property of CheckPoint Pumps" and installed Kaseya tracking software. *Id*. ¶ 4. The laptop Holmes ordered from Amazon was also sourced directly from Apple and was packaged for delivery in Lewisberry, Pennsylvania. *Id*. ¶¶ 8–9. When Holmes received it, the laptop was shrinkwrapped and bore no sticker. *Id*. ¶¶ 11–12. When CheckPoint's laptop was ultimately recovered from Scott and delivered back to it, the CheckPoint sticker was still on the underside of the laptop. *Id*. ¶ 26. Amazon argues that because there is no genuine dispute that the laptop Amazon delivered was not the laptop belonging to CheckPoint, it cannot as a matter of law be held liable for breach of warranty, negligence, or fraud. Amazon Mem. at 25.

In opposition, Holmes argues that "the failure to explain specifically what happened creates doubt, precluding the entry of judgment." Opp. at 5. He states that he is entitled to "a complete detailed paper trail, so that all parties know the path that the computer, or computers, took" and "depositions of competent employees from the defendants, rather than sketchy two or three page affidavits." *Id.*[16] Holmes also suggests that discovery might reveal that Amazon employees negligently or intentionally sent him CheckPoint's computer rather than the computer he ordered. *Id.* at 7. These arguments do not raise a genuine issue of material fact. First, a plaintiff is not entitled to discovery because he does not currently have evidence to show that summary judgment is unwarranted. To the contrary, "where a plaintiff fails to produce any specific facts whatsoever to support . . . [his] allegation[s], a district court may, in its discretion, refuse to permit discovery and grant summary judgment." *Contemporary Mission, Inc. v. U.S.*

[16] Although Holmes takes issue with the affidavits and declarations provided by Amazon, those are admissible forms of evidence under Rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P 56(c)(1)(A) (providing that a party may support an assertion through citation to "affidavits or declarations"); *id.* 56(c)(4) (providing that affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"). The Court finds that each of Amazon's affidavits and declarations meet the Rule 56 standard, and Holmes makes no specific objection to any affiant or declarant's lack of knowledge.

---

27

*Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981). Holmes offers no facts to support the contention that the laptop CheckPoint purchased was delivered to him by Amazon, and he does not refute his earlier statements that the laptop he received from Amazon was new, shrink-wrapped, and had no sticker on it. Instead, Holmes' opposition rests on nothing more than speculation, which cannot defeat a motion for summary judgment. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). The Court therefore GRANTS Amazon's motion for summary judgment for Holmes' second through fifth claims.

## VI. HOLMES' MOTION TO AMEND

On October 6, 2017, Holmes moved to amend the Complaint. *See* Doc. 47. A court may deny leave to amend a complaint for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (quoting *McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 200 (2d Cir. 2007)). A *pro se* complaint should be read liberally, and the Court should grant leave to amend if a "liberal reading" provides "any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed*. *Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). But where the issues with a complaint are "substantive" and cannot be cured by more artful or specific allegations, repleading would be "futile" and a request for further amendment "should be denied." *Id*.

Holmes' proposed amended complaint does not add any factual allegations which would alter the Court's determination that judgment on the pleadings in favor of Apple and summary judgment in favor of Amazon is appropriate. For example, Holmes still fails to allege specific misrepresentations made to him about the laptop he purchased from Amazon. *See* Doc. 47-1 ¶¶ 121–22, 127. Holmes also adds a cause of action against FedEx for acting negligently in its

28

investigation of CheckPoint's missing laptop computer. *See id.* ¶¶ 135–40. To allege negligence under New York law, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985)). Holmes has not even alleged the first element—that FedEx owed him a duty. Further, he has made only conclusory statements, rather than factual allegations, to support his argument that FedEx acted negligently. *E.g.*, Doc. 47-2 ¶ 138. The Court therefore DENIES Holmes' request for leave to amend as futile.

**VII.    CONCLUSION**

For the reasons stated above, it is ORDERED that:

1.    Holmes' motion to amend the Complaint (Doc. 47) is DENIED;

2.    CheckPoint's motion to dismiss for lack of personal jurisdiction (Doc. 48) is GRANTED;

3.    Holmes' motion for jurisdictional discovery (Doc. 67) is DENIED;

4.    Amazon's motion (Doc. 91) is granted in the following respects: (1) judgment will be entered against Amazon in the amount of $2,351 on Claim 1; (2) summary judgment is granted in Amazon's favor on Claims 2, 3, 4, and 5; and (3) judgment on the pleadings is granted in Amazon's favor on Claims 6, 7, and 8.

5.    Apple's motion for entry of judgment on the pleadings (Doc. 97) is GRANTED.

The Clerk of Court is respectfully directed to terminate the motions and close the case.

It is SO ORDERED.

Dated:    July 23, 2018
         New York, New York

Edgardo Ramos, U.S.D.J.

29