# 22-1745

IN THE

# United States Court Of Appeals

---

FOR THE SECOND CIRCUIT

Tyrone Holmes,

*Plaintiff-Appellant,*

*-against-*

Apple Inc., Amazon.com, LLC, CheckPoint Fluidic Systems International, Ltd.,

*Defendant-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF NEW YORK
JUDGE RONNIE ABRAMS

---

**APPELLANT- PETITIONER REPLY**

---

**Tyrone Holmes**
**APPELLANT- PETITIONER, Pro se**
**1465 Hammersley Ave,**
**Bronx, New York  10469**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................3

STATEMENT OF THE ISSUES...........................................................................3

STATEMENT OF THE CASE...............................................................................4

    **I. Holmes** I…………………………………………………………………4

    **II. Holmes II**…………………………………………………………………6

    **III. Mr. Holmes's Motion To Vacate Judgment** …………………………6

SUMMARY OF ARGUMENT…………………………………………………7

ARGUMENT…………………………………………………………………7

CONCLUSION…………………………………………………………………16

**I.**    **The District Court Correctly Concluded That the Second Circuit's Affirmance of the Judgment Did Not Preclude the District Court  From Disqualifying Judge Ramos and assigned the case to Judge Abrams for a *De Novo* review.**

**II.**    **The District Court had no discretion in determining whether to conduct a *De Novo* review of the Judgment of the Judge Ramos in determining whether to vacate that Judgment of the District Court once she had accepted the case.**

**III.**    **Not having conducted the *De Novo* review, the purpose for which the case was assigned, the District Court was without sufficient information to make a judgment or to determine whether Judge Ramos' failure to recuse himself was harmless error.**

**IV.**    **Judge Ramos's Financial Ownership Interest in Apple Stock  and FedEx Stock in 2019, While Presiding Over Holmes I and Accepting and Presiding Over Holmes II, without disclosure to the parties as soon as the facts were learned, Was Grounds for**

**Disqualification that Obligated the District Court to Vacate the Judgment.**

## PRELIMINARY STATEMENT

**This document was drafted in whole, or substantial part, by an attorney.**

## STATEMENT OF THE ISSUES

**I.     Whether the Second Circuit's Summary Order Affirming the Judgment Precluded the District Court Judge Abrams from conducting a *De Novo* review Judge Ramos' Rulings.**

**II.     Whether the District Court had discretion in determining whether to conduct a *De Novo* review of the Judgment of the Judge Ramos in determining whether to vacate that Judgment of the District Court once she had accepted the case.**

**III.     Not having conducted the *De Novo* review, the purpose for which the case was assigned, whether the District Court had sufficient information to make a judgment or to determine whether Judge Ramos' failure to recuse himself was harmless error.**

**IV.     Judge Ramos's Financial Ownership Interest in Apple Stock  and FedEx Stock in 2019, While Presiding Over Holmes I and Accepting and Presiding Over Holmes II, (without disclosure to the parties as soon as the facts were learned), Was Grounds for Disqualification that Obligated the District Court to Review the Rulings and Judgment of Judge Ramos De Novo and Vacate the Judgment.**

**V.      Whether the District Court Recognized That Judge Ramos Should Have Recused Himself from Presiding Over Holmes I and**

**Accepting and Presiding Over Holmes II, (without disclosure to the parties as soon as the facts were learned), Was Grounds for Disqualification.**

### STATEMENT OF THE CASE

**I. Holmes I**……………………………………………………………………3

This is an appeal of the decision of Judge Ronnie Abrams in 17-cv-4557 RA, denying Appellant's Rule 60 Motion to Vacate the decisions of Judge Edgardo Ramos dated July 23, 2018, 17-cv-4557 ER, filed after his recusal, pursuant to Advisory Opinion 71, from the Judicial Conference Codes of Conduct Committee.

This case involves the selling by Amazon of a MacBook Pro laptop, bearing the serial number C02RQ1T3G8WN, twice as new, once to CheckPoint and then to Holmes after having had spyware installed by CheckPoint. CheckPoint and FedEx, acting together, criminally and fraudulently, filed a false police report, accusing Holmes of theft and possession of stolen property, knowing this to be false, to cover up the double sale of the laptop as new by Amazon, and the fact that it was delivered to Holmes with spyware.

CheckPoint and FedEx, acting together, criminally and fraudulently engaged Detective Caballero of NYPD to steal what was then Holmes' Laptop, under the terms of his Condition of Use Agreement with Amazon, to which CheckPoint, Amazon and Holmes, were all parties. CheckPoint, placed the laptop back into the stream of commerce by delivery of the laptop by CheckPoint to FedEx, which thereafter by the grossly negligent acts of CheckPoint, FedEx and/or Amazon, committed by commingling the laptop with new computers, and committed before the Laptop was delivered to UPS by Amazon for delivery to Holmes, by the negligence *per se* acts committed by CheckPoint and FedEx committed against Holmes, in filing a false police report in Louisiana, charging Holmes with possession of stolen property, and certainly knowing that Holmes had not stolen it from information they observed from their spyware and their tracking number, written on the bottom of their transmission box, together with the serial number, C02RQ1T3G8WN.

## II.    Holmes II

Holmes after having learned that CheckPoint and FedEx, acting together, criminally and fraudulently, had filed a false police report, accusing Holmes of theft and possession of stolen property, knowing this to be false, to coverup the double sale of the laptop as new by Amazon and the fact that it was delivered to Holmes with spyware. Holmes timely moved on October 6, 2017, before CheckPoint had answered the Complaint, to Amend his Complaint to add FedEx as a party, as a matter of course, based on Kenneth Meyers of FedEx filing the false police report against Holmes to engage the NYPD in stealing the computer from Holmes under the threat of arrest. Judge Ramos denied Holmes' Motion to Amend in his decision on July 23, 2018. Holmes filed Holmes II to make FedEx accountable for filing the false police report knowing the charges were false.

## III.    Holmes's Motion To Vacate Judgment

For reasons set forth in Appellant/Petitioner's Brief and in Arguments below, Holmes' Motion to Vacate the Judgment of Judge Ramos should not have been dismissed by Judge Abrams.   Holmes I (17-

cv-4557-RA) should have been remanded by Judge Abrams for De Novo review by a non-conflicted Judge.

# ARGUMENT

## I.   The District Court Correctly Concluded That the Second Circuit's Affirmance of the Judgment Did Not Preclude the District Court  From Disqualifying Judge Ramos, and assigned  the case to Judge Abrams for a *De Novo* review, which Judge Abrams failed to conduct .

The Summary Order in *Holmes v. Apple Inc.*, 18-2492, issued December 9, 2019, by it preamble printed boldly in all caps asserts:

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.**

This caveat placed at the beginning of the Summary Order in *Holmes v. Apple Inc.*, would indicate that  Summary Order was not a precedent that would preclude the District Court from conducting a De Novo review of the judgment and rulings made by Judge Ramos.

## II.    The Summary Order reflected a De Novo review of only those portions of the Summary specifically identified therein, as being subject to a De Novo review.  The Summary Order was not a De Novo affirmance  of the Judgment

of Judge Ramos, but only those portions of the Judgment specifically identified as being subject to a De Novo review.

**De Novo review:**

"We review a district court's dismissal of an action for want of personal jurisdiction (CheckPoint) de novo, construing all pleadings and affidavits in the light most favorable to the plaintiff and resolving all doubts in the plaintiff's favor."
p.3 of 7.

"We review a district court's ruling on a motion for judgment on the pleadings (Apple) pursuant to Federal Rule of Civil Procedure 12(c) de novo , accepting all factual allegations in the complaint as true and construing them in the light most favorable to the non-moving party." p.4 of 7.

The Second Circuit further limited its review to only those raised in an appellant's opening brief even when the same arguments were raised in the trial court.  One such example is that of **<span style="color:red">Negligence per se</span>** raised in the initial complaint  *paragraph 168)

"On appeal, Holmes challenges only the dismissal of its breach- of-contract, products liability, and negligence claims. See McCarthy v . SEC , 406 F.3d 179, 186 (2d Cir. 2005) ("[A]rguments not raised in an appellant's opening brief . . . are not properly before an appellate court even when the same arguments were raised in the trial court."). Each of these claims is without merit." p.4 of 7.

One such example is that of **<span style="color:red">Negligence per se</span>** raised in the initial complaint, but ignored, if not intentionally suppressed, in his denial of the motion to amend the Complaint. Judge Ramos understood that the filing of a false police report against Holmes by FedEX, based on information provided by Checkpoint was a crime and was a tort committed outside the state of New York, causing injury to Holmes within the State of New York such as to establish an independent basis

for jurisdiction over these joint tortfeasors CheckPoint and FedEX, *paragraph 168) This is an issue that should have been considered by the District Court and would necessarily be considered by that court should this case be remanded to the District with instructions to conduct a De Novo review of the judgment orders and rulings made by Judge Ramos in Holmes I.

Another example of an issue not raised in an appellant's opening brief before the Second Circuit and not Considered by that Court, even when the same arguments were raised in the trial court is the granting of Amazon's motion for the entry of Judgment for $2351.12, after Holmes refused that offer and elected to go to trial on that issue.

**"We review the district court's grant of summary judgment (Amazon) de novo and construe the evidence in the light most favorable to the non-moving party." p.5 of 7.**

Every case in which Judge Ramos determined whether abuse of discretion occurred, his ownership of stock in FedEx was a relevant consideration, as in the case of the motion to Amend to add FedEx. FedEx' Meyers filed the false police report against Holmes, which is Negligence per se. **<span style="color:red">without</span>** the requirement of a duty owed.

**Abuse of Discretion review:**

**"We review a district court's denial of leave to amend a pleading for abuse of discretion." p.6 of 7.**

**"Because the district court properly determined that Holmes failed to make a prima facie case for jurisdiction or establish how further discovery could aid his case, it did not abuse its discretion in denying his motion for jurisdictional discovery." p.3**

"On appeal, Holmes challenges only the dismissal of its breach- of- contract, products liability, and negligence claims."

II.     The District Court had no discretion in determining whether to conduct a *De Novo* review of the Judgment of the Judge Ramos in determining whether to vacate that Judgment of the District Court once she had accepted the case.

Opinion 71

III.    Not having conducted the *De Novo* review, the purpose for which the case was assigned, the District Court was without sufficient information to make a judgment or to determine whether Judge Ramos' failure to recuse himself was harmless error.

IV.    Judge Ramos's Financial Ownership Interest in Apple Stock  and FedEx Stock in 2019, While Presiding Over Holmes I and Accepting and Presiding Over Holmes II, without disclosure to the parties as soon as the facts were learned, Was Grounds for

**Disqualification that Obligated the District Court to Vacate the Judgment.**

The standards for vacating a judgment are as cited in Appellant/Petitioner's Brief and by Apple in their brief (Case 22-1745, Document 61, 01/30/2023, 3460955, Page 20 of 31) is as follows:

**When deciding whether to vacate a judgment for violation of 28 U.S.C. § 455, courts consider**

(1) **"the risk of injustice to the parties in the particular case,"**

(2) **"the risk that the denial of relief will produce injustice in other cases," and**

(3) **"the risk of undermining the public's confidence in the judicial process."**

   **Liljeberg, 486 U.S.at 864.**

(4)

The risk of injustice to the defendant, Apple, in this case is zero. Apple is one of the largest companies in the world, as observed by Judge Ramos in the first "conference" in this case. Apple should be held accountable for failure to honor its warranty if that be proven at trial.

The risk of injustice to Amazon is zero. Amazon is also one of the largest companies in the world, as observed by Judge Ramos in the first "conference" in this case. It is Amazon that submits false statements by their counsel, false or misleading affidavits in this case for which Amazon should be held accountable.

The denial of relief will produce injustice in other cases where pro se litigants are abused by large corporations who file false affidavits of

employees. The denial of relief to Holmes sends the message that **the privacy of Black litigants** are not to be respected and that the dicta of Chief Justice Taney in  Dred Scott v. Sanford, 60 U.S. 393 (1857) is still alive.

**"The Committee does advise that a judge should disclose to the parties the facts bearing on disqualification as soon as those facts are learned, even though that may occur after entry of the decision."**

**(5)** **"the risk of undermining the public's confidence in the judicial process." Liljeberg, 486 U.S.at 864.**

Public confidence in the Judicial process was undermined by Judge Abram's failure to conduct a De Novo  review of Judge Ramos who had failed to advise the parties of his financial interest in yet another case after having been named publically for the same misconduct, a fact made know to Judge Abrams. This case **comes before Judge Abrams only because Judge Ramos was one of the judges prominently mentioned in the September 28, 2021, Wall Street Journal article "131 Judges Who Broke the Law by Hearing Cases Where They Had a Financial Interest", which prompted Appellant/Petitioner, Holmes to file for Judge Ramos' financial disclosure form on October 4, 2021, which was received January 18, 2022, showing his 2019 holdings of stock in Apple and FedEx while 17- cv-4557-ER  (Holmes I)was still pending, with Apple as a party and FedEx the subject of a Motion to Amend to add FedEx as a party to 17- cv-4557-ER (Holmes I).**

To further risk undermining the public's confidence in the judicial process Judge Abrams accepted another case over which Judge Ramos had presided in 2019, the year he acquired an interest in Apple and FedEx and was disqualified for failing to disclose these financial interests to the parties in 19-cv–1628- ER. On the application and request of the Hannah Yael Shay Chanoine, a Jewish attorney for Apple, Judge Abrams, a Jewish judge, accepted transfer from Judge Broderick, a Black judge, of Holmes II, in which the Black purchaser of the laptop bearing serial number C02RQ1T3G8WN, is identified as Black in the false Police Report describing the person in possession of the laptop bearing serial number C02RQ1T3G8WN as being in possession stolen property. A Motion to Vacate that judgment is still pending before Judge Abrams six months after all parties have submitted in relation to the motion.

Holmes II was delayed by Judge Abrams' granting request of Attorney Hannah Yael Shay Chanoine for an extension of time for all parties to respond to Plaintiff's Motion to Vacate the Judgment of Judge Ramos. In Holmes I a similar request by this attorney for Apple an extension of time to respond to Plaintiff's Motion to Vacate the Judgment of Judge Ramos was denied.

In Holmes I the Jewish attorney for CheckPoint, Brian Graifman, opposed the request, but in Holmes II, Attorney Graifman joined in the request of Apple. The granting of the requested extension violated Rule 60 of Federal Rules of Civil Procedure. The delay prevented Plaintiff from from appealing any adverse decision in Holmes II in a orderly manner. Six months after submission by all parties, Judge Abrams still has not decided Plaintiff's Motion to Vacate the Judgment of Judge Ramos in Holmes II.

Judge Abrams erred by failing to (1) expressly consider the factors that the Supreme Court laid out in Liljeberg, and (2) conduct her own de novo review of

the merits of the judgment as did Judge Mary Kay Vyskocil, who reviewed the merits of the case de novo. Br. at 11−12 (ExxonMobil Oil Corp. v. TIG Ins. Co., 44 F.4th 163 (2d Cir. 2022)); id. at 18, 29.

   **"The district court clerk reassigned the case to Judge Mary Kay Vyskocil, who reviewed the merits of the case de novo and denied TIG's motion to vacate on October 14, 2021. ExxonMobil Oil Corp. v. TIG Ins. Co. , No. 16-9527, 2021 WL 4803700, at \*4 (S.D.N.Y. Oct. 14, 2021) ( Exxon II ). Judge Vyskocil acknowledged that Judge Ramos "should have recused himself from this matter upon its assignment to him" under both 28 U.S.C. § 455(a) and the Code of Conduct for United States Judges, Cannons 2(A) and 3(C)(1)−(2). Id. at \*2."**

**ExxonMobil Oil Corp. v. TIG Ins. Co., 44 F.4th 163, 171 (2d Cir. 2022)**

**V.      The District Court Never Recognized That Judge Ramos Should Have Recused Himself, as did Judge Vyskocil in Exxon who acknowledged that Judge Ramos "should have recused himself from this matter upon its assignment to him" under both 28 U.S.C. § 455(a) and the Code of Conduct for United States Judges, Cannons 2(A) and 3(C)(1)−(2).**

   In both Holmes I Holmes II, and Exxon the  Motions to Vacate the Judgment of Judge Ramos came immediately after the publication the September 28, 2021, Wall Street Journal article "131 Judges Who Broke the Law by Hearing Cases Where They Had a Financial Interest", on  October 4, 2021 and October 21, 2021.

**Plaintiff received Judge Ramos Financial Statements dated January 18, 2022, which also advised the Court prompting the Clerk to send at his direction, a letter advising the parties that they were entitled to a de novo review.**

\*\*

**VI.    Errors in Summary Order Relied on By Judge Abrams as compared to his Decision.**

**Summary Order of Court of Appeals**

     Holmes's complaint does not plausibly allege a contractual relationship between himself and Apple. Documentation provided by Holmes indicates that Amazon, and not Apple, sold Holmes the computer and AppleCare plan he purchased. <span style="color:red">By its express terms, AppleCare does not create a contract with Apple unless a user registers the plan, something Holmes never did.</span>

**Judge Ramos Decision**

     On June 22, 2016, Holmes purchased an Apple MacBook Pro laptop and an AppleCare Protection Plan ("AppleCare") through Amazon. See Compl. ¶ 21. The laptop was listed on Amazon's website as "brand new" and Holmes understood that the product would be free from defects and that it would not contain spyware or malware. Id. ¶¶ 21, 23-24. The laptop sent to Holmes was among a batch of new MacBook Pro computers Amazon sourced from Apple, which was packaged for delivery in Lewisberry, Pennsylvania. Amazon 56.1 ¶¶ 8-9.

     Holmes received the laptop he ordered from Amazon on June 23, 2016. Id. ¶ 10. According to Holmes, that laptop also had the serial number C02RQ1T3G8WN. Compl. ¶ 21. When Holmes received the laptop, it was shrink-wrapped and did not contain any stickers on it. See Doc. 54 (Transcript of September 14, 2017 conference) at 3:19-22; Doc. 86 (Transcript of January 12, 2018 conference) at 5:13-18.

     At some point, Holmes gave his wife, Stephanie Scott ("Scott") an Apple laptop.2 Scott <span style="color:red">registered AppleCare in her name on June 25, 2016 for the laptop bearing the serial number C02RQ1T3G8WN. Apple 56.1 ¶ 12.</span>

     Admittedly some of the confusion was intentionally created by Judge Ramos who never compares the serial number or even mentions the serial number

of the CheckPoint computer in his decision for others to compare, suggesting that Amazon alleged that the computer registered by Scott and the computer purchased by CheckPoint, but not registered for AppleCare, by CheckPoint, were not one and the same computer as alleged by Holmes, notwithstanding the fact , that the serial **number C02RQ1T3G8WN** was the same and clearly visible and independently attested to, in documents filed by CheckPoint.

## CONCLUSION

**Order of Judge Abrams:**

**"For the foregoing reasons, Plaintiff's motion to vacate is denied. The Clerk of Court is respectfully directed to terminate the motion at docket 150 and mail a copy of this Order to Plaintiff.**

**SO ORDERED."**

For reasons set forth herein, the above Order of Judge Abrams dated July 22, 2022, should be reversed and this case (17- cv-4557-RA) remanded for a DeNovo review.

Respectfully Submitted,

/s/ Tyrone Holmes

2/13/2023