# 22-1745

IN THE

# United States Court Of Appeals

## FOR THE SECOND CIRCUIT

Tyrone Holmes,

*Plaintiff-Appellant,*

*-against-*

Apple Inc., Amazon.com, LLC, CheckPoint Fluidic Systems International, Ltd.,

*Defendant-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
JUDGE RONNIE ABRAMS

## FINAL BRIEF FOR DEFENDANT-APPELLEE APPLE INC.

HANNAH Y. CHANOINE
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036-6537
Telephone: (212) 326-2000

DAVID R. EBERHART
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Telephone: (415) 984-8700

BRANDON C. AMASH
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900

*Attorneys for Defendant-Appellee Apple Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee Apple Inc. states that it has no parent corporation.  To the best of Apple's knowledge and belief, and based on publicly filed disclosures, as of January 30, 2023, no publicly held corporation owns 10% or more of Apple's stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ....................................................i

STATEMENT OF JURISDICTION.............................................................1

STATEMENT OF THE ISSUES................................................................1

STATEMENT OF THE CASE..................................................................1

    I.    *Holmes I* ..................................................................3

    II.    *Holmes II* .................................................................6

    III.    **Mr. Holmes's Motion To Vacate Judgment** .......................8

SUMMARY OF ARGUMENT ..............................................................11

ARGUMENT ..................................................................................13

    I.    **The District Court Correctly Concluded That the Second Circuit's Unanimous *De Novo* Affirmance of the Judgment Precluded the District Court From Vacating the Judgment.** ......14

    II.    **The District Court Correctly Recognized That Even If Judge Ramos Should Have Recused Himself, It Was Harmless Error.**................................................................16

    III.    **Judge Ramos's Minimal Ownership Interest in Apple Stock at Some Unspecified Time While Presiding Over the Case Was Not Grounds for Disqualification that Obligated the District Court to Vacate the Judgment.** ........................19

        A.    **Judge Ramos's Ownership Interest in Apple Stock Would Not Have Required His Disqualification Under 28 U.S.C. § 455(b)(4).** ..........................................21

        B.    **Judge Ramos's Impartiality Could Not Reasonably Be Doubted.**.....................................................23

    IV.    **This Court Lacks Jurisdiction to Consider the Issues Raised in Appellant's Brief Relating to Non-Appealable Orders in *Holmes II*.** ................................................................24

CONCLUSION ...............................................................................25

CERTIFICATE OF COMPLIANCE ........................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Browder v. Dir., Dep't of Corr. of Ill.*,
434 U.S. 257 (1978).............................................................................24

*Camacho v. Autoridad de Telefonos de Puerto Rico*,
868 F.2d 482 (1st Cir. 1989)..............................................................16

*Daily Mirror, Inc. v. New York News, Inc.*,
533 F.2d 53 (2d Cir. 1976)....................................................... 1, 13, 24

*ExxonMobil Oil Corp. v. TIG Ins. Co.*,
44 F.4th 163 (2d Cir. 2022)................................................................17

*Faulkner v. Nat'l Geographic Enters., Inc.*,
409 F.3d 26 (2d Cir. 2005).......................................................... *passim*

*Higganbotham v. Oklahoma ex rel. Oklahoma Transp. Comm'n*,
328 F.3d 638 (10th Cir. 2003) .............................................................19

*Holmes v. Apple Inc., et al.*,
No. 17-CV-4557 (RA), 2022 WL 2316373 (S.D.N.Y. June 27, 2022)................1

*Holmes v. Apple Inc., et al.*,
No. 18-2492-cv, 797 Fed. App'x 557 (2d Cir. 2019) .......................................3, 6

*Holmes v. City of New York, et al.*,
No. 1:19-CV-01628 (RA) (S.D.N.Y.).....................................................7

*In re Terrorist Attacks on Sept. 11, 2001*,
741 F.3d 353 (2d Cir. 2013)................................................................16

*Lewis v. Tuscan Dairy Farms, Inc.*,
25 F.3d 1138 (2d Cir. 1994)................................................................24

*Liljeberg v. Health Servs. Acquisition Corp.*,
486 U.S. 847 (1988) ...................................................... 12, 14, 16, 22

*Liteky v. United States*,
510 U.S. 540 (1994) ...........................................................................24

iii

# TABLE OF AUTHORITIES

**Page(s)**

*Mendell ex rel. Viacom, Inc. v. Gollust*,
909 F.2d 724 (2d Cir. 1990)..................................................................17

*Nemaizer v. Baker*,
793 F.2d 58 (2d Cir. 1986).......................................................... 14, 23

*Paddington Partners v. Bouchard*,
34 F.3d 1132 (2d Cir. 1994)........................................ 11, 12, 15, 16

*Parker v. Connors Steel Co.*,
855 F.2d 1510 (11th Cir. 1988) ........................................................17

*Selkridge v. United of Omaha Life Ins. Co.*,
360 F.3d 155 (3d Cir. 2004)................................................................15

*Shell Oil Co. v. United States*,
672 F.3d 1283 (Fed. Cir. 2012).........................................................23

*Williamson v. Indiana Univ.*,
345 F.3d 459 (7th Cir. 2003).............................................................19

**Statutes**

28 U.S.C. § 1291 ...................................................................................25

28 U.S.C. § 455(a) ................................................................................20

28 U.S.C. § 455(b)(4)...........................................................................20

28 U.S.C. § 455(d)(4)...........................................................................20

28 U.S.C. §§ 455(b)(1)–(5)..................................................................20

**Other Authorities**

Guide to Judiciary Policy, Advisory Opinion 71......................................9

Guide to Judiciary Policy, Vol. 2A, Ch. 2, Canon 3C ............................20

**Rules**

Fed. R. Civ. P. 60 .......................................................................... 12, 13

## STATEMENT OF JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1291 over Plaintiff-Appellant Tyrone Holmes's appeal of the District Court's June 27, 2022 Memorandum Opinion and Order denying Mr. Holmes's Rule 60(b) motion to vacate judgment in *Holmes v. Apple Inc., et al.*, No. 17-CV-4557 (RA) (S.D.N.Y.).  *See Daily Mirror, Inc. v. New York News, Inc.*, 533 F.2d 53, 56 (2d Cir. 1976) ("An order denying relief under Rule 60(b) is an appealable order, but the appeal brings up only the correctness of the order itself.").

This Court lacks jurisdiction to consider issues raised in Mr. Holmes's brief relating to (1) the merits of the underlying judgment, and (2) non-appealable orders in another case, *Holmes v. City of New York, et al.*, No. 1:19-CV-01628 (RA) (S.D.N.Y.).  *Id.*

## STATEMENT OF THE ISSUES

1.      Whether the district court abused its discretion in denying Mr. Holmes's Rule 60(b) motion to vacate judgment.

## STATEMENT OF THE CASE

Mr. Holmes appeals District Judge Hon. Ronnie Abrams's Memorandum Opinion and Order denying his "Motion to Vacate Judgment."  (SA0003–08, Doc. 163.)  *Holmes v. Apple Inc., et al.*, No. 17-CV-4557 (RA), 2022 WL 2316373 (S.D.N.Y. June 27, 2022).  In that motion, Mr. Holmes sought to vacate District

1

Judge Hon. Edgardo Ramos's July 24, 2018 judgment on the pleadings in this lawsuit, which adjudicated all claims between Mr. Holmes and Apple. (SA0401–02, Doc. 148; *see* SA0338–66, Doc. 121.) Even though this Court unanimously affirmed the judgment after *de novo* review by a three-judge panel, (SA0379–88, Doc. 127), Mr. Holmes argued in his motion that the district court should start from scratch after the Clerk of Court—over two years after the affirmance—issued a letter about Judge Ramos. That letter disclosed that Judge Ramos owned a small amount of Apple stock well after Mr. Holmes's case was filed but while Judge Ramos still presided over the case. (SA0399–400, Doc. 146.)

Mr. Holmes makes no showing—nor can he—that Judge Abrams abused discretion in denying Mr. Holmes's motion to vacate judgment. As Judge Abrams correctly concluded, Mr. Holmes's claim for relief under Rule 60 fails "because any error that may possibly have resulted from Judge Ramos' failure to recuse himself is rendered harmless by the Circuit's *de novo* affirmance." (SA0006, Order, Doc. 163 at 4 (citing *Faulkner v. Nat'l Geographic Enters., Inc.*, 409 F.3d 26, 42 n.10 (2d Cir. 2005)).) And Mr. Holmes made no showing before the district court—nor could he—that Judge Ramos's minimal ownership interest in Apple stock at some imprecise point in time was grounds for disqualification that now necessitates vacating the judgment, or that Judge Ramos's impartiality could reasonably be doubted.

Apple's argument seeking affirmance of the district court's denial of Mr.

Holmes's Rule 60(b) motion to vacate judgment relies solely on facts stated in the

Second Circuit's December 9, 2019 summary order affirming the July 24, 2018

judgment, *Holmes v. Apple Inc., et al.*, No. 18-2492-cv, 797 Fed. App'x 557 (2d

Cir. 2019), the record of the proceedings below, and the record of *Holmes v. City*

*of New York, et al.*, No. 1:19-CV-01628 (RA) (S.D.N.Y.), which is judicially

noticeable. Those facts are set forth below.

## I.    *Holmes I*

The lawsuit underlying Mr. Holmes's appeal stems from the sale, purchase,

loss, and alleged resale of an Apple laptop computer. Apple, as the sole

manufacturer of MacBook Pro computers, including the computer at issue, sold a

MacBook Pro to Defendant-Appellee Amazon in May 2016. But Apple had no

part in anything that happened next. (SA0286–87, Doc. 98 at 8–9.) Amazon, in

turn, sold the laptop to Defendant-Appellee CheckPoint Fluidic Systems

International, which received the computer, installed third-party "surveillance"

software on it, and attempted to ship it to Dubai via Federal Express. (SA0287–88,

*id.* at 9–10.) The laptop did not arrive in Dubai, and a CheckPoint employee filed

a report with FedEx to notify it of the loss. (SA0288, *id.* at 10.) Mr. Holmes

subsequently bought the laptop from Amazon, which still contained the software

3

CheckPoint had installed.[1]  (*Id.*)  Mr. Holmes, in turn, gave the laptop to his estranged wife, Stephanie Scott.  (SA0289, *id.* at 11.)  Using the software it had installed, CheckPoint was able to locate the laptop and determined that the computer was being used by Ms. Scott; CheckPoint ultimately enlisted the assistance of the New York City Police Department to retrieve the laptop.  (SA0289–90, *id.* at 11–12.)  Threatened with arrest for criminal possession of stolen property, Mr. Holmes hired a private investigator.  (*Id.*)  The investigator eventually tracked down Ms. Scott, retrieved the laptop, and turned it over to the NYPD.  (*Id.*)

Proceeding *pro se*, Mr. Holmes filed a complaint in the U.S. District Court for the Southern District of New York on June 16, 2017 ("*Holmes I*").  (SA0009–43, Doc. 1.)  He named three defendants—CheckPoint, Amazon, and Apple—and raised various claims against all three.  (*Id.*)  Against Apple, Mr. Holmes brought eight claims: (1) breach of contract; (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) negligence; (5) strict liability; (6) fraudulent concealment; (7) fraud in the inducement; and (8) unfair business practices.  (*Id.*)  On all eight claims, Apple moved for judgment on the pleadings

---

[1] Apple has no knowledge of—and the pleadings offered no basis to conclude that Apple *could* have knowledge of—(1) whether Mr. Holmes received the computer directly from Amazon, or (2) the computer's precise path between Amazon, CheckPoint, FedEx, and Mr. Holmes.

4

pursuant to Federal Rule of Civil Procedure 12(c) on February 12, 2018. (SA0277–78, Doc. 97.)  In the alternative, Apple moved for summary judgment pursuant to Rule 56 based on a declaration and accompanying exhibits.  (*Id.*)

On July 23, 2018, the district court (Ramos, D.J.) granted Apple's motion for judgment on the pleadings on all eight claims but did not reach Apple's summary judgment motion.  (SA0338–66, Doc. 121.)  First, the court rejected Mr. Holmes's breach of contract and breach of express warranty claims, holding that Mr. Holmes failed to allege that he and Apple formed a contract and that, even if he had so alleged, he failed to allege a breach.  (*Id.*)  Second, the court denied Mr. Holmes's breach of implied warranty, negligence, and strict liability claims on the ground that Mr. Holmes failed to allege that Apple—as opposed to a third party— installed the tracking software that allegedly rendered the laptop "defective."  (*Id.*) Third, the court granted judgment to Apple on Mr. Holmes's fraudulent concealment and fraud in the inducement claims because the court concluded that Mr. Holmes never alleged that (1) Apple knew that any software had been installed on the laptop, or (2) Apple made any fraudulent statements.  (*Id.*)  Finally, the court held that Mr. Holmes's unfair business practices claim failed because he alleged no "consumer-oriented conduct" within the meaning of the relevant New York statute.  (*Id.*)

The district court further dismissed Mr. Holmes's claims against CheckPoint

5

for lack of personal jurisdiction; granted Amazon's motion for judgment on the pleadings and summary judgment; denied Mr. Holmes's motion to amend the complaint; and denied Mr. Holmes's motion for jurisdictional discovery. (*Id.*) The Clerk of Court issued the judgment on July 24, 2018. (SA0367, Doc. 122.)

Mr. Holmes appealed. As to Apple, Mr. Holmes challenged only the dismissal of his breach of contract, products liability, and negligence claims. (SA0368, Doc. 124.) On *de novo* review on December 9, 2019, the Second Circuit panel—Hon. Pierre N. Leval, Hon. Richard C. Wesley, and Hon. Debra Ann Livingston—unanimously affirmed Judge Ramos's July 23, 2018 opinion and order in full. *Holmes v. Apple Inc., et al.*, No. 18-2492-cv, 797 Fed. App'x 557 (2d Cir. 2019). (SA0369–78, Doc. 127.) The Second Circuit issued its mandate on January 6, 2020.[2] (SA0379–88, Doc. 135.) This case then remained closed for nearly two years.

## II.   *Holmes II*

After Judge Ramos rendered his July 23, 2018 opinion and order, and while

---

[2] Following issuance of the mandate, CheckPoint taxed costs as to the mandate, and Amazon moved for attorneys' fees, both of which Mr. Holmes opposed. (SA0389, SA0390–91, Docs. 136, 131.) After the district court granted Amazon's motion for attorneys' fees, on May 11, 2020, Mr. Holmes moved pursuant to Rule 60 for relief from the judgment as to the district court's order on Amazon's motion for attorneys' fees. (SA0392–95, Doc. 144.) The district court denied Mr. Holmes's Rule 60 motion for relief from the judgment on May 15, 2020. (SA0396–98, Doc. 145.)

Mr. Holmes's appeal of the judgment was pending, Mr. Holmes filed a second civil lawsuit in the U.S. District Court for the Southern District of New York on February 21, 2019. *Holmes v. City of New York, et al.*, No. 1:19-CV-01628 (RA) (S.D.N.Y.) ("*Holmes II*"). His second lawsuit—based on the same allegations targeting the same roster of defendants plus nine additional individual and government entity defendants—was initially assigned to District Judge Hon. Katherine Polk Failla. *Id.* On February 28, 2019, Apple requested that *Holmes II* be reassigned to Judge Ramos; on March 19, 2019, the court reassigned *Holmes II* to Judge Ramos. (*Holmes II* Doc. 5.) Mr. Holmes then filed an interlocutory appeal of the reassignment of *Holmes II* on April 10, 2019, (*Holmes II* Doc. 37), which the Second Circuit denied on July 22, 2019 for lack of jurisdiction, issuing its mandate on August 12, 2019, (*Holmes II* Doc. 111).

Defendants sought permission to forgo the expense of full briefing on a motion to dismiss in favor of a letter outlining the principles of *res judicata* that would bar Mr. Holmes's claims. (*Holmes II* Docs. 28, 40, 46.) Following an initial conference on May 2, 2019, Judge Ramos required Defendants to proceed with full briefing. (*See Holmes II* Docket at May 2, 2019 Minute Entry setting motion to dismiss briefing schedule.) Apple moved to dismiss *Holmes II* on June 3, 2019, (*Holmes II* Docs. 71, 72), and on June 12, 2019, Mr. Holmes amended the *Holmes II* complaint, (*Holmes II* Doc. 87). Defendants all sought to have their

7

respective motions to dismiss the complaint deemed filed as to that amended complaint, and the court granted those requests. (*Holmes II* Docs. 88–92, 96–101.)

On February 26, 2020, Judge Ramos dismissed with prejudice all of Mr. Holmes's claims in *Holmes II*. (*Holmes II* Doc. 117.) As to Apple and Amazon, Judge Ramos dismissed Mr. Holmes's claims as barred by *res judicata* based on Mr. Holmes's full and fair opportunity to litigate his claims against Apple and Amazon in *Holmes I*. (*Id.*) Judge Ramos also again dismissed Mr. Holmes's claims against CheckPoint for lack of personal jurisdiction and dismissed Mr. Holmes's claims against the remaining defendants on the merits; Judge Ramos further denied Mr. Holmes's motion for summary judgment and denied Apple's, Amazon's, and CheckPoint's motions for sanctions and litigation restrictions. (*Id.*) Mr. Holmes did not appeal.

## III. Mr. Holmes's Motion To Vacate Judgment

***Letter from Clerk of Court.*** Over two years after this Court issued its order affirming the district court's judgment in *Holmes I* and after nearly two years of dormancy, on January 21, 2022, the Clerk of Court disclosed that Judge Ramos held an ownership interest in Apple stock "well after the case was filed but while he still presided over the case," and that "[h]is ownership of the stock neither affected nor impacted his decisions in this case," but that "[h]is stock ownership

8

may have required recusal under the Code of Conduct for United States Judges."[3] (SA0399–400, Doc. 146.)  Pursuant to Advisory Opinion 71 of the Judicial Conference Code of Conduct Committee, the Clerk of Court invited the parties to respond to Judge Ramos's disclosure.  (*Id.*)  Advisory Opinion 71, which "considers the recusal obligations of the remaining judges on a panel when one judge must recuse after the matter has been argued," makes no opinion on whether a decision that has been entered must be vacated when it is discovered after entry of the decision that one of the judges participating in the decision should have been disqualified.  *See* Guide to Judiciary Policy, Advisory Opinion 71 ("Determination of what circumstances may taint a decision already entered is a judicial function, not that of a committee established to advise on ethical standards of the conduct of judges.").

    ***Judge Ramos's Ownership of Apple Stock.***  Judge Ramos's publicly available annual Financial Disclosure Reports demonstrate the limited extent of his ownership interest in Apple stock.  Apple Inc. first appeared in Judge Ramos's August 11, 2020 report for the January 1, 2019 to December 31, 2019 reporting period—that is, *after* Judge Ramos rendered his July 24, 2018 judgment in *Holmes I*.  (*See* SA0476–78, Doc. 160; SA0486, Doc. 160-1 at 8; SA0453, Doc. 148-2 at

---

[3] On January 31, 2022, the Clerk of Court issued a similar disclosure in *Holmes II*. (*Holmes II* Doc. 118.)

5.)  Judge Ramos made no transactions of Apple stock during the January 1, 2019 to December 31, 2019 reporting period, and his previously held assets or transactions in Apple stock, if any, were exempt from prior disclosure under the Federal Judiciary Financial Disclosure Regulations.  (*Id.*)  The report further indicates that Judge Ramos (or his spouse or children) came to own Apple stock by inheritance.  (SA0499, Doc. 160-1 at 21.)  Moreover, the total income he gained from Apple stock during the January 1, 2019 to December 31, 2019 reporting period was $1,000 or less in stock dividends, and the gross cash market value of Judge Ramos's ownership interest in Apple stock on December 31, 2019 was $15,000 or less.  (SA0486, *id.* at 8; SA0453, Doc. 148-2 at 5.)  Even at its highest, Apple stock constituted as little as 0.1% and at most 0.5% of the total gross cash market value of Judge Ramos's investment and trust portfolio.  (SA0483–98, Doc. 160-1 at 5–20.)

**Mr. Holmes's Motion.**  On February 4, 2022, Mr. Holmes filed a "Motion to Vacate Judgment" in *Holmes I*, arguing, in essence, that Judge Ramos's relatively minuscule ownership interest in Apple stock at some point during the proceedings required vacatur of the nearly four-year-old July 24, 2018 judgment, despite the Second Circuit's unanimous opinion affirming that judgment on *de novo* review.[4]

---

[4] On March 9, 2022, Mr. Holmes filed a similar "Motion to Vacate Judgment" in *Holmes II* raising the same grievance about Judge Ramos's ownership interest in Apple.  (*Holmes II* Doc. 119.)  The next day, Apple requested that *Holmes II* be

10

(SA0401–02, Doc. 148.)  On February 16, 2022, the case was reassigned to Judge

Abrams for her review of Mr. Holmes's motion, and Apple responded to Mr.

Holmes's motion on March 4, 2022.  (SA0459–75, Doc. 159.)

On June 27, 2022, Judge Abrams denied Mr. Holmes's motion to vacate the

*Holmes I* judgment in a Memorandum Opinion and Order, (SA0003–08, Doc.

163), *Holmes v. Apple Inc., et al.*, No. 17-CV-4557 (RA), 2022 WL 2316373

(S.D.N.Y. June 27, 2022), which Mr. Holmes now appeals.

## SUMMARY OF ARGUMENT

**I.**     This Court reviews a district court's denial of a Rule 60 motion for

abuse of discretion.  *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1140 (2d

Cir. 1994).  The district court did not abuse its discretion in denying Mr. Holmes's

motion, because the district court properly recognized that (1) a fully and finally

adjudicated judgment affirmed on appeal after *de novo* review should not be

disturbed without a compelling reason, and (2) Mr. Holmes presented no such

---

transferred to Judge Abrams and that Mr. Holmes's motion to vacate in *Holmes II*
be stayed pending resolution of his motion in *Holmes I*.  (*Holmes II* Doc. 120.)  On
April 11, 2022, *Holmes II* was reassigned to Judge Abrams, and on April 19, 2022,
Judge Abrams stayed the parties' briefing deadlines with respect to the *Holmes II*
motion pending the court's ruling on Mr. Holmes's motion to vacate in *Holmes I*.
(*Holmes II* Doc. 137.)  The court lifted that stay on June 29, 2022, (*Holmes II* Doc.
138), two days after it issued its order denying Mr. Holmes's motion to vacate in
*Holmes I*, and Apple responded to the *Holmes II* motion on July 27, 2022, (*Holmes
II* Doc. 141).  As of the date of this submission, January 30, 2023, Mr. Holmes's
motion in *Holmes II* remains pending before Judge Abrams.

11

reason here. Fed. R. Civ. P. 60; *see Paddington Partners*, 34 F.3d at 1144. The

Second Circuit's unanimous affirmance of the judgment on *de novo* review

precluded the district court from vacating the judgment here, even if Judge Ramos

had been required to recuse himself. *Paddington Partners*, 34 F.3d at 1144 (2d

Cir. 1994) (describing Rule 60's baseline "requirement of the judgment's not

having been affirmed on appeal").

**II.**     In denying Mr. Holmes's motion to vacate judgment, the district court

did not abuse its discretion in applying harmless error review and concluding that,

even if Judge Ramos were required to recuse himself, any resulting error was

rendered harmless by the Second Circuit's *de novo* affirmance. When deciding

whether to vacate a judgment for violation of 28 U.S.C. § 455, courts ordinarily

consider (1) "the risk of injustice to the parties in the particular case," (2) "the risk

that the denial of relief will produce injustice in other cases," and (3) "the risk of

undermining the public's confidence in the judicial process," but vacatur is entirely

unjustified where violation of section 455 is harmless error. *Liljeberg v. Health

Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988); *Faulkner v. Nat'l Geographic

Enterprises, Inc.*, 409 F.3d 26, 42 n.10 (2d Cir. 2005) (holding that harmless error

review applies to alleged violations of both section 455(a) and (b)).

**III.**     Mr. Holmes also made no showing before the district court—nor

could he—that Judge Ramos owned or knew that he owned Apple stock at the time

he rendered the July 24, 2018 judgment or that Judge Ramos's impartiality could reasonably be doubted. Mr. Holmes therefore made no showing that Judge Ramos should have been disqualified, let alone that the judgment should have been vacated as a result.

IV. This Court lacks jurisdiction to consider issues raised in Mr. Holmes's brief relating to (1) the merits of the underlying judgment, and (2) non-appealable orders in *Holmes II*, which are not pending before this Court. *See Daily Mirror, Inc. v. New York News, Inc.*, 533 F.2d 53, 56 (2d Cir. 1976) ("An order denying relief under Rule 60(b) is an appealable order, but the appeal brings up only the correctness of the order itself.").

## ARGUMENT

Mr. Holmes sought to vacate the court's July 24, 2018 judgment on the grounds that Judge Ramos would have been subject to disqualification under 28 U.S.C. § 455 as a result of his ownership interest in Apple stock at some time during this litigation. (SA0401, Doc. 148 at 1; SA0409–13, Doc. 148-1 at 7–11.) Liberally construed, Mr. Holmes's motion qualified as a Rule 60(b) motion for relief. (SA0401, Doc. 148 at 1.)

Rule 60 governs relief from a judgment or order, and Rule 60(b) provides six avenues for relief from a judgment, order, or proceeding. Fed. R. Civ. P. 60(b). The Second Circuit has instructed that Rule 60(b) provides "extraordinary judicial

relief" and that such relief can be granted "only upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986).[5]  No "exceptional circumstances" were present here, and none of Mr. Holmes's grounds for vacating the July 24, 2018 judgment had merit.  The district court did not abuse its discretion in denying Mr. Holmes's motion.

First, the Second Circuit's unanimous affirmance of the judgment on *de novo* review precluded the district court from vacating the judgment even if Judge Ramos had been required to recuse himself.  Second, Mr. Holmes made no showing—nor could he—that Judge Ramos owned or knew that he owned Apple stock at the time he rendered the July 24, 2018 judgment or that Judge Ramos's impartiality could reasonably be doubted.  Mr. Holmes therefore made no showing that Judge Ramos should have been disqualified, much less that "exceptional circumstances" necessitated vacating the judgment as a result.

## I.     The District Court Correctly Concluded That the Second Circuit's Unanimous *De Novo* Affirmance of the Judgment Precluded the District Court From Vacating the Judgment.

Where an independent three-judge panel of the Second Circuit had unanimously affirmed Judge Ramos's July 24, 2018 judgment on *de novo* review,

---

[5] As relevant here, the catchall provision in Rule 60(b)(6)—which permits a court to relieve a party from a final judgment, order, or proceeding for "any other reason that justifies relief"—is the proper avenue to challenge a prior decision based on the subsequent discovery of facts that arguably would have required the judge's disqualification. *See Liljeberg*, 486 U.S. at 863–64.

14

the judgment cannot be vacated based on the district judge's alleged disqualification.  In conducting its *de novo* review, the Second Circuit was not allowed to defer to Judge Ramos in any way; in the unanimous opinion of three independent appellate judges reviewing the record on their own, Mr. Holmes's claims failed.  The entire purpose of *de novo* review is to provide an appellant the opportunity for a fresh review without any deference whatsoever to the court below.  The appellate court's independent review had already occurred, and the court concluded on its review that the judgment withstood scrutiny.  *Paddington Partners*, 34 F.3d at 1144 (describing Rule 60's baseline "requirement of the judgment's not having been affirmed on appeal"); *see also Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155 (3d Cir. 2004) (vacatur of district judge's orders being appealed was not required where appellate court's own independent, plenary review of the orders made further remedial action unnecessary).  For this reason alone, Mr. Holmes's motion to vacate judgment was properly denied.

Judge Abrams correctly recognized these principles in her Order.  The Order succinctly explains that Mr. Holmes "has not shown that he is entitled to relief under any prong of Rule 60, because any error that may possibly have resulted from Judge Ramos' failure to recuse himself is rendered harmless by the Circuit's *de novo* affirmance."  (SA0006, Order, Doc. 163 at 4 (citing *Faulkner*, 409 F.3d at 42 n.10; *Camacho v. Autoridad de Telefonos de Puerto Rico*, 868 F.2d 482, 490

15

(1st Cir. 1989); *Paddington Partners*, 34 F.3d at 1144).)  Judge Abrams did not

abuse her discretion in so denying the motion.  *See In re Terrorist Attacks on Sept.*

*11, 2001*, 741 F.3d 353, 357 (2d Cir. 2013) ("A court abuses its discretion when

(1) its decision rests on an error of law or a clearly erroneous factual finding; or

(2) cannot be found within the range of permissible decisions.").

## II. The District Court Correctly Recognized That Even If Judge Ramos Should Have Recused Himself, It Was Harmless Error.

The question of Judge Ramos's disqualification is a red herring: the grounds

for disqualification, discussed *infra*, differ significantly from what must be shown

to vacate a judgment.  Indeed, vacating a judgment requires a significantly higher

showing and is a drastic measure that was not appropriate here.  When deciding

whether to vacate a judgment for violation of 28 U.S.C. § 455, courts consider

(1) "the risk of injustice to the parties in the particular case," (2) "the risk that the

denial of relief will produce injustice in other cases," and (3) "the risk of

undermining the public's confidence in the judicial process."  *Liljeberg*, 486 U.S.

at 864.  But vacatur is unjustified where violation of section 455 is harmless error.

*Id.*; *Faulkner*, 409 F.3d at 42 n.10 (holding that harmless error review applies to

alleged violations of both section 455(a) and (b)).

Mr. Holmes protests that Judge Abrams erred by failing to (1) expressly

consider the factors that the Supreme Court laid out in *Liljeberg*, and (2) conduct

her own *de novo* review of the merits of the judgment.  Br. at 11–12 (citing

16

*ExxonMobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163 (2d Cir. 2022)); *id.* at 18, 29. But as in *ExxonMobil*, Judge Abrams's decision was not "procedurally deficient" for failing to discuss each *Liljeberg* factor. *ExxonMobil Oil Corp.*, 44 F.4th at 172–73 (affirming denial of motion to vacate judgment rendered by Judge Ramos, even where district judge's *de novo* review failed to expressly consider each *Liljeberg* factor). As explained above, the record reveals that error by Judge Ramos here, if any, was harmless as a result of the Second Circuit's *de novo* affirmance of the judgment—a conclusion that Judge Abrams properly reached. And, as instructed in *Liljeberg*, Judge Abrams properly considered and dismissed any "concerns . . . about public confidence in an unbiased judiciary," (SA0006, Doc. 163 at 4)—the third *Liljeberg* factor. Nothing more was required of Judge Abrams in her review of the judgment and the record.

Moreover, in ruling on Mr. Holmes's Rule 60(b) motion, Judge Abrams was not required under *Liljeberg* to conduct any additional *de novo* review of the merits of Mr. Holmes's claims, because Mr. Holmes was already afforded *de novo* review by the Second Circuit. *See Faulkner*, 409 F.3d at 42 n.10 (noting that a judge's "failure to recuse [is] harmless error" when an "appellate court exercising plenary review concludes that [the] district court's dismissal of [the] case . . . was proper") (citing *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1526–27 (11th Cir. 1988)); *see also Mendell ex rel. Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990)

17

(noting that "[m]otions under Rule 60(b) are addressed to the sound discretion of the district court"). Contrary to Mr. Holmes's argument, Judge Abrams correctly recognized the *limits* of her discretion to review the underlying merits of Mr. Holmes's claims given that the Second Circuit's review had already occurred.

Looking more closely at the principles of *Liljeberg*, all factors weigh against vacatur, and Judge Abrams did not abuse her discretion in reaching that conclusion. If the judgment were vacated, the injustice falls entirely on Apple and its co-defendants, which will be forced to expend resources and litigate Mr. Holmes's baseless claims yet again, including certain claims over which the district court has already determined it lacks jurisdiction and which the appellate court affirmed on *de novo* review. By contrast, there was zero risk that denial of Mr. Holmes's motion to vacate produced injustice in other cases: the judgment here rested entirely on the specific, peculiar facts of this case and had no bearing on any other case. Finally, leaving the judgment in place results in no risk of undermining the public's confidence in the judicial process. On the contrary, vacatur here could undermine the public's confidence in the *appellate* review process: district courts do not ordinarily review or disturb the final opinions of appellate courts.

Where the Second Circuit had completed its own *de novo* review of the judgment and affirmed the judgment unanimously, any error by Judge Ramos in

18

failing to recuse himself was plainly harmless. *Williamson v. Indiana Univ.*, 345 F.3d 459, 464–65 (7th Cir. 2003) ("On appeal, this court reviews the grant of summary judgment *de novo* . . . and therefore Williamson has received a full review by an impartial panel."); *Higganbotham v. Oklahoma ex rel. Oklahoma Transp. Comm'n*, 328 F.3d 638, 646 (10th Cir. 2003) (noting court "independently reviewed th[e] issues de novo and concluded that the plaintiff's complaint was properly dismissed" and that any "error by the district court judge in not recusing himself would have been harmless under the circumstances of this case."). Judge Abrams did not abuse her discretion in reaching that conclusion.

**III.    Judge Ramos's Minimal Ownership Interest in Apple Stock at Some Unspecified Time While Presiding Over the Case Was Not Grounds for Disqualification that Obligated the District Court to Vacate the Judgment.**

Mr. Holmes's entire motion before the district court rested on the contention that Judge Ramos's ownership interest in Apple stock should result in vacatur of the July 24, 2018 judgment. But Mr. Holmes did not and cannot show that (1) Judge Ramos owned—let alone knew that he owned—Apple stock at the time he rendered the July 24, 2018 judgment, or (2) Judge Ramos's ownership interest caused or would have caused any reasonable person to doubt Judge Ramos's impartiality. Mr. Holmes consequently made no showing that Judge Ramos was required to recuse himself or that, as a result, vacatur of the judgment is justified.

28 U.S.C. § 455 and the Code of Conduct for United States Judges govern

19

disqualification and recusal of federal judges.[6]  Section 455(a) requires disqualification in cases where impartiality may reasonably be questioned.  *See* 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.").  Subsection (b) enumerates specific circumstances requiring disqualification.  *See id.* §§ 455(b)(1)–(5).  As relevant here, under § 455(b)(4), a judge shall disqualify himself when "he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding."  *Id.* § 455(b)(4).  Section 455(d)(4) defines "financial interests" as "ownership of a legal or equitable interest, however small," with exceptions.  *Id.* § 455(d)(4).

Contrary to Mr. Holmes's argument, Judge Ramos's ownership interest in Apple stock was not grounds for disqualification under Section 455; it certainly was not grounds for vacating the judgment.

---

[6] The Code of Conduct for United States Judges contains disqualification rules materially identical to Section 455.  *See* Guide to Judiciary Policy, Vol. 2A, Ch. 2, Canon 3C.

**A.     Judge Ramos's Ownership Interest in Apple Stock Would Not Have Required His Disqualification Under 28 U.S.C. § 455(b)(4).**

As explained below, Judge Ramos's Financial Disclosure Reports—excerpts of which Mr. Holmes himself attached as an exhibit in support of his motion to vacate judgment before the district court, (SA0449–55, Doc. 148-2)—demonstrate (1) the possibility that Judge Ramos did not own any Apple stock whatsoever until *after* Judge Ramos rendered the July 24, 2018 judgment, and (2) the possibility that Judge Ramos did not know of his ownership interest in Apple stock until he completed his August 11, 2020 Financial Disclosure Report.  This evidence fails to meet Mr. Holmes's burden on disqualification: Mr. Holmes must have shown both that Judge Ramos owned Apple stock before the July 24, 2018 judgment *and* that Judge Ramos was then aware of that ownership interest in order to show that Judge Ramos's disqualification would have been required under 28 U.S.C. § 455(b)(4) before the judgment was issued.

The first time Judge Ramos was required under the Federal Judiciary Financial Disclosure Regulations to disclose any ownership of Apple stock—and the first time Judge Ramos did in fact disclose ownership of Apple stock—was in his August 11, 2020 Financial Disclosure Report (the "August 2020 Report") for the January 1, 2019 to December 31, 2019 reporting period—well after Judge Ramos rendered his July 24, 2018 judgment in *Holmes I*.  (*See* SA0476–78, Doc. 160; SA0486, Doc. 160-1 at 8; SA0453, Doc. 148-2 at 5 (indicating that Judge

21

Ramos's ownership of Apple stock was exempt from prior disclosure).)  Judge

Ramos further explained in the August 2020 Report that the Apple stock was an

inherited investment.  (SA0499, Doc. 160-1 at 21.)  While Judge Ramos may have

owned Apple stock at some point before January 1, 2019, it is entirely possible that

Judge Ramos did not own Apple stock until *after* rendering the July 24, 2018

judgment.  In fact, the Clerk of Court's January 21, 2022 letter notes that Judge

Ramos did not own Apple stock until "*well after the case was filed* but while he

still presided over the case."  (SA0399, Doc. 146 at 1 (emphasis added).)  Mr.

Holmes made no showing before the district court—nor could he—that Judge

Ramos owned Apple stock at the time he rendered the July 24, 2018 judgment.

Moreover, Mr. Holmes failed to demonstrate the knowledge required for

disqualification.  Section 455(b)(4) requires that the judge know of a financial

interest in a party before disqualifying himself.  *See Liljeberg*, 486 U.S. at 859 ("A

careful reading of the respective subsections makes clear that Congress intended to

require knowledge under section (b)(4) and not to require knowledge under

subsection (a).").  Mr. Holmes offered no evidence that Judge Ramos knew of any

ownership interest in Apple stock—assuming it existed—at any time before

entering the July 24, 2018 judgment; on the contrary, Judge Ramos's August 2020

Report, postdating the judgment, is the earliest indication of Judge Ramos's

knowledge of his ownership of Apple stock.  *Cf. Shell Oil Co. v. United States*, 672

F.3d 1283 (Fed. Cir. 2012) (financial disclosure report predating entry of final judgment indicated judge's knowledge of wife's financial interest in party and that judge should have recused himself).

On such facts, and in reviewing Mr. Holmes's claims "with the special solicitude due to *pro se* pleadings," (SA0006, Order, Doc. 163 at 4), Judge Abrams did not abuse her discretion in concluding that (1) no "exceptional circumstances" justifying relief under Rule 60 were present, *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986), and (2) none of Mr. Holmes's grounds for vacating the July 24, 2018 judgment had merit.

### B. Judge Ramos's Impartiality Could Not Reasonably Be Doubted.

Mr. Holmes argued, in essence, that Judge Ramos's minor ownership interest in Apple explains an apparent bias against him. (SA0411–13, Doc. 148-1 at 9–11.) But the record demonstrates that Judge Ramos was scrupulously fair throughout the proceedings, and Mr. Holmes points to nothing in the record that might show otherwise.

Mr. Holmes argued, for instance, that Judge Ramos demonstrated bias against him merely because Judge Ramos ruled against him and because Judge Ramos's decisions, to Mr. Holmes, appeared to move slowly. (SA0412–13, *id.* at 10–11 ("A review of the record shows that at every turn, Plaintiff was denied the opportunity to fully prosecute their claims and/or put forth factual showings in

23

support of their defenses.").)  But the Second Circuit and myriad courts have

consistently held that the showing of personal bias casting doubt on impartiality

must ordinarily be based on "extrajudicial conduct . . . not conduct which arises in

a judicial context."  *Lewis v. Tuscan Dairy Farms, Inc.*, 25 F.3d 1138, 1141 (2d

Cir. 1994).  And "judicial rulings alone almost never constitute a valid basis for a

bias or partiality motion."  *Liteky v. United States*, 510 U.S. 540, 555 (1994).  In

his motion to vacate, Mr. Holmes showed no "extrajudicial conduct" to support a

bias finding, and Judge Abrams did not abuse her discretion in rejecting his

allegation of bias.

**IV.  This Court Lacks Jurisdiction to Consider the Issues Raised in Appellant's Brief Relating to Non-Appealable Orders in *Holmes II*.**

On this appeal, Mr. Holmes raises myriad issues relating to the merits of the

underlying July 24, 2018 judgment rendered by Judge Ramos.  Br. at 8–9, 18–29.

This Court lacks jurisdiction to consider any such issues.  *See Daily Mirror, Inc. v.*

*New York News, Inc.*, 533 F.2d 53, 56 (2d Cir. 1976) ("An order denying relief

under Rule 60(b) is an appealable order, but the appeal brings up only the

correctness of the order itself."); *see also Browder v. Dir., Dep't of Corr. of Ill.*,

434 U.S. 257, 263 n.7 (1978) (noting that "an appeal from denial of Rule 60(b)

relief does not bring up the underlying judgment for review") (citing *Daily Mirror,*

*Inc.*).

Mr. Holmes also argues on appeal that Judge Abrams erred in granting "the

24

April 18, 2022 request of the Attorney for Apple that the court extend Apple's time to respond" to Mr. Holmes's motion to vacate judgment in *Holmes II* and that the court transfer *Holmes II* to Judge Abrams.  Br. at 15–16, 29.  The district court's reassignment of *Holmes II* to Judge Abrams and Judge Abrams's order staying briefing deadlines with respect to Mr. Holmes's motion to vacate in *Holmes II* were non-appealable orders.  *See* 28 U.S.C. § 1291.  Moreover, those orders Mr. Holmes challenges were unquestionably issued in the separate *Holmes II* litigation, and that matter is not pending before this Court.  (*See Holmes II* Doc. 137.)  This Court therefore lacks jurisdiction to consider any of the issues relating to *Holmes II*.

## CONCLUSION

For the foregoing reasons, this Court should affirm the Order below.

25

Dated: February 15, 2023
New York, New York

Respectfully submitted,

O'MELVENY & MYERS LLP

_/s/ Hannah Y. Chanoine_

HANNAH Y. CHANOINE
hchanoine@omm.com
Times Square Tower
7 Times Square
New York, New York  10036-6537
Ph: (212) 326-2000
Fx: (212) 326-2061

DAVID R. EBERHART
deberhart@omm.com
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Ph: (415) 984-8700
Fx: (415) 984-8701

BRANDON C. AMASH
bamash@omm.com
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Ph: (949) 823-6900
Fx: (949) 823-6994

_Attorneys for Defendant-Appellee_
_Apple Inc._

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that Defendant-Appellee Apple Inc.'s Final Brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains **6,072** words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

I further certify that the above-referenced Brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016, Times New Roman font, 14-point type.

Dated:        February 15, 2023                */s/ Hannah Y. Chanoine*
                                                    Hannah Y. Chanoine