# 22-1745

IN THE

# United States Court Of Appeals

## FOR THE SECOND CIRCUIT

Tyrone Holmes,

*Plaintiff-Appellant,*

*-against-*

Apple Inc., Amazon.com, LLC, CheckPoint Fluidic Systems International, Ltd.,

*Defendant-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
JUDGE RONNIE ABRAMS

## DEFENDANT-APPELLEES' SUPPLEMENTAL APPENDIX
### Volume 2 of 2 (Pages SA0279 – SA0500)

HANNAH Y. CHANOINE
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York  10036-6537
Telephone: (212) 326-2000

DAVID R. EBERHART
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Telephone: (415) 984-8700

BRANDON C. AMASH
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900

*Attorneys for Defendant-Appellee Apple Inc.*

BRIAN GRAIFMAN
BORAH, GOLDSTEIN, ALTSCHULER,
    NAHINS & GOIDEL, P.C.
377 Broadway, 6th Floor
New York, New York 10013
(212) 431-1300

*Attorneys for Defendant-Appellee
    Checkpoint Fluidic Systems
    International, Ltd.*

MICHAEL JOHN GOETTIG
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st
    Floor
New York, New York 10020
(212) 489-8230

*Attorneys for Defendant-Appellee
    Amazon.com, LLC*

# <u>TABLE OF CONTENTS</u>

**Volume 1**

*Page(s)*

Plaintiff-Appellant Tyrone Holmes's Notice of
Appeal, dated July 26, 2022 (Doc. 164) ............................ SA0001 – SA0002

Memorandum Opinion and Order Denying Plaintiff-
Appellant Tyrone Holmes's Motion to Vacate
Judgment, dated June 27, 2022 (Doc. 163) ........................ SA0003 – SA0008

Plaintiff-Appellant Tyrone Holmes's Complaint,
dated June 16, 2017 (Doc. 1) ............................................... SA0009 – SA0043

Affidavit as to "Timeline of Events" and Contacts
with New York in Support of Defendant-
Appellee CheckPoint Fluidic Systems International,
Ltd.'s Motion to Dismiss, dated October 9, 2017
(Doc. 50) ............................................................................ SA0044 – SA0045

Affidavit as to the "Laptop", "FedEx" and "Kaseya"
in Support of Defendant-Appellee CheckPoint
Fluidic Systems International, Ltd.'s Motion to
Dismiss, dated October 9, 2017 (Doc. 51) ......................... SA0046 – SA0050

Exhibit F to Affidavit as to the "Laptop", "FedEx"
and "Kaseya" in Support of Defendant-Appellee
CheckPoint Fluidic Systems International, Ltd.'s
Motion to Dismiss, dated October 9, 2017
(Doc. 51-6) ......................................................................... SA0051 – SA0057

Memorandum of Law of Defendant-Appellee
CheckPoint Fluidic Systems International, Ltd.
in Support of Motion to Dismiss For Lack of
Personal Jurisdiction, dated October 9, 2017
(Doc. 52) ............................................................................ SA0058 – SA0069

Defendant-Appellee Amazon.com, LLC's Notice of
Motion for Entry of Judgment, dated February
12, 2018 (Doc. 91) ............................................................. SA0070 – SA0074

i

*Page(s)*

Memorandum of Law in Support of Defendant-
   Appellee Amazon.com, LLC's Motion for Entry
   of Judgment and to Dismiss the Complaint, dated
   February 12, 2018 (Doc. 92) .............................................. SA0075 – SA0104

Declaration of Michael Goettig in Support of
   Defendant-Appellee Amazon.com, LLC's
   Motion for Entry of Judgment, dated February
   12, 2018 (Doc. 93) .............................................................. SA0105 – SA0214

Declaration of Jesse Jensen in Support of Defendant-
   Appellee Amazon.com, LLC's Motion for
   Entry of Judgment, dated February 12, 2018
   (Doc. 94) ............................................................................. SA0215 – SA0237

Affidavit as to "Timeline of Events" in Support of
   Defendant-Appellee Amazon.com, LLC's
   Motion for Entry of Judgment, dated February
   12, 2018 (Doc. 95) .............................................................. SA0238 – SA0248

Affidavit as to the "Laptop", "FedEx" and "Kaseya"
   in Support of Defendant-Appellee Amazon.com,
   LLC's Motion for Entry of Judgment, dated
   February 12, 2018 (Doc. 96) .............................................. SA0249 – SA0276

Notice of Defendant-Appellee Apple Inc.'s Motion for
   Judgment on the Pleadings or, in the
   Alternative, Summary Judgment, dated February
   12, 2018 (Doc. 97) .............................................................. SA0277 – SA0278

**Volume 2**

Memorandum of Law in Support of Defendant-Appellee
   Apple Inc.'s Motion for Judgment on the
   Pleadings or, in the Alternative, Summary
   Judgment, dated February 12, 2018 (Doc. 98) ................... SA0279 – SA0307

Defendant-Appellee Amazon.com, LLC's Local Rule
   56.1 Statement, dated February 12, 2018 (Doc.
   100) ..................................................................................... SA0308 – SA0311

ii

*Page(s)*

Plaintiff-Appellant Tyrone Holmes's Memorandum of
Law in Opposition to Defendants' Motions for
Judgment, dated March 12, 2018 (Doc. 105) ..................... SA0312 – SA0323

Defendant-Appellee Amazon.com LLC's Reply
Memorandum of Law in Further Support of
Motion for Entry of Judgment and to Dismiss
Complaint, dated May 10, 2018 (Doc. 114) ...................... SA0324 – SA0337

Opinion and Order Granting Defendants' Motions,
dated July 23, 2018 (Doc. 121) .......................................... SA0338 – SA0366

Judgment, dated July 24, 2018 (Doc. 122) ..................................... SA0367

Plaintiff-Appellant Tyrone Holmes's Notice of
Appeal of Judgment, dated August 22, 2018
(Doc. 124) ........................................................................... SA0368

Summary Order Affirming Judgment, dated December
9, 2019 (Doc. 127) .............................................................. SA0369 – SA0378

Mandate, dated January 6, 2020 (Doc. 135) ................................. SA0379 – SA0388

Defendant-Appellee CheckPoint Fluidic Systems
International, Ltd.'s Statement of Costs, dated
January 22, 2020 (Doc. 136) ............................................... SA0389

Defendant-Appellee Amazon.com, LLC's Notice of
Motion for Attorneys' Fees and Costs, dated
February 3, 2020 (Doc. 131) ............................................... SA0390 – SA0391

Plaintiff-Appellant Tyrone Holmes's "Motion for Relief
from Judgment" or "Rule 60 Motion for Relief from
Judgment; Objections to Bill of Costs, dated May
11, 2020 (Doc. 144) ............................................................ SA0392 – SA0395

Order Denying Plaintiff-Appellant Tyrone Holmes's
Rule 60(b) Motion, dated May 15, 2020 (Doc. 145) .......... SA0396 – SA0398

iii

*Page(s)*

Letter from Clerk of Court, dated January 21, 2022
(Doc. 146) ............................................................ SA0399 – SA0400

Plaintiff-Appellant Tyrone Holmes's Motion to Vacate
Judgment, dated February 4, 2022 (Doc. 148) .................. SA0401 – SA0402

Plaintiff-Appellant Tyrone Holmes's Declaration in
Support of Motion to Vacate Judgment, dated
February 4, 2022 (Doc. 148-1) ........................................ SA0403 – SA0448

Exhibits to Plaintiff-Appellant Tyrone Holmes's
Declaration in Support of Motion to Vacate
Judgment, dated February 4, 2022 (Doc.
148-2) .................................................................. SA0449 – SA0455

Defendant-Appellee CheckPoint Fluidic Systems
International, Ltd.'s Opposition to Motion to
Vacate Judgment, dated February 16, 2022
(Doc. 152-1) ........................................................ SA0456 – SA0458

Defendant-Appellee Apple Inc.'s Opposition to
Motion to Vacate Judgment, dated March 4,
2022 (Doc. 159) ................................................... SA0459 – SA0475

Declaration of Hannah Y. Chanoine in Support of
Defendant-Appellee Apple Inc.'s Opposition to
Motion to Vacate Judgment, dated March 4,
2022 (Doc. 160) ................................................... SA0476 – SA0478

Exhibit A to Declaration of Hannah Y. Chanoine in
Support of Defendant-Appellee Apple Inc.'s
Opposition to Motion to Vacate Judgment,
dated March 4, 2022 (Doc. 160-1) ..................................... SA0479 – SA0500

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TYRONE HOLMES,

Plaintiff,

v.

APPLE INC., AMAZON.COM, LLC, and
CHECKPOINT FLUIDIC SYSTEMS
INTERNATIONAL, LTD.,

Defendants.

Civil Action No. 1:17-cv-04557-ER

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT APPLE INC.'S MOTION FOR JUDGMENT ON**
**THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT**

Edward N. Moss
Hannah Y. Chanoine
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square Tower
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
emoss@omm.com
hchanoine@omm.com

David R. Eberhart
(*pro hac vice*)
Jesse J. Koehler
(*pro hac vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone:  (415) 984-8700
Facsimile:  (415) 984-8701
deberhart@omm.com
jkoehler@omm.com

*Attorneys for Defendant Apple Inc.*

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................. 1

II.   STATEMENT OF FACTS .................................................................... 2

      A.    Apple Manufactures and Ships the MacBook Pro Computer at Issue to
            Amazon .................................................................................................. 2

      B.    CheckPoint Purchases the MacBook Pro Computer from Amazon, Takes
            Possession of the Computer, and Adds Third-Party Software to the
            Computer .............................................................................................. 3

      C.    Mr. Holmes Purchases a MacBook Pro Computer from Amazon ...................... 4

      D.    Mr. Holmes's Wife Takes Possession of the Modified MBP and Enters
            into the AppleCare Protection Plan Agreement with Apple ................................. 5

      E.    CheckPoint and FedEx Undertake the Allegedly Tortious Acts ........................ 5

      F.    Mr. Holmes Files Suit Against Defendants, Including Apple ............................ 6

III.  ARGUMENT ......................................................................................... 7

      A.    First Cause of Action (Breach of Contract) and Second Cause of Action
            (Breach of Express Warranty): The Absence of a Contract Between Apple
            and Mr. Holmes Covering the Alleged "Defects" Demonstrates
            Mr. Holmes Cannot Establish Either Claim .......................................... 8

      B.    Third Cause of Action (Breach of Implied Warranty of Merchantability),
            Fourth Cause of Action (Negligence), and Fifth Cause of Action (Strict
            Liability): The Undisputed Facts Demonstrate Third Parties Undertook the
            Alleged Computer Sale, Software Installation, Tracking, and
            Communication with the NYPD That Proximately Caused Mr. Holmes's
            Alleged Injuries .................................................................................. 12

            1.    Each Cause of Action Requires Conduct Attributable to Apple
                  Rather Than a Third Party .................................................... 12

            2.    CheckPoint, FedEx, and Amazon Undertook the Actions Resulting
                  in Mr. Holmes's Alleged Injuries, Not Apple .......................... 14

            3.    No Privity Exists for Purposes of Mr. Holmes's Implied Warranty
                  Claim ...................................................................................... 16

      C.    Sixth Cause of Action (Fraudulent Concealment): The Complaint Does
            Not and Cannot Allege Facts Concerning Apple's Purported Concealment
            or Knowledge of CheckPoint's Installation of the Kaseya Software ................. 17

**TABLE OF CONTENTS**
**(continued)**

Page

D.   Seventh Cause of Action (Fraud in the Inducement and
Misrepresentation): Mr. Holmes Cannot Identify Any Specific
Misrepresentation or Omission ............................................................................ 20

E.   Eighth Cause of Action (False Advertising and Unfair Business Practice):
Any Alleged Misconduct Is Specific to Mr. Holmes and Lacks Any
Actionable Broad Impact on Consumers ............................................................ 21

IV.   CONCLUSION .............................................................................................................. 23

**SA0281**

# TABLE OF AUTHORITIES

**Page**

## **CASES**

*Berman v. Sugo LLC*,
    580 F. Supp. 2d 191 (S.D.N.Y. 2008)..........................................................................8

*Bertini v. Smith & Nephew, Inc.*,
    8 F. Supp. 3d 246 (E.D.N.Y. 2014) ...........................................................................20

*Carcone v. Gordon Heating & Air Conditioning Co.*,
    623 N.Y.S.2d 679 (1995) .............................................................................................16

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002).........................................................................................10

*Elsroth v. Johnson & Johnson*,
    700 F. Supp. 151 (S.D.N.Y. 1988) ..............................................................................12

*Fagan v. AmerisourceBergen Corp.*,
    356 F. Supp. 2d 198 (E.D.N.Y. 2004) ...........................................................12, 13, 14, 16

*Fane v. Zimmer, Inc.*,
    927 F.2d 124 (2d Cir. 1991).........................................................................................13

*Feick v. Fleener*,
    653 F.2d 69 (2d Cir. 1981)...........................................................................................10

*Fink v. Time Warner Cable*,
    810 F. Supp. 2d 633 (S.D.N.Y. 2011) ..........................................................................7

*In re G. & A. Books, Inc.*,
    770 F.2d 288 (2d Cir. 1985).........................................................................................7

*Inter Impex S.A.E. v. Comtrade Corp.*,
    No. 00 Civ. 0133(GBD), 2004 WL 2793213 (S.D.N.Y. Dec. 6, 2004) ...................9

*Johnson v. Bryco Arms*,
    304 F. Supp. 2d 383 (E.D.N.Y. 2004) .........................................................................13

*Kromer v. Beazer E., Inc.*,
    826 F. Supp. 78 (W.D.N.Y. 1993) .........................................................................13, 16

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011).........................................................................................7

*Levy v. Bessemer Tr. Co., NA.*,
    No. 97 Civ. 1785(JFK), 1997 WL 431079 (S.D.N.Y. July 30, 1997) ......................8

## TABLE OF AUTHORITIES
### (continued)

Page

*Mastrangelo v. Howmedica, Div. of Pfizer Hosp. Prod. Grp., Inc.*,
　　903 F. Supp. 439 (E.D.N.Y. 1995) ..................................................................... 9, 11

*Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*,
　　392 F.3d 520 (2d Cir. 2004)................................................................................ 8

*Oboler v. Ins. Co. of N. Am.*,
　　No. 91 Civ. 2808 (SWK), 1994 WL 414438 (S.D.N.Y. Aug. 5, 1994)............................ 22, 23

*Occidental Chem. Corp. v. OHM Remediation Servs. Corp.*,
　　173 F.R.D. 74 (W.D.N.Y. 1997).......................................................................... 22, 23

*Orlander v. Staples, Inc.*,
　　802 F.3d 289 (2d Cir. 2015)................................................................................ 22

*Pacs Indus. v. Cutler-Hammer, Inc.*,
　　103 F. Supp. 2d 570 (E.D.N.Y. 2000) .................................................................. 20, 21

*Promuto v. Waste Mgmt., Inc.*,
　　44 F. Supp. 2d 628 (S.D.N.Y. 1999)..................................................................... 8

*Rafter v. Liddle*,
　　704 F. Supp. 2d 370 (S.D.N.Y. 2010)................................................................... 17

*Robinson v. Reed-Prentice Div. of Package Mach. Co.*,
　　49 N.Y.2d 471 (1980) ...................................................................................... 13, 14, 16

*Salzman v. Prudential Sec., Inc.*,
　　No. 91 Civ. 4253(KTD), 1994 WL 191855 (S.D.N.Y. May 16, 1994)................................ 11

*Sazerac Co. v. Falk*,
　　861 F. Supp. 253 (S.D.N.Y.1994) ....................................................................... 10

*Schwatka v. Super Millwork, Inc.*,
　　965 N.Y.S.2d 547 (2013).................................................................................. 17, 18

*Vitolo v. Mentor H/S, Inc.*,
　　426 F. Supp. 2d 28 (E.D.N.Y. 2006), *aff'd*, 213 F. App'x 16 (2d Cir. 2007)...................... 20

*WC Capital Mgmt., LLC v. UBS Sec., LLC*,
　　711 F.3d 322 (2d Cir. 2013)................................................................................ 7

*Window Headquarters, Inc. v. MAI Basic Four, Inc.*,
　　Nos. 91 Civ. 1816, 92 Civ. 5283, 1993 WL 312899 (S.D.N.Y. Aug. 12, 1993)..................... 8

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Wolfgruber v. Upjohn Co.*,
   423 N.Y.S.2d 95 (1979), *aff'd*, 52 N.Y.2d 768 (1980) ........................................................... 13

## **STATUTES**

N.Y. Gen. Bus. Law § 349 *et seq.* ............................................................................................. 21

U.C.C. § 2-314(1) ............................................................................................................. 12, 16

U.C.C. § 2-318 ....................................................................................................................... 16

## **RULES**

Fed. R. Civ. P. 12(d) ................................................................................................................. 7

Fed. R. Civ. P. 9(b) ................................................................................................................. 20

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Apple should be dismissed from this litigation because its undisputed actions cannot support any liability. Apple merely: (1) manufactured a MacBook Pro computer, (2) sold that computer to Amazon, and (3) delivered that computer to Amazon. These actions cannot support liability under any of Mr. Holmes's eight claims; nor can Apple be liable for the intervening actions of any third parties named, or unnamed, in this suit.

Each of Mr. Holmes's claims requires conduct by Apple that Apple did not and could not undertake. Indeed, based on the pleadings, Apple and Mr. Holmes agree that each of Mr. Holmes's purported injuries results from conduct attributable to a party other than Apple. The parties agree:

(1)    CheckPoint—not Apple—installed the Kaseya software on the MacBook Pro computer bearing the serial number C02RQ1T3G8WN;

(2)    Amazon—not Apple—contracted with Mr. Holmes for his purchase of a MacBook Pro computer and AppleCare Protection Plan;

(3)    Amazon—not Apple—sold Mr. Holmes that computer;

(4)    CheckPoint—not Apple—tracked the MacBook Pro computer bearing the serial number C02RQ1T3G8WN; and

(5)    CheckPoint (and/or FedEx Corporation)—not Apple—reported to and/or communicated with the NYPD regarding Mr. Holmes's possession of the MacBook Pro computer bearing the serial number C02RQ1T3G8WN.

In short, Mr. Holmes has alleged no facts establishing that Apple played even the slightest role in the tortious conduct or injuries he alleges. Nor can Apple's three acts possibly constitute a

deceptive act or practice: Mr. Holmes has not demonstrated and cannot demonstrate any broader

public interest or consumer impact resulting from Apple's actions.

For the reasons set forth below, Apple respectfully requests that this Court dismiss

Mr. Holmes's complaint as to Apple and grant judgment on the pleadings in Apple's favor on all

of Mr. Holmes's asserted claims. Although the pleadings provide sufficient factual clarity to

support judgment under Rule 12(c), Apple moves in the alternative for summary judgment

relying on the additional documents and facts submitted with the concurrently filed declaration

of Apple employee Tim O'Neil ("O'Neil Decl."). The factual background below is organized to

reflect the alternative bases for judgment: the first paragraph in each section sets forth the

allegations in the pleadings; any following paragraphs reflect related facts outside the pleadings.

## II.      STATEMENT OF FACTS

### A.      Apple Manufactures and Ships the MacBook Pro Computer at Issue to Amazon

Although Apple is the sole manufacturer and source of MacBook Pro computers,

including the computer at issue, Apple does authorize a number of entities to sell new MacBook

Pro computers. Amazon is one such third party. Mr. Holmes acknowledges in the complaint that

Apple manufactured the MacBook Pro at issue and sold the computer "to Amazon . . . which

then sold it to plaintiff." Compl. at 3. And in its answer to the complaint, Apple agreed,

admitting "Apple manufactured the MacBook Pro computer at issue and sold the device to

Amazon.com." Dkt. 22 at 2; *id.* ¶ 21 (admitting "Apple manufactured a MacBook Pro

MJLQ2LL/A 15-inch computer with the serial number C02RQ1T3G8WN").

Further investigation by Apple, detailed in the declaration of Tim O'Neil, provides the

following details regarding that initial sale of the computer: On May 10, 2016, Amazon placed

an order with Apple for two 15-inch MacBook Pro computers. O'Neil Decl. ¶ 4, Ex. A. On

May 19, 2016, Apple fulfilled that order by shipping two new MacBook Pro computers to
Amazon. *Id.* The computer bearing the serial number C02RQ1T3G8WN was one of those two
computers.[1] *Id.* At the time Apple shipped that computer to Amazon, no Kaseya software had
been installed on the computer. *Id.* ¶ 4.

### B.   CheckPoint Purchases the MacBook Pro Computer from Amazon, Takes Possession of the Computer, and Adds Third-Party Software to the Computer

Mr. Holmes acknowledges in the complaint that CheckPoint installed third-party
software on the MacBook Pro computer Mr. Holmes received from Amazon (the "Modified
MBP") prior to Mr. Holmes's receipt of that computer.[2] Compl. ¶ 76 ("[T]he supposedly brand
new computer contained . . . software, installed by Defendant, CHECKPOINT FLUIDIC
SYSTEMS INTERNATIONAL, LTD.").

CheckPoint's court filings provide additional insight into the timeline of that software
installation and CheckPoint's possession of the Modified MBP. CheckPoint purchased the
Modified MBP from Amazon on June 2, 2016. Dkt. No. 38 ("CheckPoint Timeline Affidavit") at
1; Dkt. No. 38-2. On or before June 7, 2016, CheckPoint received the Modified MBP and
uploaded third-party software to the computer, including the Kaseya software. CheckPoint
Timeline Affidavit at 1; *see also* Dkt. No. 45 ("Holmes Affidavit") ¶¶ 3, 10, 15 ("All of the
software that was loaded into the machine was done by [CheckPoint]."). Later on June 7, 2016,

---

[1] The other computer had the serial number C02RQ1J5G8WN. *Id.* Mr. Holmes's assertion in his January 5, 2018 letter to the Court (Dkt. 81 at 1) that there may be two computers with the serial number C02RQ1T3G8WN is without merit. Apple manufactured and has sales, registration, and APP records for just one computer with that serial number. Apple is aware of no information that would suggest that two computers were assigned the serial number C02RQ1J5G8WN. *See generally* O'Neil Decl. ¶¶ 3-12.

[2] For the purposes of this motion, Apple does not dispute Mr. Holmes's allegation that the computer he received from Amazon in response to his June 22, 2016 purchase was the Modified MBP (*i.e.*, the computer bearing the serial number C02RQ1T3G8WN and on which CheckPoint installed the Kaseya software). Apple does not possess knowledge regarding whether Mr. Holmes received the Modified MBP from Amazon directly. And the precise path of the Modified MBP to Mr. Holmes after CheckPoint installed the Kaseya software is not relevant to this motion.

CheckPoint provided the Modified MBP to FedEx for delivery to Dubai. CheckPoint Timeline

Affidavit at 2. The computer never arrived in Dubai. *Id.*

    Apple's records for the Modified MBP confirm activation of and activity on the computer

on June 7, 2016 by a CheckPoint employee. O'Neil Decl. ¶ 6, Ex. B.

    **C.**    **Mr. Holmes Purchases a MacBook Pro Computer from Amazon**

    According to the complaint, Mr. Holmes purchased a MacBook Pro computer from

Amazon on June 22, 2016. Compl. ¶ 21. Mr. Holmes also purchased an AppleCare Protection

Plan ("APP"). *Id.* Mr. Holmes's receipt for these purchases—attached as Exhibit A to the

complaint—identifies both products as "Sold by: Amazon.com LLC":

| Items Ordered | Price |
|---|---|
| 1 of: *Apple Macbook Pro MJLQ2LL/A 15-inch Laptop (2.2 GHz Intel Core i7 Processor, 16GB RAM, 256 GB Hard Drive, Mac OS X)*<br>Sold by: Amazon.com LLC<br><br>Condition: New | $1,799.99 |
| Items Ordered | Price |
| 1 of: *AppleCare Protection Plan for Mac Laptops 15 Inches and Above (NEWEST VERSION)*<br>Sold by: Amazon.com LLC<br><br>Condition: New | $345.50 |

*Id.* at 25. Amazon provided "One-Day Shipping" for shipment of both products. *Id.* Mr. Holmes

received the Amazon shipment containing a MacBook Pro computer on June 23, 2016. *Id.* ¶ 33.

    As additional background, Apple's APP offering for Mac computers allows customers to

extend the one-year hardware repair coverage that Apple provides through its limited warranty

coverage and also provides customers with additional technical support for hardware repairs and

software questions. O'Neil Decl. ¶¶ 8-9, Ex. D (Text of applicable APP). To utilize the APP

coverage, the customer must affirmatively register the plan with Apple and agree to the

applicable APP agreement, a process that takes place either at an Apple Retail Store location,

online, or by phone with Apple customer service.  *Id.* ¶ 8; *id.* Ex. D. APP coverage is device-

specific; registration of an APP for a Mac computer only extends the warranty coverage and

provides technical support coverage as to that computer—identified in the proof of coverage

document as the "Covered Equipment." *Id.* Ex. D

**D.    Mr. Holmes's Wife Takes Possession of the Modified MBP and Enters into the AppleCare Protection Plan Agreement with Apple**

After he received a MacBook Pro computer from Amazon on June 23, 2016, Mr. Holmes

alleges that he transferred possession of the computer to his wife, Stephanie Scott. Compl. ¶¶ 33,

38. Mr. Holmes alleges that the computer he gave his wife was the Modified MBP. *Id.*

Apple's records reflect that Ms. Scott began to use the Modified MBP on that day,

indicating Ms. Scott's activity on the Modified MBP on June 23, 2016. O'Neil Decl. ¶ 6, Ex. B;

*see* Compl. ¶ 33. On June 25, 2016, Ms. Scott registered the APP for the Modified MBP with

Apple, agreeing to the then-applicable agreement for an APP for Mac. O'Neil Decl. ¶ 9, Ex. C.

Apple's records reflect that Apple sold to Amazon on May 5, 2016 the APP that Ms. Scott

ultimately registered. *Id.* ¶ 11, Ex. E. Apple possesses no records concerning the date upon which

Amazon sold that particular APP. The APP remains registered to Ms. Scott, and Apple's records

do not reflect any transfer of the registration from Ms. Scott to any third party. *Id.* ¶ 10.

**E.    CheckPoint and FedEx Undertake the Allegedly Tortious Acts**

Sometime after Ms. Scott began using the computer, CheckPoint identified the Modified

MBP as online via the Kaseya software CheckPoint had installed on the computer a month

earlier. Compl. at 3-4 ("The company used the surveillance software to track Tyrone Holmes in

New York City[.]"). Mr. Holmes later learned of this tracking through a September 12, 2016

letter from CheckPoint's Vice President of Operations Bobbi Jo Bridges to Mr. Holmes's former

counsel, which Mr. Holmes attached as Exhibit B to the complaint. *Id.* at 28. That letter

explained:

> Please be advised that our Information Security department has ascertained information proving that your client is in possession of our equipment. This equipment has been tracked since leaving our facility. We have legally collected ample information to prove that your client is in possession of property belonging to CheckPoint Fluidic Systems International. If this equipment is returned immediately, in its original condition complete with all original parts and pieces, we will not move further to pursue legal action. I have no knowledge or interest in identifying your client or learning further about the details, which put him in possession of our equipment.
>
> As a further condition of this agreement, I would require this matter be resolved through our mutual contact at the NYPD, Detective Rodrigo Caballero. . . .

*Id.*; *see also id.* ¶ 44. Mr. Holmes alleges CheckPoint's communication with the NYPD regarding the Modified MBP ultimately led to the interactions between the NYPD and Mr. Holmes and culminated in transfer of the Modified MBP from Ms. Scott to CheckPoint. *Id.* at 3 ("1. The company [CheckPoint] used the surveillance software to track Tyrone Holmes, in New York City; 2. the company reported the plaintiff's operation of the computer as a theft to the NYPD; 3. NYPD aggressively and zealously hunted down the plaintiff . . . ."); *id.* ¶¶ 34-65.

Here too, CheckPoint's other court filings align with Mr. Holmes's allegations. CheckPoint acknowledges that it identified the Modified MBP as online on July 23, 2016. CheckPoint Timeline Affidavit at 2. CheckPoint then contacted FedEx to relay this information regarding the missing computer. *Id.* In response, FedEx filed a theft report for the computer with Kenner Police Department and this report was referred to the NYPD. *Id.* CheckPoint ultimately received the Modified MBP from the NYPD on October 17, 2016 and still possesses the computer. *Id.* at 3.

## F.      Mr. Holmes Files Suit Against Defendants, Including Apple

On June 16, 2017, Mr. Holmes filed suit naming Amazon, CheckPoint, and Apple as defendants. Mr. Holmes alleges eight claims against Apple: (1) Breach of Contract; (2) Breach of Express Warranty; (3) Breach of Implied Warranty of Merchantability; (4) Negligence; (5) Strict

Liability; (6) Fraudulent Concealment; (7) Fraud in the Inducement and Misrepresentation; and

(8) False Advertising and Unfair Business Practice. Compl. ¶¶ 73-123.

## III.    ARGUMENT

"The standard governing a Rule 12(c) motion is equivalent to that governing motions

under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Fink v. Time Warner Cable*, 810 F.

Supp. 2d 633, 639 (S.D.N.Y. 2011). Thus, under Federal Rule of Civil Procedure 12(c), a claim

must be dismissed if the complaint fails to state a claim upon which relief can be granted. *See*,

*e.g.*, *WC Capital Mgmt., LLC v. UBS Sec., LLC*, 711 F.3d 322, 328 (2d Cir. 2013) ("To survive a

12(c) motion, a plaintiff's complaint must contain sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face."). In deciding a motion under Rule 12(c), a

court may consider "the complaint, the answer, any written documents attached to them, and any

matter of which the court can take judicial notice for the factual background of the case" as well

as materials incorporated into the complaint by reference and "documents that, although not

incorporated by reference, are 'integral' to the complaint." *L-7 Designs, Inc. v. Old Navy, LLC*,

647 F.3d 419, 422 (2d Cir. 2011). If the court is to consider matters outside the pleadings, a Rule

12(c) motion "must be treated as one for summary judgment under Rule 56," and "[a]ll parties

must be given a reasonable opportunity to present all the material that is pertinent to the motion."

Fed. R. Civ. P. 12(d). A movant's submission of extrinsic evidence alone may be deemed

adequate notice to the opposing party that the motion may be treated as one for summary

judgment. *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985).

Each of Mr. Holmes's claims against Apple is not "plausible on its face." *See Fink*, 810

F. Supp. 2d at 640. Specifically, Mr. Holmes fails to allege and cannot establish: (1) the

existence of a contract between Apple and Mr. Holmes; (2) Apple's causation of any harm or

wrongdoing alleged; (3) any knowledge and withholding of material information by Apple; (4)

any specific misrepresentation or omission by Apple; and (5) harm to the public at large. As explained more fully below for each specific cause of action, these failures doom each of Mr. Holmes's eight claims.

> **A.** **First Cause of Action (Breach of Contract) and Second Cause of Action (Breach of Express Warranty): The Absence of a Contract Between Apple and Mr. Holmes Covering the Alleged "Defects" Demonstrates Mr. Holmes Cannot Establish Either Claim**

Because the Complaint alleges no facts showing that a contract existed between Apple and Mr. Holmes covering any "defects" Mr. Holmes alleges, his first two claims (breach of contract and breach of express warranty) must fail. To establish breach of contract under New York law, a plaintiff must establish (1) the existence of a contract, (2) the breach of that contract by the defendant, (3) adequate performance of the contract by the plaintiff, and (4) resulting damages. *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004). "For a breach of contract claim, Plaintiff must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue." *Levy v. Bessemer Tr. Co., NA.*, No. 97 Civ. 1785(JFK), 1997 WL 431079, at *5 (S.D.N.Y. July 30, 1997) (dismissing claim for failure to allege existence of a contract); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (same); *Window Headquarters, Inc. v. MAI Basic Four, Inc.*, Nos. 91 Civ. 1816, 92 Civ. 5283, 1993 WL 312899, at *3 (S.D.N.Y. Aug. 12, 1993) (same).

And to establish a breach of express warranty claim under New York law, a plaintiff must demonstrate "(1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant." *Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999). "Express warranty claims should be

dismissed where they do not contain specific factual reference to any oral or written warranties." *Mastrangelo v. Howmedica, Div. of Pfizer Hosp. Prod. Grp., Inc.*, 903 F. Supp. 439, 444 (E.D.N.Y. 1995) (granting summary judgment where plaintiff failed to identify the nature or content of the alleged express warranty); *Inter Impex S.A.E. v. Comtrade Corp.*, No. 00 Civ. 0133(GBD), 2004 WL 2793213, at *4 (S.D.N.Y. Dec. 6, 2004) (dismissing breach of express warranty claim where plaintiff failed to allege that the defendant was a party to any agreement identified in the complaint or that the defendant made any express warranties to the plaintiff).

The pleadings show that Apple took no part in the sale of the Modified MBP to Mr. Holmes and, accordingly, entered into no contract with him. First, it is undisputed that Mr. Holmes contracted with Amazon for the sale of the computer and APP, not Apple. Compl. at 25. Mr. Holmes's order and shipping receipt for the Modified MBP—attached to the complaint as Exhibit A—plainly identifies the computer as "Sold by: Amazon.com LLC." *Id.* And Mr. Holmes concedes elsewhere in his pleading that he purchased the Modified MBP from Amazon, **not** from Apple. *See id.* ¶ 33 ("following the purchase of the Defective Products through Defendant, Amazon, LLC's website"); *id.* at 3 ("Plaintiff, Tyrone Holmes, is and was an innocent purchaser of a laptop computer . . . made and sold by Apple . . . to Amazon . . . which then sold it to plaintiff.").

Second, Mr. Holmes does not attach to the complaint any alleged contract with Apple or allege facts outlining the terms of such a contract, including the terms of or basis for any express warranty. Nor does Mr. Holmes identify any specific written or oral communication between him and Apple concerning the Modified MBP prior to his purchase thereof.  Although the complaint vaguely hints at Apple's "representations" to Mr. Holmes (*see, e.g.*, *id.* ¶ 23), it includes no specific allegation that such representations were part of any contract. *See also infra*

9

**SA0293**

Section III.D (discussing absence of allegations demonstrating specific misrepresentations or omissions). His only allegations about the alleged contract and express warranty are:

- "On or about June 22, 2016, Defendants, APPLE, INC. and AMAZON.COM, LLC, contracted to provide Plaintiff, for valuable consideration, a suitable brand new Apple MacBook Pro MJLQ2LL/A 15-inch Laptop, free from defects, and to deliver said Laptop to the Plaintiff's residence." Compl. ¶ 74.

- "Defendants, APPLE INC and AMAZON.COM, LLC, warranted and represented the Plaintiff, that among other things, the Defective Products were brand-new, that said Defective Products were free from any and all spy software capable of tracking Plaintiff's activities, and had good and marketable title to the Defective Products." *Id.* ¶ 81.

But the Court need not accept as true Mr. Holmes's conclusory allegations when they are contradicted by evidence made part of the complaint, including, for example, Mr. Holmes's order and shipping receipt for the Modified MBP. *See Sazerac Co. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y.1994) (citing *Feick v. Fleener*, 653 F.2d 69, 75 & n.4 (2d Cir. 1981)).

The complaint does refer to Mr. Holmes's purchase of an APP (*see* Compl. ¶¶ 21-22) and thereby incorporates by reference the terms of the applicable APP for Mac agreement, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."). But Mr. Holmes does not allege any breach of any APP agreement between him and Apple. Nor could he. First, no breach is possible here: the applicable APP agreement does not cover issues arising from third-party software such as the Kaseya software that CheckPoint added to the Modified MBP. *See id.* ¶ 9, Ex. D ("The Plan does not include

10
**SA0294**

Technical Support for third-party products or their effects on or interactions with the Covered

Equipment, the OS or Consumer Software."). The plain language of the APP, therefore, supports

judgment under Rule 12(c).

Second, Mr. Holmes's wife, Ms. Scott, formed the contract with Apple concerning the

Modified MBP that is reflected in the APP agreement, not Mr. Holmes.[3] *See* O'Neil Decl. ¶ 9,

Ex. C. And third, Ms. Scott never transferred or otherwise assigned her rights and obligations

under the APP agreement to Mr. Holmes.[4] *See id.* ¶ 10. Although Mr. Holmes has entered into

APP agreements with Apple for other Apple products (including an APP for Apple Watch and an

APP for iPad), Mr. Holmes has never registered an APP for the Modified MBP and thus never

entered into an APP agreement—or any contract—with Apple concerning the Modified MBP.

*See id.* ¶ 12.

Accordingly, in the absence of a contract covering the alleged "defects," judgment must

be granted in Apple's favor as to these claims. *See Salzman v. Prudential Sec., Inc.*, No. 91 Civ.

4253(KTD), 1994 WL 191855, at *8 (S.D.N.Y. May 16, 1994) (dismissing breach of contract

---

[3] Mr. Holmes's assertion in his January 5, 2018 letter to the Court (Dkt. 81) that he had "attached a few call-ins to AppleCare™ while in possession of [the Modified MBP]" is not reflected in Apple's records of calls to AppleCare customer support relating to the Modified MBP. First, Mr. Holmes's July 28, 2016 call to Apple Support (Case 1182679576) (Dkt. 81 at 3) concerned a software issue with his 27-inch iMac, not the Modified MBP. O'Neil Decl. ¶ 14, Ex. F. The call took place after Mr. Holmes transferred possession of the Modified MBP to Ms. Scott and well before the NYPD contacted Mr. Holmes. Second, Mr. Holmes's July 6, 2016 call to AppleCare Support (Case 1167928921) (Dkt. 81 at 4) concerned a software issue with Apple's Final Cut software, not the Modified MBP. O'Neil Decl. ¶ 14, Ex. G. The email Mr. Holmes attached to his letter to the Court explicitly identifies Final Cut as the subject of the call.

[4] Mr. Holmes's assertion at the January 12, 2018 pre-motion conference that AppleCare follows the device to which it is registered fails to save Mr. Holmes's breach claims for at least two reasons. First, Mr. Holmes never alleges in his complaint that he took possession of the Modified MBP after he transferred that possession to Ms. Scott on June 23, 2016. To the contrary, Mr. Holmes alleges that the Modified MBP remained in the possession of Ms. Scott until such time that the NYPD took possession of the computer. *See* Compl. ¶¶ 38-65. Second, Ms. Scott never provided Apple with notice of any transfer and assignment of the APP agreement to Mr. Holmes (or any third party), as required by the terms of the APP agreement. O'Neil Decl. ¶¶ 9-10, Ex. D at 9.

claim because there was "no specific allegation that the[] [allegedly actionable] representations were part of a contract"); *Mastrangelo*, 903 F. Supp. at 444.

**B.**    **Third Cause of Action (Breach of Implied Warranty of Merchantability), Fourth Cause of Action (Negligence), and Fifth Cause of Action (Strict Liability): The Undisputed Facts Demonstrate Third Parties Undertook the Alleged Computer Sale, Software Installation, Tracking, and Communication with the NYPD That Proximately Caused Mr. Holmes's Alleged Injuries**

All of Mr. Holmes's alleged injuries resulted from third-party activity proximately caused by Amazon, CheckPoint, and/or FedEx Corporation, not from any manufacturing defect or retail act attributable to Apple. Apple did not sell the Modified MBP to Mr. Holmes, Amazon did. Nor did Apple take part in the installation of the Kaseya software on the Modified MBP, any monitoring of the Kaseya software, or any communication with the NYPD concerning the Modified MBP—CheckPoint (and/or FedEx) undertook those actions. Thus, Mr. Holmes's third cause of action for breach of the implied warranty of merchantability, fourth cause of action for negligence, and fifth cause of action for strict liability against Apple fail.

1.    Each Cause of Action Requires Conduct Attributable to Apple Rather Than a Third Party

The New York Uniform Commercial Code provides: "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." U.C.C. § 2-314(1). A claim for breach of the implied warranty of merchantability cannot stand against a defendant where the alleged "lack of fitness was not attributable to a manufacturing or retail defect" but instead results from conduct by a third party. *Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 215 (E.D.N.Y. 2004) (quoting *Elsroth v. Johnson & Johnson*, 700 F. Supp. 151, 160 (S.D.N.Y. 1988)).

Likewise, in products liability cases, causation is key to claims for negligence or strict liability: a manufacturer will not be held liable for either negligence or strict liability "where,

after the product leaves possession and control of the manufacturer, there is a subsequent

modification which substantially alters the product and is the proximate cause of plaintiff's

injuries." *Robinson v. Reed-Prentice Div. of Package Mach. Co.*, 49 N.Y.2d 471, 475 (1980);

*Fagan*, 356 F. Supp. 2d at 206 (dismissing negligence and strict liability claims under the

substantial alteration doctrine). To prevail on a negligence claim under New York law, a plaintiff

must establish that (1) the defendant owed plaintiff a duty of care; (2) the defendant breached

that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injuries.

*Johnson v. Bryco Arms*, 304 F. Supp. 2d 383, 394 (E.D.N.Y. 2004). Strict liability under New

York law requires that plaintiff show:

> (1) the product is "defective" because it is not reasonably safe as marketed; (2) the
> product was used for a normal purpose; (3) the defect was a substantial factor in
> causing the plaintiff's injuries; (4) the plaintiff by the exercise of reasonable care
> would not have both discovered the defect and apprehended its danger; (5) the
> plaintiff would not have otherwise avoided the injury by the exercise of ordinary
> care.

*Fane v. Zimmer, Inc.*, 927 F.2d 124, 128 (2d Cir. 1991) (quoting *Wolfgruber v. Upjohn Co.*, 423

N.Y.S.2d 95, 97 (1979), *aff'd*, 52 N.Y.2d 768 (1980)). Focusing on the causation element of both

claims, "[c]ourts have not hesitated in granting summary judgment in favor of a defendant

manufacturer where, once in the hands of the purchaser, the product which caused the injury was

modified in a way that substantially altered the product and was the proximate cause of the

plaintiff's injuries." *Kromer v. Beazer E., Inc.*, 826 F. Supp. 78, 80 (W.D.N.Y. 1993).

In *Robinson*, for example, the plaintiff sued the manufacturer of a plastic molding

machine for strict liability and negligence, asserting that the design and manufacture of the

machine had caused the plaintiff physical injuries when his hand became caught in the machine.

49 N.Y.2d at 476. The court of appeals held that the manufacturer defendant could not be held

liable because the machine was not defective at the time the manufacturer sold it to plaintiff's

employer. *Id.* at 479. There, the perceived defect arose from the plaintiff's employer's

modification of a safety feature of the machine after receiving the machine from the

manufacturer. *Id.* at 479-80. The *Robinson* court went on to explain: "A manufacturer need not

. . . trace his product through every link in the chain of distribution to insure that users will not

adapt the product to suit their own unique purposes. The duty of a manufacturer, therefore, is not

an open-ended one." *Id.* at 481.

*Fagan* is similarly instructive: there, the plaintiff sought to hold a number of defendants

in the manufacture and distribution chain liable for the plaintiff's receipt of counterfeit

pharmaceuticals. *Fagan*, 356 F. Supp. 2d at 204. The court dismissed the plaintiff's implied

warranty claim as to the manufacturer defendant because (i) there was no evidence presented that

the defendant played any role in the misbranding or alteration of any products and (ii) it was

undisputed that the misbranding or counterfeiting was the result of tampering by a third party

after it left the defendant's possession. *Id.* at 215.

      2.    <u>CheckPoint, FedEx, and Amazon Undertook the Actions Resulting in<br>Mr. Holmes's Alleged Injuries, Not Apple</u>

Here, by Mr. Holmes's admission, the purported lack of fitness of the Modified MBP that

Mr. Holmes alleges resulted from CheckPoint's prior ownership and substantial alteration to the

Modified MBP and was "not attributable to a manufacturing or retail defect" by Apple. *Fagan*,

356 F. Supp. 2d at 215; *Robinson*, 49 N.Y.2d at 479. Mr. Holmes alleges "[t]he Defective

Products were defective in that they improperly contained spy software capable of tracking all of

Plaintiff's activities . . . ." Compl. ¶ 89. But, as in *Fagan* and *Robinson*, it is undisputed that a

third party (CheckPoint) installed the software causing the alleged defect and injury to

Mr. Holmes and that such installation occurred well after the Modified MBP left Apple's

possession—after Apple sold and delivered the computer to Amazon ***and*** after Amazon sold and

delivered the computer to CheckPoint. *See Fagan*, 356 F. Supp. 2d at 215; *Robinson*, 49 N.Y.2d at 475. Mr. Holmes acknowledges in his pleading that CheckPoint, and ***not*** Apple, installed the Kaseya software on the Modified MBP. Compl. ¶ 76 (alleging that Apple and Amazon delivered the Modified MBP "in a defective manner, such that the supposedly brand new computer contained sensitive spy software, ***installed by Defendant, CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD.***"). This undisputed fact alone supports judgment under Rule 12(c).

Moreover, evidence beyond the pleadings demonstrates that CheckPoint's undisputed installation of the Kaseya software on the Modified MBP after the computer left Apple's possession and control contradicts Mr. Holmes's allegations that Apple (i) acted negligently by providing Mr. Holmes a computer containing "spy software capable of tracking Plaintiff's activities" and one lacking "good and marketable title" (Compl. ¶ 93), and (ii) should be held liable for strict liability because Mr. Holmes was sold a computer that reached him "without substantial change in the condition in which [it was] sold" (*id.* ¶ 100). *E.g.*, Holmes Affidavit ¶ 15 ("All of the software that was loaded into the machine was done by defendant [CheckPoint], and was defendant's design for the computer."); CheckPoint Timeline Affidavit at 1 ("MBP configured with standard software suite, including Kaseya Agent."). First, any question as to ownership of the computer arose after Apple's possession and control of the computer—Apple shipped the Modified MBP to Amazon on May 19, 2016 in response to a May 10, 2016 purchase order submitted by Amazon to Apple (*see* O'Neil Decl. ¶ 4, Ex. A); CheckPoint purchased the Modified MBP from Amazon on June 2, 2016 (*see* CheckPoint Timeline Affidavit at 1); and Mr. Holmes purports to have purchased the Modified MBP from Amazon on June 22, 2016 (*see* Compl. ¶ 21). Second, the installation of the Kaseya software constitutes a substantial alteration

to the computer that Apple originally manufactured, installed with non-Kaseya software, and sold to Amazon. *Robinson*, 49 N.Y.2d at 475; *see* O'Neil Decl. ¶ 4.

        3.   <u>No Privity Exists for Purposes of Mr. Holmes's Implied Warranty Claim</u>

Apple did not sell Mr. Holmes the Modified MBP, Amazon did. Compl. at 25. Accordingly, Apple is not an actionable seller for purposes of the statutory warranty that forms the basis of Mr. Holmes's breach of implied warranty claim. *See Carcone v. Gordon Heating & Air Conditioning Co.*, 623 N.Y.S.2d 679, 680 (1995) (finding summary judgment appropriate on breach of implied warranty claim where "there is no privity between the parties and plaintiffs' action does not arise out of personal injury"); U.C.C. §§ 2-314(1), 2-318.[5] That claim thus fails for lack of privity.

                                       * * * *

Because it is undisputed that (1) Apple neither sold Mr. Holmes the Modified MBP nor installed the Kaseya software on the Modified MBP and (2) the only defects Mr. Holmes alleges arise from substantial alteration of the Modified MBP occurring after Apple sold and delivered the computer to Amazon, judgment in Apple's favor is appropriate on Mr. Holmes's breach of implied warranty claim, negligence claim, and strict liability claim. *See Fagan*, 356 F. Supp. 2d at 215; *Robinson*, 49 N.Y.2d at 481; *Kromer*, 826 F. Supp. at 80 (granting summary judgment on strict liability and negligence claims where the disabling of a safety feature of a product was found to be a substantial alteration "as a matter of law").

---

[5] While New York courts recognize an exception to the privity requirement in personal injury cases, this is not such a case. Mr. Holmes's allegations of "extreme stress and emotional trauma" (Compl. at 4) cannot transform this case from a contract case to a personal injury claim. *Carcone* rejected similar allegations of "extreme emotional and mental trauma" as insufficient to "establish a valid cause of action for personal injury in what is essentially a contract action." 623 N.Y.S.2d at 680.

C.     **Sixth Cause of Action (Fraudulent Concealment): The Complaint Does Not and Cannot Allege Facts Concerning Apple's Purported Concealment or Knowledge of CheckPoint's Installation of the Kaseya Software**

Mr. Holmes's conclusory allegations of fraudulent concealment fail to satisfy the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure and are demonstrably false given Mr. Holmes's admissions regarding CheckPoint's dealings with the Modified MBP.

To establish a fraudulent concealment claim under New York law, a plaintiff must establish that "the defendant knowingly misrepresented or concealed a material fact for the purpose of inducing another party to rely upon it, and that the other party justifiably relied upon such misrepresentation or concealment to his or her own detriment." *Schwatka v. Super Millwork, Inc.*, 965 N.Y.S.2d 547, 550 (2013). The plaintiff must also establish that the defendant had "a duty to disclose material information and that it failed to do so." *Id.* A fraudulent concealment claim must be dismissed where the complaint lacks factual details demonstrating the defendant's knowledge and concealment, especially under the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Id.* at 550-51 (dismissing fraudulent concealment claim because complaint was "devoid of any factual details regarding the manner in which the defendants knowingly concealed their alleged knowledge of the defects"); *see also Rafter v. Liddle*, 704 F. Supp. 2d 370, 377-78 (S.D.N.Y. 2010) (dismissing without leave to amend *pro se* complaint invoking fraudulent concealment where plaintiff's allegations were "general, conclusory, and unsupported by factual underpinnings").

Mr. Holmes's fraudulent concealment claim fails because Mr. Holmes does not allege factual details demonstrating Apple's concealment of any fact nor Apple's knowledge of CheckPoint's installation of the Kaseya software prior to Mr. Holmes's receipt of the Modified MBP. Mr. Holmes alleges that Apple:

17

- "had full knowledge of the defects in the Defective Products sold to plaintiff,"

- "failed to notify plaintiff of the defects in the Defective Products it sold to Plaintiff,"

- "had a duty to supply plaintiff with fair, objective information regarding the Defective Products,"

- "had undertaken active measures to conceal the defective nature of the Defective Products," and

- "had taken active measures to conceal the plaintiff's claims . . . including, but not necessarily limited to, having the New York Police Department confiscate the Defective Products from plaintiff.

Compl. ¶¶ 106-11. Nowhere in these conclusory allegations does Mr. Holmes allege with any particularity what the allegedly concealed "defects" are, how Apple came to possess knowledge of those "defects," or what Apple did to conceal the "defects" from Mr. Holmes. Mr. Holmes's allegations are simply speculative restatements of the elements of a fraudulent concealment claim and, as such, cannot support the claim. *See Schwatka*, 965 N.Y.S.2d at 550-51. Judgment is therefore appropriate under Rule 12(c).

Tellingly, the only specific concealment Mr. Holmes mentions in the complaint is that the NYPD repossessed the Modified MBP from Mr. Holmes and his wife such that Mr. Holmes could not uncover or investigate the alleged "defects." Compl. ¶ 111. But, elsewhere in the complaint, Mr. Holmes acknowledges Apple's lack of involvement with the NYPD or the repossession efforts. *See* Compl. at 3 ("1. The company [CheckPoint] used the surveillance software to track Tyrone Holmes, in New York City; 2. the company reported the plaintiff's operation of the computer as a theft to the NYPD; 3. NYPD aggressively and zealously hunted down the plaintiff . . . ."); *id.* ¶ 44 ("The letter informed Plaintiff's counsel that [CheckPoint's]

security department had tracked the subject device since leaving its facility and has ascertained information proving that Plaintiff was in possession of its equipment."); *id.* ¶ 46 ("The correspondence indicated that as a further condition, Defendant, CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD., required that the matter only be resolved through Detective Caballero of the NYPD . . . ."). CheckPoint's filings likewise acknowledge Apple's lack of involvement. *E.g.*, Dkt. 50 ("Second CheckPoint Timeline Affidavit") at 2 (noting that FedEx filed the theft report with Kenner Police Department and that CheckPoint was in direct contact with the NYPD).

Moreover, each of Mr. Holmes's allegations is demonstrably false in light of Mr. Holmes's and CheckPoint's admissions in later court submissions. Apple's lack of involvement after delivery of the Modified MBP to Amazon on May 25, 2016 is uncontested, even if the subsequent acts of Amazon and CheckPoint provide some uncertainty as to how the Modified MBP ultimately reached Mr. Holmes. Amazon, not Apple, sold the computer to CheckPoint. CheckPoint Timeline Affidavit at 1. And CheckPoint installed the Kaseya software on the Modified MBP; the software was not on the computer at the time Apple sold and shipped the computer to Amazon. Compl. ¶ 76; CheckPoint Timeline Affidavit at 1; Holmes Affidavit ¶¶ 3, 10, 15; O'Neil Decl. ¶ 4. At no time after CheckPoint possessed and modified the computer has Mr. Holmes alleged (or could Mr. Holmes allege) that Apple took possession of the Modified MBP or became involved in any resale of the computer. Apple therefore had no opportunity to acquire knowledge of any alleged defect, whether that be installation of the Kaseya software or the alleged resale of the Modified MBP as "new." Absent such knowledge, Apple took no steps (and could have taken no steps) to conceal any defect.

For these reasons, the Court should dismiss Mr. Holmes's fraudulent concealment claim.

> **D.** **Seventh Cause of Action (Fraud in the Inducement and Misrepresentation): Mr. Holmes Cannot Identify Any Specific Misrepresentation or Omission**

Mr. Holmes's seventh claim for fraud also fails under Rule 9(b)'s stringent pleading standard: Mr. Holmes identifies no specific misrepresentation or omission by Apple about whether the Modified MBP was used or new, nor any facts establishing Apple's knowledge of any alleged defect arising after the Modified MBP left Apple's possession and control.

To recover for fraud under New York law, a plaintiff must prove "(1) a misrepresentation or omission of material fact which was false and known to be false by the defendant, (2) the misrepresentation was made for the purpose of inducing plaintiff to rely upon it, (3) justifiable reliance of the plaintiff on the misrepresentation or material omission, and (4) injury." *Vitolo v. Mentor H/S, Inc.*, 426 F. Supp. 2d 28, 36 (E.D.N.Y. 2006), *aff'd*, 213 F. App'x 16 (2d Cir. 2007). Allegations that a plaintiff contracted to purchase a product without identification of a specific misrepresentation or omission cannot support a fraud claim or transform a breach of contract claim into something more. Fed. R. Civ. P. 9(b); *Pacs Indus. v. Cutler-Hammer, Inc.*, 103 F. Supp. 2d 570, 572-73 (E.D.N.Y. 2000) (granting judgment on the pleadings dismissing fraud claim where plaintiff had only alleged purchase of defendant's product); *Bertini v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 246, 259 (E.D.N.Y. 2014) (dismissing fraud claim where plaintiffs only identified one specific statement by defendant and failed to allege that plaintiffs had read that specific statement).

Here, Mr. Holmes cannot establish his fraud claim for a number of reasons. First, and most fundamentally, Mr. Holmes identifies no specific misrepresentation or omission. Mr. Holmes's complaint contains only vague, conclusory allegations referencing "the above representations of past and/or existing facts made to plaintiff." Compl. ¶ 116. Rule 9(b) demands far more. Fed. R. Civ. P. 9(b); *Bertini*, 8 F. Supp. 3d at 259 (explaining that under Rule 9(b) "[a]

20

**SA0304**

plaintiff bringing a fraud claim must allege 'the time, place, speaker, and sometimes even the content of the alleged misrepresentation'"). Reading this allegation liberally as a reference to Mr. Holmes's earlier statement that Apple "made various representations to the Plaintiff concerning the Defective Products" still could not support the claim because Mr. Holmes does not allege with specificity where Apple made those representations. *See* Compl. ¶ 23. Indeed, Mr. Holmes alleges Apple "distributed advertising and/or marketing materials, designed to attract the Plaintiff to purchase the Defective Products," (*id.* ¶ 26), but does not allege that these advertising or marketing materials contained any of the above-referenced representations. Nor does Mr. Holmes identify a specific advertisement or marketing material containing any representation upon which he detrimentally relied. Second, Mr. Holmes purchased the computer from Amazon. Compl. at 25. Any representation regarding the computer being "new" originated from Amazon, ***not*** Apple. *See id.* Both of these first two reasons support judgment under Rule 12(c). And third, as addressed fully in Section III.C above, Apple possessed no knowledge of CheckPoint's installation of the Kaseya software on the Modified MBP and therefore could make no knowing misrepresentation regarding the existence of or absence of the software on the Modified MBP.

The Court should dismiss Mr. Holmes's fraud claim and grant judgment in Apple's favor. *See Pacs Indus.*, 103 F. Supp. 2d at 572-73.

### E.    Eighth Cause of Action (False Advertising and Unfair Business Practice): Any Alleged Misconduct Is Specific to Mr. Holmes and Lacks Any Actionable Broad Impact on Consumers

Finally, this case presents what Mr. Holmes himself has alleged to be a "bizarre fact pattern," not generalized behavior affecting the public at large. Compl. at 4. For this reason, Mr. Holmes's claim under New York General Business Law § 349 *et seq.* also falls short. To succeed under § 349, a plaintiff must establish that the defendant "has engaged in (1) consumer-

oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). Establishing "consumer-oriented conduct" requires that defendant's conduct "have a broad impact on consumers at large." *Occidental Chem. Corp. v. OHM Remediation Servs. Corp.*, 173 F.R.D. 74, 77 (W.D.N.Y. 1997). "The plaintiff must therefore plead and prove injury to the public generally, not just to himself." *Id.* (denying motion to amend to plead § 349 claim where plaintiff had not alleged and could not show injury to consumers or the public interest); *Oboler v. Ins. Co. of N. Am.*, No. 91 Civ. 2808 (SWK), 1994 WL 414438, at *4 (S.D.N.Y. Aug. 5, 1994) (dismissing § 349 claim where plaintiff "failed to include any evidence of the existence of a . . . policy designed to deceive the public at large" other than "some conclusory statements that [defendant] is guilty of deceptive business practices").

Here, Mr. Holmes alleges no injury to the public sufficient to invoke § 349.

Mr. Holmes's § 349 allegations comprise one paragraph:

> Defendants, APPLE, INC. and AMAZON.COM, LLC, violated NY General Business Law §§ 349 et seq., by, among other things, disseminating advertisements which contained materially untrue, deceptive and/or misleading misrepresentations, and by engaging in practices which were designed and/or had the capacity to deceive ***the plaintiff***, regarding the characteristics of Defendants electronics, computers, and related products.

Compl. ¶ 121 (emphasis added). Mr. Holmes makes no mention of other consumers or the public interest at large. ***Nor could he***: the events alleged in Mr. Holmes's complaint are not alleged to be the experience of an average consumer of Apple products. Rather these facts are—as Mr. Holmes himself concedes—"bizarre." *Id.* at 4.

Nor can Mr. Holmes allege or demonstrate the type of materially misleading conduct by Apple necessary to support his § 349 claim. As discussed in Section III.D above, Apple had no role in CheckPoint's installation of the Kaseya software and had no role in any representations

made by Amazon to Mr. Holmes at the time of his purchase of the computer believed to be the Modified MBP.

Accordingly, the Court must dismiss Mr. Holmes's § 349 claim and grant judgment in Apple's favor. *See Occidental Chem. Corp.*, 173 F.R.D. at 77; *Oboler*, 1994 WL 414438, at *4.

## IV.   CONCLUSION

For the reasons set forth above, Apple respectfully requests that the Court grant judgment on the pleadings in Apple's favor on all of Mr. Holmes's asserted claims. In the alternative, and to the extent necessary, Apple requests that the Court treat Apple's motion as one for summary judgment and grant Apple summary judgment on each of Mr. Holmes's claims.

Date:   February 12, 2018
       New York, New York

Respectfully submitted,

O'MELVENY & MYERS LLP

By:  */s/ Hannah Y. Chanoine*

Edward N. Moss
Hannah Y. Chanoine
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
hchanoine@omm.com
emoss@omm.com

David R. Eberhart
(*pro hac vice*)
Jesse J. Koehler
(*pro hac vice*)
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone:  (415) 984-8700
Facsimile:  (415) 984-8701
deberhart@omm.com
jkoehler@omm.com

*Attorneys for Defendant Apple Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------- x

TYRONE HOLMES,                                                :
                                                             :      Case No. 17-cv-4557 (ER) (KNF)
                                     Plaintiff,              :
                                                             :
                  - against -                               :
                                                             :
APPLE, INC., AMAZON.COM, LLC, and                            :
CHECKPOINT FLUIDIC SYSTEMS                                    :
INTERNATIONAL, LTD.,                                          :
                                                             :
                                     Defendants.             :
------------------------------------------------------------- x

## LOCAL RULE 56.1 STATEMENT

Defendant Amazon.com, LLC ("Amazon") hereby submits its Rule 56.1 Statement

identifying material facts as to which there is no genuine issue to be tried:

**The CheckPoint Laptop and the New Laptop**

1.      Co-defendant CheckPoint Fluidic Systems International, Ltd. ("CheckPoint")

purchased a 15-inch Macbook Pro (the "CheckPoint Laptop) from Amazon on June 2, 2016.

(Affidavit of Ruston Mahoney ("Mahoney Affidavit"), page 1 of 5, Exhibit A.)

2.      The CheckPoint Laptop was among a batch of new Mackbook Pro computers that

Amazon sourced directly from the manufacturer, Apple.  (Jensen Decl., ¶ 10.)

3.      The CheckPoint Laptop was packaged for delivery from Amazon's fulfillment

center in Breinigsville, Pennsylvania and delivered to CheckPoint on or around June 7, 2016.

(Jensen Decl., ¶ 11, Mahoney Affidavit, Exhibit A.)

4.      Upon receipt, CheckPoint's Information Technology Officer Ruston Mahoney

("Mr. Mahoney") designated the name of the CheckPoint Laptop as "Ewens-MBP.home,"

attached a sticker with a bar code indicating that it was the "Property of CheckPoint Pumps" to

the bottom of the CheckPoint Laptop, and installed, among other things, "Kaseya" tracking software on the CheckPoint Laptop.  (Mahoney Affidavit, page 2 of 5, Exhibit B.)

5.      CheckPoint then tendered the CheckPoint Laptop to FedEx for delivery to Dubai, UAE.  (*Id.*, page 2 of 5, Exhibit C.)

6.      The device subsequently became lost in transit.  Mr. Mahoney filed a report reflecting that fact with FedEx on June 15, 2016.  (*Id.*, page 3 of 5.)

7.      On June 22, 2016, Plaintiff purchased a 15-inch Macbook Pro (the "New Laptop") from Amazon.  (Compl. ¶ 21.)

8.      The New Laptop was among a batch of new Macbook Pro computers that Amazon sourced directly from the manufacturer, co-defendant Apple.  (Jensen Decl., ¶ 7.)

9.      The New Laptop was packaged for delivery to Plaintiff from its fulfillment center in Lewisberry, Pennsylvania.  (*Id.*, ¶ 8.)

10.     Plaintiff provided his signature as acknowledgment of delivery of the New Laptop to his home at 9:35 AM on June 23, 2016.  (*Id.*, ¶ 9, Exhibit F.)

11.     When Plaintiff received it, the New Laptop was shrink-wrapped and in new condition.  (Transcript of September 14, 2017 Court Conference ("9.14.17 Tr."), at 3:19-3:22 (Goettig Decl., Exhibit D).)

12.     Plaintiff also confirmed that "The computer [Plaintiff] had did not have a sticker on it…. There was no sticker on the bottom of the computer [Plaintiff] had from Apple." (Transcript of January 12, 2018 Court Conference ("1.12.18 Tr."), at 5:13, 17-18 (Goettig Decl. Exhibit E); see also 9.14.17 Tr., at 8-9.)

13.     Shortly after receiving the New Laptop, Plaintiff gave it to his estranged wife, Ms. Stephanie Scott.  (9.14.17 Tr., at 5:9-16.)

14.     At 6:30 PM on June 23, 2016, Mr. Mahoney learned through the Kaseya software

that Ms. Scott had created a user profile in her own name on the CheckPoint Laptop and was, at

that moment, using the device.  (Mahoney Affidavit, page 3 of 5, Exhibit E.)

15.     He subsequently provided additional information about Ms. Scott and the location

of the CheckPoint Laptop obtained from the Kaseya software to Mr. Kenneth Meyer, a loss

prevention specialist with FedEx.  (Mahoney Affidavit, page 4 of 5, Exhibit F.)

16.     Mr. Meyer, in turn, filed a police report with the Kenner, Louisiana, police

department on August 2, 2016.  The police report identified Ms. Scott as "the person in

possession of the computer."  *Id.*

**The NYPD's Recovery of the CheckPoint Laptop from Ms. Scott**

17.     On or around August 16, 2016, the Kenner, Louisiana, Police Department

contacted the New York Police Department for its assistance in recovering the CheckPoint

Laptop.  (Mahoney Affidavit, page 4 of 5.)

18.     On or around September 8, 2016, Detective Caballero visited Plaintiff's residence

in an attempt to recover the CheckPoint Laptop.  (Compl., ¶¶ 34-35.)

19.     On or around September 10, 2016, "Plaintiff informed Detective Caballero that he

was not in possession of the computer because he had given it to his estranged wife, whose

whereabouts were unknown to him."  (Compl. ¶ 38.)

20.     On September 13, 2016, Plaintiff's counsel sent a letter to CheckPoint stating –

erroneously – that Plaintiff had purchased the CheckPoint Laptop from the Apple Store located

at 1981 Broadway on the Upper West Side of Manhattan.  (Affidavit of Andrew C. Elliott

("Elliott Affidavit"), page 3, Exhibit C.)

21.     In support of this claim, Plaintiff's counsel submitted a cashier's receipt reflecting

the purchase of a Macbook from the Apple Store on the Upper West Side on June 5, 2016.  *Id.*

22.     The CheckPoint Laptop is a 15-inch Macbook Pro, but the computer that Plaintiff purchased on June 5, 2016 was a 13-inch Macbook Air.  (*Id.*; *see also* Exhibit B.)

23.     By Plaintiff's own estimate, he has owned more than 234 Macintosh computers. (Docket #82.)

24.     The individuals who communicated with Ms. Scott directly concerning the CheckPoint Laptop were Ms. Scott's sister (Compl. ¶¶ 58-59), Plaintiff's counsel, and members of the NYPD (*Id.*, at ¶¶ 61-62).

25.     Plaintiff was not at the storage facility at the time the CheckPoint Laptop was recovered on October 3, 2016, and he did not have an opportunity to inspect the CheckPoint Laptop before it was returned to CheckPoint.  (1.12.18 Tr., at 5:21-25.)

26.     The CheckPoint Laptop was returned to CheckPoint on October 17, 2016.  Mr. Mahony conducted a visual inspection of the CheckPoint Laptop upon its return and confirmed that the sticker indicating that it was "Property of CheckPoint Pumps" was still affixed to the bottom of the device.  (Mahony Aff., p. 4 of 5, Exhibits G-H.)

27.     Plaintiff recently acknowledged that he may have been mistaken about the provenance of the CheckPoint Laptop, and that it is possible that the CheckPoint Laptop was not the New Laptop that was delivered to his home on June 23, 2016.  (Docket #81)

February 12, 2018

DAVIS WRIGHT TREMAINE LLP


By:   /s/Michael J. Goettig
         Michael J. Goettig
         1251 Avenue of the Americas, 21st Floor
         New York, New York 10021
         (212) 489-8230
         *Attorneys for Defendant*
         *Amazon.com, LLC*

4

Case 22-1745, Document 105, 03/02/2023, 3477331, Page40 of 228

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
TYRONE HOLMES,                                                    No. 17-cv-4557-ER

                           Plaintiff,

    - against -

APPLE INC.,
AMAZON.COM, LLC, and
CHECKPOINT FLUIDIC SYSTEMS
INTERNATIONAL, LTD.,
                              Defendants.
-------------------------------------------------------------------X



### MEMORANDUM OF LAW IN OPPOSITION TO
### DEFENDANTS' MOTIONS FOR JUDGMENT

### INTRODUCTION

      Two defendants have moved for judgment under various procedural rules,

including dismissal for failure to state a claim or summary judgment, as a matter of law.

      However, the fact pattern is not free and clear of doubt such that judgment should

be entered. It is early in the case, and nobody knows with certainty exactly what

happened. It is important to comply with the standard procedure for civil cases and go

through complete and thorough discovery to find out what definitely happened, from

competent witnesses, with supporting exhibits. Furthermore, the posturing, motion

practice and stonewalling that we have seen so far is just obnoxious finger-pointing from

corporate defendants who are blaming each other for significant and harmful breaches of

duty and wrongful conduct, and let's not forget they **all** defaulted.

      Causes of action still apply, and there are theories of liability that apply to both

Apple and Amazon. Given the standard for review in these motion in a light favorable to

myself, the plaintiff, given Apple's role as a manufacturer of a defective product and the

Case 22-1745, Document 105, 03/02/2023, 3477331, Page41 of 228

care giver for an extended service/warranty plan, and given Amazon's role as a seller of a

defective computer that caused me to be hunted down and accused of crimes, no

defendant is entitled to judgment as a matter of law, and all motions must be dismissed.


## STANDARD OF REVIEW


### Entry of Judgment, Rule 68

"In Tanasi v. New Alliance Bank, 786 F.3d 195 (2d Cir. 2015), cert. denied, 136

S. Ct. 979, 194 L. Ed. 2d 3 (2016), the Second Circuit offered more analysis of the issue.

There, the court clarified that 'it remains the established law of [the Second Circuit] that a

rejected settlement offer under Rule 68, by itself, cannot render moot a case.' Id. at 200

(alterations and internal quotation marks omitted)). 'If the parties agree that a judgment

should be entered against the defendant, then the district court should enter such a

judgment. Then, after judgment is entered, the plaintiff's individual claims will become

moot for purposes of Article III.' Id. (citation omitted). However, '[a]bsent such

agreement,' a 'district court should not enter judgment against the defendant if it does not

provide complete relief.' Id." *Bais Yaakov of Spring Valley v. Educ. Testing Serv.*, 251 F.

Supp. 3d 724, 730, LEXIS 70318, *12, 97 Fed. R. Serv. 3d (Callaghan) 891, 66 Comm.

Reg. (P & F) 1062, 2017 WL 1906890 (S.D.N.Y. 2017).

### Dismissal

In deciding a motion to dismiss, the Court must accept all well-pleaded facts as

true. The court must make all reasonable inferences in favor of plaintiff. "'To survive a

motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts,

Case 22-1745, Document 105, 03/02/2023, 3477331, Page42 of 228

taken as true, to state a plausible claim for relief.' Johnson v. Priceline.com, Inc., 711

F.3d 271, 275 (2d Cir. 2013). 'We review de novo a dismissal for failure to state a claim,

accepting as true all material factual allegations in the complaint and drawing all

reasonable references in plaintiffs' favor,' but '[t]he same deference does not extend . . .

to pleaded legal conclusions.' Id." *Panzella v. City of Newburgh*, 2017 U.S. App. LEXIS

24593, *1-2, 2017 WL 6029550 (2nd Cir. 2017).

## Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure justifies denial of a motion for

summary judgment if there is an issue of material fact. The rule provides that "the

judgment sought shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." F.R.C.P. No. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247-8 (1986).

Evidence must be viewed in a light most favorable to the responding party. All

inferences must be drawn in favor of the responding party. Facts must be construed in

favor of the non-moving party. *Pilgrim v. Luther*, 07-1950-pr (2d Cir, July 6, 2009);

*Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 107 (2d Cir. 2008). Factual

ambiguities must be resolved in favor of the non-moving party. *Cioffi v. Averill Park*

*Cent. Sch. Dist. Bd. of Ed.*, 444 F.3d 158, 162 (2nd Cir. 2006).

Summary judgment should not be entered when the case turns on oral testimony.

Evaluation of testimony and credibility must be left for the jury. "The parties have a right

to present oral testimony or other extrinsic evidence at trial to aid in interpreting its

Case 22-1745, Document 105, 03/02/2023, 3477331, Page43 of 228

ambiguous provisions. See Heyman v. Commerce and Industry Insurance Co., supra at 1320; Painton & Company v. Bourns, Inc., 442 F.2d 216, 233 (2d Cir. 1971)." *Schiess-Froriep Corp. v. S.S. Finnsailor*, 574 F.2d 123, 127-128, LEXIS 11779, *14 (2nd Cir. 1978).

Summary judgment is disfavored in negligence cases. *Hood v. Regency Maritime Corp.*, 2000 U.S. Dist. LEXIS 17298, No. 99 Civ. 10250, 2000 WL 1761000, at *2 (S.D.N.Y. Nov. 30, 2000).

Summary judgment is a drastic remedy that should be entered in only the clearest of cases. "("We have long recognized that summary judgment is a 'drastic device, since its prophylactic function, when exercised, cuts off a party's right to present his case to the jury.' Accordingly, the moving party bears a heavy burden of demonstrating the absence of any material issues of fact." (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975) (Kaufman, C.J.)))." *Am. Home Assur. Co. v. Zim Jam.,* 418 F. Supp. 2d 537, 542 LEXIS 8375, *14, 2006 AMC 1148 (S.D.N.Y. 2006).

**Judgment on Pleadings**

" '[i]n deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party,' Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999), unless the allegations are 'supported by mere conclusory statements,' Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)." *Hayden v. Paterson*, 594 F.3d 150, LEXIS 1887 (2nd Cir. 2010).

4

**SA0315**

Case 22-1745, Document 105, 03/02/2023, 3477331, Page44 of 228

# ARGUMENT

## I.     Motions of defendant, Amazon

There are serious issues of doubt regarding material facts. Defendant's recitation of facts is not clear, straight forward and doubt-free. The problem with defendant's statement is that it does not explain how I got a new computer, shrink-wrapped and with no sticker, and how my estranged wife got the laptop with Checkpoint surveillance software, etc. There are two computers described by defendant, Amazon, and the failure to explain specifically what happened creates doubt, precluding the entry of judgment.

What is especially troublesome and irregular is that both defendants are attempting to evade the system, and have an immediate judgment entered before discovery has even begun? There should be a complete production of records by defendants. There should be a complete detailed paper trail, so that all parties know the path that the computer, or computers, took. Plus, there should be depositions of competent employees from the defendants, rather than sketchy two or three page affidavits from clerical-type personnel, or the worthless affirmations from the attorneys, all of whom have an ax to grind.

Amazon is also mistaken as to what was said about two computers. There was a computer that I bought. There was a computer that Checkpoint bought. However, the act of buying does not equal the act of delivery, and on that distinction, Amazon's logic falls apart, and their defense collapses.

Therefore, defendant's statement of the premise of my case is mistaken. The premise is that I bought a new computer, and that I got a defective computer that caused

Case 22-1745, Document 105, 03/02/2023, 3477331, Page45 of 228

me serious harm.

Regarding defendant's total reliance on the "exclusive remedy" argument, the plain meaning of that phrase is that the return and reimburse remedy is the exclusive remedy *for a breach of contract claim.* However, it is not the exclusive remedy for serious torts and other wrongs committed by the moving party. Besides, I never agreed to a rebate or reimbursement being a remedy for something drastic. Who in their right mind would give up rights to money damages caused by the negligence of another, for the price of the cheap but defective product that caused the damage? Such harsh terms imposed by the seller amount to provisions that are against public policy. These extreme terms make the Amazon contract void as against public policy, and I wouldn't dare use the word that I think it is.

As I said in my pre-motion response, the statements of Amazon in which it limits its damages exposure and claims that it is not responsible for or liable for various types of damages are a void contractual provision (if it is even a contractual provision). Any such clause must be struck down and not honored by a court. Public policy prohibits contracts with such forbidden language. Also, for Amazon to attempt to run away from liability and insert these disclaimers and other damages-caps without giving something back to the customer on the front end means that there was inadequate consideration to honor such a one-way, self-serving disclaimer. Therefore, the Amazon disclaimer is non-binding.

On the negligence and product liability claims, defendant has stated the law wrongly. Washington does provide for tort remedies such as negligence and products liability. More importantly, so does New York, and given the fact that I am in New York,

6

Case 22-1745, Document 105, 03/02/2023, 3477331, Page46 of 228

the inference to be drawn (favorably to me) is that the contract to buy the computer was made in New York, and therefore, New York law applies.

On the negligence claim, a claim has been stated. Under the harsh scheme of Washington State, defendant still has exposure to tort liability, as a seller, for its own negligence. "Liability of product seller other than manufacturer—Exception.

(1) Except as provided in subsection (2) of this section, a product seller other than a manufacturer is liable to the claimant only if the claimant's harm was proximately caused by: (a) The negligence of such product seller; or (b) Breach of an express warranty made by such product seller; or (c) The intentional misrepresentation of facts about the product by such product seller or the intentional concealment of information about the product by such product seller." RCW 7.72.040.

It is well-known and widely reported that there is a massive breakdown in Amazon "fulfillment centers". Employees have complained about harsh conditions, and the inference to be drawn is that there is blue-collar sabotage occurring at these centers, or that the overworked employees are so exhausted and stressed that they are messing up and performing negligently on a large scale. The incompetence and mismanagement at the fulfillment site is directly related to defendant's negligence, and appears to be the cause in fact of my injuries. Washington law allows this type of case against their home-town favorite, Amazon, so it is impossible for my case to be dismissed, as a matter of law.

More importantly, New York allows my tort claims against defendant. "Consequently, a plaintiff who is not in privity with the seller of the product which is alleged to have caused his injury possesses a cause of action in negligence or strict

Case 22-1745, Document 105, 03/02/2023, 3477331, Page47 of 228

products liability as opposed to what has often been incorrectly labeled breach of warranty. In this regard, we have stated on a previous occasion: "Whatever may have been earlier doubt and confusion, the authorities are now in general agreement that strict products liability sounds in tort rather than in contract. 'It has been said over and over again that this warranty -- if that is the name for it -- is not the old sales warranty, it is not the warranty covered by the Uniform Sales Act or the Uniform Commercial Code. It is not a warranty of the seller to the buyer at all, but it is something separate and distinct which sounds in tort exclusively, and not at all in contract; which exists apart from any contract between the parties; and which makes for strict liability in tort.'" ( Victorson v Bock Laundry Mach. Co., 37 NY2d 395, 402, supra, quoting Prosser, Spectacular Change: Products Liability in General, 36 Cleveland Bar Assn J 167-168.)

The effect of the rule in the Victorson case (supra) and the analysis in this case is not to raise again the "citadel of privity". On the contrary, the rule announced in that case and the analysis in the present case manifests the flowering in New York of the doctrine of strict products liability making unnecessary the distortions previously required to permit injured plaintiffs to recover from those who put defective products into the stream of commerce. The doctrine was presaged long before the Victorson case. (E.g., Goldberg v Kollsman Instrument Corp., 12 NY2d 432, 436-437; Codling v Paglia, 32 NY2d 330; Restatement, Torts 2d, § 402A.) It was followed in Micallef v Miehle Co. (39 NY2d 376). Removal of the distortions prevents the all but inconceivable result reached in Mendel v Pittsburgh Plate Glass Co. (25 NY2d 340), overruled in Victorson v Bock Laundry Mach. Co. (37 NY2d 395, supra) -- a result that could follow if the breach of warranty action in this case is viewed as having accrued in New York before the plaintiff

8

**SA0319**

Case 22-1745, Document 105, 03/02/2023, 3477331, Page48 of 228

had been injured, and therefore before he had a cause of action. The point of all this is that HN7 strict products liability displaces the need for a "warranty" action by third parties. But if a third party chooses to sue in "warranty", thus restricting the scope of the damages he may recover (cf. Sears, Roebuck & Co. v Enco Assoc., 43 NY2d 389), he may not nevertheless by asserting that the cause of action arose at the time of the manufacturer's tender of delivery contend that his cause of action "accrued" before in fact it had." *Martin v. Julius Dierck Equip. Co.*, 43 N.Y.2d 583, 374 N.E.2d 97, 403 N.Y.S.2d 185, (Court of Appeals 1978) N.Y. LEXIS 1776.

Given the well-settled product liability law of New York, my negligence and product liability causes of action clearly survive the motion for judgment.


## II.   **Motions of defendant, Apple**

Surprisingly, the attorneys for Apple do not mention Apple Care, the service contract for Apple computers that appears to be managed by defendant Apple or a third-party that it retains. This introductory sentence, alone, uses the name "Apple" four times, so it is quite incredible (or suspicious) that the attorneys for defendant ignored a major fact for the case.

Apple Care is a contract between defendant and myself, plaintiff, Tyrone Holmes. Therefore, there is the existence of a contract. Even if it is argued that I did not register the service package, I did in fact contact Apple after the incident.

I paid money for the Apple Care service package and the receipt shows this payment. In fact, this receipt is in the record and has been referred to by defendants. Therefore, I have performed the contract and done my part of the bargains, which is to

Case 22-1745, Document 105, 03/02/2023, 3477331, Page49 of 228

pay a lot of money for care and protection of my computer which directly affects me.

Apple Care should have protected me from what Checkpoint did. At a minimum, it should not have allowed modifications, and/or it should have warned me of spyware and modifications. In fact, in the discovery process I will have a chance to depose Apple employees to see other ways that the Apple Care agreement was not performed by defendant. As I stated in my pre-motion response, "Secondly, the case is still not clear until discovery is over. Until the facts become clear, we do not know what exactly happened. At this time, there could be two Apple computers involved - one that I bought and one that Checkpoint bought. Maybe Checkpoint received my computer and perhaps it was defective from the start. Or maybe it wasn't defective, but I should have been notified by Apple Care that the product was modified. Therefore, I may have a negligence or product liability claim, too. Nobody knows for sure how Apple Care works, what happened to the computer I bought, whether there are two computers with the same serial number, and exactly how this whole mess happened. Discovery has to happen to sort it out. After that, all parties should have a clearer picture as to liability.
"These facts show the breach of contract, and therefore, all elements of a breach of contract case have been stated and are plausible.

Furthermore, defendant, as the maker of the laptop, has the most exposure for the products liability and negligence claims. Defendant made a troubled and defective computer that caused me damages and personal injuries. The innocent bystander rule allows me to file suit, even if I had no contract with defendant-manufacturer to buy the product. Plus, there are well-settled causes of action that allow for my claim to relief. It is quite clear that the tort laws of Washington, California, and New York allow me to sue

Case 22-1745, Document 105, 03/02/2023, 3477331, Page50 of 228

Apple. Furthermore, my pleading states a claim, puts the defendant on notice, and provides sufficient details for the defendant to defend.

## **CONCLUSION**

It is very extreme for two defendants to attempt summary judgment before interrogatories and the requests for production has even been served even from my layman's point of view, not to mention depositions not being taken. Yet, the defendants who made and sold a defective computer are quickly trying to escape responsibility and liability. Given the notorious wealth of the two defendants, though, all of the burdensome motions make sense on a level of corporate greed. Defendants have the money to pay teams of lawyers to fight every step of the way and that is what is happening – motions to the court that do not state all the facts or that overlook key claims, all in an attempt to beat the system.

However, the traditional, tried and true New York causes of action support my complaint, and I have stated those causes. Procedural rules favor me, as the respondent, on these types of motions. Granted, I have stated numerous claims. Also granted, though, is that the best of these claims survive and should be allowed to be developed in discovery, and proven at trial, in the Constitutional, American way. Therefore, for the above reasons, this Court should deny defendants' motions and move this case into discovery as soon as possible. Thank you your Honor.

RESPECTFULLY AND PRAYERFULLY

SUBMITTED BY:

11

**SA0322**

Case 22-1745, Document 105, 03/02/2023, 3477331, Page51 of 228

Dated: Bronx, New York
      March 12, 2018

TYRONE HOLMES
Plaintiff, Pro Se
1465 Hammersley Avenue
Bronx, NY 10469

**SA0323**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

TYRONE HOLMES,

       Plaintiff,

    - against -

APPLE, INC.; AMAZON.COM, LLC; and
CHECKPOINT FLUIDIC SYSTEMS
INTERNATIONAL, LTD.,

       Defendants.

------------------------------------------------------- x

Case No. 17-cv-4557 (ER) (KNF)

 

**AMAZON'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF MOTION
FOR ENTRY OF JUDGMENT
<u>AND TO DISMISS COMPLAINT</u>**

**SA0324**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

ANALYSIS .................................................................................................................... 2

I.    The Court Should Enter Judgment on Plaintiff's First Cause of Action ............... 2

II.   The Court Should Dismiss Plaintiff's Remaining Claims ..................................... 3

      A.    The COUs Are Consistent With Public Policy .......................................... 3

      B.    The COUs Preclude Plaintiff's Various Alternative Causes of Action ...... 4

      C.    Dismissal Should Be With Prejudice ........................................................ 6

III.  In The Alternative, Amazon Is Entitled to Summary Judgment ........................... 8

CONCLUSION ............................................................................................................ 10

4823-6314-0959v.1 0051461-001311

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bais Yaakov of Spring Valley v. Educational Testing Services,*
    251 F. Supp. 3d 724 (S.D.N.Y. 2017)..................................................2

*Bennett v. James,*
    737 F. Supp. 2d 219 (S.D.N.Y. 2010)..................................................8

*Campbell-Ewald v. Gomez,*
    136 S.Ct. 663 (2016)..................................................................3

*Carey v. Crescenzi,*
    923 F.2d 18 (2d Cir. 1991)............................................................9

*Hill v. Curcione,*
    657 F. 3d 116 (2d Cir. 2011)..........................................................7

*Jorgensen v. Epic/Sony Records,*
    351 F.3d 46 (2d Cir. 2003)............................................................8

*Lee v. Coughlin,*
    902 F. Supp. 424 (S.D.N.Y. 1995) ....................................................9

*Spinelli v. National Football League,*
    96 F. Supp. 3d 81 (S.D.N.Y. 2015) ...................................................5

*Triestman v. Fed. Bureau of Prisons,*
    470 F.3d 471 (2d Cir. 2006)...........................................................7

**State Cases**

*Benjamin v. Koeppel,*
    650 NE 2d 829 (N.Y. 1995)............................................................4

*Charlebois v. Weller Assocs.,*
    72 N.Y. 2d 587 (N.Y. 1988) ..........................................................4

*Johnson v. Spokane to Sandpoint, LLC,*
    309 P. 3d 528 (Wash. Ct. App. 3d. Div. 2013).........................................6

*Martin v. Julius Dierck Equipment Co.*
    ...................................................................................5, 6

*Tanner Elec. Co-op. v. Puget Sound Power & Light Co.,*
    128 Wash.2d 656, 911 P.2d 1301 (Wash. 1996) ........................................3

ii

**State Statutes**

N.Y. U.C.C. 1-105(1)............................................................................................................3

N.Y. U.C.C. 2-719(1)(a) .....................................................................................................4

Wash. Rev. Code § 62A.1-301(a) ......................................................................................3

Wash. Rev. Code § 62A.2-719(1)(a) ..................................................................................4

**Rules**

Federal Rules of Civil Procedure 12(c) ...........................................................................10

Federal Rules of Civil Procedure 56................................................................................10

Federal Rules of Civil Procedure 56.1 ....................................................................2, 8, 10

Federal Rules of Civil Procedure 68 ....................................................................1, 2, 3, 10

Local Rules 12.1 .................................................................................................................2

Local Rules 56.2 .................................................................................................................2

## PRELIMINARY STATEMENT

Defendant Amazon[1] respectfully submits this reply memorandum of law in further support of its motion for entry of judgment against Amazon and, upon entry of judgment, dismissal of all claims in the Complaint asserted against Amazon as either moot or failing to state a claim upon which relief may be granted.  In the alternative, Amazon respectfully submits that, because the undisputed material facts amply demonstrate Amazon's entitlement to judgment as a matter of law, the Court should enter summary judgment in Amazon's favor on all claims asserted against it by Plaintiff.

Even taking into consideration the allowances extended to *pro se* litigants, Plaintiff's memorandum of law in opposition to Amazon's motion (the "Opposition") fails to demonstrate how the Complaint adequately states a cause of action against Amazon, why Plaintiff is entitled to the discovery he seeks, or how Plaintiff could be entitled to anything more than what Amazon has already made available to him in its Rule 68 offer of judgment.  The arguments presented in the Opposition by turns are unsupported by reference to relevant authority, rely upon inapposite case law, and consist of unsubstantiated and inflammatory allegations outside the pleadings.  The Court should reject Plaintiff's attempts to avoid the binding effect of the COUs and order that Plaintiff accept a refund of the purchase price of the items he purchased from Amazon (which represents the most that Plaintiff could recover from Amazon in any event) pursuant to the cause of action in the Complaint sounding in breach of contract.  The remaining causes of action asserted against Amazon should be dismissed in their entirety for the reasons set forth in Amazon's moving memorandum, which the Opposition fails to rebut.

---

[1] Capitalized terms not defined herein have the meanings assigned to them in Amazon's moving memorandum (Dkt. Doc. No. 92).

4823-6314-0959v.1 0051461-001311

Dismissal of these claims should be with prejudice.  Plaintiff has been afforded every opportunity and courtesy in connection with his efforts to adequately state a cause of action and rebut the arguments in Amazon's moving memorandum.  Offering Plaintiff yet another bite at the apple at this point would be futile.

In the alternative, the Court should enter summary judgment in favor of Amazon on all counts.  In light of Plaintiff's failure to submit a Rule 56.1 Counter-Statement supported by admissible evidence – as Amazon advised him that he was required to do in accordance with Local Rules 12.1 and 56.2 – the Court should deem the facts in Amazon's Rule 56.1 Statement to be undisputed.  On those undisputed facts, no reasonable jury could find that Amazon is liable to Plaintiff under any of the various causes of action asserted in the Complaint.

## ANALYSIS

### I.  The Court Should Enter Judgment on Plaintiff's First Cause of Action

Concerning that part of Amazon's motion which seeks entry of judgment pursuant to Rule 68 on Plaintiff's claim sounding in breach of contract, the Opposition proffers – without analysis – a passage from *Bais Yaakov of Spring Valley v. Educational Testing Services,* an opinion addressing facts and issues inapposite to this matter.  That opinion provides nothing to preclude entry of judgment on Plaintiff's first cause of action.

Plaintiff has commenced this action in his individual capacity, and not as a putative member of a class.  This fact alone distinguishes this matter from *Bais Yaakov*, which addressed the propriety of entering judgment pursuant to Rule 68 over the objections of a putative class representative.  *See* 251 F. Supp. 3d 724, 739 (stating the issue before the court as "whether the ordinary mechanisms of tendering complete relief and requesting entry of judgment are available to moot a *class action claim,*" emphasis added), 742 (holding that "a representative plaintiff's

claim is not mooted where a defendant tenders complete individual relief, even where no class has yet been certified," and that the putative class representative "must be afforded an opportunity to seek certification of a class") (S.D.N.Y. 2017).   Under the circumstances presented here, where Amazon is consenting to entry of judgment in Plaintiff's favor in the full amount he could possibly recover, and has already deposited those funds with the court, Plaintiff "cannot thwart mootness by refusing complete relief presented on a silver platter."  *Campbell-Ewald v. Gomez*, 136 S.Ct. 663, 683 n.1 (2016) (Alito, J., dissenting).

Accordingly, the Opposition provides no basis to deny Amazon's motion for entry of judgment pursuant to Rule 68.

## II.     The Court Should Dismiss Plaintiff's Remaining Claims

### A.      The COUs Are Consistent With Public Policy

Plaintiff provides no citation to any authority whatsoever in support of his argument that the terms of the COUs limiting Amazon's liability to the price of the goods purchased violate public policy – because there is none.   On the contrary, courts in Washington[2] and New York routinely hold parties to such terms pursuant to the UCC.   The Court should do so here.

To demonstrate that a contractual provision is contrary to a public policy, a party must first identify that policy, typically as memorialized in a statute.   *Tanner Elec. Co-op. v. Puget Sound Power & Light Co.*, 128 Wash.2d 656, 669, 911 P.2d 1301 (Wash. 1996) ("a contract that is contrary to the terms and policy of an express legislative enactment is illegal and unenforceable"); *see also Benjamin v. Koeppel*, 650 N.E. 2d 829 (N.Y. 1995).   Here, not only

---

[2] Plaintiff is incorrect in his assertion that his presence in New York warrants the application of New York law to this dispute.  See Opposition, at 6-7.  Rather, both New York and Washington recognize the parties' power to agree that the laws of a specific jurisdiction will govern their relationship.  *See* Wash. Rev. Code § 62A.1-301(a)("when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties"); N.Y. U.C.C. 1-105(1) (same).  In any event, the laws of either jurisdiction compel the same result: dismissal of Plaintiff's causes of action against Amazon.

4823-6314-0959v.1 0051461-001311

**SA0330**

does Plaintiff fail to identify any such public policy as memorialized in statute, but relevant statutory authority specifically *recognizes and enforces* parties' power to agree to contractual limitations of liability. *See, e.g.,* Wash. Rev. Code § 62A.2-719(1)(a); N.Y. U.C.C. 2-719(1)(a) (discussed in Amazon's Moving Memorandum, at pp. 13-14).

Accordingly, Plaintiff's argument that the COUs are unenforceable on public policy grounds should be rejected. The Court should see this argument for what it is: Plaintiff's attempt to avoid the terms of the valid and binding agreement into which he entered with Amazon. Especially under these circumstances, Plaintiff's public policy argument finds no purchase. *Charlebois v. Weller Assocs.*, 72 N.Y. 2d 587 (N.Y. 1988) (a contracting party's attempt to use public policy as "a sword for personal gain rather than a shield for the public good should not be countenanced").

### B.     The COUs Preclude Plaintiff's Various Alternative Causes of Action

At no point in the Opposition does Plaintiff deny that he accepted the COUs when he created an Amazon account on January 26, 2010, or that he again accepted them when he purchased the New Laptop on June 22, 2016. Nor does Plaintiff identify any contract other than the COUs as the operative agreement between the parties. Rather, Plaintiff argues in the Opposition, in sum and substance, that he would not have agreed to those terms then if he knew that they would compel dismissal of his lawsuit now. This position is insufficient to salvage Plaintiff's various claims.[3]

On a motion to dismiss, "The provisions of the parties' agreements establish the rights of the parties and prevail over conclusory allegations in the complaint," and, accordingly, causes of action "must be dismissed where the unambiguous terms of the contract do not support a

---

[3] Plaintiff evidently concedes that the Sixth, Seventh and Eighth Causes of Action sounding in fraud should be dismissed. The Opposition makes no reference whatsoever to those claims.

plaintiff's claim." *Spinelli v. National Football League*, 96 F. Supp. 3d 81, 132 (S.D.N.Y. 2015). Here, it is not the case (as Plaintiff submits without reference to relevant authority) that "the return and reimburse remedy is the exclusive remedy for a breach of contract claim" alone, but not his various other causes of action – nor is it the case that Plaintiff "never agreed to a rebate or reimbursement being a remedy for something drastic."  (Opposition, at 6.)  On the contrary, Plaintiff expressly agreed to those terms in the COUs when he created his account with Amazon, and again when he purchased the New Laptop from Amazon on June 22, 2016.  Amazon has already set forth in detail the contractual provisions and legal authority which compel that conclusion (Moving Memorandum, at 17-19), in response to which Plaintiff has proffered only vague and conclusory denials which are contradicted by the plain language of the parties' agreement.  The Court should give Plaintiff's denials no weight, should instead apply the plain language of the parties' agreement to his causes of action, and should dismiss the Second through Eighth Causes of Action.

Plaintiff's inclusion of the passage from *Martin v. Julius Dierck Equipment Co.* quoted at length in the Opposition (see Opposition, pp. 7-9) is inexplicable, insofar as that opinion has no bearing upon the issues at play in this matter.  First of all, *Martin* concerned "a plaintiff who is not in privity with the seller of the product which is alleged to have caused his injury."  43 N.Y.2d 583, 589-90 (N.Y. 1978).  In this case, Plaintiff and Amazon *are* in contractual privity with one another.  Plaintiff repeatedly agreed that his purchases from Amazon would be governed by the COUs, which specifically and expressly disclaimed "DAMAGES OF ANY KIND ARISING FROM THE USE OF ANY AMAZON SERVICE, OR FROM ANY INFORMATION, CONTENT, MATERIALS, [OR] PRODUCTS (INCLUDING SOFTWARE) …. INCLUDING, BUT NOT LIMITED TO DIRECT, INDIRECT, INCIDENTAL, PUNITIVE,

4823-6314-0959v.1 0051461-001311

AND CONSEQUENTIAL DAMAGES, UNLESS OTHERWISE SPECIFIED IN WRITING." Such waivers are valid and enforceable under applicable law. *See Johnson v. Spokane to Sandpoint, LLC*, 309 P. 3d 528 , 532 (Wash. Ct. App. 3d. Div. 2013). Second, *Martin* concerns whether "plaintiff's causes of action for personal injury accrued in the jurisdiction in which he was injured or in the jurisdiction in which the vehicle alleged to have caused the injury was delivered." *Id.*, at 586-87. Even if New York law applied to the instant controversy (which it does not), the question of where Plaintiff's purported causes of action accrued is immaterial, in light of the parties' express agreement that Washington law would apply to any dispute arising between the parties. *Martin* does nothing to salvage Plaintiff's claims sounding in negligence and products liability, and so they should be dismissed.

In sum, the Opposition does nothing to rebut the points and authorities set forth in Amazon's moving memorandum. The Court should dismiss Counts Two through Eight for failure to state a cause of action upon which relief may be granted.

### C.      Dismissal Should Be With Prejudice

Plaintiff has been afforded every opportunity and courtesy in connection with his efforts to adequately state a cause of action and oppose Amazon's motion. Plaintiff's claims will not benefit from yet another opportunity to try to state a cause of action against Amazon. The Court should dismiss Counts Two through Eight with prejudice on the grounds of futility.

Plaintiff has already moved the Court to amend his initial pleading – a motion which Amazon did not oppose. *See* Docket Doc. No. 47, 47-1. In connection with Amazon's motion for entry of judgment, Plaintiff filed the Opposition on March 12, 2018, and then, on March 20, 2018, represented to the Court that he had "found a firm willing to take over [his] case" and sought a 30-day continuance so that he could obtain affidavits from certain unspecified "expert

witnesses." Docket Doc. No. 106. The Court converted Plaintiff's correspondence into a motion for leave to amend the Opposition within 30 days. Docket Doc. No. 107. Again, Amazon did not oppose that motion. Docket Doc. No. 108. The Court subsequently entered an order granting to Plaintiff his requested relief and setting April 26 as the deadline by which Plaintiff was to amend the Opposition.

On April 26, rather than file an amendment to the Opposition, Plaintiff sought yet another extension to give his attorney time to be "cleared in good standings [*sic*] in order to file/ Appear [*sic*] in the case within the next 42-72 hours." Docket Doc. No. 110. Again, Amazon did not oppose Plaintiff's request. However, as of this filing, no such appearance by Plaintiff's attorney has been made.

Amazon respectfully submits that the Court should not countenance Plaintiff's dilatory tactics any longer. In the Second Circuit, "*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted). What's more, a plaintiff – even one proceeding *pro se* – is not entitled to file an amended complaint if such filing would be futile. *Hill v. Curcione,* 657 F. 3d 116, 123-24 (2d Cir. 2011) (affirming trial court's denial of leave for *pro se* plaintiff to file amended complaint on the grounds of futility). As set forth more fully in Amazon's moving memorandum and herein, Plaintiff's acceptance of the COUs entitle him to a refund of his purchase price, at most – relief which Amazon has already made available to him. Accordingly, because Plaintiff has failed to demonstrate that he has *any* viable claim against Amazon in connection with his purchase of the New Laptop, despite being given repeated opportunities to do so, the Court should dismiss the claims against Amazon with prejudice.

### III.     In the Alternative, Amazon Is Entitled to Summary Judgment

The fact that Plaintiff is proceeding *pro se* does not relieve him of the duty to "meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted). "Notwithstanding the deference to which a *pro se* litigant is entitled, as well as the deference accorded to a non-movant on a summary judgment motion, [the non-movant] must produce specific facts to rebut the movant's showing and to establish that there are material issues of fact requiring a trial." *Bennett v. James,* 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010) (internal citations and quotation marks omitted)).  Amazon provided clear notice to Plaintiff in its Notice of Motion that he was under a duty to "submit evidence, such as witness statements or documents," in support of his position (see Amazon's Notice of Motion, Docket Doc. No. 91).  However, despite Plaintiff's representation on March 20, 2018 that he was in the process of obtaining witness affidavits, Plaintiff has failed to submit any such evidence.  Plaintiff has also failed to submit a Rule 56.1 counter-statement, as he was required to do.  Accordingly, the Court should consider the facts that Amazon set forth in that part of its motion seeking entry of summary judgment to be undisputed and enter judgment in Amazon's favor accordingly.

Moreover, as set forth in Amazon's moving memorandum, it is insufficient for Plaintiff to identify unresolved issues of fact which are immaterial to the causes of action asserted in the Complaint; rather, in opposition to a motion for summary judgment, a party must identify disputed issues of *material* fact.  (Amazon's Moving Memorandum, at 23-25.)  The fact that Plaintiff remains unaware of how his estranged wife came into possession of the Checkpoint Computer does not give him license to continue to pursue litigation against strangers to that relationship – yet that is precisely what Plaintiff has argued in the Opposition.  Opposition, at 5

("The problem with [Amazon's] statement is that it does not explain how I got a new computer, shrink-wrapped and with no sticker, and how my estranged wife got the laptop with Checkpoint surveillance software, etc."). Amazon has no answers to questions that Plaintiff has about his estranged wife. It is once again respectfully submitted that Plaintiff would be better served seeking answers to these questions in a different forum.

Finally, the Court should reject Plaintiff's unfounded and outrageous insinuation that employee dissatisfaction or "blue-collar sabotage" on the part of Amazon employees had anything to do with his wife's possession of the Checkpoint Laptop. On this part of Amazon's motion, it is insufficient for Plaintiff to claim that such allegations are "well-known and widely reported." (See Opposition, at 7.) Even if that were the case (which it is not), "a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin,* 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir. 1991)). Even after Plaintiff was put on notice of his duty to submit admissible evidence in support of his opposition to Amazon's motion, Plaintiff elected *not* to submit any such evidence in support of these inflammatory and scandalous claims. The Court should give them no weight whatsoever in its consideration of Amazon's motion.

In sum, the Opposition fails at every turn to demonstrate why summary judgment should not be entered in Amazon's favor: Plaintiff has neglected to submit a Rule 56.1 Counter-Statement, has elected not to submit any documents or affidavits in opposition to Amazon's motion, and has failed to identify any disputed issue of material fact with regard to his claims against Amazon. For these reasons, in the event that the Court finds entry of judgment pursuant to Rules 68 and 12(c) to be inappropriate, it should enter summary judgment pursuant to Rule 56 in Amazon's favor on each of the claims that Plaintiff has asserted against it.

4823-6314-0959v.1 0051461-001311

**CONCLUSION**

The Opposition fails to demonstrate why Amazon should not obtain the relief it seeks on this motion. The Court should enter judgment in Plaintiff's favor on the First Cause of Action sounding in breach of contract pursuant to Rule 68 of the Federal Rules of Civil Procedure, and should dismiss the remaining causes of action asserted against Amazon on the pleadings for failure to state a cause of action upon which relief may be granted. In the alternative, the Court should enter summary judgment in favor of Amazon on *all* counts in light of the undisputed material facts in this case. The Court should also award to Amazon its costs and fees attendant to this motion pursuant to Rule 68, as well as any other relief that the Court may deem appropriate.

Dated: New York, New York
           May 10, 2018

                                      Respectfully submitted,

                                      DAVIS WRIGHT TREMAINE LLP

                                      By: /s/ Michael J. Goettig
                                            Michael J. Goettig

                                       *Attorneys for Defendant*
                                       *Amazon.com, LLC*
                                      1251 Avenue of the Americas, 21st Floor
                                      New York, New York 10020
                                      (212) 489-8230

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYRONE HOLMES,

                                    Plaintiff,

            - against -

APPLE INC., AMAZON.COM, LLC, and
CHECKPOINT FLUIDIC SYSTEMS
INTERNATIONAL, LTD.,

                                    Defendants.

**OPINION AND ORDER**

17 Civ. 4557 (ER)

Ramos, D.J.:

        Tyrone Holmes ("Holmes" or "Plaintiff"), proceeding *pro se*, brings this lawsuit asserting

eight causes of action against Defendants Apple Inc. ("Apple"), Amazon.com, LLC ("Amazon"),

and CheckPoint Fluidic Systems International, Ltd. ("CheckPoint"). *See* Compl. (Doc 1).

CheckPoint moves to dismiss the claims against it for lack of personal jurisdiction. *See* Doc. 48.

Apple moves for judgment on the pleadings, or in the alternative, summary judgment in its favor

on all claims. *See* Doc. 97.  Amazon asks the Court to enter judgment against it on Holmes' first

cause of action and to dismiss his remaining seven claims. *See* Doc. 91.  In the alternative, it

also seeks summary judgment on all claims. *Id.*  Holmes has also moved to amend his

Complaint and join FedEx Ground Package System, Inc. ("FedEx") as a Defendant. *See* Doc.

47.  For the following reasons, each of Defendants' motions is GRANTED and Holmes' motion

is DENIED.

I.      **FACTUAL BACKGROUND**[1]

This case involves a convoluted tale of the sale, purchase, loss, and alleged re-sale of an

Apple laptop computer.  On May 10, 2016, Apple sold Amazon a MacBook Pro laptop bearing

the serial number C02RQ1T3G8WN.  Rule 56.1 Statement of Apple ("Apple 56.1") (Doc. 99) ¶

1.  Amazon, in turn, sold that laptop to CheckPoint on June 2, 2016.  Rule 56.1 Statement of

Amazon ("Amazon 56.1") (Doc. 100) ¶ 4.  That laptop was packaged for delivery in

Breinigsville, Pennsylvania.  *Id.* ¶¶ 2–3.  CheckPoint received the computer by June 7, 2016, and

an employee there installed a third-party tracking software, Kaseya, onto the laptop.  *Id.* ¶¶ 3–4.

That employee also affixed a "property of CheckPoint Pumps" sticker to the laptop.  *Id.*

CheckPoint subsequently attempted to ship the laptop to Dubai through FedEx; however, the

laptop did not arrive.  *Id.* ¶¶ 5–6.  A CheckPoint employee filed a report with FedEx to notify it

of the loss on June 15, 2016.  *Id.* ¶ 6.

On June 22, 2016, Holmes purchased an Apple MacBook Pro laptop and an AppleCare

Protection Plan ("AppleCare") through Amazon.  *See* Compl. ¶ 21.  The laptop was listed on

Amazon's website as "brand new" and Holmes understood that the product would be free from

defects and that it would not contain spyware or malware.  *Id.* ¶¶ 21, 23–24.  The laptop sent to

Holmes was among a batch of new MacBook Pro computers Amazon sourced from Apple,

which was packaged for delivery in Lewisberry, Pennsylvania.  Amazon 56.1 ¶¶ 8–9.  Holmes

received the laptop he ordered from Amazon on June 23, 2016.  *Id.* ¶ 10.  According to Holmes,

that laptop also had the serial number C02RQ1T3G8WN.  Compl. ¶ 21.  When Holmes received

the laptop, it was shrink-wrapped and did not contain any stickers on it.  *See* Doc. 54 (Transcript

---

[1] Here, Apple and Amazon have moved for judgment on the pleadings and, in the alternative, summary judgment.
The Court will include facts from the Rule 56.1 Statements of Apple ("Apple 56.1") (Doc. 99) and Amazon
("Amazon 56.1") (Doc. 100), as well as Holmes' Complaint, which the Court accepts as true for purposes of the
motions for judgment on the pleadings.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

of September 14, 2017 conference) at 3:19–22; Doc. 86 (Transcript of January 12, 2018

conference) at 5:13–18.

At some point, Holmes gave his wife, Stephanie Scott ("Scott") an Apple laptop.[2]  Scott

registered AppleCare in her name on June 25, 2016 for the laptop bearing the serial number

C02RQ1T3G8WN.  Apple 56.1 ¶ 12.  According to CheckPoint, it was able to locate that laptop

on July 23, 2016 using the Kaseya tracking software it had installed and determined that the

computer was online and being used by Scott.  *Id.* ¶ 15; *see also* Declaration of Ruston Mahoney

in Support of CheckPoint's Motion to Dismiss for Lack of Jurisdiction ("Mahoney Decl.") (Doc.

51) Ex. E.  CheckPoint subsequently relayed this information to FedEx, and FedEx filed a police

report.  *Id.* ¶¶ 16–17.

Months later, on September 9, 2016, Holmes received a call from New York City Police

Department Detective Rodrigo Caballero.  Compl. ¶ 36.  Caballero told Holmes that he

possessed a MacBook laptop that contained government software belonging to the Department of

Defense.  *Id.*  He further told Holmes that he and other officers were outside Holmes' residence

and wanted to retrieve the computer.  *Id.*  Holmes informed Caballero that he was in the midst of

conducting a funeral service, and could not assist the officers.  *Id.* ¶ 37.

The next day, Caballero again called Holmes in an attempt to retrieve the computer.  *Id.* ¶

38.  At that time, Holmes told Caballero that he had given the computer to Scott, whose location

he was unaware of.  *Id.*  The calls from Caballero, however, did not stop, and on September 12,

2016, Holmes retained counsel to represent him in the police investigation.  *Id.* ¶¶ 39–40.  That

day, Holmes' counsel spoke with Caballero and learned that the computer in Scott's possession

bearing the serial number C02RQ1T3G8WN actually belonged to CheckPoint, a contractor for

---

[2] According to Holmes, he and Scott are estranged.  *See* Doc. 54 at 5:12.

the Department of Defense.  *Id.* ¶ 41.  According to Caballero, the computer had been purchased by CheckPoint, had been "outfitted" with "sensitive surveillance software," and was intended to be shipped to Dubai.  *Id.* ¶ 42.  Caballero further stated that if the computer was not returned, he had the authority to arrest Holmes.  *Id.* ¶ 43.  Holmes' counsel asked Caballero for verification of these allegations, and that same day, counsel received a letter from a vice president at CheckPoint explaining that CheckPoint had been tracking its laptop since the laptop left CheckPoint's facilities, that CheckPoint "legally collected ample information to prove that [Holmes] is in possession of property belonging to CheckPoint," that it simply sought the return of its property, and that it otherwise had "no knowledge or interest in" learning how Holmes came to possess CheckPoint's laptop.  *See* Compl. Ex. B.

The next day, on September 13, 2016, Caballero sent Holmes' counsel an email confirming that the serial number of the CheckPoint computer was C02RQ1T3G8WN, which, according to Holmes, matched the serial number of the laptop he purchased through Amazon. *See* Compl. ¶ 47.  Between then and September 21, 2016, Holmes attempted to contact Scott to facilitate the return of the computer.  *Id.* ¶ 49.  On September 21, 2016, Holmes' counsel informed Caballero that Holmes had done all he could to assist the NYPD and asked Caballero to stop contacting Holmes.  *Id.* ¶ 50.  In response, Caballero stated that he was planning to proceed with an arrest of Holmes for criminal possession of stolen property in the fourth degree.  *Id.* ¶ 51. Holmes then hired a private investigator who was able to locate Scott.  *Id.* ¶ 54.  He then arranged for Scott's sister to visit her on October 1, 2016 so that she could persuade Scott to return the computer.  *Id.* ¶ 56.  On October 2, 2016, Holmes learned that the computer was in a public storage unit in Chelsea, New York, but that Scott did not wish to cooperate in returning the computer to CheckPoint.  *Id.* ¶ 58.  The next day, Holmes' counsel met with Caballero and

another NYPD officer to go to Scott's residence.  *Id.* ¶¶ 60–61.  After meeting with Caballero, Scott agreed to accompany the group to her storage unit.  *Id.* ¶ 62.  Scott turned over the laptop on October 4, 2016 at 7:30 p.m.  *See* Compl. Ex. E.  The "property of CheckPoint Pumps" sticker was still on the underside of the laptop.  Amazon 56.1 ¶ 26.

On June 16, 2017, Holmes filed the instant Complaint, raising eight causes of action:  (1) breach of contract against Apple and Amazon; (2) breach of express warranty against Apple and Amazon; (3) breach of implied warranty of merchantability against Apple and Amazon; (4) negligence against Apple, Amazon, and CheckPoint; (5) strict liability against Apple and Amazon; (6) fraudulent concealment against Apple and Amazon; (7) fraud in the inducement and misrepresentation against Apple and Amazon; and (8) false advertising and unfair business practices under § 349 of the New York General Business Law against Apple and Amazon.[3]

## II.   LEGAL STANDARD

### A.   Dismissal Under Rule 12(b)(2)

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02 Civ. 4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).  To meet this burden where there has been no discovery or evidentiary hearing, the plaintiff must plead facts sufficient for a prima facie showing of jurisdiction.  *Id.*  The Court construes all of the plaintiff's allegations as true and resolves all doubts in his favor.  *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d

---

[3] Holmes' proposed Amended Complaint brings a ninth cause of action against FedEx for negligence.  *See* Doc. 47-1.

122, 126 (2d Cir. 2008)).  "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'"  *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)).  As 12(b)(2) motions are "inherently . . . matter[s] requiring the resolution of factual issues outside of the pleadings," courts may rely on additional materials when ruling on such motions.  *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, No. 91 Civ. 3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); *Darby Trading Inc. v. Shell Int'l Trading and Shipping Co.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008).

In a diversity action, personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits.  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  This determination involves a two-step analysis.  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).  In New York, the Court must first determine whether personal jurisdiction is appropriate pursuant to the State's general jurisdiction statute, C.P.L.R. § 301, or its long arm jurisdiction statute, C.P.L.R. § 302.  If and only if the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the second step is an evaluation of whether the Court's exercise of personal jurisdiction comports with the Due Process Clause of the United States Constitution.  *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010).

### B.     Dismissal Under Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The Court applies the same standard of review to a Rule 12(c) motion as it

does to a motion to dismiss for failure to state a claim upon which relief can be granted under

Rule 12(b)(6). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) (citing *Karedes v.*

*Ackerley Grp. Inc.*, 423 F.3d 107, 113 (2d Cir. 2005)). On a motion to dismiss pursuant to Rule

12(b)(6), the Court is required to accept as true all factual allegations in the complaint and to

draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir.

2014). However, the Court is not required to credit legal conclusions, bare assertions or

conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–81 (2009) (citing *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss pursuant to Rule 12(b)(6),

a complaint must contain enough factual matter to state a claim to relief that is plausible on its

face. *Id*. at 678 (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to

show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. If the plaintiff

has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must

be dismissed." *Id*. at 680 (quoting *Twombly*, 550 U.S. at 570).

### C.   Summary Judgment

Under Rule 12(d), a court may convert a Rule 12(c) motion for entry of judgment to a

Rule 56 motion for summary judgment when the parties present evidence outside the pleadings

and are "given the reasonable opportunity to present all material that is pertinent to the motion."

*Certified Multi-media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, 150

F. Supp. 3d 228, 236 (E.D.N.Y. 2015) *aff'd* 674 F. App'x 45 (2d Cir. 2017) (quoting Fed. R. Civ.

P. 15(d)). Formal notice to the parties is ordinarily not necessary "where a party should

reasonably have recognized the possibility that the motion might be converted into one for summary judgment and was neither taken by surprise nor deprived of a reasonable opportunity to meet facts outside the pleadings." *Galiotti v. Green*, 475 F. App'x 403, 404 (2d Cir. 2012), *as amended* (Aug. 30, 2012) (internal quotation and punctuation marks omitted).

Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Medical Center*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all

reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)).  However, a motion for summary judgment cannot be defeated on the basis of conclusory assertions, speculation, or unsupported alternative explanations of facts.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008); *see also Senno*, 812 F. Supp. 2d at 467 (citing *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998)).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson*, 477 U.S. at 256–57).

Nonetheless, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial.  There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error."  *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (internal citations omitted).

## III.   CHECKPOINT'S MOTION TO DISMISS

CheckPoint moves to dismiss Holmes' negligence claim against it because CheckPoint has insufficient contacts with New York to render personal jurisdiction proper under New York law.  *See* Memorandum of Law in Support of CheckPoint's Motion to Dismiss ("CheckPoint Mem.") (Doc. 52), at 4–6.

A.      **Personal Jurisdiction under C.P.L.R. § 301**

C.P.L.R § 301 applies only to corporate defendants who are present in New York "with a fair measure of permanence and continuity." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 34 (1990). A company that engages in only "occasional or casual business" or who "merely solicits New York customers" will not be subject to general personal jurisdiction in New York. *Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 354 (S.D.N.Y. 2014) (internal quotations and punctuation marks omitted) (quoting *Bossey ex rel Bossey v. Camelback Ski Corp.*, 21 Misc.3d 1116(A), 2008 WL 4615680, at *2 (N.Y. Sup. Ct. Oct. 20, 2008)).

Here, CheckPoint has no physical presence in New York. *See* Affidavit of Andrew C. Elliot in Support of CheckPoint's Motion to Dismiss ("Elliot Aff.") (Doc. 49), at 2. It has no agents, officers, directors, or employees in New York. *Id.* It has never been authorized to conduct business in New York. *Id.* CheckPoint was able to identify only five sales between August 1, 2013 and June 16, 2017 that contained billing and/or shipping addresses in New York. *See* Declaration of Bobbie Jo Bridges in Support of CheckPoint's Motion to Dismiss ("Bridges Decl.") (Doc. 64) ¶ 4.[4] The total amount of these sales, $15,310.91, constitutes "a few hundredths of a percent of CheckPoint's sales in dollar value during the same period." *Id.* ¶ 10.

In opposition, Holmes points to the fact that CheckPoint operates a website that New York customers can see and use and that CheckPoint has been subject to jurisdiction in other cases in New York courts. *See* Affidavit in Opposition to Motion to Dismiss and Cross-Motion for Discovery ("Holmes Aff.") (Doc. 56). Holmes provides no support for his argument that the operation of a website, without more, can subject a company to general personal jurisdiction in

---

[4] CheckPoint's records show 27,139 sales records during this period. *Id.* ¶ 5.

New York; in fact, courts routinely determine that it is insufficient to confer jurisdiction. *See ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 87–88 (E.D.N.Y. 2006) (collecting cases). Further, although CheckPoint has been a defendant in one New York proceeding brought to the Court's attention, CheckPoint never appeared in that case, which did not require the establishment of personal jurisdiction over CheckPoint because it was a proceeding to domesticate a foreign judgment. *See Marine Hub Pte. Ltd. v. CheckPoint Fluidic Sys. Int'l Ltd.*, No. 601203/2010 (Sup. Ct. 2010); *see also Lenchyshyn v. Pelko Elec., Inc.*, 723 N.Y.S.2d 285, 289 (4th Dep't 2001) ("[A] party seeking recognition in New York of a foreign money judgment (whether of a sister state or foreign country) need not establish a basis for the exercise of personal jurisdiction over the judgment debtor by the New York courts."). Holmes, therefore, has not plead facts—even in his opposition—that would support a *prima facie* finding of general personal jurisdiction.

### B.   Personal Jurisdiction under C.P.L.R. § 302(a)

C.P.L.R. § 302(a) allows a court to exercise personal jurisdiction over a non-domiciliary defendant who: (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state;" (2) "commits a tortious act within the state . . .;" or (3) "commits a tortious act without the state causing injury to person or property within the state . . . [if he] (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]" *Mount Whitney Investments, LLP v. Goldman Morgenstern & Partners Consulting, LLC*, No. 15 Civ. 4479 (ER), 2017 WL 1102669, at *4 (S.D.N.Y. Mar. 23, 2017) (quoting C.P.L.R. § 302(a)(1–3)).

Holmes argues that CheckPoint committed a tort outside the state of New York that it knew would have consequences in New York.  *See* Holmes Aff. ¶¶ 24–37.  Specifically, he argues that CheckPoint reported its computer as stolen, and that its discussions with FedEx and the NYPD about the computer led both "to assume incorrectly that there was a theft," which caused Holmes emotional distress during the period in which CheckPoint's computer was in his wife's possession.  *Id.*  The "tort" that Holmes alleges CheckPoint committed, therefore, appears to be a negligence claim based on the reporting of its missing computer.  *Id.*; *see* Compl. ¶¶ 92–96 (bringing a cause of action against CheckPoint for negligence).  But Holmes has put forward no support for his argument that an entity can be held liable for negligence on the basis of reporting a theft and cooperating with authorities, even if the report was inaccurate.[5]  To the extent that Holmes has attempted to raise a claim for malicious prosecution, a civilian "who merely furnishes information to law enforcement authorities . . . will not be held liable for malicious prosecution."  *Lupski v. County of Nassau*, 822 N.Y.S.2d 112, 114 (2d Dep't 2006).  Instead, a plaintiff must allege that the defendant "played an active role in the prosecution, such as giving advice and encouragement and importuning the authorities to act."  *Id.* (quoting *Viza v. Town of Greece*, 463 N.Y.S.2d 970, 971 (1983)).  Holmes' allegations that CheckPoint communicated with FedEx and the NYPD about the loss of its computer, and "reasonably expect[ed]" consequences to flow within New York, are insufficient to confer personal jurisdiction on courts in New York, because they do not constitute allegations of a tortious act as required by C.P.L.R. § 302(a).

---

[5] The record is unclear as to how CheckPoint's computer came to be in Holmes' possession, whether it was stolen, and if so, who stole the computer.  No party in this case has asserted that Homes was responsible for CheckPoint's initial loss of the computer.

### C.      Holmes' Discovery Motion

Holmes seeks discovery to determine what contacts CheckPoint has with the State of New York. *See* Holmes Aff. ¶ 70. Specifically, he seeks to serve interrogatories, a request for production of documents, and a notice of deposition of one CheckPoint employee. *Id.* ¶ 71. Holmes argues that he is entitled to determine whether CheckPoint had banking or investment banking contacts in New York, retained any law, consulting, or public relations firms based in New York, hosted business meetings in New York, or made any business purchases in New York. *Id.* ¶ 72.

Holmes' request must be denied. *See In re Angeln GmBH & Co. KG*, 510 F. App'x 90, 92–93 (2d Cir. 2013) (finding that courts may decline to permit jurisdictional discovery where a plaintiff has not made out a prima facie case for jurisdiction). Even if those business contacts exist, they would be insufficient for purposes of general personal jurisdiction. *See Brown*, 57 F. Supp. 3d at 354. They would also be insufficient for the purposes of New York's long-arm statute, since those contacts would be unrelated to CheckPoint's involvement in this case. *Id.* at 356 (explaining that a defendant must purposefully avail itself of conducting business activities in New York, and that the dispute in the litigation must arise out of one such transaction). *See Haber v. United States*, 823 F.3d 746, 753 (2d Cir. 2016) (noting that jurisdictional discovery is inappropriate if the plaintiff fails to show how the information to be obtained bears on the jurisdictional issue). The Court therefore GRANTS CheckPoint's motion to dismiss.[6]

---

[6] Because the Court finds that there is no personal jurisdiction under the C.P.L.R., it does not reach the constitutional question of whether the imposition of jurisdiction in this case would comport with traditional notions of fair play and substantial justice.

## IV.   APPLE'S MOTION FOR ENTRY OF JUDGMENT

Apple moves for judgment on the pleadings for each of Holmes' eight claims.
Memorandum of Law in Support of Apple's Motion for Judgment ("Apple Mem.") (Doc. 98), at
2.  In the alternative, it moves for summary judgment on those claims based on the testimony of
Apple employee Tim O'Neil.  *Id.*

### A.   Breach of Contract and Express Warranty Claims

Apple argues that Holmes has not stated a claim for either breach of contract or breach of
warranty (claims one and two) because he has not alleged the existence of a contract between
himself and Apple.  Apple Mem. at 8.

Under New York law, the existence of a contract between the parties is an essential
element of both a breach of contract claim and a breach of express warranty claim.  *See Nat'l
Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004); *Promuto v. Waste
Mgmt., Inc.*, 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999).  In his Complaint, Holmes alleged that he
purchased his laptop through Amazon, but that Amazon and Apple both "contracted" to provide
him the laptop and "warranted and represented" that the laptop was "brand-new" and "free from
any and all spy software capable of tracking [his] activities."  Compl. ¶¶ 33, 74, 81.  But these
allegations are belied by the receipt Holmes provided, which shows that the seller of the laptop
and AppleCare was Amazon, not Apple.  *Id.* Ex. A; *accord Xi Wei Lin v. Chinese Staff &
Workers' Ass'n*, No. 11 Civ. 3944 (RJS), 2012 WL 5457493, at *4 (S.D.N.Y. Nov. 8, 2012)
(noting that a court need not accept as true "pleadings that are contradicted by other matters
asserted or relied upon or incorporated by reference") (quoting *Fisk v. Letterman*, 401 F. Supp.
2d 362, 368 (S.D.N.Y. 2005)).

Holmes argues that AppleCare, the laptop protection plan, is the contract between him and Apple that Apple breached by allowing him to receive CheckPoint's laptop. *See* Memorandum of Law in Opposition to Defendants' Motions for Judgement ("Opp.") (Doc. 105), at 9. Apple raises two points in response. First, it argues that it has no record of Holmes registering AppleCare for the CheckPoint laptop; instead, Scott registered an AppleCare plan (although it is unclear if this was the AppleCare plan purchased by Holmes) for the CheckPoint laptop on June 25, 2016. Apple Mem. at 11 (citing Declaration of Tim O'Neil in Support of Apple's Motion for Entry of Judgment ("O'Neil Decl.") (Doc. 102) ¶¶ 9–12). Thus, they argue, there was no contract between Apple and Holmes. Second, Apple argues that Holmes has not alleged a breach of the AppleCare plan; rather, his allegations are that the Apple laptop he received from Amazon was defective because it contained the Kaseya tracking software. Apple Mem. at 10–11; Reply Memorandum of Law in Support of Apple's Motion for Entry of Judgment ("Apple Reply Mem.") (Doc. 113), at 3–4. AppleCare is a service contract that provides for Apple support in replacing or repairing laptops in certain circumstances, and specifically excludes repairs based on the effects of third-party products. *See* O'Neil Decl. Ex. D.[7] Holmes' claims in the first and second causes of action, however, are based on the theory that the laptop was defective because CheckPoint subsequently installed tracking software on it. *See* Compl. ¶¶ 76, 83. By its terms, therefore, the AppleCare agreement is not triggered. Accordingly, the Court finds that the AppleCare agreement is not germane to the dispute between Holmes and Apple; further, because Holmes has not pointed to a contract with Apple

---

[7] Although Holmes did not attach the AppleCare agreement to his complaint, the Court may properly consider it on a motion for judgment on the pleadings. *See City of Brockton Ret. Sys. v. Avon Prods., Inc.*, No. 11 Civ. 4665 (PGG), 2014 WL 4832321, at *12 (S.D.N.Y. Sept. 29, 2014) (internal quotation marks and citations omitted) (noting that a court may consider any documents that that the Complaint "relies heavily upon its terms and effect, thereby rendering the document integral to the complaint").

that governs the sale of a new laptop, his claims for breach of contract and breach of express warranty against Apple must fail.  The Court GRANTS Apple's motion for entry of judgment on these two claims.

### B.     Breach of Implied Warranty, Negligence, and Strict Liability

Apple argues that it should also be granted judgement on the pleadings for Holmes' breach of implied warranty, negligence, and strict liability claims because the injuries Holmes alleges could not have been caused by Apple.  Apple Mem. at 12.

Under New York law, there is an implied warranty of merchantability, but it does not protect consumers where the alleged defect "was not attributable to a manufacturing or retail defect." *Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 215 (E.D.N.Y. 2004) *vacated on other grounds* 163 F. App'x 37 (2d Cir. 2006) (quoting *Elsroth v. Johnson & Johnson*, 700 F. Supp. 151, 160 (S.D.N.Y. 1988).  Similarly, a manufacturer cannot be held liable for either negligence or strict liability when a "subsequent modification" is made after the product leaves the manufacturer that "alters the product and is the proximate cause of plaintiff's injuries."  *Id.* at 206, 215 (citing *Elsroth*, 700 F. Supp. at 159); *see also Duval v. Delta Int'l Machinery Corp.*, 13 Civ. 4270 (GHW), 2015 WL 4522911, at *5 (S.D.N.Y. July 27, 2015) (recognizing the availability of the substantial modification defense).  Here, Holmes alleges that Apple is liable for his laptop, which he claims is defective because it contained CheckPoint's Kaseya tracking software.  Compl. ¶¶ 89, 94, 101–02.  However, Holmes' own allegations makes clear that CheckPoint, not Apple, installed this software.  *Id.* ¶ 76 (alleging that the laptop he received from Amazon "contained sensitive spy software, installed by Defendant[] CheckPoint Fluidic Systems

International, Ltd.").[8]  Holmes has therefore failed to state a claim for relief against Apple, and the Court GRANTS Apple's motion for judgment on the pleadings with respect to Holmes' third, fourth, and fifth claims.

### C.    Fraudulent Concealment and Fraud in the Inducement

Apple moves for judgment on Holmes' sixth and seventh claims, arguing that he has not identified any specific misrepresentations or actionable omissions by Apple, as required under Rule 9(b) of the Federal Rules of Civil Procedure.  Apple Mem. at 17, 20.

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  A complaint must therefore:  "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (quoting *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)).  Allegations that are merely conclusory or "unsupported by factual allegations" cannot meet this standard.  *Id.* (citing *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986)).  For a fraudulent concealment claim, a defendant may only be liable for an omission of a material fact if it had a "duty to disclose" that fact.  *Schwatka v. Super Millwork, Inc.*, 965 N.Y.S.2d 547, 551 (2d Dep't 2013).  Specifically, under New York law, a defendant may be held liable if it "has superior knowledge or means of knowledge, such that the transaction without disclosure is rendered inherently unfair."  *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 484 (S.D.N.Y. 2015) (quoting *Miele v. Am. Tobacco Co.*, 770 N.Y.S.2d 386, 391 (2d Dep't 2003)).

---

[8] For this reason, the Court agrees with Apple that Holmes' reference to the innocent bystander rule is inapposite, as that rule only applies to the manufacturer of a defective product, not the manufacturer of a product that is subsequently modified and becomes defective.  *See* Apple Reply Mem. at 5–6.

Apple argues that Holmes has only pleaded that Apple "had full knowledge of the defects" in the laptop sold to him by Amazon—presumably the presence of the Kaseya tracking software—and that Apple "failed to notify" him of this, without providing any supporting factual allegations. *See* Apple Mem. at 18.[9]  Holmes makes no factual allegations regarding Apple's knowledge of the installation of the software or when Apple became aware of any "defects" on the computer, if ever.  Holmes does not attempt to address these deficiencies in his opposition. Because Holmes' only allegations with respect to fraudulent concealment are conclusory, he has not stated a claim, and the Court GRANTS Apple's motion for judgment on the pleadings.

With respect to Holmes' seventh claim, for fraud in the inducement, Apple argues that Holmes has not alleged *any* statement made by Apple, much less any statement with specificity. *See* Apple Mem. at 20. Throughout the complaint, Holmes refers solely to "above representations" or "various representations concerning" the laptop without detailing the contents of the representations, who made the representations, when and where they were made, and why they were fraudulent at the time they were made.  *See* Compl. ¶¶ 23, 116.  This falls far short of the standard imposed by Rule 9(b), and therefore the Court GRANTS Apple's motion for judgment on Holmes' seventh claim.

Amazon also argues for judgment on the pleadings for these fraud claims based on Rule 9(b)'s heightened pleading standard.  Memorandum of Law in Support of Amazon's Motion for Judgment ("Amazon Mem.") (Doc. 92), at 21.  For the reasons stated above, Amazon's motion is also GRANTED.

---

[9] Although Holmes' pleadings do not state with particularity what the defect Apple allegedly concealed was, the Court understands the defect alleged to be the same defect Holmes described in earlier causes of action—the presence of the Kaseya tracking software.  *See* Compl. ¶¶ 76, 83, 89 (describing the laptop received from Amazon as defective because it contained tracking software).

### D.      False Advertising and Unfair Business Practices

Holmes' eighth claim alleges that Amazon and Apple engaged in false advertising and unfair business practices prohibited by New York General Business Law § 349.  *See* Compl. ¶ 121.  Apple argues that Holmes has failed to allege a violation of § 349 because he has not alleged that Apple made misstatements while engaged in "consumer-oriented conduct."  Apple Mem. at 21–22.

Private contract disputes do not fall within the ambit of § 349; rather, a plaintiff bringing a § 349 claim must allege conduct that has "a broader impact on consumers at large."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995).  Thus, the allegedly deceptive conduct "may not be limited to just the parties."  *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 373 (S.D.N.Y. 2016) (quoting *Teller v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 772 (2d Dep't 1995)).  Holmes has failed to allege that Apple's conduct "affected anyone except him."  *Id.*  He has not, for example, alleged any facts to suggest that Apple routinely sells computers to third parties marked as "new" when they are actually used and contain third party surveillance software.  *See* Compl; *see also Koch v. Greenberg*, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014) ("Where the acts complained of potentially affect similarly situated consumers, the consumer-oriented prong will be met.") (internal citations and quotations marks omitted).  Indeed, Holmes himself has noted that his allegations suggest a "bizarre fact pattern."  Compl. ¶ 14 (Introductory Statement).  Based on the factual allegations in the Complaint, the Court finds that Holmes has not alleged consumer-oriented conduct within the meaning of § 349; therefore, the Court GRANTS Apple's motion for judgment on the pleadings.

Amazon has joined in Apple's arguments regarding dismissal of the eighth claim.  *See* Amazon Mem. at 22.  Judgment on that claim will also be entered in favor of Amazon.

19

**SA0356**

## V.     AMAZON'S MOTION FOR ENTRY OF JUDGMENT

The Court has already entered judgment in favor of Amazon on Holmes' sixth, seventh, and eighth claims.  Amazon also seeks the entry of judgment in its favor on Holmes' second through fifth claims, and seeks entry of judgment against it on Holmes' first claim pursuant to its Rule 68 offer of judgment.  *See* Amazon Mem. at 1–2.

Specifically, Amazon presented Holmes with an offer of judgment in the amount of $2,351.12, the value of the Apple MacBook Pro and AppleCare Holmes purchased on June 22, 2014.  *See* Declaration of Michael Goetting in Support of Amazon's Motion for Entry of Judgment and Dismissal ("Goetting Decl.") (Doc. 93) Ex. A.  On January 12, 2018, Holmes rejected that offer.  *Id.* Ex. B.  Amazon has since deposited those funds ($2,351.12) with the Clerk of Court.  *See* Doc. 83; Goetting Decl. Ex. C.  Contending that the offer of judgment against it and the award of $2,351.12 provides Holmes with complete relief on his breach of contract claim, Amazon asks the Court to enter judgment consistent with its offer pursuant to Rule 68 of the Federal Rules of Civil Procedure.  *See* Amazon Mem. at 10–16.

### A.     Breach of Contract Claim

Holmes alleges that Amazon breached their contract by selling him a laptop that contained "sensitive spy software" rather than a brand new Apple laptop.  *See* Compl. ¶¶ 73–76. When Holmes entered into the purchase agreement with Amazon, he also agreed to Amazon's conditions of use.  *See* Declaration of Jesse Jensen in Support of Amazon's Motion for Entry of Judgment ("Jensen Decl.") (Doc. 94) ¶¶ 5–6.[10]  In his opposition, Holmes does not dispute that

---

[10] The Court may consider the conditions of use in determining the range of Holmes' possible recovery on his breach of contract claim because that document is "integral" to the Complaint.  *See City of Brockton Ret. Sys. v. Avon Prods., Inc.*, No. 11 Civ. 4665 (PGG), 2014 WL 4832321, at *12 (S.D.N.Y. Sept. 29, 2014) (internal quotation marks and citations omitted) (noting that a court may consider any documents that that the Complaint "relies heavily upon its terms and effect, thereby rendering the document integral to the complaint").

he was notified that by purchasing a product on Amazon, he agreed to its conditions of use.  *See* Opp. at 6 (conceding that he signed the contract but disputing that the remedy limitation in the contract applies to his tort claims against Amazon).

The agreement provided that "if a product offered by Amazon itself is not as described, [Holmes'] sole remedy is to return it in unused condition" and receive a refund.  Jensen Decl. Ex. B at 2. The agreement also provided that "the laws of the state of Washington . . . will govern these conditions of use and any dispute of any sort that might arise between [Holmes] and Amazon." *Id.* at 4.

Under Washington law, agreements like Amazon's are enforceable.  *See Elkin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1175 n.5 (W.D. Wash. 2014).  Washington law, adopting provisions of the Uniform Commercial Code, allows for a contract to limit a buyer's remedy "to return of the goods and repayment of the price."  *See* Wash. Rev. Code § 62A.2-719(1)(a); *O.B. Williams Co. v. S.A. Benheim West, Inc.*, No. Co8-1155 (JLR), 2010 WL 11526889, at *11–12 (W.D. Wash. July 13, 2010) (applying this provision).  For his part, Holmes does not contend that the contract is unconscionable or that it does not limit remedies in this way; he argues, instead, that the contract's limitation on remedies should not bar recovery on his remaining seven claims against Amazon.  *See* Opp. at 6 ("Regarding defendant's total reliance on the 'exclusive remedy' argument, the plain meaning of that phrase is the return and reimburse remedy is the exclusive remedy *for a breach of contract claim*.").

Holmes paid $2,351.12 for his MacBook Pro laptop and AppleCare.  *See* Compl. Ex. A. Without conceding liability, Amazon has presented Holmes with an offer of judgment in that amount.  *See* Goetting Decl. Ex. A.  In the Second Circuit, an unaccepted offer of judgment pursuant to Rule 68 combined with the entry of judgment against a defendant, moots a plaintiff's

claim.  *See Leyse v. Lifetime Entm't Servs.*, 679 F. App'x 44, 48 (2d Cir. 2017) ("[A]n

unaccepted Fed. R. Civ. P. 68 offer for complete relief[,] . . . if rejected, may nonetheless permit

a court to enter a judgment in the plaintiff's favor."); *Bais Yaakov of Spring Valley v. Educ.*

*Testing Serv.*, 251 F. Supp. 3d 724, 739 (S.D.N.Y. 2017) ("[A] claim for individual relief may be

mooted by tender and entry of judgment.").  Both parties agree that Amazon's deposit of

$2,351.12, coupled with an offer of judgment against it, provides Holmes with the relief he is

entitled to on the breach of contract claim only.  The Court therefore finds that Amazon has

fulfilled the conditions required to moot Holmes' first claim, GRANTS Amazon's Rule 68

motion, and enters judgment in favor of Holmes in the amount if $2,351.12.

### B.      Breach of Warranty Claims

Holmes' second and third claims against Amazon seek relief for breach of express

warranty and breach of implied warranty.  *See* Compl. ¶¶ 80–91.  Amazon argues that these

claims must fail because the conditions of use disclaim express and implied warranties.  *See*

Amazon Mem. at 17–19.

The conditions of use provide that Amazon "does not warrant that product descriptions or

other content of any Amazon Service is accurate, complete, reliable, current, or error-free."

Jensen Decl. Ex. B at 2.  Amazon further "disclaim[ed] all warranties, express or implied,

including, but not limited to, implied warranties of merchantability and fitness for a particular

purpose."  *Id.*  It also stated that all products were "provided by Amazon on an 'as is' and 'as

available' basis."  *Id.*  Amazon argues that these disclaimers prevent Holmes from bringing

claims for breach of implied or express warranties.  Amazon Mem. at 18–19.  Holmes argues

that the disclaimers should not be enforced because they are against public policy.  Opp. at 6.

To demonstrate that the disclaimers are valid under Washington law,[11] Amazon cites to a 1964 Washington Supreme Court case, *McInnis & Co. v. Western Tractor Equipment Co.*, 388 P.2d 562 (Wash. 1964), which holds that a seller may expressly disclaim both express and implied warranties in a contract.  *See* Amazon Mem. at 19.  But Amazon neglects to mention subsequent Washington Supreme Court cases that altered this landscape, including *Berg v. Stromme*:

> Thirty years ago this court set the standard for applying warranty disclaimers in transactions involving a noncommercial entity.  According to the decision in *Berg*, warranty disclaimers in a contract must be both (1) explicitly negotiated and (2) set forth with particularity.   The presumption leans against the warranty disclaimer, and the burden lies on the party seeking to include the disclaimer to prove its legality.

*Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 47 P.3d 940, 945 (Wash. 2002) (internal citations omitted); *see also Cozumel Leasing, LLC v. Int'l Jets Inc.*, No. 16 Civ. 5089 (RJB), 2018 WL 1737778, at *15 (W.D. Wash. Apr. 11, 2018) (applying *Berg* analysis for a warranty disclaimer in a transaction involving an LLC).  Washington law "generally disfavors warranty disclaimers," and they are therefore "ineffectual unless the parties explicitly negotiate them and set them forth with particularity."  *Mattingly v. Palmer Ridge Homes LLC*, 238 P.3d 505, 514 (Wash. Ct. App. 2010) (finding the explicit negotiation prong met where the parties negotiated changes to other parts of the agreement containing the disclaimer).  Although Amazon has addressed the specificity of the disclaimers, *see* Amazon Mem. at 18, it has not put forward any argument regarding how the disclaimers were "explicitly negotiated."  Therefore, Amazon has not shown that it is entitled to judgment on the pleadings at this stage and the Court DENIES its motion for judgment on Holmes' second and third claims.

---

[11] Because breach of express and implied warranty are contract-based claims, Washington law, which governs the contract, applies.  *See Benefield v. Pfizer Inc.*, 103 F. Supp. 3d 449, 457 (S.D.N.Y. 2015).

### C.    Common Law Negligence and Strict Products Liability Claims

Amazon argues that the fourth and fifth causes of action, for common law negligence and

strict products liability, should be dismissed because they are preempted by the Washington

Product Liability Act ("WPLA"), Wash. Rev. Code § 7.72.010 *et seq.*  Amazon Mem. at 19.[12]

"The WPLA is the exclusive remedy for product liability claims . . . [and] supplants all

common law claims or actions based on harm caused by a product." *Blangeres v. United Sttaes*

*Seamless, Inc.*, 725 F. App'x 511, 514 (9th Cir. 2018) (quoting *Macias v. Saberhagen Holdings,*

*Inc.*, 282 P.3d 1069, 1073 (Wash. 2012)); *see also City of Seattle v. Monsanto Co.*, 237 F. Supp.

3d 1096, 1102 (W.D. Wash. 2017) ("The WPLA 'creates a single cause of action for product-

related harms that supplants previously existing common law remedies.'") (quoting *Wash. Water*

*Power Co. v. Graybar Elec. Co.*, 774 P.2d 1199, 1207 (Wash. 1989)).

Amazon points to *Bingham v. Blair LLC* in support of its argument that because Holmes'

claims for negligence and strict liability are preempted by the WPLA, they should be dismissed.

Amazon Mem. at 20.  But in *Bingham*, the Western District of Washington denied the motion to

dismiss and instead permitted the plaintiffs to amend their claims and "fashion one cause of

action pursuant to the WPLA." *Bingham v. Blair LLC*, No. 10 Civ. 5005 (RBL), 2010 WL

---

[12] Amazon asserts that the Washington Product Liability Act is relevant because under its contract with Holmes, "the parties agreed that the laws of the state of Washington would apply to 'any dispute of any sort that might arise between [Plaintiff] and Amazon.'" *Id.* (quoting Jensen Decl. Ex. B).  Courts sitting in New York are bound to "decide the scope of [choice of law] clauses under New York law, not under the law selected by the clause." *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 333 (2d Cir. 2005).  In general, the Second Circuit has observed "a reluctance on the part of New York courts to construe contractual choice-of-law clauses broadly to encompass extra-contractual causes of action." *Id.* at 334.  However, it has maintained that while a choice-of-law provision in a contract should be read narrowly, "presumably a contractual choice-of-law clause could be drafted broadly enough to reach such tort claims." *Id.* at 335.  At least one appellate court in New York has applied a contractual choice-of-law clause to a tort claim, finding that the agreement was sufficiently broad because it covered "'all issues' concerning 'enforcement of the rights and duties of the parties.'" *Cap. Z Fin. Servs. Fund II, L.P. v. Health Net, Inc.*, 840 N.Y.S.2d 16, 23 (1st Dep't 2007); *but see McBeth v. Porges*, 171 F. Supp. 3d 216, 224 n.3 (S.D.N.Y. 2016) (criticizing *Capital Z*'s reliance on a Second Circuit case applying Texas law to determine the scope of a choice of law provision).  The Court finds that the language in Amazon's choice of law provision is sufficiently broad to require application of all disputes between Amazon and Holmes, including those sounding in tort law.

1608881, at *2 (W.D. Wash. Apr. 19, 2010).  The Court sees no reason why the same courtesy would not be extended to Holmes, and therefore DENIES Amazon's motion for judgment on the pleadings with respect to claims four and five.

### D.     Amazon's Motion for Summary Judgment

For the four claims that have survived Amazon's Rule 12(c) and Rule 68 motions, the Court next considers whether summary judgment is appropriate.  In its papers, Amazon argued that all claims were amenable to summary judgment because there is no issue of material fact, asserting that the CheckPoint laptop in Holmes' possession was not the same laptop that Holmes purchased, and received, through Amazon.  Amazon Mem. at 22.

As a preliminary matter, the Court finds that it has the discretion under Rule 12(d) to convert Amazon's motion into a motion for summary judgment, because both Amazon and Holmes have had a "reasonable opportunity" to present relevant material to the Court.  "The essential inquiry is whether the [non-moving party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings."  *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985).  Holmes was first put on notice of Amazon's intent to move for summary judgment when Amazon filed its motion on February 12, 2018.[13]  Amazon's Notice of Motion specified that as an alternative to judgment on the pleadings, it would seek summary judgment.  *See* Doc. 91.  Attached to that document was the notice to a pro se litigant who opposes a Rule 12 motion supported by matters outside the pleadings, as required by the Southern District's local rules.  *See* S.D.N.Y. Local R. 12.1.  That notice informs

---

[13] Even earlier than that, Holmes was put on notice that summary judgment might be implicated in this stage of briefing, as *Apple* informed the Court in its letter requesting a pre-motion conference and at the conference itself, at which Holmes was present, that it would move in the alternative for summary judgment.  *See* Doc. 77, Doc. 86 at 8:22–25.

plaintiffs, among other things, that:

> If you do not respond to the motion on time with affidavits or documentary evidence contradicting the facts asserted by the defendant, the court may accept defendant's factual assertions as true.  Judgment may then be entered in defendant's favor without a trial.

*Id.*[14]  Further, Amazon's memorandum of law contained citation to numerous facts outside the pleadings that Amazon included in a 56.1 Statement, providing further notice that conversion to summary judgment was a distinct possibility.  *See Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) ("Even where only the party moving to dismiss has submitted extrinsic material such as depositions or affidavits, the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted.") (quoting *G. & A. Books*, 770 F.2d at 295).  Finally, Holmes' own statements indicate that he was aware of what was required of him in opposing a Rule 12 motion that may be converted to a Rule 56 motion.  For example, on March 20, 2018, after Holmes filed his opposition, he wrote to the Court explaining that he located witnesses to provide affidavits that would enhance his opposition.  *See* Doc. 106.[15]  Because the Court finds that Holmes had adequate notice that Amazon's motion may be converted to a motion for summary judgment, it considers Amazon's motion on the merits.

Amazon contends that the laptop it shipped to Holmes was not CheckPoint's laptop, but was a different computer altogether—one that was brand-new and did not contain any third-party tracking software.  Amazon points to the evidence that the CheckPoint laptop was sourced directly from Apple and was packaged for delivery in Breinigsville, Pennsylvania.  *See* Amazon

---

[14] Holmes, however, did not file a 56.1 statement, nor did he file any sworn affidavits, in opposing Amazon's motion.

[15] The Court construed this as a request for an extension of time to amend his opposition, which it granted.  *See* Doc. 107.  Holmes, however, ultimately declined to amend his opposition and did not provide the Court with any extrinsic evidence.  *See* Docs. 108, 116.

56.1 ¶ 2–3.  When CheckPoint received the laptop, an employee attached a sticker with the label "Property of CheckPoint Pumps" and installed Kaseya tracking software.  *Id.* ¶ 4.  The laptop Holmes ordered from Amazon was also sourced directly from Apple and was packaged for delivery in Lewisberry, Pennsylvania.  *Id.* ¶¶ 8–9.  When Holmes received it, the laptop was shrinkwrapped and bore no sticker.  *Id.* ¶¶ 11–12.  When CheckPoint's laptop was ultimately recovered from Scott and delivered back to it, the CheckPoint sticker was still on the underside of the laptop.  *Id.* ¶ 26.  Amazon argues that because there is no genuine dispute that the laptop Amazon delivered was not the laptop belonging to CheckPoint, it cannot as a matter of law be held liable for breach of warranty, negligence, or fraud.  Amazon Mem. at 25.

In opposition, Holmes argues that "the failure to explain specifically what happened creates doubt, precluding the entry of judgment."  Opp. at 5.  He states that he is entitled to "a complete detailed paper trail, so that all parties know the path that the computer, or computers, took" and "depositions of competent employees from the defendants, rather than sketchy two or three page affidavits."  *Id.*[16]  Holmes also suggests that discovery might reveal that Amazon employees negligently or intentionally sent him CheckPoint's computer rather than the computer he ordered.  *Id.* at 7.  These arguments do not raise a genuine issue of material fact.  First, a plaintiff is not entitled to discovery because he does not currently have evidence to show that summary judgment is unwarranted.  To the contrary, "where a plaintiff fails to produce any specific facts whatsoever to support . . . [his] allegation[s], a district court may, in its discretion, refuse to permit discovery and grant summary judgment."  *Contemporary Mission, Inc. v. U.S.*

---

[16] Although Holmes takes issue with the affidavits and declarations provided by Amazon, those are admissible forms of evidence under Rule 56 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P 56(c)(1)(A) (providing that a party may support an assertion through citation to "affidavits or declarations"); *id.* 56(c)(4) (providing that affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").  The Court finds that each of Amazon's affidavits and declarations meet the Rule 56 standard, and Holmes makes no specific objection to any affiant or declarant's lack of knowledge.

*Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981). Holmes offers no facts to support the contention that the laptop CheckPoint purchased was delivered to him by Amazon, and he does not refute his earlier statements that the laptop he received from Amazon was new, shrink-wrapped, and had no sticker on it. Instead, Holmes' opposition rests on nothing more than speculation, which cannot defeat a motion for summary judgment. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). The Court therefore GRANTS Amazon's motion for summary judgment for Holmes' second through fifth claims.

## VI.     HOLMES' MOTION TO AMEND

On October 6, 2017, Holmes moved to amend the Complaint. *See* Doc. 47. A court may deny leave to amend a complaint for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). A *pro se* complaint should be read liberally, and the Court should grant leave to amend if a "liberal reading" provides "any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir. 1999)). But where the issues with a complaint are "substantive" and cannot be cured by more artful or specific allegations, repleading would be "futile" and a request for further amendment "should be denied." *Id.*

Holmes' proposed amended complaint does not add any factual allegations which would alter the Court's determination that judgment on the pleadings in favor of Apple and summary judgment in favor of Amazon is appropriate. For example, Holmes still fails to allege specific misrepresentations made to him about the laptop he purchased from Amazon. *See* Doc. 47-1 ¶¶ 121–22, 127. Holmes also adds a cause of action against FedEx for acting negligently in its

investigation of CheckPoint's missing laptop computer.  *See id.* ¶¶ 135–40.  To allege negligence

under New York law, "a plaintiff must demonstrate (1) a duty owed by the defendant to the

plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom."  *Lerner v. Fleet*

*Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New*

*York*, 66 N.Y.2d 1026, 1027 (1985)).  Holmes has not even alleged the first element—that FedEx

owed him a duty.  Further, he has made only conclusory statements, rather than factual

allegations, to support his argument that FedEx acted negligently.  *E.g.*, Doc. 47-2 ¶ 138.  The

Court therefore DENIES Holmes' request for leave to amend as futile.

**VII.   CONCLUSION**

      For the reasons stated above, it is ORDERED that:

1.  Holmes' motion to amend the Complaint (Doc. 47) is DENIED;

2.  CheckPoint's motion to dismiss for lack of personal jurisdiction (Doc. 48) is GRANTED;

3.  Holmes' motion for jurisdictional discovery (Doc. 67) is DENIED;

4.  Amazon's motion (Doc. 91) is granted in the following respects:  (1) judgment will be entered against Amazon in the amount of $2,351 on Claim 1; (2) summary judgment is granted in Amazon's favor on Claims 2, 3, 4, and 5; and (3) judgment on the pleadings is granted in Amazon's favor on Claims 6, 7, and 8.

5.  Apple's motion for entry of judgment on the pleadings (Doc. 97) is GRANTED.

The Clerk of Court is respectfully directed to terminate the motions and close the case.

It is SO ORDERED.

Dated:    July 23, 2018
        New York, New York

                                  Edgardo Ramos, U.S.D.J.

**SA0366**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
TYRONE HOLMES,

                   Plaintiff,

     -against-

APPLE INC., AMAZON. COM, LLC, and
CHECKPOINT FLUIDIC SYSTEMS
INTERNATIONAL, LTD.,

                  Defendants.
------------------------------------------------------------X

17 **CIVIL** 4557 (ER)

## JUDGMENT

It is hereby **ORDERED, ADJUDGED AND DECREED:**  That for the reasons stated in the Court's Opinion and Order dated July 23, 2018, the Court orders that:

1. Holmes' motion to amend the Complaint is denied;

2. CheckPoint's motion to dismiss for lack of personal jurisdiction is granted;

3. Holmes' motion for jurisdictional discovery is denied;

4. Amazon's motion is granted in the following respects: (1) judgment is entered against Amazon in the amount of $2,351 on Claim 1; (2) summary judgment is granted in Amazon's favor on Claims 2, 3, 4, and 5; and (3) judgment on the pleadings is granted in Amazon's favor on Claims 6, 7 and 8;

5. Apple's motion for entry of judgment on the pleadings is granted: accordingly, judgment on the pleadings is granted in Apple's favor, and the case is closed.

**Dated:**  New York, New York
      July 24, 2018

                    **RUBY J. KRAJICK**
                     **Clerk of Court**

**BY:**

                     **Deputy Clerk**

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
TYRONE HOLMES,                                         No. 17-cv-4557-ER

                            Plaintiff,

    -against-                                        **NOTICE OF APPEAL**

APPLE INC.,
AMAZON.COM, LLC, and
CHECKPOINT FLUIDIC SYSTEMS
INTERNATIONAL, LTD.,

                            Defendants.
-------------------------------------------------------------------X

**NOTICE** is hereby given that the following party, plaintiff, TYRONE HOLMES,

in the above-named case, appeals to the United States Court of Appeals for the Second Circuit

from the order entered on July 23, 2018 that: denied plaintiff's motion to amend the complaint

and for discovery; granted defendant's, Checkpoint's, motion to dismiss; granted defendant's,

Amazon's, motions for summary judgment and judgment on the pleadings; and granted

defendant's, Apple's, motion for judgment on the pleadings.

Dated: New York, New York            _____/s/_____
      August 22, 2018             Robert G. Leino,
                                Attorney for Plaintiff Tyrone Holmes
                                15 W. 55th Street, 6 D
                                New York, New York 10019
                                (917) 613-5926
                                rgleino@leinolaw.com

N.Y.S.D. Case #
17-cv-4557(ER)

18-2492
*Holmes v. Apple, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of December, two thousand nineteen.

Present:

PIERRE N. LEVAL,
RICHARD C. WESLEY,
DEBRA ANN LIVINGSTON,
*Circuit Judges.*

_____

TYRONE HOLMES,

*Plaintiff-Appellant,*

v.                                              18-2492-cv

APPLE INC.,
AMAZON.COM, LLC,
CHECKPOINT FLUIDIC SYSTEMS
INTERNATIONAL, LTD.,

*Defendants-Appellees.*

_____

For Plaintiff-Appellant:        ROBERT G. LEINO, New York, NY

For Defendant-Appellee
Apple Inc.:                     HANNAH Y. CHANOINE, O'Melveny & Myers LLP,
                                New York, NY (David R. Eberhart, O'Melveny &
                                Myers LLP, San Francisco, CA; Ephraim McDowell,
                                O'Melveny & Myers LLP, *on the brief*)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Dec 09 2019

1

CERTIFIED COPY ISSUED ON 12/09/2019

```
33
34    For Defendant-Appellee
35    Amazon.com, LLC.:                     MICHAEL J. GOETTIG, Davis Wright Tremaine LLP,
36                                           New York, NY
37
38    For Defendant-Appellee
39    CheckPoint Fluidic Systems
40    International, Ltd.:                   BRIAN DALE GRAIFMAN, Borah, Goldstein, Altschuler,
41                                           Nahins & Goidel, P.C., New York, NY
42
```

Appeal from a judgment of the United States District Court for the Southern District of New York (Ramos, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in full and **REMANDED** for further proceedings in accordance with this order.

Plaintiff-Appellant Tyrone Holmes ("Holmes") appeals from July 23, 2018 order in the United States District Court for the Southern District of New York (Ramos, *J.*), granting Defendant-Appellee CheckPoint Fluidic Systems Int'l, Ltd.'s ("CheckPoint") motion to dismiss for lack of personal jurisdiction and denying Holmes's related motion for jurisdictional discovery, granting Defendant-Appellee Apple Inc.'s ("Apple") motion for entry of judgment on the pleadings, granting in part and denying in part Defendant-Appellee Amazon.com, LLC's ("Amazon") motion for entry of judgment on the pleadings, granting Amazon's motion for summary judgment, entering judgment against Amazon in the amount of $2,351.12 as to Holmes's breach-of-contract claim, and denying Holmes's motion to amend the complaint.

This appeal arises from Holmes's purchase of an Apple MacBook Pro laptop computer along with an AppleCare support plan from Amazon. Holmes alleges that the purportedly brand-new laptop he received was actually a MacBook Pro that Amazon had previously sold to CheckPoint (the "CheckPoint Laptop"), which contained tracking software developed by third-

2

**SA0370**

party Kaseya and installed by CheckPoint employees after purchase. When the CheckPoint Laptop went missing in transit to Dubai via FedEx, CheckPoint used the Kaseya software to track its laptop to Holmes and his estranged wife Stephanie Scott ("Scott"), from whom the New York City Police Department (the "NYPD") ultimately recovered the computer. We otherwise assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

*     *     *

**I. Personal Jurisdiction over CheckPoint**

The district court dismissed Holmes's claims against CheckPoint for lack of personal jurisdiction. On appeal, Holmes argues that the district court had jurisdiction over CheckPoint primarily because the events giving rise to this litigation created sufficient contacts with the state to support personal jurisdiction. These arguments are without merit, and the district court was correct to dismiss the claims against CheckPoint and to deny Holmes's request for jurisdictional discovery.

"We review a district court's dismissal of an action for want of personal jurisdiction *de novo*, construing all pleadings and affidavits in the light most favorable to the plaintiff and resolving all doubts in the plaintiff's favor." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). A plaintiff has the burden of establishing personal jurisdiction over an entity against which it seeks to bring suit, and to survive a motion to dismiss for lack of such jurisdiction, "a plaintiff must make a prima facie showing that jurisdiction exists." *Id*. at 34–35 (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003); quoting *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006)). In other words, a plaintiff must "include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the

defendant." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (internal quotation marks and alterations omitted).

C.P.L.R. § 302, New York's long-arm statute, affords New York courts personal jurisdiction over a non-domiciliary who (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state;" (2) "commits a tortious act within the state . . . ;" (3) "commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;" or (4) "owns, uses or possesses any real property situated within the state." C.P.L.R. § 302(a)(1)–(4).

None of these jurisdictional bases is present here. Although Holmes makes conclusory allegations that CheckPoint committed tortious conduct both within and outside New York by tracking the missing CheckPoint Laptop and communicating about its location with FedEx—with the ultimate effect that the NYPD attempted to recover the computer from Holmes—he has pleaded no facts that support tort liability. A tort claim rooted in negligence requires a plaintiff to establish duty, breach, causation, and damages. *See Roberson v. Wyckoff Heights Medical Ctr.*, 999 N.Y.S.2d 428, 429 (2d Dep't 2014). But Holmes's complaint does not allege (and his appellate brief does not even suggest) that CheckPoint owed Holmes a particular duty in attempting to recover its lost computer, or a means by which it breached that duty. Indeed, the complaint alleges that the computer CheckPoint tracked belonged to CheckPoint and was not meant to leave its possession.

4

**SA0372**

Because the district court properly determined that Holmes failed to make a *prima facie* case for jurisdiction or establish how further discovery could aid his case, it did not abuse its discretion in denying his motion for jurisdictional discovery. *See Haber v. United States*, 823 F.3d 746, 753 (2d Cir. 2016) (noting that jurisdictional discovery is inappropriate where requesting party has not shown how the requested discovery would produce facts necessary to withstand dismissal); *see also Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 255 (2d Cir. 2007) ("[T]he district court acted well within its discretion in declining to permit discovery because the plaintiff had not made out a prima facie case for jurisdiction.").

## II. Apple's Motion for Judgment on the Pleadings

The district court granted Apple's motion for judgment on the pleadings as to the eight claims Holmes raised against it, each of which arises from the fact that the CheckPoint Laptop contained Kaseya tracking software. On appeal, Holmes challenges only the dismissal of its breach-of-contract, products liability, and negligence claims. *See McCarthy v. SEC*, 406 F.3d 179, 186 (2d Cir. 2005) ("[A]rguments not raised in an appellant's opening brief . . . are not properly before an appellate court even when the same arguments were raised in the trial court."). Each of these claims is without merit.

We review a district court's ruling on a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) *de novo*, accepting all factual allegations in the complaint as true and construing them in the light most favorable to the non-moving party. *Latner v. Mt. Sinai Health Sys., Inc*., 879 F.3d 52, 54 (2d Cir. 2018). A motion for judgment on the pleadings must meet the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6), *King v. Am. Airlines, Inc*., 284 F.3d 352, 356 (2d Cir. 2002), and must therefore "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *WC Capital*

**SA0373**

*Mgmt., LLC v. UBS Secs., LLC*, 711 F.3d 322, 328 (2d Cir. 2013). The complaint must do more than raise the "mere possibility of misconduct" and "tender[] naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (internal quotation marks and alterations omitted).

Holmes's complaint does not plausibly allege a contractual relationship between himself and Apple. Documentation provided by Holmes indicates that Amazon, and not Apple, sold Holmes the computer and AppleCare plan he purchased. By its express terms, AppleCare does not create a contract with Apple unless a user registers the plan, something Holmes never did. Even if such a contract did exist, Holmes has alleged no facts that would constitute a potential breach of AppleCare, a service contract that provides for support in replacing or repairing Apple hardware in certain circumstances. Holmes alleges only that the laptop was defective because it contained tracking software neither sold nor installed by Apple, but AppleCare explicitly disclaims any responsibility to support users in connection with third-party products.

Nor does Holmes make out a claim for strict liability or negligence. His complaint alleges that CheckPoint installed the Kaseya software at issue, not Apple. But New York courts do not impose strict liability when a manufacturer engaged in the "lawful distribution of a non-defective product" and "[t]he harm that plaintiff[] allege[s] is . . . attributable to intervening third parties." *Smith v. 2328 Univ. Ave. Corp.*, 859 N.Y.S.2d 71, 73–74 (1st Dep't 2008). The same principle extends to general negligence actions. *Robinson v. Reed-Prentice Div. of Package Mach. Co.*, 49 N.Y.2d 471, 475 (N.Y. 1980).

### III. Amazon's Motions for Judgment on the Pleadings and Summary Judgment

At Amazon's request, the district court entered judgment for Holmes in the amount of $2,351.12, the price Holmes paid to Amazon for the laptop and AppleCare plan he purchased, in

**SA0374**

fulfillment of Holmes's breach-of-contract claim against Amazon. The district court granted Amazon's motion for judgment on the pleadings as to three of Holmes's other seven claims against Amazon and entered summary judgment in Amazon's favor as to the remaining four. On appeal, Holmes challenges only the district court's entry of summary judgment, arguing that issues of material fact remain because Amazon has not been able to explain the path the CheckPoint Laptop took, and how the NYPD came to recover the CheckPoint Laptop from Scott when Holmes ordered and received a new, shrink-wrapped computer. But Holmes has failed to raise any factual disputes that would preclude summary judgment, and we find that the district court's ruling was appropriate.

We review the district court's grant of summary judgment *de novo* and construe the evidence in the light most favorable to the non-moving party. *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials . . . , and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).

Amazon submitted affidavits and other documentary evidence to show that it shipped Holmes a brand-new computer sourced directly from Apple and packaged for delivery in Lewisberry, Pennsylvania, and that it shipped CheckPoint a different brand-new computer sourced directly from Apple that was packaged for delivery in Breiningsville, Pennsylvania, [*id.*]. An affidavit from CheckPoint states, and Holmes does not contest, that upon receipt of the CheckPoint Laptop, a CheckPoint employee installed the Kaseya software and affixed to the computer a label reading "Property of CheckPoint Pumps." The label remained on the laptop when the NYPD recovered it. Both before the district court and now on appeal, Holmes appears to acknowledge

7

**SA0375**

that the laptop he received from Amazon was shrink-wrapped and unlabeled. Holmes submitted

no evidence of any kind to contest that the laptop he received from Amazon and the CheckPoint

Laptop were two entirely separate computers. And since there was no such evidence in the record,

the district court was correct to find that Amazon had not sold Holmes the CheckPoint Laptop and

could not be liable for any of its alleged defects.

 Holmes's argument that summary judgment is inappropriate unless Amazon can explain

how Scott got the CheckPoint Laptop is meritless. Holmes bears the burden to show that Amazon

caused his alleged injuries. To merit summary judgment, Amazon need only show that Holmes

cannot carry this burden. Since Amazon has done so, it is immaterial that the record does not reveal

precisely how Scott came to possess the CheckPoint Laptop. *See Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986) (defining a "material" fact as one that "might affect the outcome of the

suit under the governing law").

**IV. Holmes's Liability for Amazon's Costs**

 Amazon asks us to remand to the district court to assess costs against Holmes because

Holmes rejected its offer of judgment in the amount of $2,351.12, but subsequently received a

judgment in precisely that amount. Federal Rule of Civil Procedure 68(d) provides that if a party

receives and rejects an offer of judgment, but "finally obtains" a judgment that is "not more

favorable than the unaccepted offer," that party must "pay the costs incurred after the offer was

made." Fed. R. Civ. P. 68(d). The cost-shifting mechanism of Rule 68 is "designed to encourage

settlements without the burdens of additional litigation." *Stanczyk v. City of New York*, 752 F.3d

273, 280 (2d Cir. 2014). On appeal, Holmes argues that Amazon's offer of $2,351.12 did not

provide him complete relief. But Holmes was bound by Amazon's conditions of use, which limited

his breach of contract remedy. Under those conditions, Amazon's offer of $2,351.12 provided

complete relief on Holmes's breach of contract claim. We therefore remand the case to give Amazon the opportunity to move in the district court for an assessment of costs pursuant to Rule 68(d).

**V. Holmes's Motion to Amend the Complaint**

Finally, Holmes argues that the district court erred in declining to allow him to amend his complaint to add FedEx as a defendant. Since such an amendment would have been futile, the district court did not abuse its discretion in denying the motion. We review a district court's denial of leave to amend a pleading for abuse of discretion. *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009). A court may deny leave to amend a complaint for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.* (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). *Pro se* complaints in particular should be read liberally, such that the court should give leave to amend if there is "any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). But a request should be denied where "the problem with [a plaintiff's] causes of action is substantive," "better pleading will not cure it," and "repleading would thus be futile." *Id*.

The district court correctly concluded that Holmes's proposed amendment was futile. Holmes alleged no facts to suggest that FedEx breached a duty it owed to him. Holmes argues that FedEx's liability stems from its purportedly reckless or negligent decision to report the CheckPoint Laptop as stolen (rather than missing), but he alleges no facts to suggest that FedEx owed him a duty to do otherwise. Even read liberally, Holmes's proposed amended complaint gives no "indication that a valid claim might be stated" against FedEx. *See Cuoco*, 222 F.3d at 112.

**SA0377**

We have considered Holmes's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court in full and **REMAND** for further

proceedings in accordance with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

10

**SA0378**

MANDATE

N.Y.S.D. Case #
17-cv-4557(ER)

18-2492
*Holmes v. Apple, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

1    At a stated term of the United States Court of Appeals for the Second Circuit, held at the
2    Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the
3    9th day of December, two thousand nineteen.
4
5    Present:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 01/06/2020

6        PIERRE N. LEVAL,
7        RICHARD C. WESLEY,
8        DEBRA ANN LIVINGSTON,
9            *Circuit Judges.*
10   _____
11
12   TYRONE HOLMES,
13
14            *Plaintiff-Appellant,*
15
16            v.                                          18-2492-cv
17
18   APPLE INC.,
19   AMAZON.COM, LLC,
20   CHECKPOINT FLUIDIC SYSTEMS
21   INTERNATIONAL, LTD.,
22
23            *Defendants-Appellees.*
24   _____
25
26   For Plaintiff-Appellant:              ROBERT G. LEINO, New York, NY
27
28   For Defendant-Appellee
29   Apple Inc.:                           HANNAH Y. CHANOINE, O'Melveny & Myers LLP,
30                                         New York, NY (David R. Eberhart, O'Melveny &
31                                         Myers LLP, San Francisco, CA; Ephraim McDowell,
32                                         O'Melveny & Myers LLP, *on the brief*)

1

**MANDATE ISSUED ON 01/06/2020**

**SA0379**

33
34  For Defendant-Appellee
35  Amazon.com, LLC.:                       MICHAEL J. GOETTIG, Davis Wright Tremaine LLP,
36                                          New York, NY
37
38  For Defendant-Appellee
39  CheckPoint Fluidic Systems
40  International, Ltd.:                     BRIAN DALE GRAIFMAN, Borah, Goldstein, Altschuler,
41                                          Nahins & Goidel, P.C., New York, NY
42

Appeal from a judgment of the United States District Court for the Southern District of

New York (Ramos, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND**

**DECREED** that the judgment of the district court is **AFFIRMED** in full and **REMANDED** for

further proceedings in accordance with this order.

Plaintiff-Appellant Tyrone Holmes ("Holmes") appeals from July 23, 2018 order in the

United States District Court for the Southern District of New York (Ramos, *J.*), granting

Defendant-Appellee CheckPoint Fluidic Systems Int'l, Ltd.'s ("CheckPoint") motion to dismiss

for lack of personal jurisdiction and denying Holmes's related motion for jurisdictional discovery,

granting Defendant-Appellee Apple Inc.'s ("Apple") motion for entry of judgment on the

pleadings, granting in part and denying in part Defendant-Appellee Amazon.com, LLC's

("Amazon") motion for entry of judgment on the pleadings, granting Amazon's motion for

summary judgment, entering judgment against Amazon in the amount of $2,351.12 as to Holmes's

breach-of-contract claim, and denying Holmes's motion to amend the complaint.

This appeal arises from Holmes's purchase of an Apple MacBook Pro laptop computer

along with an AppleCare support plan from Amazon. Holmes alleges that the purportedly brand-

new laptop he received was actually a MacBook Pro that Amazon had previously sold to

CheckPoint (the "CheckPoint Laptop"), which contained tracking software developed by third-

party Kaseya and installed by CheckPoint employees after purchase. When the CheckPoint Laptop went missing in transit to Dubai via FedEx, CheckPoint used the Kaseya software to track its laptop to Holmes and his estranged wife Stephanie Scott ("Scott"), from whom the New York City Police Department (the "NYPD") ultimately recovered the computer. We otherwise assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\*     \*     \*

## I. Personal Jurisdiction over CheckPoint

The district court dismissed Holmes's claims against CheckPoint for lack of personal jurisdiction. On appeal, Holmes argues that the district court had jurisdiction over CheckPoint primarily because the events giving rise to this litigation created sufficient contacts with the state to support personal jurisdiction. These arguments are without merit, and the district court was correct to dismiss the claims against CheckPoint and to deny Holmes's request for jurisdictional discovery.

"We review a district court's dismissal of an action for want of personal jurisdiction *de novo*, construing all pleadings and affidavits in the light most favorable to the plaintiff and resolving all doubts in the plaintiff's favor." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). A plaintiff has the burden of establishing personal jurisdiction over an entity against which it seeks to bring suit, and to survive a motion to dismiss for lack of such jurisdiction, "a plaintiff must make a prima facie showing that jurisdiction exists." *Id*. at 34–35 (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003); quoting *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006)). In other words, a plaintiff must "include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the

**SA0381**

defendant." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (internal quotation marks and alterations omitted).

C.P.L.R. § 302, New York's long-arm statute, affords New York courts personal jurisdiction over a non-domiciliary who (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state;" (2) "commits a tortious act within the state . . . ;" (3) "commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;" or (4) "owns, uses or possesses any real property situated within the state." C.P.L.R. § 302(a)(1)–(4).

None of these jurisdictional bases is present here. Although Holmes makes conclusory allegations that CheckPoint committed tortious conduct both within and outside New York by tracking the missing CheckPoint Laptop and communicating about its location with FedEx—with the ultimate effect that the NYPD attempted to recover the computer from Holmes—he has pleaded no facts that support tort liability. A tort claim rooted in negligence requires a plaintiff to establish duty, breach, causation, and damages. *See Roberson v. Wyckoff Heights Medical Ctr.*, 999 N.Y.S.2d 428, 429 (2d Dep't 2014). But Holmes's complaint does not allege (and his appellate brief does not even suggest) that CheckPoint owed Holmes a particular duty in attempting to recover its lost computer, or a means by which it breached that duty. Indeed, the complaint alleges that the computer CheckPoint tracked belonged to CheckPoint and was not meant to leave its possession.

4

**SA0382**

Because the district court properly determined that Holmes failed to make a *prima facie* case for jurisdiction or establish how further discovery could aid his case, it did not abuse its discretion in denying his motion for jurisdictional discovery. *See Haber v. United States*, 823 F.3d 746, 753 (2d Cir. 2016) (noting that jurisdictional discovery is inappropriate where requesting party has not shown how the requested discovery would produce facts necessary to withstand dismissal); *see also Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 255 (2d Cir. 2007) ("[T]he district court acted well within its discretion in declining to permit discovery because the plaintiff had not made out a prima facie case for jurisdiction.").

**II. Apple's Motion for Judgment on the Pleadings**

The district court granted Apple's motion for judgment on the pleadings as to the eight claims Holmes raised against it, each of which arises from the fact that the CheckPoint Laptop contained Kaseya tracking software. On appeal, Holmes challenges only the dismissal of its breach-of-contract, products liability, and negligence claims. *See McCarthy v. SEC*, 406 F.3d 179, 186 (2d Cir. 2005) ("[A]rguments not raised in an appellant's opening brief . . . are not properly before an appellate court even when the same arguments were raised in the trial court."). Each of these claims is without merit.

We review a district court's ruling on a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) *de novo*, accepting all factual allegations in the complaint as true and construing them in the light most favorable to the non-moving party. *Latner v. Mt. Sinai Health Sys., Inc.*, 879 F.3d 52, 54 (2d Cir. 2018). A motion for judgment on the pleadings must meet the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6), *King v. Am. Airlines, Inc.*, 284 F.3d 352, 356 (2d Cir. 2002), and must therefore "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *WC Capital*

5

**SA0383**

*Mgmt., LLC v. UBS Secs., LLC*, 711 F.3d 322, 328 (2d Cir. 2013). The complaint must do more than raise the "mere possibility of misconduct" and "tender[] naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (internal quotation marks and alterations omitted).

Holmes's complaint does not plausibly allege a contractual relationship between himself and Apple. Documentation provided by Holmes indicates that Amazon, and not Apple, sold Holmes the computer and AppleCare plan he purchased. By its express terms, AppleCare does not create a contract with Apple unless a user registers the plan, something Holmes never did. Even if such a contract did exist, Holmes has alleged no facts that would constitute a potential breach of AppleCare, a service contract that provides for support in replacing or repairing Apple hardware in certain circumstances. Holmes alleges only that the laptop was defective because it contained tracking software neither sold nor installed by Apple, but AppleCare explicitly disclaims any responsibility to support users in connection with third-party products.

Nor does Holmes make out a claim for strict liability or negligence. His complaint alleges that CheckPoint installed the Kaseya software at issue, not Apple. But New York courts do not impose strict liability when a manufacturer engaged in the "lawful distribution of a non-defective product" and "[t]he harm that plaintiff[] allege[s] is . . . attributable to intervening third parties." *Smith v. 2328 Univ. Ave. Corp.*, 859 N.Y.S.2d 71, 73–74 (1st Dep't 2008). The same principle extends to general negligence actions. *Robinson v. Reed-Prentice Div. of Package Mach. Co.*, 49 N.Y.2d 471, 475 (N.Y. 1980).

### III. Amazon's Motions for Judgment on the Pleadings and Summary Judgment

At Amazon's request, the district court entered judgment for Holmes in the amount of $2,351.12, the price Holmes paid to Amazon for the laptop and AppleCare plan he purchased, in

6

**SA0384**

fulfillment of Holmes's breach-of-contract claim against Amazon. The district court granted Amazon's motion for judgment on the pleadings as to three of Holmes's other seven claims against Amazon and entered summary judgment in Amazon's favor as to the remaining four. On appeal, Holmes challenges only the district court's entry of summary judgment, arguing that issues of material fact remain because Amazon has not been able to explain the path the CheckPoint Laptop took, and how the NYPD came to recover the CheckPoint Laptop from Scott when Holmes ordered and received a new, shrink-wrapped computer. But Holmes has failed to raise any factual disputes that would preclude summary judgment, and we find that the district court's ruling was appropriate.

We review the district court's grant of summary judgment *de novo* and construe the evidence in the light most favorable to the non-moving party. *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials . . . , and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).

Amazon submitted affidavits and other documentary evidence to show that it shipped Holmes a brand-new computer sourced directly from Apple and packaged for delivery in Lewisberry, Pennsylvania, and that it shipped CheckPoint a different brand-new computer sourced directly from Apple that was packaged for delivery in Breiningsville, Pennsylvania, [**id.**]. An affidavit from CheckPoint states, and Holmes does not contest, that upon receipt of the CheckPoint Laptop, a CheckPoint employee installed the Kaseya software and affixed to the computer a label reading "Property of CheckPoint Pumps." The label remained on the laptop when the NYPD recovered it. Both before the district court and now on appeal, Holmes appears to acknowledge

7

**SA0385**

that the laptop he received from Amazon was shrink-wrapped and unlabeled. Holmes submitted no evidence of any kind to contest that the laptop he received from Amazon and the CheckPoint Laptop were two entirely separate computers. And since there was no such evidence in the record, the district court was correct to find that Amazon had not sold Holmes the CheckPoint Laptop and could not be liable for any of its alleged defects.

Holmes's argument that summary judgment is inappropriate unless Amazon can explain how Scott got the CheckPoint Laptop is meritless. Holmes bears the burden to show that Amazon caused his alleged injuries. To merit summary judgment, Amazon need only show that Holmes cannot carry this burden. Since Amazon has done so, it is immaterial that the record does not reveal precisely how Scott came to possess the CheckPoint Laptop. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (defining a "material" fact as one that "might affect the outcome of the suit under the governing law").

**IV. Holmes's Liability for Amazon's Costs**

Amazon asks us to remand to the district court to assess costs against Holmes because Holmes rejected its offer of judgment in the amount of $2,351.12, but subsequently received a judgment in precisely that amount. Federal Rule of Civil Procedure 68(d) provides that if a party receives and rejects an offer of judgment, but "finally obtains" a judgment that is "not more favorable than the unaccepted offer," that party must "pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). The cost-shifting mechanism of Rule 68 is "designed to encourage settlements without the burdens of additional litigation." *Stanczyk v. City of New York*, 752 F.3d 273, 280 (2d Cir. 2014). On appeal, Holmes argues that Amazon's offer of $2,351.12 did not provide him complete relief. But Holmes was bound by Amazon's conditions of use, which limited his breach of contract remedy. Under those conditions, Amazon's offer of $2,351.12 provided

8

**SA0386**

complete relief on Holmes's breach of contract claim. We therefore remand the case to give Amazon the opportunity to move in the district court for an assessment of costs pursuant to Rule 68(d).

## V. Holmes's Motion to Amend the Complaint

Finally, Holmes argues that the district court erred in declining to allow him to amend his complaint to add FedEx as a defendant. Since such an amendment would have been futile, the district court did not abuse its discretion in denying the motion. We review a district court's denial of leave to amend a pleading for abuse of discretion. *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009). A court may deny leave to amend a complaint for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.* (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). *Pro se* complaints in particular should be read liberally, such that the court should give leave to amend if there is "any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). But a request should be denied where "the problem with [a plaintiff's] causes of action is substantive," "better pleading will not cure it," and "repleading would thus be futile." *Id*.

The district court correctly concluded that Holmes's proposed amendment was futile. Holmes alleged no facts to suggest that FedEx breached a duty it owed to him. Holmes argues that FedEx's liability stems from its purportedly reckless or negligent decision to report the CheckPoint Laptop as stolen (rather than missing), but he alleges no facts to suggest that FedEx owed him a duty to do otherwise. Even read liberally, Holmes's proposed amended complaint gives no "indication that a valid claim might be stated" against FedEx. *See Cuoco*, 222 F.3d at 112.

9

**SA0387**

We have considered Holmes's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court in full and **REMAND** for further proceedings in accordance with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

10

**SA0388**

N.Y.S.D. Case #
17-cv-4557(ER)

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT
_____

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the
Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the
22nd day of January, two thousand twenty.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 01/22/2020

_____

Tyrone Holmes,

            Plaintiff - Appellant,

v.

Apple Inc., Amazon.com, LLC,
Checkpoint Fluidic Systems International,
Ltd.,

            Defendants - Appellees.

_____

**STATEMENT OF COSTS**

Docket No. 18-2492

IT IS HEREBY ORDERED that costs are taxed in favor of the appellees in the following
amounts:

Checkpoint Fluidic Systems International, Ltd.    $211.40
Amazon.com, LLC    $200.60

For the Court:
Catherine O'Hagan Wolfe,
Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

CERTIFIED COPY ISSUED ON 01/22/2020

**SA0389**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

--------------------------------------------------------- x

TYRONE HOLMES,                                :
                              Plaintiff,      :        Case No. 17-cv-4557 (ER) (KNF)
                                              :
                    - against -               :        Honorable Edgardo Ramos
                                              :        **NOTICE OF MOTION**
APPLE, INC., AMAZON.COM, LLC, and             :
CHECKPOINT FLUIDIC SYSTEMS                    :
INTERNATIONAL, LTD.,                          :
                                              :
                              Defendants.     :

--------------------------------------------------------- x

**TO:**    All counsel (via ECF)

     **PLEASE TAKE NOTICE** that the undersigned attorneys for the defendant

Amazon.com, LLC ("Amazon") will apply before the Honorable Judge Edgardo Ramos of the

Southern District of New York at Courtroom 619, 40 Foley Square, New York, New York, on a

date to be determined by the Court, for an Order pursuant to Rule 68(d) of the Federal Rules of

Civil Procedure, for an assessment of costs in its favor and against the plaintiff .

     **PLEASE TAKE FURTHER NOTICE** that in support of this motion, Amazon shall

rely upon this Notice of Motion, the accompanying Memorandum of Law in Support of

Amazon's Motion for Assessment of Costs, the Declaration of Michael J. Goettig together with

its Exhibits, and all prior proceedings had herein.

     **PLEASE TAKE FURTHER NOTICE** that per the Court's order, Plaintiff's response,

if any, shall be due on or before February 24, 2020, and Amazon's reply, if any, shall be due

March 3, 2020.

4843-1118-6610v.2 -

**SA0390**

Dated: New York, New York.
      February 3, 2020

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP


By:   */s/*
      Michael J. Goettig

1251 Avenue of the Americas
21st Floor
New York, New York  10020
+1 (212) 489-8230
*Attorneys for Defendant*
*Amazon.com, Inc.*

4843-1118-6610v.2 -

**SA0391**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TYRONE HOLMES,                                    No. 17-cv-4557-ER

                                  Plaintiff,

          - against -                              **"Motion for Relief from
                                                   Judgment" or
APPLE INC.,                                        "Rule 60 Motion for Relief
AMAZON.COM, LLC, and                               from Judgment"
CHECKPOINT FLUIDIC SYSTEMS                         Objections to Bill of Costs**
INTERNATIONAL, LTD.,

                                  Defendants.
------------------------------------------------------------------X

Given the serious and numerous irregularities in the litigation of this case -
Plaintiff, Tyrone Holmes, has suffered a tremendous injustice and should be
given relief from the judgment that has been entered in this matter.

Federal Rule of Civil Procedure 60 (b) provides relief to plaintiff from judgment.
The standards and guidelines for applying Rule 60 follow: "Under **Rule 60**, Fed. R.
Civ. P., a court may relieve a party from a final judgment, order, or proceeding for the
specific reasons outlined in the rule, as well as, under **Rule 60**(b)(6), for "**any other
reason that justifies relief**." The Second Circuit Court of Appeals has held that "subpart
(6) is 'properly invoked where there are extraordinary circumstances or where the
judgment may work an extreme and undue hardship.'" *DeWeerth v. Baldinger*, 38 F.3d
1266, 1272 (2d Cir. 1994) (quoting *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir.
1986)).
**Rule 60**(b)(6) "confers broad discretion on the trial court to grant relief when appropriate
to accomplish justice [and] it constitutes a grand reservoir of equitable power to do
justice in a particular case." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004)
(quoting *Matarese*, 801 F.2d at 106). A court's authority to issue relief under the Rule
"should be liberally construed when substantial justice will thus be served." *Matarese*,
801 F.2d at 106."

*Empresa Cubana Del Tabaco v Culbro Corp*., 587 F Supp 2d 622, 626-627 (SDNY
2008)

Missing of the deadline was inadvertent, from day one (7 months prior to
starting any action while waiting for Amazon to respond to the crises caused

DocuSign Envelope ID: FFC48451-EB3C-4BBE-8D90-7EB3A4A8458B

'in due course' . As ProSe I have acted expeditiously and in good faith in the filings of both cases against 6 sophisticated law firms, as they were allowed to dance around discovery for (four years) as my life slowly dripped down the drain. Cases should, in the main, be decided Â *on the merits*, not on technicalities. *Rodriguez v. Village Green Realty, LLC*, 788 F.3d 31, 47 (2d. Cir. 2015) (citingÂ *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 334 F. Supp. 2d 197, 247 (NDNY 2014)

The facts are clear as echoed in the Appeal court hearing several months ago, and that is, that there is and always has been only one computer. This is contrary to Checkpoint's and Amazon's elementary stories throughout these proceedings. Despite global companies and law enforcement (FedEx/NYPD) admitting to wrongdoing as favors, and frankly, criminal activity and fraud for friends, commencing false stolen police reports while harassing innocent Amazon consumers, despite being spied on for 3 months by a Department of Defense contractor who installed the spyware, despite all my and my companies information is now in Moscow Russia, despite these companies ruining my life, livelihood, credit score and destroying my immediate family, Amazon's egotistical influence uses its time to cause even more mental stress during this COVID-19 pandemic, asking for fees, is insane.

I was covering as a musician for a funeral in 2016 when this all started. I am now dealing with at least 20 family and friends who have past away, and literarily doing funerals and virtual funerals almost daily. At the same time continuing support and ensuring worship services are streamed live to thousands of parishioners each week.

I have not been able to obtain or afford recognized counsel to continue to fight the companies who have willfully and maliciously destroyed my life. And although I have crossed path with some great attorneys they all said what has and is happening here, and as Apple so elegantly conveyed to me before entering the court chambers of Judge Ramos for the first time, Apple stated (no matter what happened here, this judge is not going to let me win against the defendants) I can say that Apple has not lied in this case, and as it relates to one computer, being as a matter of fact. Apple has not been

forthcoming, knowing what Amazon did early on, but at least not committing fraud on this court.

The United States Appeals Court posed a significant question to the manufacturer of this infamous Apple Laptop laced with international spyware purchased from Amazon, now in Dubai. The question: Is it one computer or two? Apple answered one computer and also stated this information has been in the sealed records of the courts for 4 years.

Although Amazon's defense evolved on the record before this court, first defense: as-is, second defense: there's another invisible computer somewhere, third defense and most damaging: plaintiff and his wife stole the computer from a hi-tech FedEx facility in Louisiana, and then somehow purchased it, in the future. And lastly, res judicata. This allowed mockery of rule of law is astonishing and seems to be normal in today's climate. Had we had discovery Amazon could not have changed its position(s) and to cause significant harm and damage.

Both cases have been before this same court where the defendants intentionally misled this court by a two computer story. The fact is the computer I purchased from Amazon, and my wife registered with Apple is the same computer aggressively seized by the NYPD 3 months after purchase. The fact that Apple and plaintiff have always stated one computer registered with one serial number, the fact that Amazon and Checkpoint have contributed elementary easily detectable fraud to this court, and the fact that the Appeals court posed the question and received the answer of one computer should make this court furious of the time spent and fraud committed on this court and reverse the judgment and immediately move to full discovery, and restore my good name of 30 plus years, before simply purchasing a brand new Apple from Amazon, with AppleCare™, minding my own business. (EXHIBIT 1)

DocuSigned by:

6F2AA96C87CC4C1...

Respectfully Submitted

Prose Plaintiff

DocuSign Envelope ID: FFC48451-EB3C-4BBF-8D90-7FD3A4A8453B

/s/ Tyrone Holmes

Dated:May 11, 2020

cc: All parties (via ECF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYRONE HOLMES,

                              Plaintiff,

        – against –

APPLE, INC., AMAZON.COM, LLC, and
CHECKPOINT FLUIDIC SYSTEMS
INTERNATIONAL, LTD.,

                              Defendants.

**ORDER**

17 Civ. 4557 (ER)

RAMOS, D.J.:

        Tyrone Holmes, proceeding *pro se*, brought this lawsuit on June 16, 2017,

asserting eight causes of action against Defendants Apple Inc. ("Apple"), Amazon.com,

LLC ("Amazon"), and CheckPoint Fluidic Systems International, Ltd. ("CheckPoint").

Doc. 1.  On July 23, 2018, the Court granted Apple's motion for judgment on the

pleadings and CheckPoint's motion to dismiss.  Doc. 121.  With respect to Amazon, the

Court entered judgment for Amazon on three of the claims against it, granted summary

judgment in its favor on four others, and, at its request, entered judgment against it on a

breach of contract claim.  *Id.*  On April 14, 2020, the Court granted Amazon's motion for

an assessment of costs.  Doc. 142.  Before the Court is Holmes's motion for relief from

this judgment pursuant to Federal Rule of Civil Procedure 60(b)(6).  Doc. 144.  For the

following reasons, Holmes's motion is DENIED.

**I.      LEGAL STANDARD**

        Holmes moves for relief from judgment pursuant to Federal Rule of Civil

Procedure 60(b)(6).  Rule 60(b)(6) is a catch-all that provides for reconsideration of an

order for "any . . . reason that justifies relief."  The Second Circuit has instructed

that Rule 60(b) provides "extraordinary judicial relief" and can be granted "only upon a

showing of exceptional circumstances."  *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d

Cir.1986).  "Relief is warranted 'where there are extraordinary circumstances, or where

the judgment may work an extreme and undue hardship, and should be liberally construed when substantial justice will thus be served.'" *Id.* (quoting *Matarese*, 801 F.2d at 106). "Rule 60(b)(6) 'confers broad discretion on the trial court to grant relief when appropriate to accomplish justice.'" *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir.2009) (quoting *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir.1986)). Whether to grant or deny a motion for reconsideration is "within 'the sound discretion of the district court.'" *Premium Sports Inc. v. Connell*, No. 10 Civ. 3753 (KBF), 2012 WL 2878085, at *1 (S.D.N.Y. Jul. 11, 2012) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)).

## II.   DISCUSSION[1]

Holmes moves for relief from this Court's order granting Amazon's motion for an assessment of costs pursuant to Rule 68(d).[2] As an initial matter, Holmes's motion for reconsideration is untimely. Local Rule 6.3 provides that motions for reconsideration must be brought within fourteen days of the Court's determination of a motion. S.D.N.Y. Local Civ. R. 6.3. Plaintiffs' motion was not made within that timeframe. The Court's order was issued on April 14, 2020. Doc. 142. Holmes did not file his request for reconsideration or relief from judgement until May 11, 2020. Doc. 144. Holmes argues that this was "inadvertent," and appeals to his *pro se* status. *Id.* at 2. But Holmes is no stranger to filing deadlines, as his past participation in this litigation shows.

Even if the Court were to reach the merits, it would not grant Holmes's motion. As the Court found in its previous order, the language of Rule 68 is mandatory. Doc. 142 at 3. To put it plainly, the Court was *required* to award Amazon its costs. Moreover, Holmes has failed to identify any "exceptional circumstances" that would warrant relief.

---

[1] The Court assumes familiarity with its prior order, Doc. 142, as well as with its previous opinion in this case, *Holmes v. Apple, Inc.*, No. 17 Civ. 4557 (ER), 2018 WL 3542856 (S.D.N.Y. July 23, 2018), and in the related case, *Holmes v. City of New York*, No. 19 Civ. 1628 (ER), 2020 WL 918611 (S.D.N.Y. Feb. 26, 2020).

[2] In its order, the Court ordered Amazon to submit a bill of costs within ten days. Doc. 142 at 3. Amazon did so on April 24, 2020, Doc. 143, representing that it was seeking $544.42 in costs.

He cites "the serious and numerous irregularities in this litigation of this case," Doc. 144 at 1, and states that Amazon's request for fees "during this COVID-19 pandemic . . . is insane," *id.* at 2; however, his application is, at best, an attempt to relitigate issues that have already been decided numerous times by this Court and others. This is not an appropriate basis for granting the "extraordinary judicial relief" afforded by Rule 60(b).

**III.    CONCLUSION**

For the foregoing reasons, Holmes's motion for relief from judgement is DENIED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 144.

It is SO ORDERED.

Dated:   May 15, 2020
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.



UNITED STATES DISTRICT COURT
**SOUTHERN DISTRICT OF NEW YORK**
**OFFICE OF THE CLERK**
**500 PEARL STREET**
**NEW YORK, NEW YORK 10007**

**RUBY J. KRAJICK**
CLERK OF COURT

January 21, 2022

**BY ECF AND OVERNIGHT MAIL**

Tyrone Holmes
1465 Hammersley Ave
Bronx, NY 10469

Michael John Goettig
Davis Wright Tremaine LLP (NYC)
1251 Avenue of the Americas
New York, NY 10020

David R Eberhart
O'Melveny & Myers, LLP
Two Embarcadero Center
San Francisco, CA 94111

Brian Dale Graifman
Borah, Goldstein, Altschuler ,Nahins, &
Goidel, P.C.
377 Broadway, 6th Floor
New York, NY 10013

Re: 1:17-cv-04557-ER, Holmes v. Apple Inc. et al

Dear Mr. Holmes and Counsel,

I have been contacted by Judge Edgardo Ramos, U.S.D.J., who presided over the above-named case.

Judge Ramos informed me that it has been brought to his attention that well after the case was filed but while he still presided over the case, he owned stock in Apple Inc. His ownership of stock neither affected nor impacted his decisions in this case. However, his stock ownership may have required recusal under the Code of Conduct for United States Judges, and thus, he directed that I notify the parties of the potential conflict.

Advisory Opinion 71, from the Judicial Conference Codes of Conduct Committee, provides the following guidance regarding disqualification:

[A] judge should disclose to the parties the facts bearing on disqualification as soon as those facts are learned, even though that may occur after entry of the decision. The parties may then

**SA0399**

Notice of Counsel of Record
January 21, 2022
Page 2

determine what relief they may seek, and a court (without the disqualified judge) will decide the legal consequence, if any, arising from the participation of the disqualified judge in the entered decision.

Although Advisory Opinion 71 contemplated disqualification after a Court of Appeals oral argument, the Committee explained "[s]imilar considerations would apply when a judgment was entered in a district court by a judge and it is later learned that the judge was disqualified."

If you wish to respond to the disclosure of a potential conflict in this matter, please file your response in the above-named case.  Any response will be considered by another judge of the court without the participation of Judge Ramos.

Sincerely,

Ruby J. Krajick
Clerk of Court

cc: Hon. Edgardo Ramos, U.S.D. J.

DocuSign Envelope ID: 55266857-24AC-453B-AEA3-EC9398D224866

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

_____

**TYRONE HOLMES,**                                        Civil Action No. 1:17-cv-04557-ER

                                    **Plaintiff,**

    **v.**

**APPLE INC., AMAZON.COM, LLC, and**

**CHECKPOINT FLUIDIC SYSTEMS**

**INTERNATIONAL, LTD.,**

                                    **Defendants.**

_____

## MOTION TO VACATE JUDGMENT

Plaintiff moves pursuant to the Letter from the Clerk of the Court dated January 21, 2021, and

under (1) 28 U.S.C. §455(a) based upon an alleged appearance of partiality, (2)Advisory Opinion

71, from the Judicial Conference Codes of Conduct Committee,(3) Rule 60(a)(4), Rule (21) and

(5) Rule 15 of the Federal Rules of Civil Procedure to vacate the Judgments and Orders by Judge

Edgardo Ramos dated July 23, 2018, and entered in this action on July 23, 2018,

    1.   Denying the Holmes' Motion to Amend the Complaint

    2.   Granting CheckPoint's motion to dismiss for lack of personal

jurisdiction.

3.  Denying Holmes' motion for jurisdictional discovery.

4.  Granting Amazon's motion (Doc. 91) in the following respects

   (1) judgment will be entered against Amazon in the amount of $2,351 on Claim 1;

   (2) summary judgment in Amazon's favor on Claims 2, 3, 4, and 5; and

   (3) judgment on the pleadings in Amazon's favor on Claims 6, 7, and 8.

5.   Granting Apple's motion for entry of judgment on the pleadings ( Doc. 97). and

   Directing the Clerk of Court to terminate all motions and close the case,

based on undisclosed financial interest in defendants, Apple and Amazon, and proposed

defendant, FedEx in the proposed Amended Complaint, for reasons set forth more specifically in

the accompanying Affidavit of Holmes.

Dated:                                              2/4/2022

Signature: s/_____Tyrone Holmes

1465 Hammersley Ave

Bronx, NY 10469

(T) 646-701-4069 Signature

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

_____

**TYRONE HOLMES,**                                    Civil Action No. 1:17-cv-04557

                        **Plaintiff,**

            **v.**

**APPLE INC., AMAZON.COM, LLC, and**

**CHECKPOINT FLUIDIC SYSTEMS**

**INTERNATIONAL, LTD.,**

                        **Defendants.**

_____

### PLAINTIFF'S DECLARATION IN SUPPORT OF

### MOTION TO VACATE JUDGMENT

### FACTUAL BACKGROUND

On May 10, 2016, Apple sold Amazon a MacBook Pro laptop, bearing the serial number C02RQ1T3G8WN. Rule 56.1 Statement of Apple ("Apple 56.1") (Doc. 99) ¶ 1. Amazon, in turn, sold that laptop to CheckPoint on June 2, 2016. Rule 56.1 Statement of Amazon ("Amazon 56.1") (Doc. 100) ¶ 4. That laptop was packaged for delivery in Breinigsville, Pennsylvania. Id. ¶¶ 2–3. CheckPoint received the computer by June 7, 2016, and an employee there installed a third-party tracking software, Kaseya, onto the laptop. Id. ¶¶ 3– 4. That employee also affixed a "property of CheckPoint Pumps" sticker to the laptop. Id.

CheckPoint placed the laptop into original Apple packaging and Amazon shipping box for shipment to Dubai. (Doc. 51) "subsequently attempted to ship the laptop to Dubai through FedEx" in not in (Doc, 51);  however, the laptop did not arrive. Id. ¶¶ 5–6. A CheckPoint employee filed a report with FedEx to notify it of the loss on June 15, 2016. Id. ¶ 6. On June 22, 2016, Holmes purchased an Apple MacBook Pro laptop and an AppleCare Protection Plan ("AppleCare") through Amazon. See Compl. ¶ 21. The laptop was listed on Amazon's website as "brand new" and Holmes understood that the product would be free from defects and that it would not contain spyware or malware. Id. ¶¶ 21, 23–24.

On June  2016, Amazon delivered to UPS a MacBook Pro laptop bearing the serial number C02RQ1T3G8WN for delivery to Holmes. The computer delivered to UPS did not have any sticker on it indicating a prior sale.


This case involves the selling by Amazon a MacBook Pro laptop bearing the serial number C02RQ1T3G8WN, twice, once to CheckPoint and then to Holmes and the fraudulent effort to coverup the double sale.


FACTUAL BACKGROUND

On May 10, 2016, Apple sold. Rule 56.1 Statement of Apple ("Apple 56.1") (Doc. 99) ∬ 1. Amazon, in turn, sold that laptop to CheckPoint on June 2, 2016. Rule 56.1 Statement of Amazon ("Amazon 56.1") (Doc. 100) ∬ 4. That laptop was packaged for delivery in Breinigsville, Pennsylvania. Id. ∬∬ 2–3. CheckPoint received the computer by June 7, 2016, and an employee there installed a third-party tracking software, Kaseya, onto the laptop.

**SA0404**

Case 22-1745, Document 105, 03/02/2023, 3477331, Page133 of 228

DocuSign Envelope ID: 66ACAB13-17BA-41FC-A5E9-92792D43642B
Case 1:17-cv-04557-ER Document 148-1 Filed 02/04/22 Page 3 of 46

Id. ¶¶ 3–4. That employee also affixed a "property of CheckPoint Pumps" sticker to the laptop. Id. CheckPoint subsequently attempted to ship the laptop to Dubai through FedEx; however, the laptop did not arrive. Id. ¶¶ 5–6. A CheckPoint employee filed a report with FedEx to notify it of the loss on June 15, 2016. Id. ¶ 6. On June 22, 2016, Holmes purchased an Apple MacBook Pro laptop and an AppleCare Protection Plan ("AppleCare") through Amazon. See Compl. ¶ 21. The laptop was listed on Amazon's website as "brand new" and Holmes understood that the product would be free from defects and that it would not contain spyware or malware. Id. ¶¶ 21, 23–24.

On June 22, 2016, Amazon delivered to UPS a MacBook Pro laptop bearing the serial number C02RQ1T3G8WN for delivery to Holmes. The computer delivered to UPS did not have any sticker on it indicating a prior sale.

The laptop delivered to Holmes by UPS was among a batch of new MacBook Pro computers Amazon sourced from Apple, which was packaged for delivery in Lewisberry, Pennsylvania. Amazon 56.1 ¶¶ 8–9. Holmes received the laptop he ordered from Amazon on June 23, 2016. Id. ¶ 10. According to Holmes, that laptop also had the serial number C02RQ1T3G8WN. Compl. ¶ 21. When Holmes received the laptop, it was shrink-wrapped and did not contain any stickers on it. See Doc. 54 Holmes' Complaint, which the Court accepted as true for purposes of the motions for judgment on the pleadings. See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012). At some point, Holmes gave his wife, Stephanie Scott ("Scott") an Apple laptop.2 Scott registered AppleCare in her name on June 25, 2016 for the laptop bearing the serial number C02RQ1T3G8WN. Apple 56.1 ¶ 12. According to CheckPoint, it was able to locate that laptop on July 23, 2016 using the

Kaseya tracking software it had installed and determined that the computer was online and being used by Scott. Id. ¶ 15; see also Declaration of Ruston Mahoney in Support of CheckPoint's Motion to Dismiss for Lack of Jurisdiction ("Mahoney Decl.") (Doc. 51) Ex. E. CheckPoint subsequently relayed this information to FedEx, and. **FedEx Ship Center 300 Middle Access Rd Kenner, LA** FedEx filed a police report, on August 2, 2016, reporting the computer as having been stolen in Louisiana  at  300 Middle Access Rd, Kenner, 12. LA 70062. Id. ¶¶ 16–17.  Months later, on September 9, 2016, Holmes received a call from New York City Police Department Detective Rodrigo Caballero. Compl. ¶ 36. Caballero told Holmes that he possessed a MacBook laptop that contained government software belonging to the Department of Defense. Id. He further told Holmes that he and other officers were outside Holmes' residence and wanted to retrieve the computer. Id. Holmes informed Caballero that he was in the midst of conducting a funeral service, and could not assist the officers. Id. ¶ 37. The next day, Caballero again called Holmes in an attempt to retrieve the computer. Id. ¶ 38. At that time, Holmes told Caballero that he had given the computer to Scott, whose location he was unaware of. Id. The calls from Caballero, however, did not stop, and on September 12, 2016, Holmes retained counsel to represent him in the police investigation. Id. ¶¶ 39–40. That day, Holmes' counsel spoke with Caballero and learned that the computer in Scott's possession bearing the serial number C02RQ1T3G8WN actually belonged to CheckPoint, a contractor for 2 According to Holmes, he and Scott are estranged. See Doc. 54 at 5:12. Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 3 of 29 4 the Department of Defense. Id. ¶ 41. According to Caballero, the computer had been purchased by CheckPoint, had been "outfitted" with "sensitive surveillance software," and was intended to be shipped to Dubai. Id. ¶ 42. Caballero further stated that if the computer

was not returned, he had the authority to arrest Holmes. Id. ¶ 43. Holmes' counsel asked Caballero for verification of these allegations, and that same day, counsel received a letter from a vice president at CheckPoint explaining that CheckPoint had been tracking its laptop since the laptop left CheckPoint's facilities, that CheckPoint "legally collected ample information to prove that [Holmes] is in possession of property belonging to CheckPoint," that it simply sought the return of its property, and that it otherwise had "no knowledge or interest in" learning how Holmes came to possess CheckPoint's laptop. See Compl. Ex. B. The next day, on September 13, 2016, Caballero sent Holmes' counsel an email confirming that the serial number of the CheckPoint computer was C02RQ1T3G8WN, which, according to Holmes and Apple as well, matched the serial number of the laptop he purchased through Amazon.  See Compl. ¶ 47, Apple 56.1.   Between then and September 21, 2016, Holmes attempted to contact Scott to facilitate the return of the computer. Id. ¶ 49. On September 21, 2016, Holmes' counsel informed Caballero that Holmes had done all he could to assist the NYPD and asked Caballero to stop contacting Holmes. Id. ¶ 50. In response, Caballero stated that he was planning to proceed with an arrest of Holmes for criminal possession of stolen property in the fourth degree. Id. ¶ 51. Holmes then hired a private investigator who was able to locate Scott. Id. ¶ 54. He then arranged for Scott's sister to visit her on October 1, 2016 so that she could persuade Scott to return the computer. Id. ¶ 56. On October 2, 2016, Holmes learned that the computer was in a public storage unit in Chelsea, New York, but that Scott did not wish to cooperate in returning the computer to CheckPoint. Id. ¶ 58. The next day, Holmes' counsel met with Caballero and Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 4 of 29 5 another NYPD officer to go to Scott's residence. Id. ¶¶ 60–61. After meeting with Caballero, Scott agreed to

Case 22-1745, Document 105, 03/02/2023, 3477331, Page136 of 228

DocuSign Envelope ID: 664CAB13-77BA-41EC-A5EB-92702D43642B
Case 1:17-cv-04557-ER Document 148-1 Filed 02/04/22 Page 6 of 46

accompany the group to her storage unit. Id. ¶ 62. Scott turned over the laptop on October 4, 2016 at 7:30 p.m. See Compl. Ex. E. In a self-serving letter written after receiving the computer, Mahoney informs  NYPD Detective, Caballero, and CheckPoint alleges,  that "property of CheckPoint Pumps" sticker was still on the underside of the laptop. Amazon 56.1 ¶ 26.

Holmes contacted Apple and Amazon and received a brush off from them.


On June 16, 2017, Holmes filed the instant Complaint, raising eight causes of action: (1) breach of contract against Apple and Amazon; (2) breach of express warranty against Apple and Amazon; (3) breach of implied warranty of merchantability against Apple and Amazon; (4) negligence against Apple, Amazon, and CheckPoint; (5) strict liability against Apple and Amazon; (6) fraudulent concealment against Apple and Amazon; (7) fraud in the inducement and misrepresentation against Apple and Amazon; and (8) false advertising and unfair business practices under § 349 of the New York General Business Law against Apple and Amazon.

On September 28, 2021, The Wall Street Journal published an article claiming that 131 Federal Judges Broke the Law by hearing cases in which they had a financial interest and identifying Judge Edgardo Ramos as being among such federal judges. On October 4, 2021, Holmes filed a Request For Financial Disclosure Report of Judge Ramos for the years 2016, 2017, 2018, 2019, 2020. Holmes received the Financial Disclosure Report of Judge Ramos for 2018 on January 18, 2022 indicating that Judge Ramos owned stock in Apple and FedEx de.  By letter dated January 21, 2021 the Clerk of the Court at the direction of Judge Ramos, advised Holmes that Judge Ramos owned Apple   stock  while  presiding

over Re: 1:17-cv-04557-ER, Holmes v. Apple Inc. et al. Pursuant to that letter Holmes on

February 4, 2022 filed this instant Motion to Vacate the Judgment and Order filed by Judge

Edgardo Ramos on June 16, 2018 based on the appearance in impartiality, if not actual

bias in rendering the decision, Order, and Judgment in Re: 1:17-cv-04557-ER, Holmes v.

Apple Inc. et al  and denying Holmes' Motion to Amend the Complaint to add FedEx as a

defendant.

### I    Judge Ramos Financial Interest in Apple

### LEGAL STANDARD

**28 U.S.C. 455(a)**

Any justice, judge, or magistrate judge of the United States shall disqualify himself

in any proceeding in which his impartiality might reasonably be questioned.

The words of the Senate Judiciary Committee, in recommending what became

§ 455(a) under the 1974 amendments to §455, provide guidance for judges who must

decide whether to disqualify themselves under §455(a): In assessing the

reasonableness of a challenge to his impartiality, each judge must be alert to avoid

the possibility that those who would question his impartiality are in fact seeking to

avoid the consequences of his expected adverse decision. Disqualification for lack of

impartiality must have a reasonable basis. Nothing in [§ 455(a)] should be read to

Page 7 of 46

**SA0409**

warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice. See S.Rep. No. 93-419, 93d Cong., 1st Sess. 5 (1973) (quoted in 13A Wright, Miller & Cooper, Federal Practice and Procedure: Juris 2d § 3549, at 623-24).

15(a)(1)(B) ("A party may amend its pleading once as a matter of course within: . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), . . .Mar 24, 2017

### A    Reason Judge Ramos Should Have Recused Himself

**I. THE DECISIONs of Judge Ramos DRASTICALLY DECREASES THE PUBLIC'S CONFIDENCE IN AN UNBIASED JUDICIARY AS IT ENABLES BIASED JUDGES TO MAKE ARBITRARY ADVERSE RULINGS.**

Litigants must have confidence that their claims will be heard by an unbiased judicial officer. When a judicial officer has a financial interest in the outcome of a case, it creates a bias on his part in favor or against one party, and not based on the merits of the case. Thus, recusal is sometimes necessary.

28 U.S.C. §455(a) requires a judge to disqualify himself if a reasonable person

Case 22-1745, Document 105, 03/02/2023, 3477331, Page139 of 228

DocuSign Envelope ID: 66ACAB13-77BA-41EC-A1E9-D2702D43642B
Case 1:17-cv-04557-ER Document 148-1 Filed 02/04/22 Page 9 of 46

would have factual grounds to doubt the impartiality of the court. Blizard V. Frechette, 601 F.2d 1217, 1220 (1st Cir. 1979). The determination for the district judge to make is whether "his impartiality might reasonably be questioned." 28 U.S.C. §455(a). Section 455(b) lists specific circumstances in which recusal is required, including when a judge has "personal bias or prejudice concerning a party." In fact, "By enacting section 455(a), Congress sought to eradicate not only actual, but also the appearance of impropriety in the federal judiciary." Moran v. Clarke, 296 F.3d 638, 648 (8th Cir.2002). An "objective standard of reasonableness" applies in deciding a motion to disqualify. Pope v. Federal Express Corp., 974 F.2d 982, 985 (8th Cir. 1992). "This objective standard is not a test of whether the judge, or a party, might believe that a bias existed, but whether the 'average person on the street' would question the impartiality of the judge, under the circumstances." Id. "The goal of section 455(a) is to avoid even the appearance of partiality. If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible. The judge's forgetfulness, however, is not the sort of objectively ascertainable fact that can avoid the appearance of partiality." Hall v. Small Business Administration, 695 F. 2d 175, 179 (5th Cir. 1983). Under section 455(a), therefore, recusal is required even when a judge lacks actual knowledge of the facts indicating his interest or bias in the case if a reasonable person, knowing all the

Case 22-1745, Document 105, 03/02/2023, 3477331, Page140 of 228

DocuSign Envelope ID: 664CAB13-77BA-41F0-AFE8-P2708D43542B
Case 1:17-cv-04557-ER   Document 148-1   Filed 02/04/22   Page 10 of 46

circumstances, would expect that the judge would have actual knowledge." 796 F. 2d,
at 802.

The words of the Senate Judiciary Committee, in recommending what became
§ 455(a) under the 1974 amendments to §455, provide guidance for judges who must
decide whether to disqualify themselves under §455(a): [TIn assessing the
reasonableness of a challenge to his impartiality, each judge must be alert to avoid
the possibility that those who would question his impartiality are in fact seeking to
avoid the consequences of his expected adverse decision. Disqualification for lack of
impartiality must have a reasonable basis. Nothing in [§ 455(a)] should be read to
warrant the transformation of a litigant's fear that a judge may decide a question
against him into a "reasonable fear" that the judge will not be impartial. Litigants
10
ought not have to face a judge where there is a reasonable question of impartiality,
but they are not entitled to judges of their own choice. See S.Rep. No. 93-419, 93d
Cong., 1st Sess. 5 (1973) (quoted in 13A Wright, Miller & Cooper, Federal Practice
and Procedure: Juris 2d § 3549, at 623-24).

A reasonable person on the street who knows all relevant facts would indeed
question District Court Judge Ramos' impartiality. Courts have consistently recast
the issue as "whether the judge's impartiality might reasonably be questioned by the
average person on the street who knows all the relevant facts of a case." Judge Ramos was
the presiding judge. A review of the record shows that at every turn, Plaintiff was denied
the opportunity to fully prosecute their claims and/or put forth factual showings in support

of their defenses. Most notably, Judge Ramos allowed the Defendants, all of whom were in default in responding to Plaintiff's, requiring all of them to make Motions to Vacate their defaults. Judge Ramos by Order dated August 15, 2017 granted all of the defendants motion to vacate their defaults, although at a Show Cause Hearing described in the Docket as follows:

Minute Entry for proceedings held before Judge Edgardo Ramos: Show Cause Hearing held on 9/14/2017. Pro Se Plaintiff present. Defendants' counsel present. For the reasons stated on the record, Defendants' motions to vacate entry of default is granted. Defendant Checkpoint is granted leave to file a motion to dismiss with the following briefing schedule: moving papers due October 10, 2017; opposition due November 10, 2017; reply due November 27, 2017. Parties are directed to submit a proposed joint discovery plan. (Motions due by 10/10/2017. Responses due by 11/10/2017. Replies due by 11/27/2017.) (Court Reporter Mike McDaniel) (jar) (Entered: 09/14/2017)

CheckPoint was granted additional time to file a motion to dismiss although their time to plead had expired. Parties are directed to submit a proposed joint discovery plan. Holme's subsequent motion for discovery was denied. On October 6, 2017, Holmes moved to amend the Complaint. See Doc. 47. Judge Ramos held the motion for more than 250 days before denying it in his decision at the end of the trail. **Holding the motion for 8 months without deciding it, would lead a reasonable person on the street who knows all relevant facts,**

**would indeed question District Court Judge Ramos' impartiality.**

## II.   HOLMES' MOTION TO AMEND

### LEGAL STANDARD

**Rule 15. Amended and Supplemental PleadingsAmendments Before Trial.**

#### Amending as a Matter of Course.

**A party may amend its pleading once as a matter of course within:**

    **(A) 21 days after serving it, or**

    **(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.**

    **(2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.**

    **(3) Time to Respond. Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.**

### Procedural Setting

On October 6, 2017, Holmes moved to amend the Complaint. See Doc. 47.  Judge Ramos held the motion for more than 250 days before denying it in his decision at the end of the trail. Holding the motion for 8 months without deciding it is evidence of bias against Holmes that prejudice the case against him. Holmes moved to amend his Complaint 3 days before the responsive pleading was filed by CheckPoint on October 9, 2017,  and 24 days before a responsive pleading was required by CheckPoint.

### Argument 1

By extending the time in which CheckPoint was required to plead the Court extend the time in which Holmes could amend his complaint as a matter of course.

A party may amend its pleading once as a matter of course within:

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

The complaint was amended as of the date of his filing, That Amended Complaint became the operative pleading in this case. His denial of a motion where no motion was required is

treated as a nullity.

Treated as a motion, as Judge Ramos did, the motion should have been granted if a liberal reading of the complaint provides any basis that a valid claim might be stated.

Fed. R. Civ. P. 21 provides that misjoinder of parties is not ground for dismissal of an action, and that parties may be dropped or added by court order on motion of any party or of the court's own initiative at any stage in the action and on such terms as are just.

"Absent prejudice, or a strong showing of any of the remaining [factors], there exists a presumption under Rule 15(a) in favor of granting leave to amend." C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist., 654 F.3d 975, 985 (9th Cir. 2011) (citation omitted). The Court finds amendment is permissible. The Court finds there is no indication that Plaintiffs' move to amend is made in bad faith nor that a properly worded amendment would be futile. Additionally, Plaintiffs have not previously moved for leave to amend.1 Finally, at this early stage in the proceedings, the Court finds neither undue delay nor that Defendants would be prejudiced by the requested amendment. Plaintiffs' motion is granted. ACCORDINGLY, IT IS HEREBY ORDERED: 1. Plaintiffs' Motion for Leave to File Amended Complaint (ECF No. 27) is granted.

Argument 2

Case 22-1745, Document 105, 03/02/2023, 3477331, Page145 of 228

DocuSign Envelope ID: 664CAB13-77BA-41F0-AFE8-B2709D43642B
Case 1:17-cv-04557-ER   Document 148-1   Filed 02/04/22   Page 15 of 46

(2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

A pro se complaint should be read liberally, and the Court should grant leave to amend if a "liberal reading" provides "any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)). But where the issues with a complaint are "substantive" and cannot be cured by more artful or specific allegations, repleading would be "futile" and a request for further amendment"should be denied." Id. Plaintiff's case is clearly distinguishable from the case of Cuoco v. Moritsugu, cited by the court. In that case there was a statute if limitation problem detailed by the court as follows: "The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). Amendment would be futile here because Plaintiff's claims arise from events, which he was aware of, that occurred more than three years before he commenced this Section 1983 action. Thus, his claims are time barred, see Cloverleaf Realty v. Town of Wawayanda, 572 F.3d 93, 94 (2d Cir. 2009)(The statute of limitations for a § 1983 claim arising in New York is three years), and amendment would be futile because repleading would not cure the timeliness deficiency."

A court may deny leave to amend a complaint for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009). The foregoing case cited by Judge Ramos in his decision denying Plaintiff, Tyrone Holmes motion is a decision based on Georgia law.(quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)).    What maybe futile under Georgia law may not be so under Federal Rule 15. as applied under New York law.

When FedEx undertook the task of filing a police report as stolen and in La a computer that FedEx  had delivered to Amazon in Pennsylvania thereby implicating plaintiff and his associate in the theft, he also under took the duty to not bear false witness against Holmes and Stephanie Scott.

Judge Ramos was required to grant Holmes Motion to Amend the Complaint as a matter of course, since it  was filed within the 21 days after CheckPoint filed its responsive pleading. In fact Judge Ramos by Order of September 14, had extended the time in which CheckPoint had been required to plead until October 10, 2017,  thereby extending the time for filing plaintiff's Amended Complaint as a matter of course.


A party may amend its pleading once as a matter of course within: ( A)    …

(B) if the pleading is one to which a responsive pleading is required, 21 days

after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Federal Rule of Civil Procedure 15(a) provides that, except in circumstances not present here, "a party may amend its pleading only with the opposing party's written consent or

Page 16 of 46

**SA0418**

the court's leave," which "[t]he court should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has directed that this policy be applied with "extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). In ruling upon a motion for leave to amend, a court must consider whether the moving party acted in bad faith or unduly delayed in seeking amendment, whether the opposing party would be prejudiced, whether an amendment would be futile, and whether the movant previously amended the pleading. United States v. Corinthian Colleges, Case 2:15-cv-00305-TOR Document 36 Filed 06/13/16

## III.   CHECKPOINT FRAUD

### Filing a False Report, Knowing it to be False

### LEGAL STANDARD

**Rule 60. Relief from a Judgment or Order**

**(a) Corrections Based on Clerical Mistakes; Oversights and Omissions.** The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just

DocuSign Envelope ID: 6B4CAB13-77BA-41F0-AFE8-B2208D43642B

terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

### Argument

CheckPoint, by engaging FedEx to contact the Kenner Police Department on August 2, 2016, reporting the computer, that FedEx had delivered to an Amazon Distribution Center in Pennsylvania, but could not track its location in Pennsylvania, as having been stolen from a FedEx facility in Louisiana 300 Middle Access Rd, Kenner, LA 70062, knowing that (1) it was not in La, but in Pennsylvania, (2) knowing that it was not stolen but purchased by Plaintiff which they determined by the serial number, authenticated by AppleCare being the same as that computer they purchased and placed spyware and had delivered by FedEx where the chain of custody indicated as CheckPoint required. The purpose of the Fraud was to induce the NYPD to seize the computer, at no expense to CheckPoint from Holmes, who was lawfully in possession of the computer, bearing the serial number C02RQ1T3G8WN, which had been purchased from Amazon and delivered by UPS to Holmes.

## IV    AMAZON'S FRAUD

**Attorney False Misrepresentation to the Court About a Material Fact**

**Argument**

Amazon sold a MacBook Pro laptop bearing the serial number C02RQ1T3G8WN, twice, once to CheckPoint, on June 2, 2016, and again to Holmes on June 22, 2016. Amazon could verify these fact because it was the seller of both and, therefore and in the unique position to verify the serial number on the computers at the earliest point in this case. The attorney for Amazon in response to a direct question from Judge Wesley of the Court of Appeals, "There are two Computers". This was stated after the the Attorney for Apple in response to the same direct question that there was one computer, further stating that Apple makes only one computer with the same serial number. This was a false and fraudulent representation to the Court which the attorney for Amazon knew to be about the issue that was central to this case.

A manifest or grave injustice, such as the one perpetrated here upon Holmes, is described as something that is obviously unfair, or which is shocking to the conscience that is direct, obvious and observable. In fact, the 7th Circuit Court of Appeals in Kenner vs. C.IR., 387 F3d 689 (1968), adjudicated that a "decision produced by fraud upon the court is not in essence a decision at all and never becomes final. "Fraud Upon the Court" makes void the orders and judgments of that court and vitiates the entire proceedings, thus no appeal would lie within the Eighth Circuit in this case wherein the underlying judgment wherein in essence it was never a decision at all and never became final. (p. 8 SWECKER

DocuSign Envelope ID: 6B4CAB13-77BA-41F0-AFE8-P2702D43642B

Rule 60(a)(3) of the Federal Rules of Civil Procedure

V.    CHECKPOINT'S MOTION TO DISMISS

The Court Had Jurisdiction Over CheckPoint

A. Dismissal Under Rule 12(b)(2) "A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant. " BHC Interim Funding, LP v. Bracewell & Patterson, LLP, No. 02 Civ. 4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999)).  To meet this burden where there has been no discovery or evidentiary hearing allowed by the Court in this case, was required to plead facts sufficient for a prima facie showing of jurisdiction.

CheckPoint by engaging FedEx to contact the Kenner Police Department on August 2,

2016, reporting the computer, that FedEx  had delivered to Amazon Distribution Center in Pennsylvania, but could not track its location in Pennsylvania, as having been stolen from their FedEx facility in Louisiana 300 Middle Access Rd, Kenner, LA 70062 to have them contact on their behalf the NYPD, which seized the computer from Plaintiff.

If a person files a false report with the intention of accusing someone else of a crime, or to lead the police to investigate an innocent person, then the falsely accused person may file a civil lawsuit. They would do this to seek substantial damages.


FALSELY REPORTING AN INCIDENT. IN THE THIRD DEGREE. (Initiates or circulates a false report of crime, catastrophe or emergency). Penal Law § 240.50 (1). A person is guilty of r or vulnerable persons' central register.

     The court was required to accept  all of the plaintiff's allegations as true and resolves all doubts in his favor. Casville Invs., Ltd. v. Kates, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing Porina v. Marward Shipping Co., 521 F.3d 3 Holmes' proposed Amended Complaint brings a ninth cause of action against FedEx for negligence. See Doc. 47- 1. Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 5 of 29 6 122, 126 (2d Cir. 2008)). "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" Art Assure Ltd., LLC v. Artmentum GmbH, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998)). As 12(b)(2) motions are "inherently . . . matter[s] requiring the resolution of factual issues outside of the pleadings," courts may rely on additional materials when ruling on such motions. John Hancock Prop. & Cas. Ins.

DocuSign Envelope ID: 684CAB13-77BA-41E0-AFE8-B2703D43642B

Co. v. Universale Reinsurance Co., No. 91 Civ. 3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); Darby Trading Inc. v. Shell Int'l Trading and Shipping Co., 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008). In a diversity action, personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits. Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). CheckPoint by engaging in an agreement with Holmes made in New York by letter dated September 12, 2016 a relevant portion which reads "As a further condition of this agreement, I would require this matter be resolved through our mutual contact at the NYPD, Detective Rodrigo Caballero."  This determination involves a two-step analysis. Metro. Life Ins. Co. v. RobertsonCeco Corp., 84 F.3d 560, 567 (2d Cir. 1996). In New York, the Court must first determine whether personal jurisdiction is appropriate pursuant to the State's general jurisdiction statute, C.P.L.R. § 301, or its long arm jurisdiction statute, C.P.L.R. § 302. If and only if the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the second step is an evaluation of whether the Court's exercise of personal jurisdiction comports with the Due Process Clause of the United States Constitution. Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163–64 (2d Cir. 2010).

On September 12, 2016, CheckPoint acting through its officer, Bobbi Jo Bridges VP Operation, executed an agreement with Holmes, acting through his attorney, Garfin, that was to have consequences in New York in relation to this action. (Doc. 50)

 The agreement was extorted from Holmes by threat of arrest if he did not turn over the computer. { }

On October 4, 2017 Mahoney, an employee of CheckPoint filed a Declaration detailing the action with regard to packaging the computer with spyware on it for delivery in which he

explicitly state that the computer was repackage in an Amazon box.  {  }. Judge Ramos left out the "Amazon box" { } in his recanting of this from  {  }If it were left out negligently it explains how this computer could have been commingled with computers without spyware. If it were done intentionally it would be evidence of actual bias of Judge Ramos, altering the facts to the benefit of Amazon and CheckPoint.


This personal contract executed by letter to be performed within the state undermines all arguments made by Judge Ramos in his decision offer some evidence that his decision was not impartial. and contrary to a letter filed in this case.

Dismissal Under Rule 12(c) Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court applies the same standard of review to a Rule 12(c) motion as it Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 6 of 29 7 does to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006) (citing Karedes v. Ackerley Grp. Inc., 423 F.3d 107, 113 (2d Cir. 2005)). On a motion to dismiss pursuant to Rule 12(b)(6), the Court is required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014). However, the Court is not required to credit legal conclusions, bare assertions or conclusory allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678–81 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain enough factual matter to state a claim to relief that is plausible on its face. Id. at 678 (citing

Twombly, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." Id. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Id. at 680 (quoting Twombly, 550 U.S. at 570). C. Summary Judgment Under Rule 12(d), a court may convert a Rule 12(c) motion for entry of judgment to a Rule 56 motion for summary judgment when the parties present evidence outside the pleadings and are "given the reasonable opportunity to present all material that is pertinent to the motion." Certified Multi-media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC, 150 F. Supp. 3d 228, 236 (E.D.N.Y. 2015) aff'd 674 F. App'x 45 (2d Cir. 2017) (quoting Fed. R. Civ. P. 15(d)). Formal notice to the parties is ordinarily not necessary "where a party should Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 7 of 29 8 reasonably have recognized the possibility that the motion might be converted into one for summary judgment and was neither taken by surprise nor deprived of a reasonable opportunity to meet facts outside the pleadings." Galiotti v. Green, 475 F. App'x 403, 404 (2d Cir. 2012), as amended (Aug. 30, 2012) (internal quotation and punctuation marks omitted). Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c). "An issue

of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Medical Center*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)). In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 8 of 29 9 reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, a motion for summary judgment cannot be defeated on the basis of conclusory assertions, speculation, or unsupported alternative explanations of facts. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008); *see also Senno*, 812 F. Supp. 2d at 467 (citing *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986)). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson*, 477 U.S. at 256–57). Nonetheless, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (internal citations omitted).

## VI.   CHECKPOINT'S MOTION TO DISMISS

CheckPoint availed itself of the privileges and benefits of the laws of the State of New York, contrary to the statement in their affidavit filed in their behalf by Andrew C. Elliott (Managing Member/Chief Executive Officer) CheckPoint Fluidic Systems International, Ltd. (Doc. 49), 17. In fact CheckPoint abused these privileges by filing the false police report that had consequences in New York.

**Filing a False Police Report, Knowing it to be False**

CheckPoint moves to dismiss Holmes' negligence claim against it because CheckPoint has insufficient contacts with New York to render personal jurisdiction proper under New York law. See Memorandum of Law in Support of CheckPoint's Motion to Dismiss ("CheckPoint Mem.") (Doc. 52), at 4–6. Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 9 of 29 10 A. Personal Jurisdiction under C.P.L.R. § 301 C.P.L.R § 301 applies only to corporate defendants who are present in New York "with a fair measure of permanence and continuity." Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 77 N.Y.2d 28, 34 (1990). A company that engages in only "occasional or casual business" or who "merely solicits New York customers" will not be subject to general personal jurisdiction in New York. Brown v. Web.com Grp., Inc., 57 F. Supp. 3d 345, 354 (S.D.N.Y. 2014) (internal quotations and punctuation marks omitted) (quoting Bossey ex rel Bossey v. Camelback Ski Corp., 21 Misc.3d 1116(A), 2008 WL 4615680, at *2 (N.Y. Sup. Ct. Oct. 20, 2008)). Here, CheckPoint has no physical presence in New York. See Affidavit of Andrew C. Elliot in Support of CheckPoint's Motion to Dismiss ("Elliot Aff.") (Doc. 49), at 2. It has no agents, officers, directors, or employees in New York. Id. It has never been authorized to conduct business in New York. Id. CheckPoint was able to identify only five sales between August 1, 2013 and June 16, 2017 that contained billing and/or shipping addresses in New York. See Declaration of Bobbie Jo Bridges in Support of CheckPoint's Motion to Dismiss ("Bridges Decl.") (Doc. 64) ¶ 4.4 The total amount of these sales, $15,310.91, constitutes "a few hundredths of a percent of CheckPoint's sales in dollar value during the same period."

DocuSign Envelope ID: 6B4CAB13-77BA-41F0-AFE8-B2709D43642B

Id. ¶ 10. In opposition, Holmes points to the fact that CheckPoint operates a website that New York customers can see and use and that CheckPoint has been subject to jurisdiction in other cases in New York courts. See Affidavit in Opposition to Motion to Dismiss and Cross-Motion for Discovery ("Holmes Aff.") (Doc. 56). Holmes provides no support for his argument that the operation of a website, without more, can subject a company to general personal jurisdiction in 4 CheckPoint's records show 27,139 sales records during this period. Id. ¶ 5. Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 10 of 29 11 New York; in fact, courts routinely determine that it is insufficient to confer jurisdiction. See ISI Brands, Inc. v. KCC Int'l, Inc., 458 F. Supp. 2d 81, 87–88 (E.D.N.Y. 2006) (collecting cases). Further, although CheckPoint has been a defendant in one New York proceeding brought to the Court's attention, CheckPoint never appeared in that case, which did not require the establishment of personal jurisdiction over CheckPoint because it was a proceeding to domesticate a foreign judgment. See Marine Hub Pte. Ltd. v. CheckPoint Fluidic Sys. Int'l Ltd., No. 601203/2010 (Sup. Ct. 2010); see also Lenchyshyn v. Pelko Elec., Inc., 723 N.Y.S.2d 285, 289 (4th Dep't 2001) ("[A] party seeking recognition in New York of a foreign money judgment (whether of a sister state or foreign country) need not establish a basis for the exercise of personal jurisdiction over the judgment debtor by the New York courts.").

The case at bar is distinguishable from the cases cited by the court. He is not a judgment debtor using that a basis of jurisdiction, but a party to an agreement between Check and Holmes negotiated by letter filed in this action on September 12, 2016 , as set forth below:

September 12, 2016

Mr. Garfin

Counsel for Mr. Tyrone Holmes

DocuSign Envelope ID: 6B4CAB13-77BA-41F0-AFE8-B2702D43642B

Dear Mr. Garfin,

Please be advised that our Information Security department has ascertained information proving that your client is in possession of our equipment. This equipment has been tracked since leaving our facility. We have legally collected ample information to prove that your client is in possession of property belonging to CheckPoint Fluidic Systems International. If this equipment is returned immediately, in its original condition complete with all original parts and pieces, we will not move further to pursue legal action. I have no knowledge or interest in identifying your client or learning further about the details, which put him in possession of our equipment.

As a further condition of this agreement, I would require this matter be resolved through our mutual contact at the NYPD, Detective Rodrigo Caballero. I see no reason for your client, Mr. Holmes, to have any knowledge of our organization or its employees. To conclude our arrangement, please certify that our organization and staff shall remain anonymous to your client.

Regards,

Bobbi Jo Bridges VP Operations


Holmes, therefore, has plead facts that would support a prima facie finding of general personal jurisdiction.


B. Personal Jurisdiction under C.P.L.R. § 302(a) C.P.L.R. § 302(a) allows a court to exercise personal jurisdiction over a non-domiciliary defendant who: (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state;" (2)

"commits a tortious act within the state . . .;" or (3) "commits a tortious act without the state causing injury to person or property within the state . . . [if he] (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]" Mount Whitney Investments, LLP v. Goldman Morgenstern & Partners Consulting, LLC, No. 15 Civ. 4479 (ER), 2017 WL 1102669, at *4 (S.D.N.Y. Mar. 23, 2017) (quoting C.P.L.R. § 302(a)(1–3)). Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 11 of 29 12 Holmes argues that CheckPoint committed a tort outside the state of New York that it knew would have consequences in New York. See Holmes Aff. ¶¶ 24–37. Specifically, he argues that CheckPoint reported its computer as stolen, and that its discussions with FedEx and the NYPD about the computer , Check engagedFedEx to  file a police report that was knowingly false, in an that fraudulent effort to to engage the NYPD in the recovery of a computer that had been sold by Amazon to Holmes, knowing that there was no theft in Louisiana which caused Holmes emotional distress during the period in which CheckPoint's computer was in his wife's possession. Id. The "tort" that Holmes alleges CheckPoint committed, therefore, appears to be a tort claim based on the reporting of his theft of its computer. Id.; see Compl. ¶¶ 92– 96 (bringing a cause of action against CheckPoint for which Holmes charitable called negligence. Holmes has put forward  support for his argument that an entity can be held liable for negligence on the basis of reporting a theft and cooperating with authorities, even if the report was inaccurate. Holmes has raised a claim for malicious prosecution, in that played an active role in engaging Checkpoint to file a false complaint stating that the theft

took plain La knowing that this was not true. This rises much more participation than being one who"who merely furnishes information to law enforcement authorities who would not . . . will not be held liable for malicious prosecution." Lupski v. County of Nassau, 822 N.Y.S.2d 112, 114 (2d Dep't 2006). Instead, a plaintiff must allege that the defendant "played an active role in the prosecution, such as giving advice and encouragement and importuning the authorities to act." Id. (quoting Viza v. Town of Greece, 463 N.Y.S.2d 970, 971 (1983)). Holmes' allegations that CheckPoint communicated with FedEx and the NYPD about the loss of its computer, and "reasonably expect[ed]" consequences to flow within New York- Holmes to be arrested for theft of a computer in New York- are sufficient to confer personal jurisdiction on courts in New York, because they constitute allegations of a tortious act as required by C.P.L.R. § 302(a).  The record is clear as to how CheckPoint's computer came to be in Holmes' possession, by tracing the chain of custody of the computer from Apple to Amazon, to Amazon to FedEx, FedEx to CheckPoint, CheckPoint to FedEx,  FedEx to Amazon, Amazon to  UPS, UPS to Holmes with no disruptions in the chain by a thief. "Went missing presumably stolen" was a tale concocted by CheckPoint with the collusion of FedEx and Amazon who supplied the the "two computer" fraud tale, knowing it to be false because of the AppleCare which Amazon sold to Holmes with the computer, bearing the serial number C02RQ1T3G8WN.

No party in this case has asserted that Holmes was responsible for CheckPoint's initial loss of the computer. Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 12 of 29 13 C.

Holmes' Discovery Motion Holmes seeks discovery to determine what contacts CheckPoint has with the State of New York. See Holmes Aff. ¶ 70. Specifically, he seeks to serve interrogatories, a request for production of documents, and a notice of deposition of one CheckPoint employee. Id. ¶ 71. Holmes argues that he is entitled to determine whether CheckPoint had banking or investment banking contacts in New York, retained any law, consulting, or public relations firms based in New York, hosted business meetings in New York, or made any business purchases in New York. Id. ¶ 72. Holmes' request must be denied. See In re Angeln GmBH & Co. KG, 510 F. App'x 90, 92–93 (2d Cir. 2013) (finding that courts may decline to permit jurisdictional discovery where a plaintiff has not made out a prima facie case for jurisdiction). Even if those business contacts exist, they would be insufficient for purposes of general personal jurisdiction. See Brown, 57 F. Supp. 3d at 354. They would also be sufficient for the purposes of New York's long-arm statute, since those contacts would be unrelated to CheckPoint's involvement in this case. Id. at 356 (explaining that a **defendant must purposefully avail itself of conducting business activities in New York, and that the dispute in the litigation must arise out of one such transaction**). See Haber v. United States, 823 F.3d 746, 753 (2d Cir. 2016) (noting that jurisdictional discovery is inappropriate if the plaintiff fails to show how the information to be obtained bears on the jurisdictional issue). The letter **agreement between Check and Holmes negotiated by letter filed in this action on September 12, 2016 , as set forth provides such involvement in this case and is a basis for this Court's jurisdiction over CheckPoint.**

## V.    APPLE'S MOTION FOR ENTRY OF JUDGMENT

**9. Transfer of Plan.**

You may make a one-time permanent transfer of all of your rights under the Plan to another party, provided that: (i) you transfer to the other party the original proof of purchase, the Plan Confirmation, the Plan's printed materials and this service contract; (ii) you notify Apple of the transfer by sending notice of transfer to Apple Inc., ATTN: Agreement Administration, MS: 217-AC, 2511 Laguna Blvd, Elk Grove, CA 95758, U.S., fax number 916-405-4175 or agmts_transfer@apple.com, respectively, and (iii) the other party accepts the terms of this service contract. When notifying Apple of the transfer, you must provide the Plan Agreement Number, the serial numbers of the Covered Equipment, and the name, address, telephone number and email address of the new owner.

**Relevant Terms of the AppleCare Agreement**

**10. General Terms.**

(a) Apple may subcontract or assign performance of its obligations to third parties but shall not be relieved of its obligations to you in doing so.

(i) The terms of the Plan, including the original sales receipt of the Plan and the Plan Confirmation, shall prevail over any conflicting, additional, or other terms of any purchase order or other document, and constitute your and Apple's entire

understanding with respect to the Plan.

Apple moves for judgment on the pleadings for each of Holmes' eight claims.
Memorandum of Law in Support of Apple's Motion for Judgment ("Apple Mem.") (Doc.
98), at 2. In the alternative, it moves for summary judgment on those claims based on the
testimony of Apple employee Tim O'Neil. Id. A. Breach of Contract and Express Warranty
Claims Apple argues that Holmes has not stated a claim for either breach of contract or
breach of warranty (claims one and two) because he has not alleged the existence of a
contract between himself and Apple. Apple Mem. at 8. Under New York law, the existence
of a contract between the parties is an essential element of both a breach of contract claim
and a breach of express warranty claim. See Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank,
392 F.3d 520, 525 (2d Cir. 2004); Promuto v. Waste Mgmt., Inc., 44 F. Supp. 2d 628, 642
(S.D.N.Y. 1999). In his Complaint, Holmes alleged that he purchased his laptop through
Amazon, but that Amazon and Apple both "contracted" to provide him the laptop and
"warranted and represented" that the laptop was "brand-new" and "free from any and all
spy software capable of tracking [his] activities." Compl. ¶¶ 33, 74, 81. But these allegations
are belied by the receipt Holmes provided, which shows that the seller of the laptop and
AppleCare was Amazon, not Apple. Id. Ex. A; accord Xi Wei Lin v. Chinese Staff &
Workers' Ass'n, No. 11 Civ. 3944 (RJS), 2012 WL 5457493, at *4 (S.D.N.Y. Nov. 8, 2012)
(noting that a court need not accept as true "pleadings that are contradicted by other
matters asserted or relied upon or incorporated by reference") (quoting Fisk v. Letterman,
401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005)).

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 14 of 29

DocuSign Envelope ID: 664CAB13-77BA-41F0-AFE8-P2709D43642B

15

Holmes argues that AppleCare, the laptop protection plan, is the contract between him

and Apple that Apple breached by not informing its distributor that, who was also party to

the agreement that Holmes was legitimately in possession of the computer bearing. That

Apple had assigned compliance with the AppleCare agreement to Amazon. That there had

been an error by Amazon allowing him to receive CheckPoint's laptop. See

Memorandum of Law in Opposition to Defendants' Motions for Judgement ("Opp.") (Doc.

105),

at 9. Apple raises two points in response. First, it argues that it has no record of Holmes

registering AppleCare for the CheckPoint laptop; instead, Scott registered an AppleCare

plan, bearing the serial number C02RQ1T3G8WN

(although it is unclear if this was the AppleCare plan purchased by Holmes) for the

CheckPoint

laptop on June 25, 2016, bearing the serial number C02RQ1T3G8WN.  Apple Mem. at 11

(citing Declaration of Tim O'Neil in Support of

Apple's Motion for Entry of Judgment ("O'Neil Decl.") (Doc. 102) ¶¶ 9–12). Thus, they

argue,

there was no contract between Apple and Holmes. That Apple had assigned compliance

with the AppleCare agreement to Amazon. Second, Apple argues that Holmes has not

alleged a breach of the AppleCare plan; rather, his allegations are that the Apple laptop he

received from Amazon was defective because it contained the Kaseya tracking software and

that Apple breached by not informing its distributor , who was also party to the agreement,

that Holmes was legitimately in possession of the computer bearing the serial number

Case 22-1745, Document 105, 03/02/2023, 3477331, Page166 of 228

DocuSign Envelope ID: 6B4CAB13-77BA-41F0-AFE8-P2702D43542B
Case 1:17-cv-04557-ER   Document 148-1   Filed 02/04/22   Page 36 of 46

C02RQ1T3G8WN. Apple had an obligation under their agreement to remove that spyware, Mem. at 10–11; Reply Memorandum of Law in Support of Apple's Motion for Entry of Judgment ("Apple Reply Mem.") (Doc. 113), at 3–4. AppleCare is a service contract that provides for Apple support in replacing or repairing laptops in certain circumstances, and specifically excludes repairs based on the effects of third-party products. See O'Neil Decl. Ex. D.7

 Holmes' claims in the first and second causes of action, however, are based on the theory that the laptop was defective because CheckPoint subsequently installed tracking software on it. See Compl. ¶¶ 76, 83. By its terms, therefore, the AppleCare agreement is not triggered. Accordingly, the Court finds that the AppleCare agreement is not germane to the dispute between Holmes and Apple; further, because Holmes has not pointed to a contract with Apple

 7 Although Holmes did not attach the AppleCare agreement to his complaint, the Court may properly consider it on a motion for judgment on the pleadings. See City of Brockton Ret. Sys. v. Avon Prods., Inc., No. 11 Civ. 4665(PGG), 2014 WL 4832321, at *12 (S.D.N.Y. Sept. 29, 2014) (internal quotation marks and citations omitted)(noting that a court may consider any documents that that the Complaint "relies heavily upon its terms and effect, thereby rendering the document integral to the complaint").


Under New York law, there is an implied warranty of merchantability, but it does not protect consumers where the alleged defect "was not attributable to a manufacturing or retail defect." Fagan v. AmerisourceBergen Corp., 356 F. Supp. 2d 198, 215 (E.D.N.Y. 2004) vacated on other grounds 163 F. App'x 37 (2d Cir. 2006) (quoting Elsroth v. Johnson &

Johnson, 700 F. Supp. 151, 160 (S.D.N.Y. 1988). Similarly, a manufacturer cannot be held liable for either negligence or strict liability when a "subsequent modification" is made after the product leaves the manufacturer that "alters the product and is the proximate cause of plaintiff's injuries." Id. at 206, 215 (citing Elsroth, 700 F. Supp. at 159); see also Duval v. Delta Int'l Machinery Corp., 13 Civ. 4270 (GHW), 2015 WL 4522911, at *5 (S.D.N.Y. July 27, 2015) (recognizing the availability of the substantial modification defense). Here, Holmes alleges that Apple is liable for his laptop, which he claims is defective because it contained CheckPoint's Kaseya tracking software. Compl. ¶¶ 89, 94, 101–02. Apple breached by not informing its distributor, Amazon, that, who was also party to the agreement that Holmes was legitimately in possession of the computer bearing the serial number C02RQ1T3G8WN. However, Holmes' own allegations makes clear that CheckPoint, not Apple, installed this software. Id. ¶ 76 (alleging that the laptop he received from Amazon "contained sensitive spy software, installed by Defendant[] CheckPoint Fluidic Systems

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 16 of 29 17

International, Ltd.").8

 Holmes has therefore stated a claim for relief against Apple, and Apple had an obligation under their AppleCare agreement to remove that spyware, and support the Holmes claims against Amazon or be complicit in the actions   of Amazon and CheckPoint's "two computer" fraud tale.

C. Fraudulent Concealment and Fraud in the Inducement

Apple moved for judgment on Holmes' sixth and seventh claims, arguing that he has not identified any specific misrepresentations or actionable omissions by Apple, as required

under Rule 9(b) of the Federal Rules of Civil Procedure. Apple Mem. at 17, 20.

Under Rule 9(b), "a party must state with particularity the circumstances constituting

fraud or mistake." Fed. R. Civ. P. 9(b). **When asked by the Court of Appeals, Judge Wesley,**

**directly she answered truthfully that there was only one computer. When confronted by the**

**Judge as to how to explain the "two computer" she responded that it was unclear, knowing**

**that that was a misrepresentation by the attorney for Amazon who stated explicitly that**

**"There were two computers."** A complaint must therefore: "(1) specify the statements that

the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when

the statements were made, and (4) explain why the statements were fraudulent." ATSI

**Apple never offered to take the spyware off the computer under the service agreement**

**under AppleCare when Holmes complained to Apple before the action was commenced.**

Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007) (quoting Novak v. Kasaks, 216 F.3d

300, 306 (2d Cir. 2000)). Allegations that **are not** conclusory or "unsupported by factual

allegations" can meet this standard. Id. (citing Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir.

1986)). For a fraudulent concealment claim, a defendant may only be liable for an omission

of a material fact if it had a "duty to disclose" that fact. Schwatka v. Super Millwork, Inc.,

965 N.Y.S.2d 547, 551 (2d Dep't 2013). Specifically, under New York law, a defendant may

be held liable if it "has superior knowledge or means of knowledge, such that the

transaction without disclosure is rendered inherently unfair." Martin Hilti Family Tr. v.

**Knoedler Gallery, LLC, 137 F. Supp. 3d 430, 484 (S.D.N.Y. 2015) (quoting Miele v. Am.**

**Tobacco Co., 770 N.Y.S.2d 386, 391 (2d Dep't 2003)).**

**Apple argues that Holmes has only pleaded that Apple "had full knowledge of the**

**defects" in the laptop sold to him by Amazon—presumably the presence of the Kaseya**

**tracking software—and that Apple "failed to notify" him of this, without providing any**

**supporting factual allegations. See Apple Mem. at 18.9 Holmes makes no factual allegations**

**regarding Apple's knowledge of the installation of the software or when Apple became**

**aware of any "defects" on the computer, if ever. Holmes does not attempt to address these**

**deficiencies in his opposition. Because Holmes' only allegations with respect to fraudulent**

**concealment are conclusory, he has not stated a claim, and the Court GRANTS Apple's**

**motion for judgment on the pleadings.**

**With respect to Holmes' seventh claim, for fraud in the inducement, Apple argues that**

**Holmes has not alleged any statement made by Apple, much less any statement with**

**specificity. See Apple Mem. at 20. Throughout the complaint, Holmes refers solely to**

**"above representations" or "various representations concerning" the laptop without**

**detailing the contents of the representations, who made the representations, when and**

**where they were made, and why they were fraudulent at the time they were made. See**

**Compl. ¶¶ 23, 116. Amazon also argues for judgment on the pleadings for these fraud**

**claims based on Rule**

**9(b)'s heightened pleading standard. Memorandum of Law in Support of Amazon's Motion**

**for**

**Although Holmes' pleadings do not state with particularity what the defect Apple allegedly**

concealed was, the Court understands the defect alleged to be the same defect Holmes described in earlier causes of action—the presence of the Kaseya tracking software. See Compl. ¶¶ 76, 83, 89 (describing the laptop received from Amazon as defective because it contained tracking software).

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 18 of 29

19

### D. False Advertising and Unfair Business Practices

Holmes' eighth claim alleges that Amazon and Apple engaged in false advertising and unfair business practices prohibited by New York General Business Law § 349. See Compl. ¶

121. Apple argues that Holmes has failed to allege a violation of § 349 because he has not alleged that Apple made misstatements while engaged in "consumer-oriented conduct." Apple Mem. at 21–22. Private contract disputes do not fall within the ambit of § 349; rather, a plaintiff bringing

a § 349 claim must allege conduct that has "a broader impact on consumers at large." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (1995).Thus, the allegedly deceptive conduct "may not be limited to just the parties." Nungesser v. Columbia Univ., 169 F. Supp. 3d 353, 373 (S.D.N.Y. 2016) (quoting Teller v. Bill Hayes, Ltd., 630 N.Y.S.2d 769, 772 (2d Dep't 1995)). Holmes has failed to allege that Apple's conduct "affected anyone except him." It affected his associate and his relations with her as the party who registered the AppleCare Id. He has, for example, alleged any facts to suggest that Apple routinely sells computers to third party distributors, such as Amazon marked as "new" when they are actually used by CheckPoint and sold in Amazon

boxes and contain third party surveillance software placed by CheckPoint. See Compl; see also **Koch v. Greenberg, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014)** ("Where the acts complained of potentially affect similarly situated consumers, the consumer-oriented prong will be met.") (internal citations and quotations marks omitted). Indeed, Holmes himself has noted that his allegations suggest a "bizarre fact pattern." **Compl. ¶ 14 (Introductory Statement).**

## V.   AMAZON'S MOTION FOR ENTRY OF JUDGMENT

The Court has already entered judgment in favor of Amazon on Holmes' sixth, seventh, and eighth claims. Amazon also seeks the entry of judgment in its favor on Holmes' second through fifth claims, and seeks entry of judgment against it on Holmes' first claim pursuant to its

Rule 68 offer of judgment. See Amazon Mem. at 1–2.

Specifically, Amazon presented Holmes with an offer of judgment in the amount of $2,351.12, the value of the Apple MacBook Pro and AppleCare Holmes purchased on June.

### A. Breach of Contract Claim

Holmes alleges that Amazon breached their contract by selling him a laptop that contained "sensitive spy software" rather than a brand new Apple laptop. See Compl. ¶¶

73–76.

When Holmes entered into the purchase agreement with Amazon, he also agreed to

Amazon's conditions of use. 21

he was notified that by purchasing a product on Amazon, he agreed to its conditions of use.

See

Opp. at 6 (conceding that he signed the contract but disputing that the remedy limitation in

the

contract applies to his tort claims against Amazon).

The agreement provided that "if a product offered by Amazon itself is not as described,

[Holmes'] sole remedy is to return it in unused condition" and receive a refund. Such an

Agreement  is unenforceable in New York.


B. Breach of Warranty Claims

Holmes' second and third claims against Amazon seek relief for breach of express

warranty and breach of implied warranty. See Compl. ¶¶ 80–91. 6.

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 22 of 29


C. Common Law Negligence and Strict Products Liability Claims

contract with Holmes,


pleadings with respect to claims four and five.

D. Amazon's Motion for Summary Judgment

As a preliminary matter, the Court finds that it has the discretion under Rule 12(d) to

Case 22-1745, Document 105, 03/02/2023, 3477331, Page173 of 228

DocuSign Envelope ID: 6B4CAB13-77BA-41FC-AFE8-B2709D43642B
Case 1:17-cv-04557-ER Document 148-1 Filed 02/04/22 Page 43 of 46

convert Amazon's motion into a motion for summary judgment, because both Amazon and Holmes have had a "reasonable opportunity" to present relevant material to the Court notwithstanding the fact that Holmes' Motion to Amend Complaint, filed October 6, 2017, was never heard, acted upon, or decided for more than 8 months until the case was over June, 2018, denying him due process of law and an opportunity to be heard on that motion. "The essential inquiry is whether the pro se litigant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings, including the Motion to Amend the Complaint."

& A. Books, Inc., 770 F.2d 288, 295 (2d Cir. 1985). third-party

## I. HOLMES' MOTION TO AMEND

On October 6, 2017, Holmes moved to amend the Complaint. See Doc. 47. This was two days after CheckPoint filed with this court

A court may deny leave to amend a complaint for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009). The foregoing case cited by Judge Ramos in his decision denying Plaintiff, Tyrone Holmes motion is a decision based on Georgia law.(quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)).    What maybe futile under Georgia law may not be so under Federal Rule 15. as applied under New York

Case 22-1745, Document 105, 03/02/2023, 3477331, Page174 of 228

DocuSign Envelope ID: 694CAB13-77DA-41F0-AFE8-P2709D43642B
Case 1:17-cv-04557-ER   Document 148-1   Filed 02/04/22   Page 44 of 46

law.

A pro se complaint should be read liberally, and the Court should grant leave to amend if a "liberal reading" provides "any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)). But where the issues with a complaint are "substantive" and cannot be cured by more artful or specific allegations, repleading would be "futile" and a request for further amendment"should be denied." Id. Plaintiff's case is clearly distinguishable from the case of Cuoco v. Moritsugu,  cited by the court. In that case there was a statute if limitation problem detailed by the court as follows: "The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). Amendment would be futile here because Plaintiff's claims arise from events, which he was aware of, that occurred more than three years before he commenced this Section 1983 action. Thus, his claims are time barred, see Cloverleaf Realty v. Town of Wawayanda, 572 F.3d 93, 94 (2d Cir. 2009)(The statute of limitations for a § 1983 claim arising in New York is three years), and amendment would be futile because repleading would not cure the timeliness deficiency."

Holmes' proposed amended complaint does not add any factual allegations which would alter the Court's determination that judgment on the pleadings in favor of Apple and summary judgment in favor of Amazon is appropriate. For example, Holmes still fails to allege specific misrepresentations made to him about the laptop he purchased from Amazon. See Doc. 47-1 ¶¶ Clearly Judge Ramos does not think that selling a customer a computer , in which a prior customer has installed spyware is actionable against the seller.

That of course, is not the law of the state of New York.

121–22, 127. Holmes also adds a cause of action against FedEx for acting negligently in its

Case 1:17-cv-04557-ER Document 121 Filed 07/23/18 Page 28 of 29

Case 1:17-cv-0


### FINANCIAL DISCLOSURE REPORT OF JUDGE EDGARDO RAMOS IS ATTACHED


This report indicate that many of the and trust in which Judge Ramos is invested are heavily invested in Amazon.

### SUMMARY

There were a causes of actions alleged in the Complaint against all of the defendants in a liberal reading if the Complaint. The issue of one computer or two computers should have been resolved in favor of the plaintiff for purposes of the defendants, motions to dismiss.

Finally Judge Ramos should have recused himself because of his financial interest in Apple, and FedEx. and the appearance of partiality to Companies in which he held stock which he did not disclose until after the case was completed.


Wherefore Plaintiff moves this court to vacate the Decision, Order , and Judgment, and for such other and further relief as justice may require,

Respectfully submitted,

s/ _Tyron Holmes_   2/4/2022

6F2AA96C87CC4C1...

**Tyrone Holmes**

DocuSign Envelope ID: 6B4CAB13-77DA-41F0-AFE8-B2702D43642B

**Plaintiff, pro se**

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 4 of 12 | Ramos, Edgardo | 07/22/2019 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B<br>Income during<br>reporting period | | C<br>Gross value at end<br>of reporting period | | D<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 1. -JP Morgan Chase Checking and Savings accounts | A | Interest | J | T | | | | | |
| 2. -People's Bank Checking and Savings accounts | A | Interest | K | T | | | | | |
| 3. -Bank of America Checking and Savings accounts | A | Interest | L | T | | | | | |
| 4. -Schwab Retirement Account | | | | | | | | | |
| 5. -T. Rowe Price Retirement 2025 | A | Dividend | N | T | | | | | |
| 6. TIAA CREF Retirement Accounts | | | | | | | | | |
| 7. - TIAA Traditional | A | Dividend | M | T | | | | | |
| 8. - CREF Stock | A | Dividend | M | T | | | | | |
| 9. - CREF Equity Index | A | Dividend | K | T | | | | | |
| 10. - CREF Global Equities | A | Dividend | K | T | | | | | |
| 11. --CREF Bond Market | A | Dividend | K | T | | | | | |
| 12. - CREF Inflation-Linked Bond | A | Dividend | J | T | | | | | |
| 13. - CREF Money Market Fund | A | Dividend | J | T | | | | | |
| 14. -Fidelity Retirement Account | | | | | ▇ | | | | |
| 15. - Fidelity Contrafund | A | Dividend | K | T | ▇ | | | | |
| 16. - Fidelity Intermediate Government Income fund | A | Dividend | J | T | ▇ | | | | |
| 17. -Fidelity Government Money Market | A | Dividend | J | T | ▇ | | | | |

| 1 Income Gain Codes:<br>(See Columns B1 and D4)<br>2 Value Codes<br>(See Columns C1 and D3)<br><br>3 Value Method Codes<br>(See Column C2) | A =$1,000 or less<br>F =$50,001 - $100,000<br>J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000<br>Q =Appraisal<br>U =Book Value | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000<br>K =$15,001 - $50,000<br>O =$500,001 - $1,000,000<br><br>R =Cost (Real Estate Only)<br>V =Other | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000<br>L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000<br>S =Assessment<br>W =Estimated | D =$5,001 - $15,000<br>H2 =More than $5,000,000<br>M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000<br><br>T =Cash Market | E =$15,001 - $50,000 |

**SA0449**

**FINANCIAL DISCLOSURE REPORT**

Page 5 of 12

| Name of Person Reporting | Date of Report |
|---|---|
| Ramos, Edgardo | 07/22/2019 |

## VII. INVESTMENTS and TRUSTS -- income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐  NONE (No reportable income, assets, or transactions.)

| A Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B Income during reporting period | | C Gross value at end of reporting period | | D Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e g , div , rent, or int ) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e g , buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 18. -JPMCB SR DRE 2030 CF | A | Dividend | K | T | | | | | |
| 19. -JPMCB SR DRE 2025 CF | A | Dividend | N | T | Buy (add'l) | 09/30/18 | J | | |
| 20. - Harbor International Instl CL | A | Dividend | J | T | | | | | |
| 21. -MIP II CL 2 | D | Dividend | N | T | | | | | |
| 22. -FID 500 Index IPR | A | Dividend | L | T | | | | | |
| 23. -TRP Equity Income | A | Dividend | K | T | | | | | |
| 24. -WT CIF II CR PL BD I | A | Dividend | K | T | | | | | |
| 25. -Van Real EST Inx Adm f/k/a Vang REIT Index ADM | A | Dividend | J | T | | | | | |
| 26. -Rothchild SMCP Core | A | Dividend | K | T | | | | | |
| 27. -CT Higher Education Trust Moderate Managed Allocation | | None | K | T | Distributed (part) | 07/10/18 | J | | |
| 28. | | | | | Distributed (part) | 07/10/18 | J | | |
| 29. | | | | | Distributed (part) | 09/18/18 | J | | |
| 30. | | | | | Distributed (part) | 09/18/18 | J | | |
| 31. | | | | | | | | | |
| 32. -Vanguard U.S. Growth Fund UTMA | C | Dividend | L | T | | | | | |
| 33. | | | | | | | | | |
| 34. Brokerage Account # 1 | | | | | | | | | |

| 1 Income Gain Codes: | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| (See Columns B1 and D4) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2 Value Codes | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| (See Columns C1 and D3) | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3 Value Method Codes | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| (See Column C2) | U =Book Value | V =Other | W =Estimated | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 4 of 21 | Ramos, Edgardo | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| | A. Description of Assets (including trust assets) | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Place "(X)" after each asset exempt from prior disclosure | (1) Amount Code 1 (A-H) | (2) Type (e.g., div, rent, or int) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 1. | -JP Morgan Chase Checking and Savings accounts | A | Interest | K | T | | | | | |
| 2. | -People's Bank Checking and Savings accounts | A | Interest | K | T | | | | | |
| 3. | -Bank of America Checking and Savings accounts | A | Interest | J | T | | | | | |
| 4. | -Bank of America Checking and Savings (X) | A | Interest | M | T | | | | | |
| 5. | | | | | | | | | | |
| 6. | -Schwab Retirement Account | | | | | | | | | |
| 7. | -T. Rowe Price Retirement 2025 | A | Dividend | O | T | | | | | |
| 8. | | | | | | | | | | |
| 9. | TIAA CREF Retirement Accounts | | | | | | | | | |
| 10. | - TIAA Traditional | A | Dividend | M | T | | | | | |
| 11. | - CREF Stock | A | Dividend | M | T | | | | | |
| 12. | - CREF Equity Index | A | Dividend | K | T | | | | | |
| 13. | - CREF Global Equities | A | Dividend | L | T | | | | | |
| 14. | --CREF Bond Market | A | Dividend | K | T | | | | | |
| 15. | - CREF Inflation-Linked Bond | A | Dividend | J | T | | | | | |
| 16. | - CREF Money Market Fund | A | Dividend | J | T | | | | | |
| 17. | -Fidelity Retirement Account | | | | |  | | | | |

| 1 Income Gain Codes: | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| (See Columns B1 and D4) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2 Value Codes | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| (See Columns C1 and D3) | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3 Value Method Codes | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| (See Column C2) | U =Book Value | V =Other | W =Estimated | | |

**FINANCIAL DISCLOSURE REPORT**

Page 5 of 21

| Name of Person Reporting | Date of Report |
|---|---|
| Ramos, Edgardo | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B Income during reporting period | | C Gross value at end of reporting period | | D Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div, rent, or int) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 18.  - Fidelity Contrafund | A | Dividend | L | T | | | | | |
| 19.  - Fidelity Intermediate Government Income fund | A | Dividend | J | T | | | | | |
| 20.  -Fidelity Government Money Market | A | Dividend | J | T | | | | | |
| 21.  -JPMCB SR DRE 2030 CF | A | Dividend | K | T | | | | | |
| 22.  -JPMCB SR DRE 2025 CF | A | Dividend | N | T | | | | | |
| 23.  - Harbor International Instl CL | A | Dividend | J | T | | | | | |
| 24.  -MIP II CL 2 | A | Dividend | N | T | | | | | |
| 25.  -FID 500 Index IPR | A | Dividend | M | T |  | | | | |
| 26.  -TRP Equity Income | A | Dividend | K | T | | | | | |
| 27.  -WT CIF II CR PL BD I | A | Dividend | K | T | | | | | |
| 28.  -Van Real EST Inx Adm | A | Dividend | J | T | | | | | |
| 29.  -Rothchild SMCP Core | A | Dividend | K | T | | | | | |
| 30.  -CT Higher Education Trust Moderate Managed Allocation | | None | K | T | Distributed (part) | 04/23/19 | J | | |
| 31.  -Vanguard U.S. Growth Fund UTMA (Y) | | | | |  | | | | |
| 32. | | | | | | | | | |
| 33.  Brokerage Account # 1 | | | | | | | | | |
| 34.  - ML Bank Deposit Program | A | Int./Div. | L | T | | | | | |

1 Income Gain Codes:   A =$1,000 or less   B =$1,001 - $2,500   C =$2,501 - $5,000   D =$5,001 - $15,000   E =$15,001 - $50,000
(See Columns B1 and D4)   F =$50,001 - $100,000   G =$100,001 - $1,000,000   H1 =$1,000,001 - $5,000,000   H2 =More than $5,000,000
2 Value Codes   J =$15,000 or less   K =$15,001 - $50,000   L =$50,001 - $100,000   M =$100,001 - $250,000
(See Columns C1 and D3)   N =$250,001 - $500,000   O =$500,001 - $1,000,000   P1 =$1,000,001 - $5,000,000   P2 =$5,000,001 - $25,000,000
   P3 =$25,000,001 - $50,000,000   P4 =More than $50,000,000
3 Value Method Codes   Q =Appraisal   R =Cost (Real Estate Only)   S =Assessment   T =Cash Market
(See Column C2)   U =Book Value   V =Other   W =Estimated

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 7 of 21 | Ramos, Edgardo | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A | | B | | C | | D | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Description of Assets (including trust assets) | | Income during reporting period | | Gross value at end of reporting period | | Transactions during reporting period | | | | |
| Place "(X)" after each asset exempt from prior disclosure | (1) Amount Code 1 (A-H) | (2) Type (e g , div , rent, or int ) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e g , buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 52. | ~5.0% Truckee Meadows NV Water Bond 7/1/34 (X) | A | Interest | J | T | | | | | |
| 53. | ~ABB Ltd (X) | A | Dividend | J | T | | | | | |
| 54. | ~Abbot Labs | A | Dividend | K | T | | | | | |
| 55. | ~Abbvie | A | Dividend | K | T | | | | | |
| 56. | ~Allegion PLC (X) | A | Dividend | J | T | | | | | |
| 57. | ~American Tower REIT (X) | A | Dividend | J | T | | | | | |
| 58. | ~American Water Works (X) | A | Dividend | J | T | | | | | |
| 59. | ~American Electric Power (X) | A | Dividend | J | T | | | | | |
| 60. | ~Apple Inc (X) | A | Dividend | J | T |  | | | | |
| 61. | ~ASML Holdings (X) | A | Dividend | J | T | | | | | |
| 62. | ~AstraZeneca PLC (X) | A | Dividend | J | T | | | | | |
| 63. | ~A T & T (X) | A | Dividend | J | T | | | | | |
| 64. | ~ADP (X) | A | Dividend | J | T | | | | | |
| 65. | ~Baidu (X) | A | Dividend | J | T | | | | | |
| 66. | ~BHP Group LTD (X) | A | Dividend | J | T | | | | | |
| 67. | ~Blackrock Inc (X) | A | Dividend | J | T | | | | | |
| 68. | ~BAT ADR (X) | A | Dividend | J | T | | | | | |

| 1 Income Gain Codes: | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| (See Columns B1 and D4) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2 Value Codes | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| (See Columns C1 and D3) | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3 Value Method Codes | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| (See Column C2) | U =Book Value | V =Other | W =Estimated | | |

**FINANCIAL DISCLOSURE REPORT**

Page 9 of 21

| Name of Person Reporting | Date of Report |
|---|---|
| Ramos, Edgardo | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐  NONE (No reportable income, assets, or transactions.)

| A<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B<br>Income during<br>reporting period | | C<br>Gross value at end<br>of reporting period | | D<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e g ,<br>div , rent,<br>or int ) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e g ,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 86.   -CVS Health Corp (X) | A | Dividend | J | T | | | | | |
| 87.   -Danaher Corp (X) | A | Dividend | J | T | | | | | |
| 88.   -Diageo PLC (X) | A | Dividend | J | T | | | | | |
| 89.   -Digital Realty (X) | A | Dividend | J | T | | | | | |
| 90.   -Disney, Walt Co Common (X) | A | Dividend | J | T | | | | | |
| 91.   -Dominion Energy Inc (X) | A | Dividend | J | T | | | | | |
| 92.   -Dow Inc (X) | A | Dividend | J | T | | | | | |
| 93.   -Dupont E.I. De Nemours | A | Dividend | J | T | | | | | |
| 94.   -Echo Lab (X) | A | Dividend | J | T | | | | | |
| 95.   -Emerson Electric (X) | A | Dividend | J | T | | | | | |
| 96.   -Fedex Corp (X) | A | Dividend | J | T |  | | | | |
| 97.   -Garrett Motion Inc (X) | | None | J | T | | | | | |
| 98.   -General Electric | A | Dividend | J | T | | | | | |
| 99.   -Gildan Activewear (X) | A | Dividend | J | T | | | | | |
| 100.  -GlaxoSmithKline PLC ADR | A | Dividend | J | T | | | | | |
| 101.  -Grupo Televisa (X) | A | Dividend | J | T | | | | | |
| 102.  -GW Pharmaceuticals (X) | | None | J | T | | | | | |

| | | | | |
|---|---|---|---|---|
| 1 Income Gain Codes:<br>(See Columns B1 and D4) | A =$1,000 or less<br>F =$50,001 - $100,000 | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000 | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000 | D =$5,001 - $15,000<br>H2 =More than $5,000,000 | E =$15,001 - $50,000 |
| 2 Value Codes<br>(See Columns C1 and D3) | J =$15,000 or less<br>N =$250,001 - $500,000 | K =$15,001 - $50,000<br>O =$500,001 - $1,000,000 | L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000 | M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000 | |
| 3 Value Method Codes<br>  | P3 =$25,000,001 - $50,000,000<br>Q =Appraisal | R =Cost (Real Estate Only) | P4 =More than $50,000,000<br>S =Assessment | T =Cash Market | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 14 of 21 | Ramos, Edgardo | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B Income during reporting period | | C Gross value at end of reporting period | | D Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div, rent, or int) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 171. -IShares 3-7 Year (X) | A | Dividend | K | T | | | | | |
| 172. -IShares MBS (X) | B | Dividend | K | T | | | | | |
| 173. -IShares IBOX High Yield (X) | A | Dividend | J | T | | | | | |
| 174. -IShares INC CORE MSCI (X) | A | Dividend | J | T | | | | | |
| 175. -Neuberger Berman Long (X) | | None | J | T | | | | | |
| 176. -Real Estate Select SPDR (X) | A | Dividend | J | T | | | | | |
| 177. -Sector SPDR Consumer Stpl (X) | A | Dividend | K | T | | | | | |
| 178. -Sector SPDR Energy (X) | A | Dividend | J | T | | | | | |
| 179. -Sector SPDR Industrial (X) | A | Dividend | J | T | | | | | |
| 180. -Sector SPDR Utilities (X) | A | Dividend | J | T | | | | | |
| 181. -SPDR S&P Insurance (X) | A | Dividend | J | T | ■ | | | | |
| 182. -Vaneck Vectors (X) | A | Dividend | J | T | | | | | |
| 183. -Vanguard Financials ETF (X) | A | Dividend | J | T | ■ | | | | |
| 184. -Vanguard Information Tech (X) | A | Dividend | J | T | ■ | | | | |
| 185. -Vanguard Communication (X) | A | Dividend | J | T | ■ | | | | |
| 186. -Vanguard Intermediate Bond Fund (X) | B | Dividend | K | T | ■ | | | | |
| 187. -Vangaurd Short Term Bond Fund (X) | A | Dividend | K | T | ■ | | | | |

1 Income Gain Codes:    A =$1,000 or less    B =$1,001 - $2,500    C =$2,501 - $5,000    D =$5,001 - $15,000    E =$15,001 - $50,000
(See Columns B1 and D4)    F =$50,001 - $100,000    G =$100,001 - $1,000,000    H1 =$1,000,001 - $5,000,000    H2 =More than $5,000,000
2 Value Codes    J =$15,000 or less    K =$15,001 - $50,000    L =$50,001 - $100,000    M =$100,001 - $250,000
(See Columns C1 and D3)    N =$250,001 - $500,000    O =$500,001 - $1,000,000    P1 =$1,000,001 - $5,000,000    P2 =$5,000,001 - $25,000,000
P3 =$25,000,001 - $50,000,000    P4 =More than $50,000,000
3 Value Method Codes    Q =Appraisal    R =Cost (Real Estate Only)    S =Assessment    T =Cash Market
(See Column C2)    U =Book Value    V =Other    W =Estimated

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
TYRONE HOLMES,                                                          Case No. 1:17-cv-04557-AT

                 Plaintiff,

     *-against-*

APPLE INC., AMAZON.COM, LLC, and
CHECKPOINT FLUIDIC SYSTEMS
INTERNATIONAL, LTD.,

                 Defendants.
--------------------------------------------------------------X

### CHECKPOINT OPPOSITION TO
### HOMLES' MOTION TO VACATE JUDGMENT

#### Preliminary Statement

    CheckPoint Fulidic Systems International, Ltd. (n/k/a CheckPoint Group, Inc.) opposes

Tyrone Holmes' motion to vacate the judgment, in which he seeks another judge to review Judge

Ramos' rulings leading to the judgment (ECF #148, *et seq.*).  That review has already occurred.

    The Second Circuit – by Judges Pierre N. Level, Richard C. Wesley, and Debra Ann

Livingston – unanimously affirmed Judge Ramos after *de novo* review of the lack of jurisdiction

and merit (*see* ECF #135 (certified Summary Order dated December 9, 2019, 18-2492, at 3, 5, &

7 (reviewing *de novo*)), and finding no grounds for jurisdictional discovery.  That decision is

binding and collaterally estops any further inconsistent action.

#### Background Facts and Procedure

    CheckPoint's laptop computer loaded with its software and bearing its property sticker

disappeared en route via FedEx from Lousiana to Dubai and somehow ended up under the

control of plaintiff and/or his estranged wife in New York (ECF #52 at 1, *citing* #50; #51 at 3-4;

#51-3; #51-4; #51-5; #51-6 at 3).  CheckPoint reported the events to Fed-Ex in Louisiana, which

contacted Louisiana police, which contacted the NYPD, which successfully recovered and returned it to CheckPoint (*id.*, *citing* ECF #50 at 2; #51 at 4; #51-6; #1 ¶¶ 34-65).

Instead of ending this matter, Holmes sued *CheckPoint* – apparently for seeking and accomplishing return of its stolen computer – further victimizing CheckPoint, and in a foreign jurisdiction.

Judge Ramos dismissed the action as against CheckPoint (among others), holding there was no jurisdiction over it in New York (ECF #121 at 10-11); Holmes' allegations did not set forth a tortious act to support any jurisdiction over CheckPoint (*id.* at 12); Holmes' offered no facts supporting the contention that CheckPoint's laptop was the same as his laptop (*id.* at 28); and there were no grounds for jurisdictional discovery (*id.* at 13).  Judgment was entered (ECF #122), from which Holmes appealed (ECF #124).[1]

The Second Circuit affirmed upon *de novo* review (ECF #135 at 3).  As relevant to CheckPoint, the Court affirmed Judge Ramos' rulings that (i) no jurisdiction lays over CheckPoint (Decision at 3-4); (ii) no duty or tort has been alleged against CheckPoint (*id.* at 4); and (iii) the computer that "belonged to CheckPoint" (*id.* at 4) is different than the laptop Holmes purchased from Amazon (*id.* at 7-8).  The Second Circuit also affirmed the denial of jurisdictional discovery, stating: "Because the district court properly determined that Holmes failed to make a *prima facie* case for jurisdiction or establish how further discovery could aid his case, it did not abuse its discretion in denying his motion for jurisdictional discovery" (ECF #135 at 5).

---

[1]    Holmes was represented on the appeal by counsel (*see* Notice of Appearance below, ECF #123), albeit counsel being a friend and business associate (*see* Holmes v. City of New York, et al., Docket No. 1:19-cv-01628-KPF (S.D.N.Y.)(Holmes II), at Holmes II ECF #79 at 19-20 & n.6, *citing* ECF #78-13 & #78-14 there).

### THE SECOND CIRCUIT'S DECISION
### <u>DOOMS HOLMES' MOTION</u>

The Second Circuit's determination that Holmes failed to state a claim and that his laptop was different than CheckPoint's laptop dooms Holmes' attempt to relitigate.  Those findings collaterally estop Holmes and moot any further review.

### <u>CONCLUSION</u>

Holmes' motion to vacate as to CheckPoint fails and should be denied.

Dated:  New York, New York
    February 15, 2020

By: _____/s_____
       Brian D. Graifman
       BORAH, GOLDSTEIN, ALTSCHULER,
       NAHINS & GOIDEL, P.C.
       377 Broadway
       New York, New York 10013
       (212) 431-1300 x322
       bgraifman@borahgoldstein.com
       *Attorneys for Defendant CheckPoint*
       *Fluidic Systems International, Ltd.*
       *(n/k/a/ CheckPoint Group, Inc.)*

**SA0458**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TYRONE HOLMES, | Index No. 1:17-cv-04557-RA |
| Plaintiff, | |
| -against- | |
| APPLE INC., AMAZON.COM, LLC, and CHECKPOINT FLUIDIC SYSTEMS INTERNATIONAL, LTD., | |
| Defendants. | |

## DEFENDANT APPLE INC.'S OPPOSITION TO <u>MOTION TO VACATE JUDGMENT</u>

HANNAH Y. CHANOINE
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York  10036-6537
Telephone:    (212) 326-2000
Facsimile:    (212) 326-2061
hchanoine@omm.com

DAVID R. EBERHART
(*pro hac vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone:    (415) 984-8700
Facsimile:    (415) 984-8701
deberhart@omm.com

*Attorneys for Defendant Apple Inc.*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY .......................... 1

      A.    *Holmes I* ................................................................................................. 1

      B.    *Holmes II* ................................................................................................ 4

      C.    Plaintiff's Present Motion to Vacate Judgment ...................................... 5

III.  ARGUMENT ..................................................................................................... 6

      A.    The Second Circuit's Unanimous Affirmance on *De Novo* Review
            Precludes This Court from Vacating the Judgment Based On Judge
            Ramos's Disqualification. ....................................................................... 7

      B.    Even If Judge Ramos Should Have Recused Himself, It Was Harmless
            Error. ...................................................................................................... 8

      C.    Judge Ramos's Minimal Ownership Interest In Apple Stock At Some
            Unspecified Time While Presiding Over The Case Was Not Grounds For
            Disqualification That Now Necessitates Vacating the Judgment. ............ 9

            1.    Judge Ramos's Ownership Interest in Apple Stock Would Not
                  Have Required His Disqualification Under 28 U.S.C. § 455(b)(4). ........ 10

            2.    Judge Ramos's Impartiality Could Not Reasonably Be Doubted........... 12

IV.   CONCLUSION................................................................................................. 12

## TABLE OF AUTHORITIES

Page

**Cases**

*Faulkner v. Nat'l Geographic Enterprises Inc.*,
    409 F.3d 26 (2d Cir. 2005)........................................................................... 8

*Higganbotham v. Oklahoma*,
    328 F.3d 638 (10th Cir. 2003) .................................................................... 9

*Holmes v. Apple Inc., et al.*,
    Case No. 18-2492-cv, 797 Fed. App'x 557 (2d Cir. 2019) ....................... 4

*Holmes v. City of New York, et al.*,
    Case No. 1:19-cv-01628-ER (S.D.N.Y.) .................................................. 4

*Lewis v. Tuscan Dairy Farms, Inc.*,
    25 F.3d 1138 (2d Cir. 1994)..................................................................... 12

*Liljeberg v. Health Servs. Acquisition Corp.*,
    486 U.S. 847 (1988)......................................................................... 7, 8, 11

*Liteky v. United States*,
    510 U.S. 540 (1994)................................................................................. 12

*Nemaizer v. Baker*,
    793 F.2d 58 (2d Cir. 1986)........................................................................ 7

*Paddington Partners v. Bouchard*,
    34 F.3d 1132 (2d Cir. 1994)...................................................................... 1

*Selkridge v. United of Omaha Life Ins. Co.*,
    360 F.3d 155 (3d Cir. 2004)...................................................................... 8

*Shell Oil Co. v. United States*,
    672 F.3d 1283 (Fed. Cir. 2012)............................................................... 12

*Williamson v. Indiana Univ.*,
    345 F.3d 459 (7th Cir. 2003) .................................................................... 9

**Statutes**

28 U.S.C §§ 455(b)(1)–(5).............................................................................. 10

28 U.S.C. § 455(a) ......................................................................................... 10

28 U.S.C. § 455(b)(4) ..................................................................................... 10

**SA0461**

## TABLE OF AUTHORITIES

**Page**

28 U.S.C. § 455(d)(4) ............................................................................................ 10

**Other Authorities**

Guide to Judiciary Policy, Advisory Opinion 71 ................................................... 5

Guide to Judiciary Policy, Vol. 2A, Ch. 2, Canon 3C ........................................ 10

**Rules**

Fed. R. Civ. P. 60 .................................................................................................... 1

Fed. R. Civ. P. 60(b) ............................................................................................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

A fully and finally adjudicated judgment affirmed on appeal after *de novo* review should not be disturbed without a compelling reason, and Plaintiff Tyrone Holmes presents no such reason here.  Fed. R. Civ. P. 60; *see Paddington Partners v. Bouchard*, 34 F.3d 1132, 1144 (2d Cir. 1994).  In what is styled as a "Motion to Vacate Judgment," he seeks to unravel District Judge Hon. Edgardo Ramos's July 24, 2018 judgment on the pleadings in this lawsuit, which adjudicated all claims between Plaintiff and Apple.  He does so even after the Second Circuit unanimously affirmed the judgment after *de novo* review by a three-judge panel.  Now, Plaintiff argues that the court should start from scratch after the Clerk of Court issued a letter over two years later disclosing that Judge Ramos owned a small amount of Apple stock well after the case was filed but while he still presided over the case.  But Plaintiff makes no showing—nor can he—that Judge Ramos owned or even knew that he owned Apple stock at the time he granted Apple's motion for judgment on the pleadings or that Judge Ramos was required to disqualify himself.  Both must be shown to vacate the July 24, 2018 judgment.  Neither the Federal Rules of Civil Procedure, federal statutes governing recusal and disqualification, the Judicial Conference Committee Codes of Conduct for United States Judges and Advisory Opinions, nor common sense support the result Plaintiff seeks.  Plaintiff's motion should be denied.

### II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

#### A.   *Holmes I*[1]

The lawsuit underlying Plaintiff's motion stems from the sale, purchase, loss, and alleged

---

[1] Unless otherwise noted, facts stated herein are taken from Apple's February 12, 2018 motion for judgment on the pleadings, (Docs. 97, 98), and the Second Circuit's December 9, 2019 summary order affirming the judgment, (Doc. 127).  Apple accepts these facts as true for the purposes of Plaintiff's February 4, 2022 Motion to Vacate Judgment, (Doc. 148).

resale of an Apple laptop computer.  Apple, as the sole manufacturer and source of MacBook Pro computers, including the computer at issue, sold a MacBook Pro to Defendant Amazon in May 2016.  (Doc. 98 at 8–9.)  But Apple had no part in anything that happened next.  Amazon, in turn, sold the laptop to Defendant CheckPoint Fluidic Systems International, which received the computer, installed third-party "surveillance" software on it, and attempted to ship it to Dubai via Federal Express.  (*Id.* at 9–10.)  The laptop did not arrive in Dubai, and a CheckPoint employee filed a report with FedEx to notify it of the loss.  (*Id.* at 10.)  Plaintiff Tyrone Holmes subsequently bought the laptop from Amazon, which still contained the software Checkpoint had installed.[2]  (*Id.*)  Plaintiff, in turn, gave the laptop to his estranged wife, Stephanie Scott.  (*Id.* at 11.)  Using the software it had installed, CheckPoint was able to locate the laptop and determined that the computer was being used by Ms. Scott; CheckPoint ultimately enlisted the assistance of the New York City Police Department to retrieve the laptop.  (*Id.* at 11–12.)  Threatened with arrest for criminal possession of stolen property, Plaintiff hired a private investigator.  (*Id.*)  The investigator eventually tracked down Ms. Scott, retrieved the laptop, and turned it over to the NYPD.  (*Id.*)

Proceeding *pro se*, Plaintiff filed a complaint in the U.S. District Court for the Southern District of New York on June 16, 2017 ("*Holmes I*").  (Doc. 1.)  He named three defendants— CheckPoint, Amazon, and Apple—and raised various claims against all three.  (*Id.*)  Plaintiff brought eight claims against Apple: (1) breach of contract; (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) negligence; (5) strict liability; (6) fraudulent concealment; (7) fraud in the inducement; and (8) unfair business practices.  (*Id.*)

---

[2] Apple has no knowledge of—and the pleadings offer no basis from which to conclude that Apple *could* have knowledge of—(1) whether Plaintiff received the computer directly from Amazon, or (2) the computer's precise path between Amazon, CheckPoint, FedEx, and Plaintiff.

On all eight claims, Apple moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on February 12, 2018.  (Doc. 97.)  In the alternative, Apple moved for summary judgment pursuant to Fed. R. Civ. P. 56 based on a declaration and accompanying exhibits.  (*Id.*)

On July 23, 2018, the district court (Ramos, D.J.) granted Apple's motion for judgment on the pleadings on all eight claims but did not reach Apple's summary judgment motion.  (Doc. 121.)  First, the court rejected Plaintiff's breach of contract and breach of express warranty claims, holding that Plaintiff failed to allege that he and Apple formed a contract and that, even if he had so alleged, he failed to allege a breach.  (*Id.*)  Second, the court denied Plaintiff's breach of implied warranty, negligence, and strict liability claims on the ground that Plaintiff failed to allege that Apple—as opposed to a third party—installed the tracking software that allegedly rendered the laptop "defective."  (*Id.*)  Third, the court granted judgment to Apple on Plaintiff's fraudulent concealment and fraud in the inducement claims because the court concluded that Plaintiff never alleged that (1) Apple knew that any software had been installed on the laptop, or (2) Apple made any fraudulent statements.  (*Id.*)  Finally, the court held that Plaintiff's unfair business practices claim failed because he alleged no "consumer-oriented conduct" within the meaning of the relevant New York statute.  (*Id.*)  The district court further dismissed Plaintiff's claims against CheckPoint for lack of personal jurisdiction; granted Amazon's motion for judgment on the pleadings and summary judgment; denied Plaintiff's motion to amend the complaint; and denied Plaintiff's motion for jurisdictional discovery.  (*Id.*)  The Clerk of Court issued the judgment on July 24, 2018.  (Doc. 122.)

Plaintiff appealed; as to Apple, he challenged only the dismissal of his breach-of-contract, products liability, and negligence claims.  (Doc. 124.)  On *de novo* review on December 9, 2019, the Second Circuit panel—Hon. Pierre N. Leval, Hon. Richard C. Wesley,

and Hon. Debra Ann Livingston—unanimously affirmed Judge Ramos's July 23, 2018 opinion

and order in full.  *Holmes v. Apple Inc.*, *et al.*, Case No. 18-2492-cv, 797 Fed. App'x 557 (2d

Cir. 2019).  (Doc. 127.)  The Second Circuit issued its mandate on January 6, 2020.[3]  (Doc. 135.)

This case has since remained closed for nearly two years.

    **B.**    *<u>Holmes II</u>*

    After Judge Ramos rendered his July 23, 2018 opinion and order, and while Plaintiff's

appeal of the judgment was pending, Plaintiff filed a second civil lawsuit in the U.S. District

Court for the Southern District of New York on February 21, 2019.  *Holmes v. City of New York,*

*et al.*, Case No. 1:19-cv-01628-ER (S.D.N.Y.) ("*Holmes II*").  His second lawsuit, based on the

same allegations and adding a slew of new defendants, was initially assigned to Hon. Katherine

Polk Failla.  *Id.*  On February 28, 2019, Apple requested that *Holmes II* be reassigned to Judge

Ramos; on March 19, 2019, the court reassigned *Holmes II* to Judge Ramos.  (*Holmes II* Doc. 5.)

On April 10, 2019, Plaintiff filed an interlocutory appeal of the reassignment of *Holmes II*.

(*Holmes II* Doc. 37.)

    Defendants sought permission to forgo the expense of full briefing on a motion to dismiss

in favor of a letter outlining the principles of *res judicata* that would bar Plaintiff's claims.

(*Holmes II* Docs. 28, 40, 46.)  Following an initial conference on May 2, 2019, Judge Ramos

required Defendants to proceed with full briefing.  (*See* May 2, 2019 Minute Entry setting

motion to dismiss briefing schedule.)  Apple moved to dismiss *Holmes II* on June 3, 2019,

(*Holmes II* Docs. 71, 72), and on June 12, 2019, Plaintiff amended the *Holmes II* complaint,

---

[3] Following issuance of the mandate, CheckPoint taxed costs as to the mandate, and Amazon moved for attorneys' fees, both of which Plaintiff opposed.  (Docs. 136, 131.)  After the court granted Amazon's motion for attorneys' fees, on May 11, 2020, Plaintiff moved pursuant to Fed. R. Civ. P. 60 for relief from the judgment as to the court's order on Amazon's motion for attorneys' fees.  (Doc. 144.)  The court denied Plaintiff's Rule 60 motion for relief from the judgment on May 15, 2020.  (Doc. 145.)

(*Holmes II* Doc. 87).  The Second Circuit denied Plaintiff's interlocutory appeal on July 22, 2019

and issued its mandate on August 12, 2019, (*Holmes II* Doc. 111); on February 26, 2020, Judge

Ramos dismissed all of Plaintiff's claims in *Holmes II* with prejudice, (*Holmes II* Doc. 117).

Plaintiff did not appeal.  Plaintiff has not moved to vacate the court's order dismissing *Holmes II*.

**C.**     **Plaintiff's Present Motion to Vacate Judgment**

Over two years after the Second Circuit issued its order affirming the court's judgment in

*Holmes I* and after nearly two years of dormancy, on January 21, 2022, the Clerk of Court

disclosed that Judge Ramos held an ownership interest in Apple stock "well after the case was

filed but while he still presided over the case," and that "[h]is ownership of the stock neither

affected nor impacted his decisions in this case," but that "[h]is stock ownership may have

required recusal under the Code of Conduct for United States Judges."[4]  (Doc. 146.)  Pursuant to

Advisory Opinion 71 of the Judicial Conference Code of Conduct Committee, the Clerk of Court

invited the parties to respond to Judge Ramos's disclosure.  (*Id.*)  Advisory Opinion 71, which

"considers the recusal obligations of the remaining judges on a panel when one judge must

recuse after the matter has been argued," makes no opinion on whether a decision that has been

entered must be vacated when it is discovered after entry of the decision that one of the judges

participating in the decision should have been disqualified.  *See* Guide to Judiciary Policy,

Advisory Opinion 71 ("Determination of what circumstances may taint a decision already

entered is a judicial function, not that of a committee established to advise on ethical standards of

the conduct of judges.").

Judge Ramos's publicly available annual Financial Disclosure Reports demonstrate the

limited extent of his ownership interest in Apple stock.  Apple Inc. first appeared in Judge

---

[4] On January 31, 2022, the Clerk of Court issued the same disclosure in *Holmes II*.  (*Holmes II*
Doc. 118.)

Ramos's August 11, 2020 report for the January 1, 2019 to December 31, 2019 reporting period—that is, *after* he rendered his July 24, 2018 judgment in *Holmes I.*  (*See* Decl. of Hannah Chanoine in support of Apple Opp. To Pl.'s Mot. to Vacate Judgment ("Chanoine Decl."), Ex. A at 7; Doc. 148-2 at 5.)  He made no transactions of Apple stock during the January 1, 2019 to December 31, 2019 reporting period, and his previously held assets or transactions in Apple stock, if any, were exempt from prior disclosure under the Federal Judiciary Financial Disclosure Regulations.  (*Id.*)  The report further indicates that Judge Ramos (or his spouse or children) came to own Apple stock by inheritance.  (Chanoine Decl. Ex. A at 20.)  Moreover, the total income he gained from Apple stock during the January 1, 2019 to December 31, 2019 reporting period was $1,000 or less in stock dividends, and the gross cash market value of Judge Ramos's ownership interest in Apple stock on December 31, 2019 was $15,000 or less.  (Chanoine Decl. Ex. A at 7; Doc. 148-2 at 5.)  Even at its highest, the Apple stock constituted as little as 0.1% and at most 0.5% of the total gross cash market value of Judge Ramos's investment and trust portfolio.  (*See* Chanoine Decl. Ex. A at 4–19.)

On February 4, 2022, Plaintiff filed the present "Motion to Vacate Judgment," arguing, in essence, that Judge Ramos's relatively minuscule ownership interest in Apple stock at some point during the proceedings requires vacatur of the nearly four-year-old July 24, 2018 judgment, despite the Second Circuit's unanimous opinion affirming that judgment on *de novo* review.  (Doc. 148.)  Apple now responds.

## III.   ARGUMENT

Plaintiff seeks to vacate the court's July 24, 2018 judgment on the grounds that Judge Ramos would have been subject to disqualification under 28 U.S.C. § 455 as a result of his ownership interest in Apple stock at some time during this litigation.  (Doc. 148 at 1; Doc. 148-1 at 7–11.)  Plaintiff's motion fails for two reasons.  First, the Second Circuit's unanimous

affirmance on *de novo* review precludes this court from vacating the judgment even if Judge Ramos had been required to recuse himself.  Second, Plaintiff makes no showing—nor can he—that Judge Ramos owned or knew that he owned Apple stock at the time he rendered the July 24, 2018 judgment or that Judge Ramos's impartiality could reasonably be doubted.  He therefore makes no showing that Judge Ramos should have been disqualified, let alone that the judgment should now be vacated as a result.

Liberally construed, Plaintiff's motion appears to be a Federal Rule of Civil Procedure 60(b) motion for relief.  (Doc. 148 at 1.)  Rule 60 governs relief from a judgment or order, and Rule 60(b) provides the only six avenues for relief from a judgment, order, or proceeding.  Fed. R. Civ. P. 60(b).  The Second Circuit has instructed that Rule 60(b) provides "extraordinary judicial relief" and that such relief can be granted "only upon a showing of exceptional circumstances."  *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986).[5]  No "exceptional circumstances" are present here.

A.   **The Second Circuit's Unanimous Affirmance on *De Novo* Review Precludes This Court from Vacating the Judgment Based On Judge Ramos's Disqualification.**

At this belated stage, where an independent three-judge panel of the Second Circuit has unanimously affirmed Judge Ramos's July 24, 2018 judgment on *de novo* review, the judgment cannot be vacated based on the district judge's alleged disqualification.  Under its *de novo* review, the Second Circuit was not allowed to defer to Judge Ramos in any way; in the unanimous opinion of three independent appellate judges reviewing the record on their own,

---

[5] As relevant here, the catchall provision in Rule 60(b)(6)—which permits a court to relieve a party from a final judgment, order, or proceeding for "any other reason that justifies relief"—is the proper avenue to challenge a prior decision based on the subsequent discovery of facts that would have required the judge's disqualification.  *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988).

Plaintiff's claims failed.  The entire purpose of *de novo* review is to provide an appellant the opportunity for a fresh review without any deference whatsoever to the court below.  The appellate court's independent review has already occurred, and that court concluded on its review that the judgment withstood scrutiny.  *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155 (3d Cir. 2004) (vacatur of district judge's orders being appealed was not required where appellate court's own independent, plenary review of the orders made further remedial action unnecessary).  For this reason alone, the court should reject Plaintiff's motion.

**B.      Even If Judge Ramos Should Have Recused Himself, It Was Harmless Error.**

The question of Judge Ramos's disqualification is a red herring: the grounds for disqualification, discussed *infra*, differ significantly from what must be shown to vacate a judgment.  Indeed, vacating a judgment requires a significantly higher showing and is a drastic measure that is not appropriate here.  When deciding whether to vacate a judgment for violation of 28 U.S.C. § 455, courts consider (1) "the risk of injustice to the parties in the particular case," (2) "the risk that the denial of relief will produce injustice in other cases," and (3) "the risk of undermining the public's confidence in the judicial process."  *Liljeberg*, 486 U.S. at 864 (recognizing that vacatur is unjustified where violation of section 455(a) is harmless error); *Faulkner v. Nat'l Geographic Enterprises Inc.*, 409 F.3d 26, 42 n.10 (2d Cir. 2005) (holding that harmless error review applies to alleged violations of both section 455(a) and (b)).

The record reveals that error here, if any, was harmless.  If the Court were to vacate the judgment, the injustice falls entirely on Apple and co-defendants, which will be forced to expend resources and litigate Plaintiff's baseless claims yet again, including certain claims over which the court has already determined it lacks jurisdiction.  By contrast, there is zero risk that denial of the relief Plaintiff seeks here will produce injustice in other cases: the judgment here rests entirely on the specific, peculiar facts of this case and has no bearing on any other case.

Finally, there is scant risk of undermining the public's confidence in the judicial process if the judgment is not vacated. Where the Second Circuit has completed its own *de novo* review of the judgment and affirmed the judgment unanimously, any error by Judge Ramos in failing to recuse himself was plainly harmless. *Williamson v. Indiana Univ.*, 345 F.3d 459, 464–65 (7th Cir. 2003) ("On appeal, this court reviews the grant of summary judgment *de novo* . . . and therefore Williamson has received a full review by an impartial panel."); *Higganbotham v. Oklahoma*, 328 F.3d 638, 646 (10th Cir. 2003) (noting court "independently reviewed th[e] issues *de novo* and concluded that the plaintiff's complaint was properly dismissed" and that any "error by the district judge in not recusing himself would have been harmless under the circumstances of this case."). The circumstances here demonstrate that the risk of eroding public confidence in the judicial process is nonexistent. On the contrary, vacatur here could undermine the public's confidence in the *appellate* review process: district courts do not ordinarily review or disturb the final opinions of appellate courts.

**C.** **Judge Ramos's Minimal Ownership Interest In Apple Stock At Some Unspecified Time While Presiding Over The Case Was Not Grounds For Disqualification That Now Necessitates Vacating the Judgment.**

Plaintiff's entire motion rests on the contention that Judge Ramos's ownership interest in Apple stock should result in vacatur of the July 24, 2018 judgment. But Plaintiff does not and cannot show that (1) Judge Ramos owned—let alone knew that he owned—Apple stock ***at the time he rendered the July 24, 2018 judgment***, or (2) Judge Ramos's ownership interest caused or would have caused any reasonable person to doubt Judge Ramos's impartiality. Plaintiff consequently makes no showing that Judge Ramos was required to recuse himself or that vacatur of the judgment is justified.

28 U.S.C. § 455 and the Code of Conduct for United States Judges govern

-9-

**SA0471**

disqualification and recusal of federal judges.[6]  Section 455(a) requires disqualification in cases where impartiality may reasonably be questioned.  *See* 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.").  Subsection (b) enumerates specific circumstances requiring disqualification.  *See id.* §§ 455(b)(1)–(5).  As relevant here, under § 455(b)(4), a judge shall disqualify himself when "he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding."  *Id.* § 455(b)(4).  Section 455(d)(4) defines "financial interests" as "ownership of a legal or equitable interest, however small," with exceptions.  *Id.* § 455(d)(4).

Contrary to Plaintiff's argument, Judge Ramos's ownership interest in Apple stock was not grounds for disqualification under Section 455; it certainly is not grounds for vacating the judgment.

> ### 1.    Judge Ramos's Ownership Interest in Apple Stock Would Not Have Required His Disqualification Under 28 U.S.C. § 455(b)(4).

As explained below, Judge Ramos's Financial Disclosure Reports—excerpts of which Plaintiff himself attached as an exhibit in support of his Motion to Vacate, (Doc. 148-2)—demonstrate (1) the possibility that Judge Ramos did not own any Apple stock whatsoever until *after* the July 24, 2018 judgment, and (2) the possibility that Judge Ramos did not know of his ownership interest in Apple stock until he completed his August 11, 2020 Financial Disclosure Report.  Plaintiff must show both that Judge Ramos owned Apple stock before the July 24, 2018

---

[6] The Code of Conduct for United States Judges contains disqualification rules materially identical to Section 455.  *See* Guide to Judiciary Policy, Vol. 2A, Ch. 2, Canon 3C.

judgment and that Judge Ramos was then aware of that ownership interest in order to show that Judge Ramos's disqualification would have been required under 28 U.S.C. § 455(b)(4) before the judgment was issued.  Plaintiff fails to do so.

The first time Judge Ramos was required under the Federal Judiciary Financial Disclosure Regulations to disclose any ownership of Apple stock—and the first time Judge Ramos did in fact disclose ownership of Apple stock—was in his August 11, 2020 Financial Disclosure Report (the "August 2020 Report") for the January 1, 2019 to December 31, 2019 reporting period—well after Judge Ramos rendered his July 24, 2018 judgment in *Holmes I*. (*See* Chanoine Decl. Ex. A at 7; Doc. 148-2 at 5 (indicating that Judge Ramos's ownership of Apple stock was exempt from prior disclosure).)  Judge Ramos further explained in the August 2020 Report that the Apple stock was an inherited investment.  (Chanoine Decl. Ex. A at 20.) While Judge Ramos may have owned Apple stock at some point before January 1, 2019, it is entirely possible that Judge Ramos did not own Apple stock until *after* rendering the July 24, 2018 judgment.  In fact, the Clerk of Court's January 21, 2022 letter notes that Judge Ramos did not own Apple stock until "*well after the case was filed* but while he still presided over the case." (Doc. 146 at 1 (emphasis added).)  Plaintiff makes no showing—nor can he—that Judge Ramos owned Apple stock at the time he rendered the July 24, 2018 judgment.

Moreover, Plaintiff cannot demonstrate the knowledge required for disqualification. Section 455(b)(4) requires that the judge know of a financial interest in a party before disqualifying himself.  *See Liljeberg*, 486 U.S. at 859 ("A careful reading of the respective subsections makes clear that Congress intended to require knowledge under subsection (b)(4) and not to require knowledge under subsection (a).").  Plaintiff offers no evidence that Judge Ramos knew of any ownership interest in Apple stock—assuming it existed—at any time before

-11-

**SA0473**

entering the July 24, 2018 judgment; on the contrary, Judge Ramos's August 2020 Report,

postdating the judgment, is the earliest indication of Judge Ramos's knowledge of his ownership

of Apple stock.  *Cf. Shell Oil Co. v. United States*, 672 F.3d 1283 (Fed. Cir. 2012) (financial

disclosure report predating entry of final judgment indicated judge's knowledge of wife's

financial interest in party and that judge should have recused himself).

> **2.     Judge Ramos's Impartiality Could Not Reasonably Be Doubted.**

Plaintiff alleges, in essence, that Judge Ramos's minor ownership interest in Apple

explains the judge's apparent bias against him.  (Pl's Decl. in support of Mot. to Vacate

Judgment, Doc. 148-1, at 9–11.)  But the record demonstrates that Judge Ramos was

scrupulously fair throughout the proceedings, and Plaintiff points to nothing in the record that

shows otherwise.

Plaintiff argues, for instance, that Judge Ramos demonstrated bias against Plaintiff

merely because Judge Ramos ruled against him and because Judge Ramos's decisions, to

Plaintiff, appeared to move slowly.  (*Id.* at 10–11 ("A review of the record shows that at every

turn, Plaintiff was denied the opportunity to fully prosecute their claims and/or put forth factual

showings in support of their defenses.").)  But the Second Circuit and myriad courts have

consistently held that the showing of personal bias casting doubt on impartiality must ordinarily

be based on "extrajudicial conduct . . . not conduct which arises in a judicial context."  *Lewis v.

Tuscan Dairy Farms, Inc.*, 25 F.3d 1138, 1141 (2d Cir. 1994).  And "judicial rulings alone

almost never constitute a valid basis for a bias or partiality motion."  *Liteky v. United States*, 510

U.S. 540, 548 (1994).  Plaintiff has shown no "extrajudicial conduct" to support a bias finding.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion to Vacate Judgment should be denied.

-12-

**SA0474**

Dated:  New York, New York
        March 4, 2022

O'MELVENY & MYERS LLP


By:  _____/s/ Hannah Y. Chanoine_____

        HANNAH Y. CHANOINE
        O'MELVENY & MYERS LLP
        Times Square Tower
        7 Times Square
        New York, New York  10036-6537
        Telephone:    (212) 326-2000
        Facsimile:    (212) 326-2061
        hchanoine@omm.com

        DAVID R. EBERHART
        (*pro hac vice*)
        O'MELVENY & MYERS LLP
        Two Embarcadero Center, 28th Floor
        San Francisco, California 94111
        Telephone:    (415) 984-8700
        Facsimile:    (415) 984-8701
        deberhart@omm.com

        *Attorneys for Defendant Apple Inc.*

-13-

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————

TYRONE HOLMES,

                Plaintiff,

      -against-

APPLE INC., AMAZON.COM, LLC, and
CHECKPOINT FLUIDIC SYSTEMS
INTERNATIONAL, LTD.,

           Defendants.

Index No. 1:17-cv-04557-RA

## DECLARATION OF HANNAH Y. CHANOINE IN SUPPORT OF DEFENDANT APPLE INC.'S OPPOSITION TO MOTION TO VACATE JUDGMENT

HANNAH Y. CHANOINE
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York  10036-6537
Telephone:    (212) 326-2000
Facsimile:    (212) 326-2061
hchanoine@omm.com

DAVID R. EBERHART
(*pro hac vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone:    (415) 984-8700
Facsimile:    (415) 984-8701
deberhart@omm.com

*Attorneys for Defendant Apple Inc.*

In accordance with 28 U.S.C. § 1746, I, Hannah Y. Chanoine, hereby declare and state as follows:

1.       I am an attorney at O'Melveny & Myers LLP ("O'Melveny").  I am licensed to practice law in the State of New York.  I am over the age of 18 and am capable of making this Declaration.  I know all of the facts stated herein of my own personal knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.       I am counsel for Defendant Apple Inc. ("Apple") in the above-captioned case.  I submit this Declaration in support of Apple's Opposition to Plaintiff Tyrone Holmes's February 4, 2022 Motion to Vacate Judgment (Doc. 148).

3.       On February 4, 2022, Plaintiff Tyrone Holmes filed his Motion to Vacate Judgment.  (Doc. 148.)  The Motion to Vacate Judgment references and attaches as an exhibit an excerpt of United States District Judge Hon. Edgardo Ramos's Financial Disclosure Report for Calendar Year 2019 dated August 11, 2020 combined with an excerpt of Judge Ramos's Financial Disclosure Report for Calendar Year 2018 dated July 22, 2019.  (*See* Doc. 148-2.)

4.       On February 11, 2022, I lodged a Form AO 10A Request for Examination of Report Filed by a Judicial Officer or Judicial Employee with the Financial Disclosure Office of the United States Courts Administrative Office.  In the Form AO 10A, I requested copies of Judge Ramos's financial disclosure reports for calendar years 2017 to 2022.  As of March 4, 2022, the Financial Disclosure Office has not responded to my request.

5.       Attached hereto as Exhibit A is a true and correct copy of Judge Ramos's publicly available Financial Disclosure Report for Calendar Year 2019 dated August 11, 2020.  Judge Ramos's financial disclosure reports for calendar years 2010 and 2012 through 2019 are publicly available through the Judicial Financial Disclosures Database maintained by the nonprofit

-1-

**SA0477**

organization Free Law Project on the website www.courtlistener.com/financial-disclosures/.

6.      A review of Judge Ramos's publicly available financial disclosure reports for calendar years 2010 and 2012 through 2019 confirms that Apple Inc. first appeared in <u>Exhibit A</u>.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 4th day of March, 2022 in New York, New York.

By: _____ */s/ Hannah Y. Chanoine* _____
           Hannah Y. Chanoine

**SA0478**

# EXHIBIT A

| AO 10 Rev. 1/2019 | **FINANCIAL DISCLOSURE REPORT FOR CALENDAR YEAR 2019** | *Report Required by the Ethics in Government Act of 1978 (5 U.S.C. app. §§ 101-111)* |

| 1. Person Reporting (last name, first, middle initial) | 2. Court or Organization | 3. Date of Report |
|---|---|---|
| Ramos, Edgardo | United States District Court, Southern District of New York | 08/11/2020 |

| 4. Title (Article III judges indicate active or senior status; magistrate judges indicate full- or part-time) | 5a. Report Type (check appropriate type) | 6. Reporting Period |
|---|---|---|
| United States District Judge | ☐ Nomination  Date  ☐ Initial  ☑ Annual  ☐ Final | 01/01/2019 **to** 12/31/2019 |
| | 5b. ☐ Amended Report | |

**7. Chambers or Office Address**

Thurgood Marshall United States Courthouse
40 Foley Square
Suite 410
New York, New York 10007

*IMPORTANT NOTES: The instructions accompanying this form must be followed. Complete all parts, checking the NONE box for each part where you have no reportable information.*

## I. POSITIONS. *(Reporting individual only; see pp. 9-13 of filing instructions )*

☐ NONE *(No reportable positions.)*

| POSITION | NAME OF ORGANIZATION/ENTITY |
|---|---|
| 1. Co-Chair | Harvard Law Latino Alumni Committee |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| 6. | |

## II. AGREEMENTS. *(Reporting individual only; see pp. 14-16 of filing instructions )*

☑ NONE *(No reportable agreements.)*

| DATE | PARTIES AND TERMS |
|---|---|
| 1. | |
| 2. | |
| 3. | |

**SA0480**

| FINANCIAL DISCLOSURE REPORT Page 2 of 21 | Name of Person Reporting<br><br>**Ramos, Edgardo** | Date of Report<br><br>08/11/2020 |
|---|---|---|

## III. NON-INVESTMENT INCOME. *(Reporting individual and spouse; see pp. 17-24 of filing instructions )*

**A. Filer's Non-Investment Income**

[✓] NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE | INCOME<br>(yours, not spouse's) |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |

**B. Spouse's Non-Investment Income -** *If you were married during any portion of the reporting year, complete this section.*

*(Dollar amount not required except for honoraria.)*

[✓] NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |

## IV. REIMBURSEMENTS *-- transportation, lodging, food, entertainment.*

*(Includes those to spouse and dependent children; see pp. 25-27 of filing instructions.)*

[✓] NONE *(No reportable reimbursements.)*

| SOURCE | DATES | LOCATION | PURPOSE | ITEMS PAID OR PROVIDED |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 3 of 21 | Ramos, Edgardo | 08/11/2020 |

## V. GIFTS. *(Includes those to spouse and dependent children; see pp. 28-31 of filing instructions.)*

☑ NONE *(No reportable gifts.)*

| SOURCE | DESCRIPTION | VALUE |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

## VI. LIABILITIES. *(Includes those of spouse and dependent children; see pp. 32-33 of filing instructions.)*

☑ NONE *(No reportable liabilities.)*

| CREDITOR | DESCRIPTION | VALUE CODE |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

**SA0482**

**FINANCIAL DISCLOSURE REPORT**
Page 4 of 21

| Name of Person Reporting | Date of Report |
|---|---|
| **Ramos, Edgardo** | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐      NONE *(No reportable income, assets, or transactions.)*

| | A<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B<br>Income during<br>reporting period<br>(1)<br>Amount<br>Code 1<br>(A-H) | <br><br>(2)<br>Type (e g ,<br>div , rent,<br>or int ) | C<br>Gross value at end<br>of reporting period<br>(1)<br>Value<br>Code 2<br>(J-P) | <br><br>(2)<br>Value<br>Method<br>Code 3<br>(Q-W) | D<br>Transactions during reporting period<br>(1)<br>Type (e g ,<br>buy, sell,<br>redemption) | <br>(2)<br>Date<br>mm/dd/yy | <br>(3)<br>Value<br>Code 2<br>(J-P) | <br>(4)<br>Gain<br>Code 1<br>(A-H) | <br>(5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
|---|---|---|---|---|---|---|---|---|---|---|
| 1. | -JP Morgan Chase Checking and Savings accounts | A | Interest | K | T | | | | | |
| 2. | -People's Bank Checking and Savings accounts | A | Interest | K | T | | | | | |
| 3. | -Bank of America Checking and Savings accounts | A | Interest | J | T | | | | | |
| 4. | -Bank of America Checking and Savings (X) | A | Interest | M | T | | | | | |
| 5. | | | | | | | | | | |
| 6. | -Schwab Retirement Account | | | | | | | | | |
| 7. | -T. Rowe Price Retirement 2025 | A | Dividend | O | T | | | | | |
| 8. | | | | | | | | | | |
| 9. | TIAA CREF Retirement Accounts | | | | | | | | | |
| 10. | - TIAA Traditional | A | Dividend | M | T | | | | | |
| 11. | - CREF Stock | A | Dividend | M | T | | | | | |
| 12. | - CREF Equity Index | A | Dividend | K | T | | | | | |
| 13. | - CREF Global Equities | A | Dividend | L | T | | | | | |
| 14. | --CREF Bond Market | A | Dividend | K | T | | | | | |
| 15. | - CREF Inflation-Linked Bond | A | Dividend | J | T | | | | | |
| 16. | - CREF Money Market Fund | A | Dividend | J | T | | | | | |
| 17. | -Fidelity Retirement Account | | | | | | | | | |

| | | | | |
|---|---|---|---|---|
| 1 Income Gain Codes: | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
| (See Columns B1 and D4) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2 Value Codes | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| (See Columns C1 and D3) | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3 Value Method Codes | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| (See Column C2) | U =Book Value | V =Other | W =Estimated | | |

**SA0483**

**FINANCIAL DISCLOSURE REPORT**
Page 5 of 21

| Name of Person Reporting | Date of Report |
|---|---|
| Ramos, Edgardo | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B<br>Income during<br>reporting period<br>(1)<br>Amount<br>Code 1<br>(A-H) | <br><br><br>(2)<br>Type (e.g.,<br>div., rent,<br>or int.) | C<br>Gross value at end<br>of reporting period<br>(1)<br>Value<br>Code 2<br>(J-P) | <br><br><br>(2)<br>Value<br>Method<br>Code 3<br>(Q-W) | D<br>Transactions during reporting period<br>(1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | <br><br>(2)<br>Date<br>mm/dd/yy | <br><br>(3)<br>Value<br>Code 2<br>(J-P) | <br><br>(4)<br>Gain<br>Code 1<br>(A-H) | <br><br>(5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 18.   - Fidelity Contrafund | A | Dividend | L | T | | | | | |
| 19.   - Fidelity Intermediate Government Income fund | A | Dividend | J | T | | | | | |
| 20.   -Fidelity Government Money Market | A | Dividend | J | T | | | | | |
| 21.   -JPMCB SR DRE 2030 CF | A | Dividend | K | T | | | | | |
| 22.   -JPMCB SR DRE 2025 CF | A | Dividend | N | T | | | | | |
| 23.   - Harbor International Instl CL | A | Dividend | J | T | | | | | |
| 24.   -MIP II CL 2 | A | Dividend | N | T | | | | | |
| 25.   -FID 500 Index IPR | A | Dividend | M | | | | | | |
| 26.   -TRP Equity Income | A | Dividend | K | T | | | | | |
| 27.   -WT CIF II CR PL BD I | A | Dividend | K | T | | | | | |
| 28.   -Van Real EST Inx Adm | A | Dividend | J | T | | | | | |
| 29.   -Rothchild SMCP Core | A | Dividend | K | T | | | | | |
| 30.   -CT Higher Education Trust Moderate Managed Allocation | | None | K | T | Distributed (part) | 04/23/19 | J | | |
| 31.   -Vanguard U.S. Growth Fund UTMA (Y) | | | | | | | | | |
| 32. | | | | | | | | | |
| 33.   Brokerage Account # 1 | | | | | | | | | |
| 34.   - ML Bank Deposit Program | A | Int./Div. | L | T | | | | | |

1 Income Gain Codes:   A =$1,000 or less      B =$1,001 - $2,500        C =$2,501 - $5,000        D =$5,001 - $15,000        E =$15,001 - $50,000
 (See Columns B1 and D4)   F =$50,001 - $100,000   G =$100,001 - $1,000,000   H1 =$1,000,001 - $5,000,000   H2 =More than $5,000,000
2 Value Codes            J =$15,000 or less      K =$15,001 - $50,000      L =$50,001 - $100,000      M =$100,001 - $250,000
 (See Columns C1 and D3)   N =$250,001 - $500,000   O =$500,001 - $1,000,000   P1 =$1,000,001 - $5,000,000   P2 =$5,000,001 - $25,000,000
                        P3 =$25,000,001 - $50,000,000                  P4 =More than $50,000,000
3 Value Method Codes      Q =Appraisal            R =Cost (Real Estate Only)   S =Assessment            T =Cash Market
 (See Column C2)         U =Book Value           V =Other                  W =Estimated

**FINANCIAL DISCLOSURE REPORT**
Page 6 of 21

| Name of Person Reporting | Date of Report |
| --- | --- |
| Ramos, Edgardo | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B Income during reporting period | | C Gross value at end of reporting period | | D Transactions during reporting period | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | (1) Amount Code 1 (A-H) | (2) Type (e g , div , rent, or int ) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e g , buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 35.   -7.0% GNMA Bond (X) | B | Interest | K | T | | | | | |
| 36.   -5.35% GNMA Bond (X) | B | Interest | K | T | | | | | |
| 37.   -5.37% GNMA Bond (X) | B | Interest | K | T | | | | | |
| 38.   -5.37% GNMA Bond (X) | B | Interest | K | T | | | | | |
| 39.   -5.38% GNMA Bond (X) | B | Interest | K | T | | | | | |
| 40.   -5.38% GNMA Bond (X) | B | Interest | K | T | | | | | |
| 41.   -5.0 % LA County CA Bond 8/1/22 (X) | A | Interest | J | T | | | | | |
| 42.   -5.25% MA GOBD Bond 8/1/22 (X) | A | Interest | J | T | | | | | |
| 43.   -5.0% Orange County FL Bond 8/1/27 (X) | A | Interest | K | T | | | | | |
| 44.   -5.0% MD GO Bond 3/1/26 (X) | A | Interest | J | T | | | | | |
| 45.   -5.0% UT Bond 7/1/24 (X) | A | Interest | J | T | | | | | |
| 46.   -5.0% Miami Dade School Bond 3/15/25 (X) | A | Interest | J | T | | | | | |
| 47.   -5.0% University of MO Bond 11/1/25 (X) | A | Interest | J | T | | | | | |
| 48.   -5.0% Atlanta GA Gen Rev Bond 1/1/26 (X) | A | Interest | J | T | | | | | |
| 49.   -4.0% Illinois Sales Tax Bond 6/15/28 (X) | A | Interest | J | T | | | | | |
| 50.   -5.0% Dallas FT Worth TX Bond 11/1/29 (X) | A | Interest | J | T | | | | | |
| 51.   -5.0% Carnel IN Bond 7/15/30 (X) | A | Interest | K | T | | | | | |

| 1 Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
| --- | --- | --- | --- | --- | --- |
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2 Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3 Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

# FINANCIAL DISCLOSURE REPORT
Page 7 of 21

| Name of Person Reporting | Date of Report |
|---|---|
| **Ramos, Edgardo** | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐    NONE *(No reportable income, assets, or transactions.)*

| A<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B<br>Income during<br>reporting period | | C<br>Gross value at end<br>of reporting period | | D<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e g ,<br>div , rent,<br>or int ) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e g ,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 52.   -5.0% Truckee Meadows NV Water Bond 7/1/34 (X) | A | Interest | J | T | | | | | |
| 53.   -ABB Ltd (X) | A | Dividend | J | T | | | | | |
| 54.   -Abbot Labs | A | Dividend | K | T | | | | | |
| 55.   -Abbvie | A | Dividend | K | T | | | | | |
| 56.   -Allegion PLC (X) | A | Dividend | J | T | | | | | |
| 57.   -American Tower REIT (X) | A | Dividend | J | T | | | | | |
| 58.   -American Water Works (X) | A | Dividend | J | T | | | | | |
| 59.   -American Electric Power (X) | A | Dividend | J | T | | | | | |
| 60.   -Apple Inc (X) | A | Dividend | J | T | | | | | |
| 61.   -ASML Holdings (X) | A | Dividend | J | T | | | | | |
| 62.   -AstraZeneca PLC (X) | A | Dividend | J | T | | | | | |
| 63.   -A T & T (X) | A | Dividend | J | T | | | | | |
| 64.   -ADP (X) | A | Dividend | J | T | | | | | |
| 65.   -Baidu (X) | A | Dividend | J | T | | | | | |
| 66.   -BHP Group LTD (X) | A | Dividend | J | T | | | | | |
| 67.   -Blockrock Inc (X) | A | Dividend | J | T | | | | | |
| 68.   -BAT ADR (X) | A | Dividend | J | T | | | | | |

1 Income Gain Codes:          A =$1,000 or less          B =$1,001 - $2,500          C =$2,501 - $5,000          D =$5,001 - $15,000          E =$15,001 - $50,000
  (See Columns B1 and D4)     F =$50,001 - $100,000       G =$100,001 - $1,000,000    H1 =$1,000,001 - $5,000,000   H2 =More than $5,000,000
2 Value Codes                 J =$15,000 or less          K =$15,001 - $50,000        L =$50,001 - $100,000         M =$100,001 - $250,000
  (See Columns C1 and D3)     N =$250,001 - $500,000      O =$500,001 - $1,000,000    P1 =$1,000,001 - $5,000,000   P2 =$5,000,001 - $25,000,000
                              P3 =$25,000,001 - $50,000,000
3 Value Method Codes          Q =Appraisal               R =Cost (Real Estate Only)  S =Assessment                 T =Cash Market
  (See Column C2)             U =Book Value              V =Other                    W =Estimated

**SA0486**

**FINANCIAL DISCLOSURE REPORT**
Page 8 of 21

| Name of Person Reporting | Date of Report |
|---|---|
| Ramos, Edgardo | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B<br>Income during<br>reporting period | | C<br>Gross value at end<br>of reporting period | | D<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e g ,<br>div , rent,<br>or int ) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e g ,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 69.  -Candian Natural Resources LTD (X) | A | Dividend | J | T | | | | | |
| 70.  -Carnival Corp (X) | A | Dividend | J | T | | | | | |
| 71.  -Chemex ADR (X) | A | Dividend | J | T | | | | | |
| 72.  -Chemours (X) | A | Dividend | J | T | | | | | |
| 73.  -China Pete Chem ADR (X) | A | Dividend | J | T | | | | | |
| 74.  -Chubb LTD (X) | A | Dividend | J | T | | | | | |
| 75.  -Citigroup (X) | A | Dividend | J | T | | | | | |
| 76.  -Citizens Financial Group (X) | A | Dividend | J | T | | | | | |
| 77.  -CME Group Inc (X) | A | Dividend | J | T | | | | | |
| 78.  -Coca Cola Com (X) | A | Dividend | J | T | | | | | |
| 79.  -Coca Cola European (X) | A | Dividend | J | T | | | | | |
| 80.  -Comcast Corp (X) | A | Dividend | J | T | | | | | |
| 81.  -ConAgra Foods | A | Dividend | J | T | | | | | |
| 82.  -COPA Holdings (X) | A | Dividend | J | T | | | | | |
| 83.  -Corteva Inc (X) | A | Dividend | J | T | | | | | |
| 84.  -Costco Wholesale (X) | A | Dividend | J | T | | | | | |
| 85.  -Credit Suisse GP SP ADR (X) | A | Dividend | J | T | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 1 Income Gain Codes:<br>(See Columns B1 and D4) | A =$1,000 or less<br>F =$50,001 - $100,000 | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000 | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000 | D =$5,001 - $15,000<br>H2 =More than $5,000,000 | E =$15,001 - $50,000 |
| 2 Value Codes<br>(See Columns C1 and D3) | J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000 | K =$15,001 - $50,000<br>O =$500,001 - $1,000,000 | L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>R =Cost (Real Estate Only) | M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000<br>S =Assessment | P4 =More than $50,000,000 |
| 3 Value Method Codes<br>(See Column C2) | Q =Appraisal<br>U =Book Value | V =Other | W =Estimated | T =Cash Market | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 9 of 21 | **Ramos, Edgardo** | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐    NONE *(No reportable income, assets, or transactions.)*

| A<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B<br>Income during<br>reporting period | | C<br>Gross value at end<br>of reporting period | | D<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e g ,<br>div , rent,<br>or int ) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e g ,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 86.   -CVS Health Corp (X) | A | Dividend | J | T | | | | | |
| 87.   -Danaher Corp (X) | A | Dividend | J | T | | | | | |
| 88.   -Diageo PLC (X) | A | Dividend | J | T | | | | | |
| 89.   -Digital Realty (X) | A | Dividend | J | T | | | | | |
| 90.   -Disney, Walt Co Common (X) | A | Dividend | J | T | | | | | |
| 91.   -Dominion Energy Inc (X) | A | Dividend | J | T | | | | | |
| 92.   -Dow Inc (X) | A | Dividend | J | T | | | | | |
| 93.   -Dupont E.I. De Nemours | A | Dividend | J | T | | | | | |
| 94.   -Echo Lab (X) | A | Dividend | J | T | | | | | |
| 95.   -Emerson Electric (X) | A | Dividend | J | T | | | | | |
| 96.   -Fedex Corp (X) | A | Dividend | J | T | | | | | |
| 97.   -Garrett Motion Inc (X) | | None | J | T | | | | | |
| 98.   -General Electric | A | Dividend | J | T | | | | | |
| 99.   -Gildan Activewear (X) | A | Dividend | J | T | | | | | |
| 100.   -GlaxoSmithKline PLC ADR | A | Dividend | J | T | | | | | |
| 101.   -Grupo Televisa (X) | A | Dividend | J | T | | | | | |
| 102.   -GW Pharmaceuticals (X) | | None | J | T | | | | | |

| 1 Income Gain Codes:<br>(See Columns B1 and D4) | A =$1,000 or less<br>F =$50,001 - $100,000 | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000 | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000 | D =$5,001 - $15,000<br>H2 =More than $5,000,000 | E =15,001 - $50,000 |
|---|---|---|---|---|---|
| 2 Value Codes<br>(See Columns C1 and D3) | J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000 | K =$15,001 - $50,000<br>O =$500,001 - $1,000,000 | L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>R =Cost (Real Estate Only) | M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000<br>S =Assessment | P4 =More than $50,000,000 |
| 3 Value Method Codes<br>(See Column C2) | Q =Appraisal<br>U =Book Value | V =Other | W =Estimated | T =Cash Market | |

**FINANCIAL DISCLOSURE REPORT**
Page 10 of 21

| Name of Person Reporting | Date of Report |
|---|---|
| Ramos, Edgardo | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐      NONE *(No reportable income, assets, or transactions.)*

| A<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B<br>Income during<br>reporting period<br>(1)<br>Amount<br>Code 1<br>(A-H) | <br><br><br>(2)<br>Type (e g ,<br>div , rent,<br>or int ) | C<br>Gross value at end<br>of reporting period<br>(1)<br>Value<br>Code 2<br>(J-P) | <br><br><br>(2)<br>Value<br>Method<br>Code 3<br>(Q-W) | D<br>Transactions during reporting period<br>(1)<br>Type (e g ,<br>buy, sell,<br>redemption) | <br><br><br>(2)<br>Date<br>mm/dd/yy | <br><br><br>(3)<br>Value<br>Code 2<br>(J-P) | <br><br><br>(4)<br>Gain<br>Code 1<br>(A-H) | <br><br><br>(5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 103.   -Home Depot Inc (X) | A | Dividend | J | T | | | | | |
| 104.   -Honeywelll Intl (X) | A | Dividend | J | T | | | | | |
| 105.   -Humana Inc (X) | A | Dividend | J | T | | | | | |
| 106.   -ICICI Bank (X) | A | Dividend | J | T | | | | | |
| 107.   -ING GP NV (X) | A | Dividend | J | T | | | | | |
| 108.   -Ingersoll Rand PLC (X) | A | Dividend | J | T | | | | | |
| 109.   -Intel Corp (X) | A | Dividend | J | T | | | | | |
| 110.   -IBM Corp (X) | A | Dividend | J | T | | | | | |
| 111.   -JP Morgan Chase (X) | A | Dividend | J | T | | | | | |
| 112.   -Kimberly Clark (X) | A | Dividend | J | T | | | | | |
| 113.   -Kraft (The) Heinz (X) | A | Dividend | J | T | | | | | |
| 114.   -Lamb Western Holding Inc | A | Dividend | J | T | | | | | |
| 115.   -Lockheed Martin (X) | A | Dividend | J | T | | | | | |
| 116.   -Manulife Financial Corp (X) | A | Dividend | J | T | | | | | |
| 117.   -McDonalds Corp (X) | A | Dividend | J | T | | | | | |
| 118.   -Medtonic PLC (X) | A | Dividend | J | T | | | | | |
| 119.   -Melco Resorts (X) | A | Dividend | J | T | | | | | |

| | | | | |
|---|---|---|---|---|
| 1 Income Gain Codes:<br>(See Columns B1 and D4) | A =$1,000 or less<br>F =$50,001 - $100,000 | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000 | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000 | D =$5,001 - $15,000<br>H2 =More than $5,000,000 | E =$15,001 - $50,000 |
| 2 Value Codes<br>(See Columns C1 and D3) | J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000 | K =$15,001 - $50,000<br>O =$500,001 - $1,000,000 | L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>R =Cost (Real Estate Only) | M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000<br>P4 =More than $50,000,000 | |
| 3 Value Method Codes<br>(See Column C2) | Q =Appraisal<br>U =Book Value | R =Cost (Real Estate Only)<br>V =Other | S =Assessment<br>W =Estimated | T =Cash Market | |

**SA0489**

**FINANCIAL DISCLOSURE REPORT**
Page 11 of 21

| Name of Person Reporting | Date of Report |
|---|---|
| Ramos, Edgardo | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE *(No reportable income, assets, or transactions.)*

| A<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B<br>Income during<br>reporting period | | C<br>Gross value at end<br>of reporting period | | D<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e g ,<br>div , rent,<br>or int ) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e g ,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 120.  -Metlife Inc (X) | A | Dividend | J | T | | | | | |
| 121.  -Microsoft (X) | A | Dividend | J | T | | | | | |
| 122.  -Mitsubishi Financial Group Inc (X) | A | Dividend | J | T | | | | | |
| 123.  -Momdelez Inc (X) | A | Dividend | J | T | | | | | |
| 124.  -Netease.com Inc (X) | A | Dividend | J | T | | | | | |
| 125.  -Nextera Energy Inc (X) | A | Dividend | J | T | | | | | |
| 126.  -Occidental Pet Corp (X) | A | Dividend | J | T | | | | | |
| 127.  -Paccar Inc (X) | A | Dividend | J | T | | | | | |
| 128.  -Pampa Energia SA (X) | A | Dividend | J | T | | | | | |
| 129.  -Pfizer | B | Dividend | K | T | | | | | |
| 130.  -Phillip Morris Intl Inc (X) | A | Dividend | J | T | | | | | |
| 131.  -PPL Corp (X) | A | Dividend | J | T | | | | | |
| 132.  -Proctor & Gamble | A | Dividend | K | T | | | | | |
| 133.  -Prologis Inc (X) | A | Dividend | J | T | | | | | |
| 134.  -Prudential PLC (X) | A | Dividend | J | T | | | | | |
| 135.  -Resideo Tech (X) | A | Dividend | J | T | | | | | |
| 136.  -Royal Dutch Shell PLC (X) | A | Dividend | J | T | | | | | |

| 1 Income Gain Codes:<br>(See Columns B1 and D4)<br>2 Value Codes<br>(See Columns C1 and D3)<br><br>3 Value Method Codes<br>(See Column C2) | A =$1,000 or less<br>F =$50,001 - $100,000<br>J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000<br>Q =Appraisal<br>U =Book Value | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000<br>K =$15,001 - $50,000<br>O =$500,001 - $1,000,000<br><br>R =Cost (Real Estate Only)<br>V =Other | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000<br>L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000<br>S =Assessment<br>W =Estimated | D =$5,001 - $15,000<br>H2 =More than $5,000,000<br>M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000<br><br>T =Cash Market | E =$15,001 - $50,000 |
|---|---|---|---|---|---|

**FINANCIAL DISCLOSURE REPORT**
Page 12 of 21

| Name of Person Reporting | Date of Report |
|---|---|
| **Ramos, Edgardo** | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B<br>Income during<br>reporting period | | C<br>Gross value at end<br>of reporting period | | D<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e g ,<br>div , rent,<br>or int ) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e g ,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 137.   -Sanofi ADR (X) | A | Dividend | J | T | | | | | |
| 138.   -SAP SE (X) | A | Dividend | J | T | | | | | |
| 139.   -SK Telecom (X) | A | Dividend | J | T | | | | | |
| 140.   -SONY Corp (X) | A | Dividend | J | T | | | | | |
| 141.   -Takeda Pharmaceutical Co (X) | A | Dividend | J | T | | | | | |
| 142.   -TC Energy Corp (X) | A | Dividend | J | T | | | | | |
| 143.   -Texas Instruments (X) | A | Dividend | J | T | | | | | |
| 144.   -Thermo Fisher Scientific Inc (X) | A | Dividend | J | T | | | | | |
| 145.   -TD Bank (X) | A | Dividend | J | T | | | | | |
| 146.   -Total SA (X) | A | Dividend | J | T | | | | | |
| 147.   -Trip.com (X) | A | Dividend | J | T | | | | | |
| 148.   -Union Pacific Corp (X) | A | Dividend | J | T | | | | | |
| 149.   -Vale SA (X) | A | Dividend | J | T | | | | | |
| 150.   -Ventas Inc (X) | A | Dividend | J | T | | | | | |
| 151.   -Veon LTD (X) | A | Dividend | J | T | | | | | |
| 152.   -Verizon Communications (X) | A | Dividend | J | T | | | | | |
| 153.   -VISA Inc (X) | A | Dividend | J | T | | | | | |

1 Income Gain Codes:    A =$1,000 or less    B =$1,001 - $2,500    C =$2,501 - $5,000    D =$5,001 - $15,000    E =$15,001 - $50,000
   (See Columns B1 and D4)    F =$50,001 - $100,000    G =$100,001 - $1,000,000    H1 =$1,000,001 - $5,000,000    H2 =More than $5,000,000
2 Value Codes    J =$15,000 or less    K =$15,001 - $50,000    L =$50,001 - $100,000    M =$100,001 - $250,000
   (See Columns C1 and D3)    N =$250,001 - $500,000    O =$500,001 - $1,000,000    P1 =$1,000,001 - $5,000,000    P2 =$5,000,001 - $25,000,000
   P3 =$25,000,001 - $50,000,000    P4 =More than $50,000,000
3 Value Method Codes    Q =Appraisal    R =Cost (Real Estate Only)    S =Assessment    T =Cash Market
   (See Column C2)    U =Book Value    V =Other    W =Estimated

**FINANCIAL DISCLOSURE REPORT**
Page 13 of 21

| Name of Person Reporting | Date of Report |
|---|---|
| **Ramos, Edgardo** | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

[ ] NONE *(No reportable income, assets, or transactions.)*

| A<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B<br>Income during<br>reporting period | | C<br>Gross value at end<br>of reporting period | | D<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e g ,<br>div , rent,<br>or int ) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e g ,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 154.   -Wabtec (X) | A | Dividend | J | T | | | | | |
| 155.   -Abbey Capital Futures (X) | A | Dividend | J | T | | | | | |
| 156.   -AQR Diversified (X) | A | Dividend | J | T | | | | | |
| 157.   -Blackrock Global Long (X) | A | Dividend | J | T | | | | | |
| 158.   -Blackrock Strategic (X) | A | Dividend | J | T | | | | | |
| 159.   -Boston Partners Long (X) | A | Dividend | J | T | | | | | |
| 160.   -Brandywine Global (X) | | None | J | T | | | | | |
| 161.   -Consumer Discretionary SPDR (X) | A | Dividend | J | T | | | | | |
| 162.   -Driehaus Event Driven (X) | A | Dividend | J | T | | | | | |
| 163.   -FPA Crescent Fund (X) | A | Dividend | J | T | | | | | |
| 164.   -Gotham Neutral Fund (X) | | None | J | T | | | | | |
| 165.   -Healthcare Select SPDR (X) | A | Dividend | J | T | | | | | |
| 166.   -Invesco Emerging Markets (X) | A | Dividend | J | T | | | | | |
| 167.   -Invesco Preferred ETF (X) | A | Dividend | J | T | | | | | |
| 168.   -IShares MSCI (X) | B | Dividend | K | T | | | | | |
| 169.   -IShares IBOXX (X) | A | Dividend | K | T | | | | | |
| 170.   -IShares TIPS (X) | A | Dividend | J | T | | | | | |

| 1 Income Gain Codes: | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| (See Columns B1 and D4) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2 Value Codes | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| (See Columns C1 and D3) | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market |
| 3 Value Method Codes | Q =Appraisal | U =Book Value | V =Other | W =Estimated | |
| (See Column C2) | | | | | |

**FINANCIAL DISCLOSURE REPORT**
Page 14 of 21

| Name of Person Reporting | Date of Report |
|---|---|
| Ramos, Edgardo | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A | B | | C | | D | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Description of Assets (including trust assets) | Income during reporting period | | Gross value at end of reporting period | | Transactions during reporting period | | | | |
| Place "(X)" after each asset exempt from prior disclosure | (1) Amount Code 1 (A-H) | (2) Type (e g , div , rent, or int ) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e g , buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 171.  -IShares 3-7 Year (X) | A | Dividend | K | T | | | | | |
| 172.  -IShares MBS (X) | B | Dividend | K | T | | | | | |
| 173.  -IShares IBOX High Yield (X) | A | Dividend | J | T | | | | | |
| 174.  -IShares INC CORE MSCI (X) | A | Dividend | J | T | | | | | |
| 175.  -Neuberger Berman Long (X) | | None | J | T | | | | | |
| 176.  -Real Estate Select SPDR (X) | A | Dividend | J | T | | | | | |
| 177.  -Sector SPDR Consumer Stpl (X) | A | Dividend | K | T | | | | | |
| 178.  -Sector SPDR Energy (X) | A | Dividend | J | T | | | | | |
| 179.  -Sector SPDR Industrial (X) | A | Dividend | J | T | | | | | |
| 180.  -Sector SPDR Utilities (X) | A | Dividend | J | T | | | | | |
| 181.  -SPDR S&P Insurance (X) | A | Dividend | J | T | | | | | |
| 182.  -Vaneck Vectors (X) | A | Dividend | J | T | | | | | |
| 183.  -Vanguard Financials ETF (X) | A | Dividend | J | T | | | | | |
| 184.  -Vanguard Information Tech (X) | A | Dividend | J | T | | | | | |
| 185.  -Vanguard Communication (X) | A | Dividend | J | T | | | | | |
| 186.  -Vanguard Intermediate Bond Fund (X) | B | Dividend | K | T | | | | | |
| 187.  -Vangaurd Short Tern Bond Fund (X) | A | Dividend | K | T | | | | | |

1 Income Gain Codes:        A =$1,000 or less         B =$1,001 - $2,500         C =$2,501 - $5,000         D =$5,001 - $15,000         E =$15,001 - $50,000
  (See Columns B1 and D4)   F =$50,001 - $100,000    G =$100,001 - $1,000,000   H1 =$1,000,001 - $5,000,000   H2 =More than $5,000,000
2 Value Codes               J =$15,000 or less       K =$15,001 - $50,000      L =$50,001 - $100,000      M =$100,001 - $250,000
  (See Columns C1 and D3)   N =$250,001 - $500,000   O =$500,001 - $1,000,000   P1 =$1,000,001 - $5,000,000   P2 =$5,000,001 - $25,000,000
                            P3 =$25,000,001 - $50,000,000                      P4 =More than $50,000,000
3 Value Method Codes        Q =Appraisal             R =Cost (Real Estate Only)   S =Assessment              T =Cash Market
  (See Column C2)           U =Book Value            V =Other                   W =Estimated

**SA0493**

**FINANCIAL DISCLOSURE REPORT**
Page 15 of 21

| Name of Person Reporting | Date of Report |
|---|---|
| **Ramos, Edgardo** | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B<br>Income during<br>reporting period | | C<br>Gross value at end<br>of reporting period | | D<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e g ,<br>div , rent,<br>or int ) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e g ,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 188.  -Western Asset Macro | A | Dividend | J | T | | | | | |
| 189. | | | | | | | | | |
| 190.  Brokerage Account # 2 | | | | | | | | | |
| 191.  -Federated Capital Reserves Money Market Fund | C | Dividend | N | T | | | | | |
| 192.  -Linde PLC | A | Dividend | K | T | | | | | |
| 193.  -AT&T | B | Dividend | K | T | | | | | |
| 194.  -Abbott Labs | A | Dividend | K | T | | | | | |
| 195.  -Abbvie | B | Dividend | K | T | | | | | |
| 196.  -Alcoa Inc. | | None | J | T | | | | | |
| 197.  -Allstate Corp. | A | Dividend | K | T | | | | | |
| 198.  -American Airlines Group | A | Dividend | J | T | | | | | |
| 199.  -Amerisource Bergen | A | Dividend | J | T | | | | | |
| 200.  -Amgen Inc. | A | Dividend | K | T | | | | | |
| 201.  -Arconic Inc | A | Dividend | J | T | | | | | |
| 202.  -BP PLC Spons ADR | A | Dividend | J | T | | | | | |
| 203.  -BT Group PLC ADT | A | Dividend | J | T | | | | | |
| 204.  -Boeing Co Com | A | Dividend | K | T | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 1  Income Gain Codes:<br>(See Columns B1 and D4) | A =$1,000 or less<br>F =$50,001 - $100,000 | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000 | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000 | D =$5,001 - $15,000<br>H2 =More than $5,000,000 | E =$15,001 - $50,000 |
| 2  Value Codes<br>(See Columns C1 and D3) | J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000 | K =$15,001 - $50,000<br>O =$500,001 - $1,000,000 | L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000 | M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000 | |
| 3  Value Method Codes<br>(See Column C2) | Q =Appraisal<br>U =Book Value | R =Cost (Real Estate Only)<br>V =Other | S =Assessment<br>W =Estimated | T =Cash Market | |

**FINANCIAL DISCLOSURE REPORT**
Page 16 of 21

| Name of Person Reporting | Date of Report |
|---|---|
| Ramos, Edgardo | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐   NONE *(No reportable income, assets, or transactions.)*

| A<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B<br>Income during<br>reporting period<br>(1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e g ,<br>div , rent,<br>or int ) | C<br>Gross value at end<br>of reporting period<br>(1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | D<br>Transactions during reporting period<br>(1)<br>Type (e g ,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 205.   -Boston Scientific Corp | | None | K | T | | | | | |
| 206.   CBS Corp CL B Com (Y) | | | | | | | | | |
| 207.   -Cigna Corp. | | None | | | Sold | 02/27/19 | L | E | |
| 208.   -Campbell Soup Co | A | Dividend | J | T | | | | | |
| 209.   -Caterpillar Inc. | B | Dividend | K | T | | | | | |
| 210.   -Charter Communications | | None | J | T | | | | | |
| 211.   -Chevron Corp New Com | A | Dividend | K | T | | | | | |
| 212.   -Cisco Systems, Inc | A | Dividend | J | T | | | | | |
| 213.   -Clorox Co Com | A | Dividend | K | T | | | | | |
| 214.   -Tapestry Inc | A | Dividend | J | T | | | | | |
| 215.   -Coca Cola Company | A | Dividend | J | T | | | | | |
| 216.   -Comcast Corp CL A | A | Dividend | J | T | | | | | |
| 217.   -ConAgra Foods Inc. Com | A | Dividend | J | T | | | | | |
| 218.   -Conoco Phillips Com | A | Dividend | J | T | | | | | |
| 219.   -Corteva Inc Com (X) | A | Dividend | J | T | | | | | |
| 220.   -Disney Walt Co Disney Com | A | Dividend | K | T | | | | | |
| 221.   -Discover Finl Svsc Inc. | A | Dividend | J | T | | | | | |

| 1 Income Gain Codes:<br>(See Columns B1 and D4)<br>2 Value Codes<br>(See Columns C1 and D3)<br><br>3 Value Method Codes<br>(See Column C2) | A =$1,000 or less<br>F =$50,001 - $100,000<br>J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000<br>Q =Appraisal<br>U =Book Value | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000<br>K =$15,001 - $50,000<br>O =$500,001 - $1,000,000<br><br>R =Cost (Real Estate Only)<br>V =Other | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000<br>L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000<br>S =Assessment<br>W =Estimated | D =$5,001 - $15,000<br>H2 =More than $5,000,000<br>M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000<br><br>T =Cash Market | E =$15,001 - $50,000 |
|---|---|---|---|---|---|

**FINANCIAL DISCLOSURE REPORT**
Page 17 of 21

| Name of Person Reporting | Date of Report |
|---|---|
| **Ramos, Edgardo** | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐   NONE *(No reportable income, assets, or transactions.)*

| A<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B<br>Income during<br>reporting period<br><br>(1)<br>Amount<br>Code 1<br>(A-H) | <br><br><br><br>(2)<br>Type (e g ,<br>div , rent,<br>or int ) | C<br>Gross value at end<br>of reporting period<br><br>(1)<br>Value<br>Code 2<br>(J-P) | <br><br><br><br>(2)<br>Value<br>Method<br>Code 3<br>(Q-W) | D<br>Transactions during reporting period<br><br>(1)<br>Type (e g ,<br>buy, sell,<br>redemption) | <br><br><br>(2)<br>Date<br>mm/dd/yy | <br><br><br>(3)<br>Value<br>Code 2<br>(J-P) | <br><br><br>(4)<br>Gain<br>Code 1<br>(A-H) | <br><br><br>(5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 222.   -Dow Dupont, Inc (Y) | | | | | | | | | |
| 223.   -Dow Inc Com (X) | A | Dividend | J | T | | | | | |
| 224.   -Dupont De Nemours (X) | A | Dividend | J | T | | | | | |
| 225.   -Eastman Chem Co Com | A | Dividend | J | T | | | | | |
| 226.   -Exxon Mobil Corp Com | A | Dividend | J | T | | | | | |
| 227.   -Ford Motor Co Del Com Par | A | Dividend | J | T | | | | | |
| 228.   -Freeport McMoran Copper & Gold Inc. | A | Dividend | J | T | | | | | |
| 229.   -Frontier Communications Corp | | None | J | T | | | | | |
| 230.   -General Electric Co Com | A | Dividend | J | T | | | | | |
| 231.   -GlaxoSmithKline PLC Spons ADR | A | Dividend | J | T | | | | | |
| 232.   -Hanesbrands | A | Dividend | J | T | | | | | |
| 233.   -Hershey Co Com | A | Dividend | K | T | | | | | |
| 234.   -Ingredion Inc | A | Dividend | J | T | | | | | |
| 235.   -Intel Corp Com | A | Dividend | K | T | | | | | |
| 236.   -IBM Corp | A | Dividend | K | T | | | | | |
| 237.   -International Paper Co | A | Dividend | J | T | | | | | |
| 238.   -JP Morgan Chase & Co Com | A | Dividend | K | T | | | | | |

| | | | | |
|---|---|---|---|---|
| 1 Income Gain Codes:<br>(See Columns B1 and D4) | A =$1,000 or less<br>F =$50,001 - $100,000 | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000 | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000 | D =$5,001 - $15,000<br>H2 =More than $5,000,000 | E =$15,001 - $50,000 |
| 2 Value Codes<br>(See Columns C1 and D3) | J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000 | K =$15,001 - $50,000<br>O =$500,001 - $1,000,000 | L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000 | M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000 | |
| 3 Value Method Codes<br>(See Column C2) | Q =Appraisal<br>U =Book Value | R =Cost (Real Estate Only)<br>V =Other | S =Assessment<br>W =Estimated | T =Cash Market | |

**FINANCIAL DISCLOSURE REPORT**
Page 18 of 21

| Name of Person Reporting | Date of Report |
|---|---|
| Ramos, Edgardo | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐    NONE *(No reportable income, assets, or transactions.)*

| A Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e g , div , rent, or int ) | C Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D Transactions during reporting period (1) Type (e g , buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 239.   -Kellogg Co | A | Dividend | J | T | | | | | |
| 240.   -Lamb Weston Holdings, Inc | A | Dividend | J | T | | | | | |
| 241.   -Merck & Co Inc. New Com | A | Dividend | J | T | | | | | |
| 242.   -Morgan Stanley Com New | A | Dividend | J | T | | | | | |
| 243.   -NCR Corp Com | | None | J | T | | | | | |
| 244.   -Newell Bands Inc | A | Dividend | J | T | | | | | |
| 245.   -News Corp CL A | A | Dividend | J | T | | | | | |
| 246.   -OFG Bank Corp | A | Dividend | K | T | | | | | |
| 247.   -Pepsico Inc. | A | Dividend | J | T | | | | | |
| 248.   -Pfizer Inc. Com | B | Dividend | K | T | | | | | |
| 249.   -Phillips 66 | A | Dividend | J | T | | | | | |
| 250.   -Raytheon Co New Com | A | Dividend | K | T | | | | | |
| 251.   -Smucker J M Co Com New | A | Dividend | J | T | | | | | |
| 252.   -Target Corp | B | Dividend | L | T | | | | | |
| 253.   -Teradata Corp Del Com | | None | J | T | | | | | |
| 254.   -3M Co Com | A | Dividend | J | T | | | | | |
| 255.   -Travelers Cos Inc. Com | A | Dividend | J | T | | | | | |

| | | | | |
|---|---|---|---|---|
| 1 Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2 Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3 Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

**SA0497**

# FINANCIAL DISCLOSURE REPORT
Page 19 of 21

| Name of Person Reporting | Date of Report |
|---|---|
| **Ramos, Edgardo** | 08/11/2020 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐  NONE *(No reportable income, assets, or transactions.)*

| A Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e g , div , rent, or int ) | C Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D Transactions during reporting period (1) Type (e g , buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 256.   -Twenty-First Century Fox | | None | | | Sold | 03/19/19 | J | A | |
| 257.   -US Steel Corp | A | Dividend | J | T | | | | | |
| 258.   -Verizon Communications Com | A | Dividend | J | T | | | | | |
| 259.   -Viacom Inc. CL B Com (Y) | | | | | | | | | |
| 260.   -ViacomCBS Inc CL B (X) | A | Dividend | J | T | | | | | |
| 261.   -Vodaphone Group PLC Spon ADR New | A | Dividend | J | T | | | | | |
| 262.   -Yum Brands Inc. Com | A | Dividend | J | T | | | | | |
| 263.   -Yum China Holding, Inc Com | A | Dividend | J | T | | | | | |
| 264.   -Public Storage Com | A | Dividend | J | T | | | | | |

| 1 Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2 Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | R =Cost (Real Estate Only) | P4 =More than $50,000,000 | |
| 3 Value Method Codes (See Column C2) | Q =Appraisal | V =Other | S =Assessment | T =Cash Market | |
| | U =Book Value | | W =Estimated | | |

## SA0498

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 20 of 21 | Ramos, Edgardo | 08/11/2020 |

## VIII. ADDITIONAL INFORMATION OR EXPLANATIONS. *(Indicate part of report.)*

Vanguard U.S. Growth Fund UTMA Line 31-Investment indicated in prior year is owned by ▊▊▊▊▊▊▊

Investments indicated on the following line #'s 35-53, 56-80, 82-92, 94-97, 99, 101-113, 115-128, 130-131 and 133-187
transferred into Brokerage account #1 (Merrill) are related to various inherited investments.

Bank of America Accounts indicated on line # 4 is owned along with ▊▊▊▊▊▊. The account
was used exclusively for the benefit the ▊▊▊ care prior to passing.

Dow Dupont Inc (line 225) was spun off on 6/1 as Corteva Inc ( line 222),
Dow Inc Com (line 226) and Dupont De Nemours (line 227).

Viacom (Line 262) and CBS Corp (Line 209) merged on 12/4/19 to form
ViacomCBS Inc CL B (line 263)

| FINANCIAL DISCLOSURE REPORT<br>Page 21 of 21 | Name of Person Reporting<br><br>Ramos, Edgardo | Date of Report<br><br>08/11/2020 |
|---|---|---|

## IX. CERTIFICATION.

    I certify that all information given above (including information pertaining to my spouse and minor or dependent children, if any) is accurate, true, and complete to the best of my knowledge and belief, and that any information not reported was withheld because it met applicable statutory provisions permitting non-disclosure.

    I further certify that earned income from outside employment and honoraria and the acceptance of gifts which have been reported are in compliance with the provisions of 5 U.S.C. app. § 501 et. seq., 5 U.S.C. § 7353, and Judicial Conference regulations.

Signature:  **s/ Edgardo Ramos**

NOTE: ANY INDIVIDUAL WHO KNOWINGLY AND WILLFULLY FALSIFIES OR FAILS TO FILE THIS REPORT MAY BE SUBJECT TO CIVIL AND CRIMINAL SANCTIONS (5 U.S.C. app. § 104)

Committee on Financial Disclosure
Administrative Office of the United States Courts
Suite 2-301
One Columbus Circle, N.E.
Washington, D.C. 20544